# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
        Plaintiff,

      v.                                                      Case No. **19-20052-01-JAR**

**FENG TAO,**
        Defendant.

# GOVERNMENT'S MOTION
# FOR A PROTECTIVE ORDER
# FOR DISCOVERY
# (Fed.R.Crim.P. 16)

COMES NOW the United States, by and through Anthony W. Mattivi, Assistant United States Attorney for the District of Kansas, and Nathan M.F. Charles, Trial Attorney for the Counterintelligence and Export Control Section of the U.S. Department of Justice's National Security Division, and respectfully moves the Court for a protective order pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16"). Counsel for the government has conferred with counsel for the defendant, but the parties have not been able to reach an agreement concerning the terms of a protective order. The dispute boils down to the following: the defense is unwilling to agree to an order that restricts its ability to publicly file documents with attachments that have been screened in any way other than in defense counsel's own judgement, while the

government will not agree to a protective order that would allow a repeat of the events that took place when the defendant filed his motion to dismiss the indictment.

The government's proposal is reasonable and justified. Defense counsel have already demonstrated carelessness in their handling of discovery materials. They have also demonstrated a willingness to publish in the national media information that is prejudicial but ultimately irrelevant, in what appears to be an effort to improperly influence the jury pool. The government's proposed protective order would prevent similar behavior in the future, but at the same time it poses no significant prejudice to the defendant.

Further, as illustrated by their comments during the status conference on February 18, 2020, defense counsel continue to attack straw men instead of addressing the issues being raised by the government. Throughout negotiations the government has insisted on a protective order that prevents a repeat of the events of November 17, 2019, when the defense filed a motion publicly disclosing discovery information that (as the Court later said) had "nothing to do with the legal arguments that are raised to me in [the] motion to dismiss." (Doc. 54 at 31). The motion was also timed in a way that made it appear to be a coordinated effort to taint the jury pool. Defense counsel argued at the February 18th status conference that the government insists on a protective order with a provision that requires government approval of defense exhibits and filings. This is simply untrue. The government submitted a protective order with a provision that affords the government the opportunity to confer in good faith with opposing counsel concerning attachments that might improperly disclose discovery materials. Nothing in the government's proposed order requires government "approval" of defense pleadings. Moreover, the government has informed defense counsel that it is open to alternative methods of addressing the situation (meaning the government is not "insisting" on a particular approach to the

problem). Rather than providing an alternative approach, however, defense counsel deny that any such restrictions are necessary and they continue to attack the straw argument that the government is insisting on approval of their pleadings. The government submits this is the reason negotiations have been fruitless, and it now turns to the Court to impose a protective order that is reasonable under the circumstances.

**I.      FACTS**

The Federal Bureau of Investigation (FBI) initiated an investigation of this defendant based on a tip from an informant. Independent of any information provided by the informant, the FBI determined that the defendant was working as a research scientist for a university in the People's Republic of China (PRC) while at the same time working as a research scientist for the University of Kansas (KU), and that he was doing so without disclosing to KU his foreign employment. By not disclosing his foreign employment, the defendant was able to obtain and retain grant funding to which he would not otherwise have had access. And in furtherance of the scheme, he submitted to KU a false conflict of interest certification. The government indicted the defendant on August 21, 2019, for one count of wire fraud for filing the false conflict of interest form and three counts of program fraud for fraudulently appropriating funding from three separate federal research grants. (Doc. 1).

The Grand Jury returned a Superseding Indictment on January 15, 2020. (Doc. 50). The new charging document consolidated the three program fraud counts into one, and it added a wire fraud count. It added an allegation that in addition to failing to disclose his employment at Fuzhou University in China, the defendant also failed to disclose employment at Nagoya University in Japan. And it detailed information about Chinese Talent Plans and the defendant's

participation in the Changjiang Professorship (a talent plan) that explains the defendant's motive for failing to disclose his employment with Fuzhou University.

Six days after the original indictment was returned, the Court issued a standard Pretrial and Criminal Case Management Order (CMO). (Doc. 11). Under the terms of this Order, the government provided the defendant with "complete, early, and orderly discovery [that] facilitates the fair and efficient resolution" of the case. (*See id*., at 1). In the interests of full disclosure of (even-potentially) discoverable information in the case, the government provided the Defendant with substantial information about the informant, in spite of the fact that the informant's claims have been independently corroborated, in spite of the fact that the informant is not necessary to the government's case, and in spite of the fact that the informant almost certainly will not be called as a witness by the government.

The defendant filed a motion to dismiss the indictment early in the morning on November 17, 2019, a Sunday. (Doc. 30). Notwithstanding the restrictions in the CMO on public disclosure of discovery materials, the defendant's motion – for the very first time ever, anywhere – publicly identified the informant. As the Court pointed out during argument related to the motion, public disclosure of the identity of an informant is a deviation from professional norms, even when litigating whether to compel disclosure of that identity, let alone in a motion to which the informant's identity is wholly irrelevant (as was the case here). (*See* Doc. 54 at 28 - 30). An attachment to the defendant's motion also revealed the date of birth of a potential witness in the case, along with other identifying information. (*See* Doc. 30, Exhibit H).

The government filed a motion to strike the defendant's motion to dismiss. (Doc. 35). In its response (doc. 40), the defendant maintained that he had not violated the CMO by disclosing

4

either the informant's identity or the DOB of the potential witness (*id*. at 3-7). [1] At the hearing, counsel changed tack and conceded that the disclosures violated the CMO, but he referred to them as nothing more significant than an "unforced error." Defense counsel's duplicity – in the face both of a clear violation of the CMO (disclosure of PII) and of the Court admonishing him concerning the deviation from professional norms (identification of the informant) – give the government little assurance that it can rely on defense counsel's sound judgment and a good faith review of any documents attached to public filings. Moreover, as the Court noted during the hearing, the defense had no valid reason to make such disclosures,[2] forcing the conclusion that the disclosure was intended to improperly taint the jury pool.

## II. ARGUMENT AND AUTHORITIES

"Here, as in all federal criminal cases, it is Rule 16 that principally governs pre-trial discovery." *United States v. Smith*, 985 F.Supp.2d 506, 521 (S.D.N.Y. 2013) (citing Fed.R.Crim.P. 16, and quoting *United States v. Sturman*, No. 93-CR-167 1993 WL 262458, at *5 (N.D.Ill. July 12, 1993) ('It is only by virtue of Rule 16 of the Federal Rules of Criminal Procedure that pretrial discovery is generally provided for in criminal cases.')) Rule 16 also

---

[1] *See* Doc. 54 at 32, where defense counsel maintained "the defense violated no case management order … nor did the defense violate any local orders." In fact, the defense went on to claim that the disclosure of the witness's date of birth did not violate the CMO because "it is news to the defense that the date of birth in that form is correct … that's not something the defense was aware of."

[2] *See id*. at 31 (emphasis added): I'm not saying that. I'm just pointing out, and I don't know that I'm going to-- I guess the feedback I'm giving you is not so much on the motion to strike and the standards for the motion to strike but that I'm troubled by your disclosure of this person's identity unnecessarily. If it were necessary, I think I'd be hearing a different set of arguments from both sides. But it's unnecessary for purposes of the motion that I do need to decide, which is the motion to dismiss. Why do I need to know the name of the grad student? I'm not even sure I needed to know that you have a defense in terms of the credibility of that person because that's evidence. That goes beyond the four corners of the indictment. <u>It has nothing to do with the legal arguments that are raised to me in your motion to dismiss.</u>

provides guidelines for courts to regulate discovery by issuing or modifying protective orders: "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, *or grant other appropriate relief*. Fed. R. Crim. P. 16(d)(1) (emphasis added).

In the East African Embassies bombing case, the United States Court of Appeals for the Second Circuit held that Rule 16(d) gives district courts the discretion to determine the circumstances "under which the defense may obtain access to discoverable information." *In re Terrorist Bombings of United States Embassies in East Africa*, 552 F.3d 93, 122 (2d Cir. 2008). In *United States v. Delia*, 944 F.2d 1010 (2d Cir. 1991), the Second Circuit noted that rule 16(d)(1) is "permissive," and gives district courts the ability to "limit or otherwise regulate discovery pursuant to Rule [16(d)(1)]." *United States v. Delia*, 944 F.2d at 1018.

Protective orders require good cause, and good cause "exists 'when a party shows that disclosure will result in a clearly defined, specific, and serious injury.'" *Smith*, 985 F.Supp.2d at 523 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006)). Rule 16 protective orders do not eliminate the First Amendment as a relevant concern; rather, they confine First Amendment scrutiny, "including defendants' right to disseminate the discovery material, to the framework of rule 16(d)'s good cause requirement." *Smith*, 985 F. Supp. 2d at 523.

"Applying this standard requires courts to balance several interests, including whether dissemination of the discovery materials inflicts hazard to others, and whether the imposition of the protective order would prejudice the defendant." *Id*. (internal quotes and citations omitted). Further, "the good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *Id*. at 523-524 (internal quotes and citations

6

omitted).  Consequently, courts should ensure that the discovery order protections are no broader than necessary to accomplish the order's goals.  *Id*. at 523.

Courts "have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might adversely affect law enforcement interests."  *Id*. at 531 (quotes and citations omitted).  Such interests include the need to protect law enforcement sources and methods, as well as ongoing criminal investigations.  *Id*.  Finally, courts routinely consider *ex parte* submissions in support of requests for protective orders.  *Id*.

Here, the government has already released to the defendant information that (a) identifies an informant in the case, and (b) contains significant amounts of personal identifying information (PII), including PII on potential witnesses in the case.  The government has yet to release several terabytes of electronic discovery from searches of the computers in the defendant's research laboratory at KU, and those computers may contain proprietary information belonging to the University of Kansas, the United States Department of Energy, and the National Science Foundation.

Good cause exists for a protective order when a party demonstrates that improper disclosure of information "will result in a clearly defined, specific, and serious injury."  *Id*. at 523.  Surely that is the case with improper disclosure of PII.  Indeed, redaction of PII is required by Rule 49.1 of the Federal Rules of Criminal Procedure.  According to the Notes of the Advisory Committee, this rule was adopted in compliance with the E-Government Act of 2002, which required the Supreme Court to prescribe rules to "to protect privacy and security concerns relating to electronic filing of documents and the public availability . . . of documents filed electronically."  The government submits Rule 49.1 itself demonstrates that Congress and the

7

courts recognize that improper disclosure of PII will result in a clearly defined, specific, and serious injury.

The same is true of the proprietary information that will likely be found on the computers from the defendant's lab at KU.  The government has attached (as Exhibit A) a letter from Dr. Simon Atkinson, KU's Vice Chancellor for Research, addressing the threat posed by the possible release of potentially proprietary information on the defendant's KU computer(s).  Dr. Atkinson states he believes it "is reasonable to assume that Dr. Tao's computer contains technical/scientific information related to the research work he was performing related to his ongoing and proposed sponsored projects at the University of Kansas, which could contain intellectual property subject to University and federal regulations."  He goes on to state his belief the direct damages that could result from the improper release of this information include "negative impact to invention disclosure/loss of ability to patent, impact to student academic progress, and reputational impact related to disclosure of joint inventions."  Dr. Atkinson's letter supports these assertions with additional details and discussion of the defendant's research.  (*See* Exhibit A).

In order to protect against improper disclosure of sensitive materials in this case, the government has proposed a protective order[3] that requires the defense to not re-disclose any sensitive materials (whether PII or intellectual property).  And in order to prevent a repeat of the events of November 17, 2019, in which the defense improperly included sensitive information in a publicly filed motion, the government has included within the proposed protective order a provision requiring a party to allow the other party the opportunity to review (and potentially object to) pleadings and attachments prior to those pleadings being publicly filed.  The

---

[3] As required by the Court's Guidelines For Agreed Protective Orders, a copy of the government's proposed protective order is attached as Exhibit B.

government submits this language strikes the appropriate balance under *Smith* of the substantial hazard that might result from improper release of sensitive material against the minimal resulting prejudice to the defendant.[4]

To be clear, nothing in the government's proposed language prevents either party from filing a motion, raising a defense, or otherwise exercising all available rights under the law. Rather, the government's proposed language simply allows for pre-filing review of any publicly filed motion and consultation in good faith to make certain no sensitive information is disclosed therein. The defendant suffers no prejudice from having the government review a document and point out that defendant's counsel, for example, may have missed redacting a date of birth (as has already happened), or to point out that a particular document might contain sensitive information beyond what the defense has recognized (as has already happened), or to request that the defense either redact a document or file it under seal because of the sensitive nature of its contents. Each side also remains free to pursue filing a motion under seal if it wishes to avoid allowing the opposing party to prescreen the filing, assuming of course there is a legitimate, independent reason to do so.

Moreover, the materials at issue in this particular provision of the government's proposed protective order are materials that the opposing party will see regardless. The only dispute involves the timing. The government's proposed order simply imposes a procedure whereby the non-filing party sees the motion or document a short time before it's publicly filed, as opposed to seeing it the moment the document is filed.

---

[4] The government is willing to consider an alternative proposal that accomplishes the same result (meaning to protect against a repeat of the events surrounding the motion to dismiss). The defendant has offered no counter-proposal, however, and instead simply insists that no such restriction is needed.

9

In short, the government respectfully submits it has established good cause for imposition of the protective order it has proposed in this case, and that it has offered a proposed protective order that – in light of the unique circumstances and procedural history of this case – adequately balances the significant hazards of improper disclosure of discovery materials against the minimal prejudice that would result to the defendant by offering the government the opportunity to confer in good faith prior to publicly filing a particular motion.

## III.  CONCLUSION

The procedural history of this case demonstrates that a heightened level of vigilance is warranted against improper disclosure of sensitive information. The government has proposed a protective order that strikes an appropriate balance between the clearly defined, specific, and serious injury that might result from improper release of sensitive material against minimal prejudice to the defendant. The government respectfully requests that the Court adopt the government's proposed protective order.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney

*AW Mattivi*

Anthony W. Mattivi, #17082
Assistant United States Attorney
444 SE Quincy, Room 290
Topeka, KS 66683
(785) 295-2850

_____
Nathan M. F. Charles, PA Bar #315497
Trial Attorney, U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue NW,
Washington, DC 20530

## CERTIFICATE OF SERVICE

I hereby certify that on this  19th  day of February, 2020, I caused the foregoing Motion to be filed with the Clerk of the Court by using the CM/ECF system which will send an electronic copy to counsel of record.

*AW Mattivi*
Anthony W. Mattivi