Exhibit A



Anthony W. Mattivi
Assistant United States Attorney
U.S. Attorney's Office, District of Kansas - Topeka, KS

**RE: Threats and Damages related to release of potentially proprietary information included on Feng Franklin Tao's work computer**

Dear Assistant U.S. Attorney Mattivi,

Further to your request for information as to the potential impact of disclosure of information stored on Dr. Feng (Franklin) Tao's work computers, I provide below our assessment of possible harms that would result from such a disclosure.

It is reasonable to assume that Dr. Tao's computer contains technical/scientific information related to the research work he was performing related to his ongoing and proposed sponsored projects at the University of Kansas, which could contain intellectual property subject to University and federal regulations. The University believes that there could be direct damages to the University, including negative impact to invention disclosure/loss of ability to patent, impact to student academic progress, and reputational impact related to disclosure of joint inventions. Each of these areas is addressed below.

**University Intellectual Property**
The [Bayh-Dole Act](#) (P.L. 96-517, Patent and Trademark Act Amendments of 1980) created a uniform patent policy among federal agencies that fund research, enabling non-profit organizations/universities to retain title to inventions made under federally-funded research programs. Based on this, and [Kansas Statute](#) (K.S.A. § 44-130), the [University of Kansas policy on intellectual property](#) asserts the University's right to ownership of all University employee and student intellectual property developed at the university, subject to relevant terms and conditions.

Dr. Tao had a very active research program at the University of Kansas, including funding from external sponsors. Intellectual property developed with this funding is subject to University ownership. Dr. Tao's work was funded by National Renewable Energy Lab, Oak Ridge Nation Lab, Department of Energy, and National Science Foundation (external awards totaling to over $2,475,000), and he worked collaboratively with many KU-affiliated investigators. It is reasonable to believe there could be University-owned proprietary information, including (but not limited to) Tangible Research Property, know-how, and KU background intellectual property (collectively referred to as "IP" in the rest of this response), contained on the computer, including intellectual property developed by others at KU with whom Dr. Tao was collaborating. Exposure of this information would not only be potentially damaging financially for the University, in preventing patents, but could also have a financial impact on other KU researchers and students with whom the IP was jointly developed or for which the IP depends on this University background IP.

In addition to work already funded by the federal government, Dr. Tao also had several pending proposals (with proposed budgets totaling over $525,000), including proposals to sponsors at the National Renewable Energy Laboratory, US Department of Energy, and the National Engineering Research Center of Chemical Fertilizer Catalyst. Information on his computer related to these proposals is also University-owned intellectual property. Exposure of this could cause damage to any future work anticipated by the University, by preventing KU from submitting competitive proposals that are the first to propose particular lines of inquiry.

**Impact to Academic Goals of Students and Early Career Researchers**
Dr. Tao mentored several graduate students and postdoctoral researchers in his research program. Exposure of scientific information contained on his computer could put their academic/research trajectory at risk, due to impacts on publications they may have in progress and/or their ability to continue their academic/research program in the exposed area. One PhD student previously mentored by Dr. Tao is still completing work towards that degree and could be particularly impacted, since a degree requirement is to present a dissertation that makes novel contributions to the field. It is also possible that Dr. Tao's computer contains information about his students protected under the Family Educational Rights and Privacy Act.

**Reputational Impact due to exposure of possible joint inventions**
It is vital for an active and vibrant University research program to be able to collaborate with other Universities. It is reasonable to assume that not only does University of Kansas intellectual property reside on the computer, but that of collaborator/collaborating institutions as well. Dr. Tao has ongoing work that Department of Energy and National Science Foundation funded in collaboration with University of California - Los Angeles and University of California- Riverside, as well as past Department of Energy - funded work with Harvard University and Georgia Institute of Technology. Collaborative researchers for the ongoing work at both locations have pending publications and potential jointly-developed intellectual property that could reside on Dr. Tao's computer to facilitate join publication and sponsor reporting. It would be detrimental to those collaborating research programs, and the reputation of University of Kansas as a research partner, for this intellectual property to be exposed.

**Potential for Breach of Non-Disclosure Agreements with Industry Affiliates**
The Center for Environmentally Beneficial Catalysis (CEBC), of which Dr. Tao was a member, has an industry affiliates program that allows sharing of confidential research information between CEBC scientists and industry scientists. It is possible that confidential information shared by industry sponsors is included on Dr. Tao's computers. Disclosure of this information would breach agreements to which the university or its employees is party.


Sincerely,

Simon J. Atkinson, PhD
Vice Chancellor for Research
Professor of Molecular Biosciences