## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 19-20052-JAR-JPO |
| | ) | |
| FENG TAO | ) | |
| a/k/a "Franklin Tao," | ) | |
| | ) | |
| Defendant. | ) | |

## DR. FRANKLIN TAO'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

The government's proposed protective order (the "Proposed Order") would require the defense to pre-clear virtually all of its filings with the government before submitting them to the Court, even if they include only non-discovery information from Dr. Tao's files. It would also require the defense to notify the government and seek Court intervention almost any time it wanted to show a potential fact witness a discovery document, even if it lacked sensitive information, alerting the government to the defense strategy in real time. And it would prohibit Dr. Tao from helping prepare his defense by precluding him from reviewing productions from computers in his University of Kansas ("KU") lab, based on mere conjecture that the computers *could* contain *some* proprietary information whose disclosure *could* injure KU in some unspecified way.

Citing no legal authority or precedent for its Proposed Order, and disregarding this Court's Protective Order Guidelines, the government's Motion for Protective Order attempts to justify its requests by rehashing its meritless argument that the defense should have redacted certain information from a past filing under the Case Management Order ("CMO"), even though the government previously conceded that the CMO did not require the redaction. Far from

1

demonstrating good cause, the government's Motion is supported by nothing more than conclusory statements and unfounded aspersions.

The Court should deny the government's Motion, and reject its Proposed Order, because the government has failed to demonstrate good cause for the protections it seeks in Paragraphs 4, 7, and 11 of the Proposed Order. Those paragraphs would impose unconstitutional, unprecedented, and unnecessary prior restraints on Dr. Tao's use of non-discovery information, would unduly burden the defense and unfairly advantage the government in preparation for trial, and would apply prejudicial blanket protections to non-sensitive information based on mere speculation, thereby impeding Dr. Tao's ability to prepare a defense.

For these reasons and those stated below, the Court should deny the government's Motion for a Protective Order. If the Court decides that a protective order is warranted in this case—which is far from clear, since the case alleges a novel fraud theory based on an alleged employment dispute between Dr. Tao and KU, not matters concerning national security or trade secrets—the Court should enter the District of Kansas Model Protective Order, which is sufficient, but no broader than necessary, to protect third parties from disclosure-related injuries.

## LEGAL STANDARD

A court can enter a protective order to restrict dissemination of information exchanged in discovery under Rule 16(d) if a movant demonstrates "good cause." Fed. R. Crim. P. 16(d). To establish good cause, "[t]he party seeking a protective order must first establish that the information . . . is indeed a trade secret or other confidential research, development, or commercial information." *In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 386835, at *2 (D. Kan. Jan. 27, 2017). The movant must then establish that disclosure of the information will be harmful. *Univ. of Kansas Ctr. for Research, Inc. v. United States*, No. CIVA

08-2565-JAR-DJW, 2010 WL 571824, at *7 (D. Kan. Feb. 12, 2010). "[T]o establish the
requisite harm, the moving party must show that disclosure of the trade secret or other similar
information will result in a clearly defined and very serious injury." *Id.*; *accord In re Syngenta*,
2017 WL 386835, at *2.

The movant's showing must be made "with specificity," *United States v. Wecht*, 484 F.3d
194, 211 (3d Cir. 2007), and "based on a particular factual demonstration," *Anderson v. Cryovac,
Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). Thus, "[b]road allegations of harm, unsubstantiated by
specific examples or articulated reasoning, do not support a good cause showing." *Wecht*, 484
F.3d at 211. Nor do "conclusory statements." *Anderson*, 805 F.2d at 7. Indeed, demonstration of
good cause requires "a particular and specific demonstration of fact, as distinguished from
stereotyped and conclusory statements." *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497,
501 (D. Kan. 2007) (internal quotation marks omitted); *Layne Christensen Co. v. Purolite Co.*,
271 F.R.D. 240, 244 (D. Kan. 2010) ("To establish good cause, th[e] party must submit a
particular and specific demonstration of fact, as distinguished from stereotyped and conclusory
statements." (internal quotation marks omitted)).

A party's mere "conclusory recitation" that certain information "has significant
commercial value and that disclosure of that information . . . could cause damage to one or more
of the parties," without more, "is not sufficient" to warrant protection. *Univ. of Kansas Ctr. For
Research*, 2010 WL 571824, at *7; *see Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kans. 2000)
(holding that to demonstrate good cause "the movant must do more than simply state that such
documents are proprietary and confidential" (internal quotation marks omitted)).

In deciding whether to enter a protective order, the "court must consider whether the
imposition of the protective order would prejudice the defendant." *United States v. Carriles*, 654

F. Supp. 2d 557, 566 (W.D. Tex. 2009); *accord United States v. Smith*, 985 F. Supp. 2d 506, 423 (S.D.N.Y. 2013) (same); Mot. for Protective Order at 6 (same). In addition, "courts should take care to ensure that the protection afforded to discovery information is no broader than necessary to accomplish the proffered goals of the protective order." *Smith*, 985 F. Supp. 2d at 524 (brackets and internal quotation marks omitted); *see* District of Kansas Model Protective Order & Guidelines, Guideline No. 2 ("The protective order must be narrowly tailored and not overbroad. It should include a sufficiently narrow identification of the categories of documents, information, items, or materials . . . that are subject to the protective order. Some examples are medical records, personnel files, and tax returns.").[1]

## ARGUMENT

I. **The Government Has Failed to Demonstrate Good Cause for Its Proposed Protective Order.**

A. **The government has failed to demonstrate good cause for Paragraph 11, which would exceed the permissible bounds of a protective order, would be unconstitutional and unduly burdensome, and is overbroad and unnecessary.**

Paragraph 11 of the Proposed Order states in pertinent part:

> [B]efore either party files with the Court any unsealed pleading that contains materials provided in discovery (*whether actually obtained through discovery or from any other source*), that party will provide the materials to the opposing party and allow the opposing party the opportunity to object (seal, or redact, as dictated by the circumstances).

Proposed Order ¶ 11 (emphasis added). This provision, if adopted by the Court, would exceed the permissible bounds of a protective order by restricting the use of non-discovery information, would constitute an unconstitutional prior restraint on speech, would unduly burden the defense, and is unnecessary and overbroad.

---

[1] *Available at* http://ksd.uscourts.gov/wp-content/uploads/2015/10/POGuidelinesOrder.pdf.

Protective orders are not meant to "prohibit disclosure of information whenever [the Court] deems it advisable to do so, but rather [are a] grant of power to impose conditions on *discovery* in order to prevent injury, harassment, or abuse of the court's processes." *Bennett By & Through Bennett v. Fieser*, 152 F.R.D. 641, 644 (D. Kan. 1994) (emphasis added). As the court in *Bennett* explained:

> The court may not issue an order limiting a party in the use it may make of information not acquired under the discovery rules, even though had the same information been sought through discovery the opposing party would have been entitled to a protective order. . . . "[A] protective order prevents a party from disseminating only that information obtained through use of the discovery process . . . the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes.

*Id.* (quoting 4 Moore & Lucas, Moore's Fed. Practice ¶ 26.78 (1993)); *see also Smith v. MCI Telecom. Corp.*, CIV. A. No. 87-2110-EEO, 1993 WL 142006, at *4 (D. Kans. Apr. 28, 1993) (denying proposed order because the information "was not obtained by compulsion or merely by virtue of the court's legal processes," and because "information obtained through discovery is different from information obtained through other sources"); *George v. Indus. Maint. Corp.*, 305 F. Supp. 2d 537, 540 (D.V.I. 2002) (explaining that "[r]equests to prohibit disclosure of documents obtained outside the discovery process are highly disfavored by the courts," and noting that "[e]ven highly sensitive personal information is not immune from disclosure, if obtained outside the discovery process"); *Schlaifer Nance & Co. v. Estate of Warhol*, 742 F. Supp. 165, 166 (S.D.N.Y. 1990) ("Neither the Federal Rules of Civil Procedure nor courts' inherent powers support an order prohibiting use of information innocently obtained from third parties without use of judicial process.").

Paragraph 11 would exceed the bounds of a permissible protective order because it would restrict the defense's use of information obtained by Dr. Tao outside of discovery, such as from

his personal files.[2] It is unsurprising, therefore, that the government does not cite a single case to

support the extraordinary relief it seeks in Paragraph 11.

By restricting Dr. Tao's ability to use non-discovery information, Paragraph 11 would

also constitute an unconstitutional prior restraint on speech, in violation of the First

Amendment.[3] *See Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1006–07 (3d Cir. 1976) (holding

that a "protective order, insofar as it prohibits disclosure of information . . . obtained otherwise

than through the court's processes, is valid only if it can withstand scrutiny under the rigorous

standards by which we judge prior restraints of speech," and "[w]hile a prior restraint is not

unconstitutional per se, it comes to this court bearing a heavy presumption against its

constitutionality"); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 135, 146–47 (D.N.J.

1998) (holding that proposed protective order that sought to "prohibit [a party] . . . from speaking

about or disseminating information to the public" that was "obtained outside the discovery

process" was a "form of a prior restraint" that "flies in the face of well-established First

Amendment jurisprudence" and rejecting argument that it was permissible because it "would

serve to advance a legitimate governmental interest, the facilitation of the discovery process and

the progress of th[e] matter"); *Stamy v. Packer*, 138 F.R.D. 412, 417 (D.N.J. 1990) ("A

protective order that prohibits disclosure of information obtained outside the court processes

---

[2] The provision would apply to "any unsealed pleading." The defense assumes for purposes of this Opposition that the provision is meant to apply to all filings, not just pleadings, which the defense does not file in criminal cases. *See* Accusatory Pleading, Black's Law Dictionary (11th ed. 2019) (defining "pleading" to mean "[a]n indictment, information, or complaint by which the government brings a criminal prosecution"); *see, e.g.*, *United States v. Garcia*, 221 F. Supp. 3d 1275, 1286 (D.N.M. 2016) (stating that "[m]otions, briefs, . . . memoranda, objections, [and] affidavits" are not pleadings). Taken literally, however, the provision is ineffectual.

[3] The government asserts that First Amendment scrutiny of a protective order is confined to the good cause inquiry, Mot. for Protective Order, but that principle does not apply where the protective order would restrict dissemination of information *not obtained in discovery*. *See, e.g.*, *Rodgers*, 536 F.2d at 1006.

amounts to a prior restraint of one's freedom of speech. . . . Therefore, the Court will enter a

protective order regarding disclosure of discovery material, but will not prevent plaintiff from

discussing any information she learned independent of this litigation."). By disregarding this

Court's Model Protective Order and Guidelines, and inventing an order whole cloth, the

government disregards that its Proposed Order would violate these important First Amendment

protections.[4]

Paragraph 11 is also overbroad and unnecessary. The government has not stated specific

facts demonstrating that *all* discovery in this case is sensitive, such that it could warrant

Paragraph 11's umbrella protections. For example, if adopted by the Court, Paragraph 11 would

require the defense to pre-clear a filing that contains KU's Conflict of Interest Policy, which is

publicly available online. It is simply untenable for the government to maintain that this KU

policy is sensitive or akin to a trade secret, let alone that disclosure of this publicly available

document in a filing without government pre-clearance would "result in a clearly defined and

very serious injury" to KU or anyone else. *Univ. of Kansas Ctr. for Research*, 2010 WL 571824,

at *7. Far from demonstrating that all of its productions are sensitive and should be protected by

Paragraph 11, the government has not demonstrated with particularity that *any* of the information

it plans to produce is sensitive and will harm a third party if disclosed. The only attempted

---

[4] A limited exception to this well-established First Amendment principle is where the disclosure
would create a "clear and present danger" of "a serious and imminent threat to the administration
of justice." *CBS Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975); *see George v. Indus. Maint.
Corp.*, 305 F. Supp. 2d 537, 540 (D.V.I. 2002) (explaining that protective orders generally do not
apply to "documents obtained outside the discovery process" unless "disclosure 'would present a
clear and present danger or a reasonable likelihood of a serious and imminent threat to the
administration of justice.'"). This exception applies only in truly extraordinary cases, however,
and has no currency here. *See, e.g.*, *Cooper*, 183 F.R.D. at 147 (noting that the clear-and-present-
danger exception did not apply where disclosure involved "confidential Defense Department
documents in time of war" (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971))).

showing relates to information on computers seized from Dr. Tao's KU lab, but that showing relies on pure speculation to try to obtain protections and is therefore meritless. *See infra* Section I.C. By failing to show that Paragraph 11 is necessary to prevent serious injury to a third party, the government has failed to show good cause for the provision, let alone that the provision is "no broader than necessary." *Smith*, 985 F. Supp. 2d at 524; *see* District of Kansas Model Protective Order & Guidelines, Guideline No. 2.

The government tries to justify Paragraph 11 by re-litigating its past claims that the defense should have redacted from a past filing the name of an individual who sought to extort Dr. Tao. While the defense wishes it had redacted the name and thereby avoided this ancillary dispute, the government is wrong when it says the CMO required the redaction. The defense did not learn from discovery that Dr. Tao was reported to the FBI by the individual who sought to extort him, and even if it had, the CMO permitted filing of discovery information in motions absent a protective order, which the government never bothered to seek. *See* ECF No. 40 at 3–7. The government acknowledged the CMO's exception in a past filing. *See* ECF No. 35 at 6 (conceding that the CMO "do[es] not prevent disclosure of discovery material in support of any motion").[5] The government also claims that the defense is trying to taint a prospective jury pool—despite the fact that no trial date has even been calendared and the Superseding Indictment has yet to be challenged by a Motion to Dismiss. Moreover, the failure to redact from a single filing the name of the individual who attempted to extort Dr. Tao—a name known to Dr. Tao based on emails he received from the individual wholly outside of discovery—does not warrant

---

[5] The government now claims that the *defense* admitted to violating the CMO during the January 6, 2020 hearing. *See* ECF No. 56 at 5 ("At the hearing, counsel . . . conceded that the disclosures violated the CMO."). Not true. The defense has consistently maintained that it complied with the CMO. *See* Tr. of Jan. 6, 2020 Motion Hearing at 26:2–21; 29:2–20; 32:2–7; 33:15–23; 36:15–37:12.

the extraordinary and prejudicial relief the government now seeks. In order to avoid litigating the
protective order, the defense offered to redact from future filings the names and personal
identifiers of any potential witness, regardless of the source of that information—an offer that
still stands—but the government rejected this offer. In light of these facts, the proposed
Protective Order is inappropriate and unwarranted.

Finally, even if the government had met its burden of demonstrating that its productions
contain sensitive information whose disclosure would seriously injure a third party—which it
plainly has not—Paragraph 11 would not be the least restrictive means of preventing harmful
disclosures. This Court's Model Protective Order, which mirrors other model protective orders
around the country and reflects the sound judgment of numerous experienced federal judges,
would allow the government to designate and stamp documents that are truly sensitive and
whose disclosure would cause a serious injury. *See* District of Kanas Model Protective Order ¶ 3.
The government could easily isolate and stamp documents containing informant information or
trade secrets before producing them to the defense.[6] If the defense needed to include the stamped
information in a filing, it would be required to either: (a) file the information with redactions
approved by the government; (b) submit the document solely for in camera review (if
appropriate), (c) seek permission from the Court to file the document under seal by filing a
motion for leave to file under seal in accordance with District of Kansas Local Rule 5.4.6; or (d)
challenge the designation by meeting and conferring with the government and, absent an
agreement, asking the Court to resolve the issue. *See id.* ¶ 7. These provisions, unlike the

---

[6] For the handful of productions already made by the government to the defense, the government
could either provide replacement versions of the productions, but with confidentiality stamps
where appropriate; or it could provide replacement versions of only those documents that are
sensitive with versions containing confidentiality stamps where appropriate.

Proposed Order invented by the prosecution, have proven workable in courts around the country for years, would impose no unnecessary hardships on the defense, and would sufficiently protect third parties. The government provides no argument why these provisions would not suffice.[7]

**B. The government has failed to demonstrate good cause for Paragraph 4, which is unnecessary and overbroad, would unduly burden and prejudice the defense while unfairly advantaging the government, and would violate the Court's Protective Order Guidelines.**

Paragraph 4 of the Proposed Order states:

> [1] Certain additional materials disclosed or to be disclosed by the government contain particularly sensitive information, including dates of birth, social security numbers, physical addresses and email addresses, telephone numbers not disclosed in public directories or otherwise publicly accessible, and financial information of one or more persons other than the defendant to whom the information is disclosed. [2] No such materials, or the information contained therein, may be disclosed to any persons other than defendants, counsel for defendants, persons employed to assist the defense, or the person to whom the sensitive information solely and directly pertains, without prior notice to the government and authorization from the Court. [3] Absent prior permission from the Court, information marked as sensitive shall not be included in any public filing with the Court, and instead shall be submitted under seal (except in the case of a defendant who chooses to include in a public document sensitive information relating solely and directly to the defendant making the filing).

Proposed Order ¶ 4 (bracketed numbers added). The Court should reject this paragraph, which would unduly burden the defense and unfairly advantage the government, is overbroad, and is unnecessary.

---

[7] The government asserts that "the defense is unwilling to agree to an order that restricts its ability to publicly file documents with attachments that have been screened in any way other than in defense counsel's own judgment." Motion for Protective Order at 1. To the contrary, the Model Protective Order would permit the government to designate sensitive documents in *its own* judgment, which the defense would need to respect or challenge in court.

The first provision of Paragraph 4 is unnecessary and overbroad and lacks good cause. The provision is largely unnecessary because Rule 49.1 already requires that the parties redact the following information from court filings: (1) an individual's social-security number, except the last four digits, and taxpayer-identification number; (2) an individual's birth date, except the year; (3) the name of an individual known to be a minor, except the minor's initials; (4) a financial-account number, except the last four digits; and (5) an individual's home address, except the city and state. *See* Fed. R. Crim. P. 49.1(a); Mot. for Protective Order at 7; *see also Bowers v. Mortg. Elec. Registration Sys.*, No. CIV.A. 10-4141-JTM, 2011 WL 3328524, at *6 (D. Kan. Aug. 2, 2011) (rejecting provision of protective order that covered "documents that are only designated confidential because they contain personal identifiers, e.g., social security numbers, birth dates, bank account numbers, [and] other personal sensitive information," since the information can be redacted and thus need not be filed under seal). The remainder of this provision that is not covered by Rule 49.—*i.e.*, email addresses, physical addresses for non-home locations, and nonpublic phone numbers—is overbroad. The requirement would treat as sensitive email addresses and business locations (*e.g.*, the KU Lawrence campus address), even if they are publicly listed or otherwise non-sensitive. The government also failed to support this request with specific facts that show that disclosure of email addresses or non-home addresses involved in this case would cause a serious injury to a third party.

The second provision of Paragraph 4 would unduly burden the defense and unfairly advantage the government. If the defense wanted to show a potential fact witness a document containing an email address—even if that address were public information or already known to the witness—the defense would need to notify the government and ask for the Court's prior approval. The defense could not even avoid these steps by redacting the email address, since

Paragraph 4 would treat the entire document—not just the email address—as sensitive. *See* Proposed Order ¶ 4 (stating that certain "materials" contain email addresses, and "[n]o such materials, or the information contained therein, may be disclosed"). This would drive up defense costs, ossify the defense's pre-trial investigation, and effectively require the defense to promptly alert the government to its likely strategy at trial by identifying its key documents and witnesses in real time.

The third provision of Paragraph 4 is also overbroad and would violate the Court's Protective Order Guidelines by allowing the government to designate any and all documents sensitive without regard to whether they are in fact sensitive. *See* Proposed Order ¶ 4 (all documents and information "marked as sensitive shall not be included in any public filing"). A party cannot unilaterally designate documents as sensitive in this way, however, if they do not actually warrant protection. *See, e.g., Reed*, 193 F.R.D. at 691 (rejecting protective order that allowed parties to "unilaterally choose to designate any . . . documents as 'confidential,'" and stating that, "[b]y failing to identify specific documents or types of documents to be protected within the proposed protective order, [the party] fails to meet the good cause standard"); *Bartholomees v. Signator Inv'rs, Inc.*, No. 03-2081-GTV, 2003 WL 22843174, at *2 (D. Kan. Nov. 25, 2003) ("Moreover, even though a blanket protective order permits all documents to be designated as confidential, a party must agree to only invoke the designation in good faith."). For the same reason, the provision violates the Court's Protective Order Guidelines. *See* Model Protective Order & Guidelines, Guideline No. 2 ("Language such as 'this protective order shall apply to all documents the party designates as confidential' or 'this protective order shall apply to all business records' would be deemed too vague and overbroad."). By failing to show that all documents in all of the government's productions are highly sensitive and that their disclosure

would seriously injure a third party, the government has failed to establish good cause for this provision. *See Reed*, 193 F.R.D. at 691.

The third provision would also violate this Court's Protective Order Guidelines because it would delegate to the parties improper sealing authority, an authority that lies exclusively with the Court. *Compare* Proposed Order ¶ 4 ("[I]nformation marked as sensitive shall not be included in any public filing with the Court, and instead shall be submitted under seal."), *with* District of Kansas Model Protective Order & Guidelines, Guideline No. 3 ("The protective order should not contain a blanket 'filing under seal' provision that requires or allows the parties to file documents containing confidential information under seal without the court's permission."), *and Univ. of Kansas Ctr. for Research*, 2010 WL 571824, at *12 (rejecting paragraph that "does not comply with Guideline 3 of the Court's Guidelines," which "requires a party desiring to file confidential information under seal to first file a motion for leave to seal and be granted leave to do so"). Indeed, the Guidelines instruct that, "[i]f the parties wish to include a provision for filing confidential materials under seal, then the protective order should state that the party seeking to file confidential information must first file a motion with the court and be granted leave to file the particular document under seal." District of Kanas Model Protective Order & Guidelines, Guideline No. 3. It also directs the parties to meet and confer regarding whether information can be redacted rather than filed under seal. *Id.* The third provision of Paragraph 4 disregards these directions.[8]

---

[8] The Court's Protective Order Guidelines inhere the "strong presumption" that "judicial records will not be sealed," which is "derive[d] from the public's interest in understanding disputes that are presented to a public forum for resolution and is intended to assure that the courts are fairly run and judges are honest." *Fish v. Kobach*, 320 F.R.D. 566, 576–77 (D. Kan. 2017). In order "[t]o seal court records and thus impair that right," the government "'must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.'" *United States ex rel. Reed v. Keypoint Gov't Solutions*, 923 F.3d 729,

If the government had met its burden of demonstrating that its productions contained sensitive information whose disclosure would seriously injure a third party—which it plainly has not—the second provision of Paragraph 4 would not be the least restrictive means of preventing harmful disclosures. For example, under the Court's Model Protective Order, if the government believed an unlisted phone number, or a particular email address, was sensitive and that its disclosure to a potential defense witness would seriously injure a third party, it could designate the document as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." *See* District of Kansas Model Protective Order ¶¶ 3, 6. The defense would then be required to have the potential witness certify that he or she will not disclose the phone number or email address to a third party. If the defense wanted to attach the document to a filing, moreover, the Model Protective Order would require the defense to redact the sensitive information with the government's consent, submit the information for in camera review, move to seal the information, or challenge the designation in court. *Id.* ¶ 7. The government has failed to explain why the Model Protective Order would fail to protect from serious injury the unidentified third parties about whom it is concerned.

    **C.** **The government has failed to demonstrate good cause for Paragraph 7, which is unnecessary and overbroad, requests extraordinary protections based on sheer speculation, and would impede Dr. Tao's ability to prepare a defense.**

Paragraph 7 of the Proposed Order provides:

    The FBI possesses electronic documents it obtained in the course of its investigation into [Dr. Tao's alleged] conduct that contains University of Kansas proprietary information. By mutual agreement of the parties, the Government will provide copies of the electronic data to Defense Counsel on the condition that it not be shown to the Defendant unless defense counsel has expressly

---

772 (10th Cir. 2019) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)); *accord Sacchi v. IHC Health Servs., Inc.*, 918 F.3d 1155, 1160 (10th Cir. 2019).

> obtained permission from the government to do so. This provision
> does not preclude Defense Counsel from applying to this Court, on
> an *ex parte* basis, for permission to show the Defendant certain
> materials where necessary to the preparation of his defense. The
> government will label the production(s) to which this paragraph
> applies as "KU Proprietary Information subject to paragraph 7 of
> the Protective Order."

Proposed Order ¶ 7.[9] The government asserts in its Motion that this information consists of

"terabytes" of documents and data from computers seized from Dr. Tao's laboratory at KU that

"may" contain KU proprietary information whose disclosure "could" result in harm to KU. Mot.

for Protective Order at 7–8. The Court should reject this paragraph because the government has

failed to demonstrate good cause—rather than presenting rank speculation—for the heightened

protections of the information on the computers, and has failed to explain why Dr. Tao's review

of the information, which previously resided on his lab computers, would seriously injure KU.

As a threshold matter, the government has failed to demonstrate good cause to treat as

sensitive the computers seized from Dr. Tao's KU labs because it relies on sheer speculation to

establish that the information on the computers is proprietary and that its disclosure would cause

KU a serious injury. To establish that the documents are proprietary, the government relies

exclusively on a letter sent by Dr. Simon J. Atkinson, Vice Chancellor for Research at KU, that

indicates that "[i]t is *reasonable to assume* that Dr. Tao's computer contains technical/scientific

information," and that "[i]t is *reasonable to believe* there could be University-owned proprietary

information" contained on the computer. Motion for Protective Order, Ex. A, at 1 (emphasis

---

[9] The "by mutual agreement of the parties" language is incorrect. Dr. Tao does not agree to this provision. In the hopes of avoiding unnecessary litigation, the defense had expressed willingness to agree to this provision if the government compromised on other provisions, but the government declined. In light of the government's refusal to compromise on other key provisions, the defense objects to this provision for the reasons stated herein. *See Layne*, 271 F.R.D. at 245 (a defendant does not waive an argument by not raising an objection during a meet and confer).

added); *see also* Mot. for Protective Order at 7 (computers in Dr. Tao's laboratories at KU "*may* contain proprietary information" (emphasis added)). The government tries to establish that disclosure of these unidentified and potentially non-existent documents would cause a serious injury to KU by multiplying its speculation. KU asserts that that *if* the computers contain KU proprietary information, disclosure of that hypothetical information could be "*potentially* damaging," "*could* also have a financial impact," and "*could* cause damage." *Id.* at 1–2 (emphasis added). The government's resort to conclusory statements and speculation to obtain heightened protections falls well short of meeting its burden of proof. *See Wecht*, 484 F.3d at 211; *Cryovac, Inc.*, 805 F.2d at 7; *MGP Ingredients*, 245 F.R.D. at 501; *Layne*, 271 F.R.D. at 244.[10] Reliance on sheer speculation and guesswork is especially confounding when the government and KU could have simply reviewed the computers at issue to see if they contained proprietary information whose disclosure would be damaging before attempting to preclude Dr. Tao from seeing these materials.[11]

The government has also failed to demonstrate that specific and serious harm would result from disclosure of the hypothetical proprietary information to Dr. Tao, who needs to review the information to help prepare his defense. The government's failure to support this drastic provision in its Motion should be dispositive. *See, e.g.*, *Bowers*, 2011 WL 3328524, at *8 (rejecting proposed "Attorneys' Eyes Only" requirement because the movants had "not asserted

---

[10] Dr. Tao's research is typically published for consumption by scientists in research periodicals, not used to obtain patents. Neither KU nor the government contends that Dr. Tao was in the process of seeking patents, or even that he has ever previously obtained a patent.

[11] Even if the government had demonstrated good cause as to some information on the computers, moreover, it failed to demonstrate good cause as to all information on the computers. *See, e.g.*, *Reed*, 193 F.R.D. at 691 (declining to enter protective order that treated as sensitive all documents, rather than just the sensitive ones); *see also* Model Protective Order & Guidelines, Guideline No. 2.

any reason justifying an 'attorneys' eyes only' provision," and holding that, "[b]ecause [the movants] do not attempt to justify or further define the scope of this provision, the Court will enter the protective order with only one confidentiality tier"); *see also MGP Ingredients*, 245 F.R.D. at 501 (rejecting two-tiered protective order that prohibited party's in-house personnel and outside consultants from reviewing productions where movants "did not discuss in any meaningful detail how they would suffer the nature or degree of harm that would warrant forcing on [the other party] the far more cumbersome [two-tiered] discovery process that [the movants] propose"). Nor does the government have a justification for this provision. Dr. Tao and KU are not competitors, and Dr. Tao is not alleged to have misappropriated intellectual property. *See MGP Ingredients*, 245 F.R.D. at 501 (rejecting two-tiered protective order because movants "did not meet their burden of proving that the lack of a two-tiered protective order will allow disclosure to a competitive decision maker within [the other party] who will be virtually unable to compartmentalize the information and not use it to seek to gain an unfair competitive advantage"). Absent good cause, the provision must be rejected. *See id.*

In addition, the Court should reject the "Attorneys' Eyes Only" restriction because it would seriously prejudice the defense. Dr. Tao has limited resources to defend himself in this case, and his counsel must, of necessity, rely on him to review discovery. If Dr. Tao cannot review terabytes of discovery taken from his lab at KU, the defense may overlook important documents that are material to his defense in those productions. While Paragraph 7 would permit Dr. Tao's defense counsel to ask the government or Court for permission to show Dr. Tao documents from his lab computers, this provision is meaningless unless the defense reviews the productions in the first place, which it cannot afford to do. Moreover, given the highly technical nature of this material, counsel likely would not understand the materials or their significance

without the assistance of Dr. Tao. In short, while the government's need for Paragraph 7 to avoid causing KU injury is purely speculative, Dr. Tao's need to review key evidence in his criminal prosecution is not. He must be able to review the government's productions unimpeded by governmental or Court permissions.

Finally, as with the paragraphs discussed above, if the government had met its burden of demonstrating that the computers at issue contain sensitive information whose disclosure would seriously injure KU—which it plainly has not—Paragraph 7 would not be the least restrictive means of preventing harmful disclosures of that information. For example, KU could assist the government by designating which information from the computers, if any, is proprietary, and the government could designate that information as confidential. Dr. Tao would then be prohibited by the Model Protective Order from disclosing that information to third parties except as provided by the order, or from using the information other than in connection with his defense.

## CONCLUSION

Without any legal support or justification, the government's Proposed Order would impose unprecedented, unconstitutional, unnecessary, overbroad, and unduly burdensome restrictions on Dr. Tao while he tries to defend against the government's novel prosecution. The Court should therefore deny the government's Motion and reject its Proposed Order.

If the Court deems a protective order necessary in this case—which involves no sensitive national security, trade secret, or other information that requires heightened protections—the defense has no objection to entry of the Model Protective Order. That order is sufficient to protect third parties from serious injuries from disclosure of sensitive information and, unlike the Proposed Order, is no broader than necessary to achieve that aim.

Dated:  February 28, 2020                    Respectfully submitted,

                                             /s/ Thomas H. Johnson
                                             Thomas H. Johnson #13688
                                             Petefish, Immel, Hird, Johnson,
                                             Leibold & Sloan, LLP
                                             842 Louisiana
                                             Lawrence, KS 66044
                                             Tel: (785) 843-0450
                                             Fax: (785) 843-0407
                                             tjohnson@petefishlaw.com

                                             Peter Zeidenberg
                                             Michael F. Dearington
                                             Laura Zell
                                             ARENT FOX LLP
                                             1717 K Street, NW
                                             Washington, DC 20006
                                             Tel: (202) 857-6000
                                             Fax: (202) 857-6395
                                             Peter.Zeidenberg@arentfox.com
                                             Michael.Dearington@arentfox.com
                                             Laura.Zell@arentfox.com

                                             *Attorneys for Defendant Franklin Tao*