# UNITED STATES DISTRICT COURT

## District of Kansas

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                      Case No.  **19-20052-01-JAR**

FENG TAO,

        Defendant.

## GOVERNMENT'S RESPONSE TO MOTION FOR LEAVE TO ENTER APPEARANCE AND FILE *AMICUS* BRIEF
### (Doc. 86)

COMES NOW the United States of America, by and through Anthony W. Mattivi, Assistant United States Attorney for the District of Kansas, and Benjamin J. Hawk, Trial Attorney for the Counterintelligence and Export Control Section of the U.S. Department of Justice's National Security Division, and hereby requests the Court DENY the motion by several organizations and individuals to enter their appearances as *amici curiae* and to file a brief supporting a motion by the defendant to dismiss the Second Superseding Indictment.  (Doc. 86.)

## I.      INTRODUCTION

The defendant is charged with lying to and defrauding the U.S. government and his American employer, the University of Kansas ("KU"), to obtain federal grants and an annual

salary derived, in part, from those grants. While conducting federally funded research at KU, the defendant clandestinely obtained fulltime employment at Fuzhou University ("FZU"), a Chinese research institution associated with the Chinese government. At the same time, the defendant was accepted into the Chinese government's Chang Jiang Scholar Program at FZU, based on his research involving renewable energy, a core scientific field of strategic importance to the People's Republic of China ("PRC").  Through his association with the Chang Jiang Scholar Program and FZU, the defendant entered into an agreement with the Chinese government to further the PRC's major strategic needs, and he sought to make the PRC a world leader in the field of renewable energy.  In return, the defendant received an annual salary from FZU and substantial funding and support from the PRC.  Rather than disclose his concurrent Chinese employment and research efforts, as he was required to do – and risk losing his six-figure KU salary and access to hundreds of thousands of dollars in federal grant funds – the defendant instead schemed to conceal that information from KU and the U.S. government for his own personal gain and to advance the interests of the PRC.

The defendant has filed two motions to dismiss the indictment (Docs. 82 & 83), one of which (Doc. 82) is the subject of a motion by several *amici* seeking leave to enter appearances and to file an *amicus curiae* brief.   The bases for defendant's motion to dismiss in Doc. 82 are that the indictment fails to state an offense and that venue is not proper in the District of Kansas. The defendant, tellingly, does not raise a claim of selective prosecution, because such an argument is meritless here.  The claims by *amici*, however, appear to focus specifically on selective prosecution.  They claim, incorrectly, that the government is targeting Chinese American scientists and that what they allege to be the government's racial and political

motivations are harming Chinese and Asian Americans.[1]  Because the brief that the *amici* request leave to file raises legal issues not argued by the defendant, it is not helpful to the Court's resolution of the issues presented by the defendant, and it otherwise does not satisfy any relevant standard for filing such a brief in this case.  The Court should therefore deny the motion from *amici* for leave to enter the case, and the Court should reject the request to file an *amicus curiae* brief.

## II.      ARGUMENT AND AUTHORITIES

The purpose of an *amicus* brief is to provide useful assistance in determining issues before the Court.[2]  The government respectfully submits the issues raised by *amici* are different from – and legally unrelated to – the issues raised by the defendant in his motion to dismiss (Doc. 82.)   Further, *amici*, understandably, are not sufficiently familiar with the facts underlying this prosecution to offer any fresh perspective or useful assistance to the Court in deciding the specific legal arguments that the defendant raises in his motion.  The *amicus* brief therefore is inappropriate for consideration in this case.

The defendant's pleadings in the case have consistently misrepresented the state of the evidence and the allegations set forth in the Second Superseding Indictment, and the *amici* only

---

[1] *Amici* also claim this case "seems to flow from recommendations in the Senate Staff Report, released in 2020, which called for seven federal agencies, including the FBI, and universities to increase efforts against the alleged threat to the U.S. research enterprise posed by Chinese researchers and Chinese talent recruitment plans."  (Doc. 86-A at 19.)  *Amici* do not explain how a prosecution initiated in 2019 could "flow from" a report released in 2020.

[2] *See United States v. Yaroshenko*, 86 F.Supp.3d 289, 290-91 (S.D.N.Y. 2015) ("An *amicus curiae* proves true to its name as a 'friend of the court' when it offers a fresh perspective on an unsettled question of law that the actual parties to the litigation have not fully addressed. Here, however, Russia seeks to comment on matters that have already been decided or that are not truly in issue, and the Court sees no benefit in allowing it to do so.  For the foregoing reasons, Russia's application to file an *amicus* brief is hereby denied.").

compound those misrepresentations.  The defendant did not openly collaborate in scientific

research with a Chinese institution, as he claims.  Nor is he being improperly and illegally

targeted because of his race, as the *amici* claim.  Rather, the defendant clandestinely entered an

agreement with the government of China to further the PRC's major strategic needs and

interests, and he knowingly and intentionally hid that fact not only from the American university

that employed him but also from the U.S. government agencies that granted him hundreds of

thousands of dollars of funding for scientific research concerning a critical component of the

United States' renewable energy production.  It was the defendant's misrepresentations and fraud

that led to his prosecution, not his race (as alleged by *amici*) or overreaching by the government

(as alleged by the defendant).

     A.  *The China Initiative*

     The defendant's motion to dismiss (Doc. 82), asserts various bases for his argument that

the Court should dismiss the charges against him.  Extraneous to his legal claims, but

nevertheless included in his motion, is a lengthy but skewed explanation of the Department of

Justice's China Initiative, wrongly portraying the defendant as a victim of a sweeping dragnet.

*Amici* also complain about the China Initiative, inaccurately calling the defendant "a victim of

racial targeting."[3]  (Doc. 86-A, *Amicus* Brief, at 23.)  Because both the defendant and *amici*

discuss the China Initiative in their respective pleadings, the government provides the following

brief background on it.

---

[3] The attack on the Department's China Initiative and the inaccurate portrayal of the defendant as
a victim of it are perhaps the only overlap between the defendant's motion and the *amici's*
proposed brief.  However, those issues are irrelevant to the defendant's actual legal challenges to
the Second Superseding Indictment and the charges therein. The defendant's inclusion of such
extraneous information does not otherwise turn the *amici's* unhelpful brief into one that is useful
for the Court to justify its consideration.

The Department of Justice's China Initiative is a legitimate law enforcement effort that successfully and properly targets a documented national security threat about which Congress has expressed concern for decades.  For example, in 2000, Congress began requiring annual reports on the current and future military strategy of the People's Republic of China.  *See* National Defense Authorization Act for Fiscal Year 2000, Public Law 111-84.  Those annual reports have concluded that, in order to support its military modernization, "China uses a variety of methods to acquire foreign military and dual-technologies, including cyber theft, targeted foreign direct investment, and exploitation of the access of private Chinese nationals to such technologies."[4]

While the Justice Department has long recognized the serious threat that the Chinese government poses to American national and economic security, in November 2018, the Department announced the China Initiative, which is designed to focus the Department's resources in confronting that threat. Both the defendant and *amici* are espousing – while also contributing to – a false narrative entirely unrelated to the legal issues before the Court that the U.S. government is targeting Chinese people, when in reality the U.S. government is responding to a national security threat posed by the government of China.  As alleged in the Second Superseding Indictment, the defendant lied to and defrauded the U.S. government and an American university to benefit himself and the PRC and its strategic needs, and the evidence at trial will prove that he violated 18 U.S.C. §§ 1343  (Wire Fraud) and 1001 (False Statements).  How the Department otherwise prioritizes its resources to protect our nation's security has no

---

[4] 2017 DOD Annual Report to Congress: Military and Security Developments Involving the People's Republic of China 2017 at ii.  Available at http://dod.defense.gov/portals/1/Documents/pubs/2017_China_Military _Power_Report.pdf.

bearing on the issues currently before the Court or on the defendant's guilt or innocence.

B.  *Amici's Claims*

The *amici* raise entirely different issues than the defendant, and their factual arguments are irrelevant to whether the Second Superseding Indictment is legally sufficient.  Separate and in addition to the defendant's claim that the charges should be dismissed for lack of venue and failure to state a claim, *amici* incorrectly argue that the government is targeting Chinese Americans based on their ethnicity rather than on suspected criminal activity.  (Doc. 86-A at 10.) Of course, because the evidence in this case is not yet a matter of public record, the only knowledge *amici* have concerning the defendant's alleged criminal activity in this case is from the Second Superseding Indictment and various news accounts (including defense counsel's claim to the Wall Street Journal, as reported on November 17, 2019, that the defendant "rejected the teaching position at Fuzhou and verbally told Fuzhou that [he was rejecting it]," which the evidence at trial will show is not accurate).[5]  Similarly, *amici* claim that the government's "overzealous and broad prosecutions" criminalize matters that previously had been considered collaboration or open research.  (Doc. 86-A at 17.)  This argument by *amici* expands upon – but nevertheless is different from – the defendant's claim that the government is attempting to criminalize a garden-variety employment dispute.  (Doc. 82 at 3.)

To be sure, there is nothing about the allegations set forth in the Second Superseding Indictment to suggest, however remotely, that the defendant is charged with engaging in open and honest collaborative research.  Nor does this case involve a simple employment dispute with

---

[5] Viswanatha, A.and O'Keefe, K., 2019. U.S. Struggles to Stem Chinese Efforts to Recruit Scientists. *Wall Street Journal*, [online] Available at: <https://www.wsj.com/articles/u-s-struggles-to-crack-down-on-chinese-efforts-to-recruit-scientists-11574010542?mod=searchresults&page=1&pos=1> [Accessed 7 September 2020].

no federal interest.  Rather, it involves a defendant who conducted U.S. government-funded energy research while intentionally concealing from his U.S. employer and the U.S. granting agencies the fact that he conducted research for the Chinese government at a Chinese research institution.  Respectfully, *amici* are wholly unqualified to assist the Court here, because they are not privy to the evidence or all of the facts in this case.  More importantly, *amici* do not satisfy any of the relevant legal requirements for entering an appearance in the case.

      C.  *Legal Standard*

A district court has broad discretion to appoint *amici curiae*.  *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982).  Defined as a "friend of the court," an *amicus curiae* does not represent the parties, but participates solely for the benefit of the court.  *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003).

Although neither the Supreme Court nor the Tenth Circuit has set forth a standard for the filing of *amicus* briefs at the district court level (the standard for filing of such briefs at the circuit court level will be addressed below), the Seventh Circuit, for example, has described three instances in which leave to file an *amicus* brief should be granted: (1) "when a party is not represented competently or is not represented at all[;]" (2) "when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case)[;]" or (3) "when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997); *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970) ("a district court lacking joint consent of the parties should go slow in accepting . . . an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special

interest that justifies his having a say, or unless the court feels that existing counsel may need supplementary assistance"); *see also Sonoma Falls Developers, LLC v. Nevada Gold & Casinos*, Inc., 272 F. Supp. 2d 919, 925 (N.D. Cal. 2003).

None of the criteria set forth by the Seventh Circuit are met here.  First, the defendant in this case is competently represented.  Second, while the *amici* appear to broadly challenge the Department of Justice's China Initiative, they otherwise have not demonstrated an interest in any other pending case that could be affected by the Court's ruling on the defendant's motion to dismiss for failure to state an offense and lack of venue (Doc. 82).  Finally, the *amici* do not possess any unique information or perspective relevant to the legal issues currently before the Court.  As discussed above, *amici* have no information about the evidence proving the criminal conduct at issue here, other than what's been alleged in the Second Superseding Indictment; any unique information or perspective they may offer pertains only to matters extraneous to the issues raised by the defendant's motion.  Importantly, the *amici* do not raise the same issues as the defendant, nor do their claims support his legal arguments.  As discussed in detail below, that flaw alone is fatal to the request to appear as *amici*.

Counsel for the *amici* has provided the government with two examples of district court cases within the Tenth Circuit in which *amicus* briefs were accepted.  The government respectfully submits each of these cases is easily distinguishable from the situation presented here.

In *United States v. Bader*, 2009 WL 2219258 (D. Colo. 2009), the issue before the court was whether the defendant used human growth hormone, which he imported, as an ingredient in creating a "compounded" drug.  The court there understandably allowed an *amicus* brief by the International Academy of Compounding Pharmacists and the American Pharmacists'

Association.  Additionally, in *United States v. Rivas-Lopez*, 988 F. Supp. 1424 (D. Utah 1997), the district court considered whether 18 U.S.C. § 3501 applied to what it characterized as "off-*Miranda*" statements made to a trooper during the course of a traffic stop.  There the court allowed the Safe Streets Coalition, represented by Paul G. Cassell (at the time, a professor at the Quinney College of Law at the University of Utah and noted criminal law expert), to submit an *amicus* brief addressing the applicability of § 3501 in that context.  In neither of those cases were *amicus* opining on the basis for, and validity of, a prosecution about which they knew nothing except for the public allegations set forth in the indictment and biased, self-interested comments by the defendant's counsel in newspaper articles.

Counsel for the *amici* also provided the government with *United States v. Alkaabi*, 223 F.Supp.2d 583 (D.N.J. 2002).  While the court appointed *amicus* counsel in that New Jersey district court case, even it is significantly and meaningfully different from this situation.

*Alkaabi* was a wire fraud case that involved a scheme to deprive the Educational Testing Service, a New Jersey firm that designed and administered the Test of English as a Foreign Language (TOEFL), of its interest in maintaining the integrity of the testing process.  The question before the court was whether the scheme constituted a deprivation of property within the meaning of the mail fraud statute.  Because a large percentage of the defendants in similar cases were citizens of Saudi Arabia, the court allowed the Royal Embassy of Saudi Arabia to enter an appearance and file an *amicus curiae* brief. Although some citizens of the People's Republic of China are presently charged in the United States with fraud offenses involving academic institutions and federally funded research, like the defendant in this case, *Alkaabi* recognized restrictions on *amicus* briefs.  *Amici* here fail to overcome those restrictions.

The court in *Alkaabi* noted that there is no rule governing appearance of an *amicus curiae*

in the United States District Courts, so it looked for guidance from the Third Circuit's application of Fed. R. App. P. 29, which governs the appearance of *amici* in federal appellate courts.  Under Rule 29, *amicus* status is typically granted when:  (1) the *amicus* has a "special interest" in the particular case; (2) the *amicus'* interest is not represented completely or at all in the case; (3) the proffered information is timely and useful; and (4) the *amicus* is not partial to a particular outcome in the case.  *Alkaabi*, 223 F.Supp.2d at 592 (citing *Sciotto v. Marple Newton Sch. Dist.*, 70 F.Supp.2d 553, 554 (E.D. Pa. 1999)).  The court noted that a partisan stance has not necessarily been found to be a bar to appearing as an *amicus*, and it recognized both the heightened scrutiny faced by Saudi citizens and the resulting interest the Royal Embassy therefore had in the case. As such, it granted the Embassy's motion to participate in the case.

But this case presents a different set of circumstances. Assuming, *arguendo*, that *amici* have a special interest in this case and are not partial to a particular outcome, *amici* nonetheless cannot meet the second prong of the Rule 29 test.  The defendant is competently represented as to all issues before the Court.  More importantly, they cannot meet the third prong of the test. The information and arguments offered by the *amici*, as pointed out above, are not only untimely and not useful to resolving the defendant's motion to dismiss, they are completely irrelevant to the issues he raises before the Court.  This alone defeats the Rule 29 test, and it flows directly into the next flaw in *amici's* request.

The *Alkaabi* court recognized that an *amicus* "cannot initiate, create, extend, or enlarge issues."  *Alkaabi* at 593, fn. 19, citing *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D.Pa. 1995) and *Wyatt By and Through Rawlins v. Hanan*, 868 F.Supp. 1356, 1358-59 (M.D.Ala. 1994).  Here, the bases for defendant's motion to dismiss are:  (a) that the indictment fails to state an offense, and (b) that venue is not proper in the District of Kansas.  The claims by

*amici*, however appear to focus on selective prosecution and the perceived targeting of Chinese American scientists.  Because *amici's* brief raises issues not argued by the defendant, their brief is not permissible under the test described in *Alkaabi*.

In sum, respectfully, *amici* have not provided the Court with any reasonably and objectively accurate authority under which their entry is appropriate in this case.  No standard for acceptance of an *amicus* brief justifies consideration of the *amici's* brief in this case.  The Court should therefore DENY the motion.

## III.    CONCLUSION

In conclusion, whether to appoint *amicus curiae* and allow filing of a brief is entirely within the Court's broad discretion.  In this case, however, *amici* do not qualify as "friends of the court" because, respectfully, they offer nothing that would assist the Court's determination of the legal issues before it.  The *amici* therefore do not meet any relevant legal criteria for appointment of an *amicus curiae*.  The Court should reject the motion by *amici* for leave to enter an appearance and file a brief in support of the defendant's request to dismiss the charges.

Respectfully submitted,

STEPHEN R. McALLISTER
UNITED STATES ATTORNEY

*s/* **AW Mattivi**

ANTHONY W. MATTIVI
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Telephone: (785) 295-2850
Anthony.Mattivi@usdoj.gov

11

*s/* ***Benjamin J. Hawk***

BENJAMIN J. HAWK
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 233-0986
Benjamin.Hawk@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on the __9th__ day of September, 2020, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.  I also certify that I provided a copy by email to counsel of record in the case, as well as counsel for putative *amicus curiae*.

*AW Mattivi*

Anthony W. Mattivi