# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 19-20052-JAR-JPO |
| | ) | |
| FENG TAO | ) | |
| a/k/a "Franklin Tao," | ) | |
| | ) | |
| Defendant. | ) | |

---

## REPLY IN FURTHER SUPPORT OF DR. FRANKLIN TAO'S
## MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT
## DUE TO THE GOVERNMENT'S FALSE, MISLEADING, AND PREJUDICIAL
## <u>STATEMENTS TO THE GRAND JURY</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      The Opposition confirms that the government substantially influenced the grand
        jury's decision to indict Dr. Tao .............................................................................. 2

        A.      The government fails to present any evidence to rebut Dr. Tao's assertions
                or support its arguments ................................................................................. 2

        B.      The government does not deny that the FBI Case Agent concealed and
                misrepresented the Conflict of Interest form disclosure criteria in order to
                obtain the Indictment ...................................................................................... 4

        C.      The government admits that the FBI Case Agent falsely told the grand jury
                that Dr. Tao's Department Chair had rejected his buyout of KU teaching
                responsibilities in the spring of 2019 ............................................................ 7

        D.      The government's justifications for its irrelevant and highly prejudicial
                statements to the grand jury about Dr. Tao are unpersuasive ...................... 10

        E.      The government's argument that the Court should not review in camera
                other statements the prosecutor made to the grand jury is unavailing ......... 13

        CONCLUSION ............................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*F.D.I.C. v. P.C.F*,
  No. 1:13-CV-00801-JFK, 2014 WL 960923 (N.D. Ga. Mar. 11, 2014) ..................................3

*Gunn v. Stevens Sec. & Training Servs., Inc.*,
  No. 17 C 6314, 2018 WL 1737518 (N.D. Ill. Apr. 11, 2018)...................................................3

*Llano Funding Grp., LLC v. Gallo*,
  No. 9:14-CV-81562, 2015 WL 12791482 (S.D. Fla. June 16, 2015)......................................3

*McNeal v. Martin*,
  No. 4:05CV312 CDP, 2005 WL 3079026 (E.D. Mo. Nov. 16, 2005) .....................................3

*Russell v. Shelter Ins. Co.*,
  No. CIV-11-0816-HE, 2011 WL 5877464 (W.D. Okla. Nov. 23, 2011) .................................3

*Talamante v. Romero*,
  620 F.2d 784 (10th Cir. 1980) ................................................................................................8

*United States v. Brown*,
  5:19-CR-40081-HLT, 2020 WL 4347258 (D. Kan. July 29, 2020) .........................................7

*United States v. Cooper*,
  396 F. Supp. 3d 992 (D. Kan. 2019)........................................................................................9

*United States v. Jackson*,
  863 F. Supp. 1449 (D. Kan. 1994)........................................................................................14

*United States v. Leeper*,
  No. 06-CR-58A, 2006 WL 1455485 (W.D.N.Y. May 22, 2006).....................................11, 12

**Statutes**

D. Kan. Rule 56.1(d).................................................................................................................3

Fed. R. Evid. 201 .....................................................................................................................5

**Other Authorities**

Mark Motivans, *Federal Justice Statistics 2010-Statistical Tables*, Dep't of
  Justice, https://www.bjs.gov/content/pub/pdf/fjs10st.pdf ......................................................14

## INTRODUCTION

Dr. Tao's Motion to Dismiss the Second Superseding Indictment (the "Indictment") demonstrated that the FBI Case Agent substantially influenced the grand jury's decision to indict Dr. Tao by making materially false, misleading, and prejudicial statements to the grand jury. *See* Mot. to Dismiss, ECF No. 83 (hereafter, "G.J. Br."). The FBI Case Agent made two critical misrepresentations: first, he misrepresented the disclosure criteria in the Conflict of Interest form; and second, he falsely testified that Dr. Tao's Department Chair rejected his buyout request in order manufacture a reportable conflict of interest. Taken together, these two misrepresentations left the grand jury with the false impression that Dr. Tao had KU teaching responsibilities in the spring of 2019 that would clearly have been impacted—and thus reportable on his Conflict of Interest form—if he had job responsibilities in China at the same time. The prejudice was compounded when the prosecutor needlessly told the grand jury that Dr. Tao had already been indicted by a prior grand jury, thereby predisposing the new grand jury to reach the same conclusion, and when the prosecutor and FBI Case Agent baselessly implied to the grand jury that Dr. Tao was a spy for China, despite the absence of any such charge or evidence.

The government's Opposition fails to rebut these contentions, and confirms that dismissal is warranted. The government's claim that the FBI Case Agent's testimony was truthful rings hollow as its Opposition fails to rebut *any* of the evidence to the contrary. *See* Gov't Opp., ECF No. 89 (hereafter, "G.J. Opp."). Despite the centrality of the Conflict of Interest forms to the Indictment, the government does not dispute that it never introduced the Conflict of Interest forms to this grand jury or the two prior grand juries, and it provides no explanation for this omission. Instead, it claims that the FBI Case Agent's misleading account of the disclosure criteria in the forms was not significant because Dr. Tao allegedly violated separate KU personnel policies that were posted online. The government also admits that Dr. Tao's

1

Department Chair approved his buyout request, and does not dispute that the FBI Case Agent and the prosecutor *knew* this fact when the FBI Case Agent testified to the contrary. It also argues that it is "proper" for a prosecutor to predispose a new grand jury to indict by stating that a prior grand jury already made that determination, and that it is "proper" for the government to paint a defendant as a spy, even when he is not charged with espionage and the government lacks *any* evidence to support such accusations.

The government's arguments do not withstand close scrutiny, and instead confirm that the Court should dismiss the Indictment due to the government's improper influence over the grand jury's decision to indict. Given the government's repeated misconduct before three successive grand juries, moreover, and the many incurable legal flaws in all three of its indictments over the past thirteen months (discussed in Dr. Tao's parallel motion to dismiss), the Court's dismissal should be with prejudice.

## ARGUMENT

**I.    The Opposition confirms that the government substantially influenced the grand jury's decision to indict Dr. Tao.**

The government's Opposition either admits or fails to rebut all of the facts in Dr. Tao's motion demonstrating that the FBI Case Agent deliberately made false, misleading, and prejudicial statements to the grand jury in order to secure the Indictment. This leaves only the question whether the government's misconduct substantially influenced the grand jury's decision, or at least gives rise to grave doubt that it did. The Court can easily answer both questions in the affirmative.

### A.    The government fails to present *any* evidence to rebut Dr. Tao's assertions or support its arguments.

As a threshold matter, the government's Opposition fails to present any evidence to rebut Dr. Tao's factual showing. Dr. Tao's opening brief included eight exhibits as evidence that

unequivocally demonstrate: (1) the FBI Case Agent knowingly testified in a false or misleading way to the grand jury about the Conflict of Interest form disclosure criteria, (2) the FBI Case Agent knowingly falsely testified to the grand jury that Dr. Tao's Department Chair had rejected his buyout request, and (3) the FBI Case Agent and prosecutor deliberately made several inappropriate and prejudicial remarks in order to inflame the grand jury against Dr. Tao. *See* G.J. Br. Exs. A–H.[1] In response, the government makes numerous naked factual assertions splayed across 21 pages of its brief, *see* G.J. Opp. at 2–13, 18–24, but statements in briefs are not evidence that a court can consider. *See, e.g.*, *Llano Funding Grp., LLC v. Gallo*, No. 9:14-CV-81562, 2015 WL 12791482, at *1 (S.D. Fla. June 16, 2015) (observing that "[a]n unsworn statement in a brief is not evidence"); *accord F.D.I.C. v. P.C.F*, No. 1:13-CV-00801-JFK, 2014 WL 960923, at *5 (N.D. Ga. Mar. 11, 2014); *Russell v. Shelter Ins. Co.*, No. CIV-11-0816-HE, 2011 WL 5877464, at *2 (W.D. Okla. Nov. 23, 2011); *Gunn v. Stevens Sec. & Training Servs., Inc.*, No. 17 C 6314, 2018 WL 1737518, at *2 (N.D. Ill. Apr. 11, 2018); *McNeal v. Martin*, No. 4:05CV312 CDP, 2005 WL 3079026, at *3 (E.D. Mo. Nov. 16, 2005).[2] The Court should therefore disregard all of the factual representations in the government's Opposition, and treat Dr. Tao's evidentiary showing as unrebutted.

---

[1] The government also has not challenged the authenticity of Dr. Tao's exhibits, which the government itself produced to the defense.

[2] *Cf.* D. Kan. Rule 56.1(d) (procedure for presenting facts to the Court in civil context, which requires an "affidavit, declaration under penalty of perjury, and/or relevant portions of depositions" and other evidentiary materials," and requires that "[a]ffidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible evidence").

**B.      The government does not deny that the FBI Case Agent concealed and misrepresented the Conflict of Interest form disclosure criteria in order to obtain the Indictment.**

Dr. Tao demonstrates in his opening brief that the FBI Case Agent's testimony left the grand jury with the false impression that the Conflict of Interest forms required Dr. Tao to disclose any outside position, when in fact the forms included specific disclosure criteria that Dr. Tao's alleged position at FZU did not trigger, such that his Conflict of Interest forms were accurate. *See* G.J. Mot. at 4–8, 15–16; *id.* Exs. A, B. The government fails to rebut this contention.

First, the government proffers no explanation why it deliberately concealed the Conflict of Interest forms and their disclosure criteria from all three grand juries, which were tasked with deciding whether the forms were false. By concealing the Conflict of Interest forms, and having the sole witness testify in a misleading way about their disclosure criteria, the government was able to persuade the grand jury that the forms were false without letting the grand jury verify that the government's assertions were correct, much less decide that issue for itself. This tactic was no different than if the government sought an indictment in a perjury case by explaining why a statement was false, while withholding the statement itself, thereby denying the grand jury the ability to independently decide if the statement was actually false. In this way, the government substituted the FBI Case Agent's judgment for the grand jury's independent determination of whether the representations at issue were actually false. Given the centrality of these forms to the Indictment—indeed, they are the basis of the seven fraud charges and all but one of the false-statement charges—the only plausible explanation why the government neither introduced nor accurately quoted the Conflict of Interest forms to any of the three grand juries is because the forms do not support the charges.

Second, the government argues that the FBI Case Agent's misleading testimony about the disclosure criteria in the forms was proper because Dr. Tao purportedly violated separate online policy statements, which Dr. Tao allegedly certified he had understood and would comply with when he submitted the Conflict of Interest forms. *See* G.J. Opp. at 18, 19 & n.19 (accusing Dr. Tao of violating various online policies on KU's website that purportedly required various disclosures or approvals). This argument is meritless. Aside from the fact that the online policy statements are not properly before the Court,[3] and were also never shown to the grand jury, they are irrelevant to the question whether the FBI Case Agent misled the grand jury about the disclosure criteria in the Conflict of Interest forms. The Indictment charges Dr. Tao with fraud and false statements for failing to disclose an alleged position at FZU as required by the Conflict of Interest forms—not violating separate online policies or falsely certifying that he understood and complied with those policies. *See, e.g.*, Indictment ¶¶ 39(A), 39(E), 42, 44. In fact, the most relevant online policy cited by the government states that it is the disclosure criteria in the forms that governed what needed to be disclosed. *See* G.J. Opp. at 18 n.19 (citing https://policy.ku.edu/chancellor/individual-conflict-of-interest (stating that "Significant Financial Interests … shall all be reported in the manner required by the applicable campus reporting form," and includes only those interests that "exceed[] the monetary threshold amount set forth in the applicable campus reporting form and procedures").[4] The government cannot excuse its

---

[3] The government cites two websites in a footnote that purport to show online policy statements, *see* G.J. Opp. at 18 n.19, but the government does not attach the websites to its motion with a sworn affidavit authenticating them or even indicating when they were in effect. The government also does not request judicial notice of the websites, *see* Fed. R. Evid. 201, nor would such notice be appropriate given the websites' accuracy and authenticity issues.

[4] The government contends that Dr. Tao simply disagrees with the government's "theory" about what information must be disclosed in the Conflict of Interest forms. G.J. Opp. at 21. Not so. The Conflict of Interest forms state what information must be disclosed, including the use of specific, objective dollar thresholds for financial interests. These are facts, not theories.

misleading the grand jury about the disclosure criteria in the forms by now contending that Dr. Tao violated other online policies referenced in the Certification Statement of the forms.

Third, the government fails to meaningfully respond to Dr. Tao's argument that the false and misleading testimony substantially influenced the grand jury's decision to indict. Nor can it. If the government had shown the grand jury the disclosure criteria in the forms, the grand jury would have naturally sought to inquire if there was evidence that Dr. Tao's alleged FZU position met the disclosure criteria before it indicted him for failing to disclose the position. Yet the government does not dispute that it had no evidence that the alleged FZU position met the disclosure criteria in the forms. The government had no evidence that Dr. Tao received $5,000 or more in the preceding year from FZU,[5] or that his position at FZU constituted a reportable Time Commitment by making him unable to handle his KU responsibilities. That the alleged FZU position was not a reportable Time Commitment would have been even more obvious if the FBI Case Agent had responded truthfully when asked by a grand juror about Dr. Tao's KU job responsibilities in the spring of 2019; instead, the FBI Case Agent falsely denied that Dr. Tao's Department Chair approved Dr. Tao's buyout of his responsibilities in the spring of 2019, thus creating the false impression that there was a reportable conflict of interest.

The FBI Case Agent's deliberately false and misleading testimony therefore caused the grand jury to indict Dr. Tao when it would not have done so if it knew the truth about what information needed to be disclosed in the forms. Accordingly, this misconduct caused Dr. Tao significant prejudice because it "substantially influenced the grand jury's decision to indict," or

---

[5] The government asserts, without citing any evidence, that Dr. Tao had an unsigned contract to work at FZU that would have entitled him to $80,000 a year. G.J. Opp. at 11. But it does not assert that Dr. Tao received any money from FZU, let alone $5,000 or more, in a year preceding his submission of either of the two Conflict of Interest forms, which would have been required to demonstrate a reportable Significant Financial Interest. *See* G.J. Br. Ex. A at 4, Ex. B at 4.

at least gave rise to "grave doubt that the decision to indict was free from the substantial influence of such" misconduct. *United States v. Brown*, 5:19-CR-40081-HLT, 2020 WL 4347258, at *3 (D. Kan. July 29, 2020).

> **C.    The government admits that the FBI Case Agent falsely told the grand jury that Dr. Tao's Department Chair had rejected his buyout of KU teaching responsibilities in the spring of 2019.**

Dr. Tao's opening brief also demonstrates that the FBI Case Agent, at the prosecutor's urging, reversed his testimony and told the third grand jury that Dr. Tao's Department Chair had rejected Dr. Tao's request to buyout his spring 2019 teaching responsibilities, even though the FBI Case Agent and the prosecutor both *knew* that this testimony was *false*. G.J. Br. at 8–10, 16. This testimony led the grand jury to falsely conclude that Dr. Tao's alleged position at FZU conflicted with his teaching responsibilities at KU in the spring of 2019, since he could not have taught classes at both universities at the same time. *Id.*

The government's brief acknowledges that the FBI Case Agent's statement to the grand jury was false. Dr. Tao's opening brief quoted the FBI Case Agent's testimony that KU "did not grant [Dr. Tao's buyout request] from the department chair," G.J. Br. at 9 (quoting G.J. Br. Ex. E at 22–23), while attaching an email then in the possession of the FBI Case Agent and prosecutor in which the Department Chair stated that *he did approve the buyout request*, *see id.* Ex. F. Lest there were any doubt, Dr. Tao also attached an interview memorandum, and interview notes, showing that the Department Chair had stated *to the FBI Case Agent* just a few months earlier that he believed the buyout was successful. *See id.* Exs. G, H.[6] Confronted with this evidence, the

---

[6] Contrary to the government's argument, Dr. Tao did not present a "single piece of evidence selectively presented to the Court." G.J. Opp. at 21 (citing G.J. Br. Ex. F). He presented three exhibits, consisting of an email, an interview memorandum, and interview notes, all of which showed that the FBI Case Agent lied to the grand jury. Tellingly, the government does *not*

government acknowledges, as it must, that "the defendant received conditional approval from his department chair for a course buyout," G.J. Br. at 22, contradicting the FBI Case Agent's sworn testimony. And the government does *not deny* that both the FBI Case Agent and prosecutor *knew* this fact at the time of the false testimony.[7]

Despite this acknowledgement, the government simultaneously contends that the FBI Case Agent's testimony, although demonstrably false, was "entirely consistent with the facts." G.J. Opp. at 23. Without citing any evidence, the government nakedly asserts that, after the Department Chair approved Dr. Tao's buyout request, Dr. Tao did not complete an administrative step that the government contends meant that the buyout was, technically, "unapproved." *Id.* As a threshold matter, the Court should disregard this factual assertion since the government fails to support it with any evidence. In any event, the assertion—even if it were true—does not support the government's argument. The Department Chair reaffirmed to the FBI Case Agent as late as January 2020 that he had approved the buyout, notwithstanding any alleged administrative issues. *See* G.J. Br. Ex. G. The alleged administrative problem is also a discrete factual issue from the one the FBI Case Agent lied about, with different implications. While the grand jury almost certainly would not have indicted Dr. Tao if it had learned that the Department

---

present a "single piece of evidence" to rebut this showing, and it admits the fact that Dr. Tao's evidence was meant to prove.

[7] The government cites *Talamante v. Romero*, 620 F.2d 784 (10th Cir. 1980), to argue that even if the FBI Case Agent perjured himself here, that would not render the Indictment infirm because Dr. Tao can cross-examine the FBI Case Agent at trial. But *Talamante* is inapposite and does not support the government's argument. There, the defendant petitioned for post-conviction relief because the parties had learned at trial that a government witness perjured himself before the grand jury. The court upheld the state court's denial of habeas corpus relief because the prosecution *was unaware* that the witness had perjured himself, and because the grand jury likely would have indicted without the perjured testimony. Here, in contrast, the FBI Case Agent and prosecutor knew the testimony was false, and the grand jury most likely would not have indicted if the FBI Case Agent told the truth. Thus, the government's reliance on *Talamante* is misplaced.

Chair approved his buyout—such that he had no classes at KU in the spring of 2019—the grand jury's awareness of an alleged administrative problem would not have affected that calculus. Moreover, the government does not allege that Dr. Tao was even aware of any administrative problem concerning his buyout.[8]

There can be no question that the government's false and misleading testimony was deliberate, given that both the FBI Case Agent and prosecutor knew it was false, and that the prosecutor encouraged it.[9] There is also no question that this false testimony was material and influenced the grand jury's decision to indict. A grand juror, through his question, exposed a gaping hole in the government's case that contradicted the government's contention that Dr. Tao failed to disclose a conflict of interest and intended to fraudulently obtain salary. *See* G.J. Br. Ex. E at 24. Rather than testify truthfully and let the grand jury decide if there was still probable cause, the government chose to fill the hole with false statements, warranting dismissal of the resulting Indictment. *See, e.g.*, *United States v. Cooper*, 396 F. Supp. 3d 992, 993, 996–97 (D. Kan. 2019) (dismissing indictment where witness misrepresentation, uncorrected by prosecutor, went "directly to an element of [the charged crime]").

_____

[8] Had the grand jury been told of the government's allegation that Dr. Tao "indicated that he was fine with no summer salary for 2019 if it was necessary" to avoid administrative issues, G.J. Br. at 23, it would have been even less likely to indict him on a theory of intending to defraud KU of salary.

[9] The government contends that the prosecutor did not "encourage" the false testimony about whether the Department Chair had approved the buyout, and merely interjected to "clarify the agent's testimony in a complex and nuanced factual scenario." G.J. Br. at 23 n.21. This explanation strains credulity. The prosecutor had no need to "clarify" the FBI Case Agent's testimony, which was initially clear and correct. *See* G.J. Br. Ex. E at 22–23. The prosecutor's attempt to "clarify" that testimony is what led him to elicit testimony he knew was false, but deliberately chose not to "clarify" it. In any event, dismissal is appropriate because the FBI Case Agent and the prosecutor both knew the testimony was false, irrespective of whether the prosecutor encouraged it, or the FBI Case Agent volunteered it (and the prosecutor failed to correct the FBI Case Agent's false testimony).

**D.    The government's justifications for its irrelevant and highly prejudicial statements to the grand jury about Dr. Tao are unpersuasive.**

False and misleading testimony was not enough for the FBI Case Agent and prosecutor to guarantee an indictment. They also made irrelevant and highly prejudicial statements to the grand jury about Dr. Tao that were wholly inappropriate. As demonstrated in Dr. Tao's opening brief, the prosecutor needlessly informed the grand jury that Dr. Tao had previously been indicted, and the FBI Case Agent and prosecutor deliberately gave the grand jury the false impression that Dr. Tao was thought by the government to be a spy for China. G.J. Br. at 10–12, 16–17. The government's arguments that these remarks were "[c]orrect and [p]roper" are unpersuasive. G.J. Opp. at 24–27.

The government contends that it was proper for the prosecutor to inform the grand jury that a prior grand jury had already found probable cause to believe that Dr. Tao had committed crimes, despite that this predisposed the grand jury to indict based on the prior grand jury's determination. G.J. Opp. at 24. The government argues that it was entitled to report this information to the grand jury because the indictment was labeled "Second Superseding Indictment," and, according to the government, that meant that the entire grand jury already knew that Dr. Tao had previously been indicted. This explanation assumes without a basis, however, that all of the grand jurors were familiar with criminal procedure argot. If the government truly thought that the grand jury already knew from the title of the indictment that Dr. Tao had previously been indicted, the prosecutor would have had no reason to bring that information to the grand jury's attention. Moreover, even if some grand jurors had guessed that the Indictment's title carried such meaning, the prosecutor confirmed this conclusion and emphasized it to the entire grand jury, signaling that it was relevant to the determination and placing a firm thumb on the scale in favor of once again indicting.

10

In claiming that it was "proper" to inform the grand jury that a defendant was previously indicted, the government fails to escape the reasoning from *United States v. Leeper*, No. 06-CR-58A, 2006 WL 1455485, at *4 (W.D.N.Y. May 22, 2006). The government insists that *Leeper* is inapposite because the grand jury in that case was led to believe that its purpose was "to correct a technical error" in the past indictment. But the government overlooks that the court reached that conclusion in part by reasoning that the new grand jury was "most certainly predisposed to indict after hearing that a prior grand jury—upon hearing the same evidence—had found sufficient probable cause to indict." *Leeper*, 2006 WL 1455485, at *4. The court in *Leeper* further reasoned that, "[h]ad the prosecutor really intended for the [new] grand jury to reach its own independent determination without influence as to what another grand jury had done, there would have been no need to even mention the existence of an earlier indictment." *Id.* at *3. This reasoning applies with equal force here.[10] Moreover, this case presents several aggravating factors that were not present in *Leeper*. Here, unlike in *Leeper*, the prosecutor's inappropriate remarks were paired with false and misleading testimony about core facts that went to the elements of the charged offenses, as well as a false and misleading espionage accusation. In addition, while the prosecutor in *Leeper* at least instructed the grand jury that "the fact that some other grand jury heard this case should not play a part in your deliberation," and that the grand jury should make its "own determination," *Leeper*, 2006 WL 1455485, at *3, the prosecutor here provided no such

---

[10] The government states that "it is disappointing the defendant would so grievously misrepresent the holding of a case in order to attack the integrity of the prosecutor and agent." G.J. Opp. at 25. As an initial matter, only the prosecutor is responsible for the inappropriate statement, as the FBI Case Agent simply answered the question the prosecutor asked him. More important, Dr. Tao's opening brief did not misrepresent the holding in *Leeper*; it accurately quoted *Leeper*'s reasoning that a new grand jury would be "predisposed to indict" after hearing that a prior grand jury made the same determination. G.J. Br. at 16. The government does not dispute that *Leeper* stands for this proposition, just as Dr. Tao's opening brief stated, or point to any incorrect or misleading characterization of *Leeper* in Dr. Tao's brief.

instruction, leaving the grand jury with the impression that the last grand jury's determination was relevant and material to its decision. The prosecutor's remark here was also deliberate, as he had made substantially the same inappropriate remark to the second grand jury. *See* G.J. Br. Ex. D at 3.

The government's purported justification for leading the grand jury to conclude that Dr. Tao was a spy for China fares no better. G.J. Opp. at 25. Remarkably, the government argues that its statements were proper—rather than inadvertent or misunderstood—because it deems an alleged failure to disclose work for a Chinese university—which it describes as "clandestinely enter[ing] into an agreement with the government of China," *id.* G.J. at 25—to be espionage, just not "in the traditional or commonly understood sense," *id.* at 27. Not so. Agreeing to work at a foreign university is not espionage in *any sense* of the word. The corollary of this proposition is that an American professor who works at a Chinese university, but who fails to disclose having taught summer classes at KU—a state university that receives federal funds—could be properly labeled by China as an American spy. This is preposterous. The answer to the grand juror's question as to whether this was simply a case of "double-dipping" or espionage was clear: it was the former. But by steadfastly avoiding answering the question, the prosecutor implied that it was the latter. Clearly, the prosecutor *wanted* the grand jury to believe the case was about espionage, despite the complete lack of supporting evidence or charges.

In the same vein, the government argues that the seven paragraphs in its Indictment alleging that China recruits professors to steal intellectual property "have everything to do with the evidence presented against" Dr. Tao, G.J. Opp. at 26, even though the government has no evidence that Dr. Tao ever sought to steal or transfer intellectual property, and he was not

charged with any such offense.[11] The government claims that these allegations are relevant to Dr. Tao's "motive," but the allegations themselves relate only to the Chinese government's purported motives for recruiting professors, not Dr. Tao's motives. *Id.*[12]

The government's position that it was proper to accuse Dr. Tao of being a spy for China—uncharged, more serious crimes—reveals that the prosecutor deliberately presented this false impression to the grand jury, and belies any innocent explanation the government may proffer. It is clear from the government's brief that this testimony was designed to enflame the grand jury against Dr. Tao in order to secure an indictment.

      **E.**     **The government's argument that the Court should not review *in camera* other statements the prosecutor made to the grand jury is unavailing.**

Dr. Tao contends that, if the Court is not prepared to dismiss the Indictment in its entirety based on the existing record, it should order the government to provide unredacted versions of the three grand jury transcripts *ex parte* for *in camera* review, so the Court can determine if the government may have made other improper statements that further influenced the grand jury's decision to indict. *See* G.J. Br. at 12 n.5, 19.

The government's arguments to the contrary are meritless. G.J. Opp. at 27–28. The government contends that Dr. Tao has not shown a "particularized need" for the Court to review the statements because, according to the government, he has not shown any misconduct. To the

---

[11] Nor would such an accusation make sense. Dr. Tao has never worked with proprietary information at KU, and his job as a researcher is to develop and then publish all of his research for the world to see. Even his research under federal grants is all published online, and the government has not and cannot allege otherwise.

[12] The government finds it "telling" that Dr. Tao has not moved to strike paragraphs 16 to 21 of the Indictment, despite their irrelevant and prejudicial allegations about China and intellectual property theft that have nothing to do with this case (and for which no evidence was actually presented to the grand jury). G.J. Opp. at 26. To be clear, if the Court were to decline to dismiss any counts in this case, Dr. Tao reserves the right to move to strike these paragraphs.

contrary, however, and unlike in *United States v. Jackson*, 863 F. Supp. 1449 (D. Kan. 1994),

cited by the government, Dr. Tao has already demonstrated significant instances of misconduct

before three successive grand juries—involving false and misleading statements and prejudicial

and inflammatory remarks that have no basis in evidence. Thus, Dr. Tao is not merely seeking to

embark on a "fishing expedition," as the government suggests, except insofar as it does not know

what other improper statements the government may have made. G.J. Opp. at 27. But that is the

very purpose of having the Court review those statements.

The secrecy of the grand jury proceeding would largely be preserved, moreover, as only

the Court would be able to review the redacted portions of the transcripts, absent its

identification of other instances of possible misconduct that should be produced to the defense.

## CONCLUSION

The grand jury system places enormous trust in prosecutors to respect the grand jury's

independence. Outside the purview of defense attorneys and judges, the prosecutor is expected to

present its best evidence in a neutral fashion and let the grand jury make an independent

determination about whether there is probable cause to conclude that the defendant committed a

crime. Given this construct, the deck is already stacked heavily against the defendant. For

example, in 2010, only 11 federal grand juries across the entire country failed to return a true bill

against a defendant.[13]

Nevertheless, there are clear lines the prosecutor cannot cross in seeking an indictment.

The prosecutor *cannot* deliberately introduce false and misleading testimony or inflame the

grand jury against the defendant by making irrelevant and highly prejudicial statements, as the

---

[13] *See* Mark Motivans, *Federal Justice Statistics 2010-Statistical Tables* at Table 2.3, Dep't of Justice, https://www.bjs.gov/content/pub/pdf/fjs10st.pdf (last visited Sept. 16, 2020).

government did in this case, denuding the grand jury of its independence.

With the government's misconduct exposed, the Court must dismiss the Indictment, which was obtained in violation of Dr. Tao's constitutional right to an independent grand jury. Because the government has repeatedly and flagrantly committed grand jury misconduct in this case, moreover, and because the Indictment also fails to state an offense as demonstrated in Dr. Tao's parallel motion to dismiss, the Court's dismissal should be with prejudice.

Dated:  September 23, 2020                    Respectfully submitted,

                                              /s/ Thomas H. Johnson
                                              Thomas H. Johnson #13688
                                              Petefish, Immel, Hird, Johnson,
                                              Leibold & Sloan, LLP
                                              842 Louisiana
                                              Lawrence, KS 66044
                                              Tel: (785) 843-0450
                                              Fax: (785) 843-0407
                                              tjohnson@petefishlaw.com

                                              Peter Zeidenberg
                                              Michael F. Dearington
                                              Laura Zell
                                              ARENT FOX LLP
                                              1717 K Street, NW
                                              Washington, DC 20006
                                              Tel: (202) 857-6000
                                              Fax: (202) 857-6395
                                              Peter.Zeidenberg@arentfox.com
                                              Michael.Dearington@arentfox.com
                                              Laura.Zell@arentfox.com

                                              *Attorneys for Defendant Franklin Tao*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of September, 2020, I electronically filed the

foregoing Reply in Further Support of the Motion to Dismiss the Second Superseding Indictment

with the Clerk of the Court using the CM/ECF system.

/s/ Thomas H. Johnson
Thomas H. Johnson
