# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                      Case No.   <u>**19-20052-01-JAR**</u>

**FENG TAO,**

        **Defendant.**

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RULE 15 DEPOSITIONS
**(Doc. 111)**

COMES NOW the United States, by and through undersigned counsel, and hereby respectfully requests that the Court deny Defendant Franklin Tao's Motion for Rule 15 Depositions [Dkt. No. 111 (hereinafter "Def. Mot.")].[1] Defendant asks the Court to order remote depositions of four witnesses who are in China pursuant to Rule 15 of the Federal Rules of Criminal Procedure. He further asks the Court for leave to depose additional unidentified witnesses who are also in China before trial on October 25, 2021. As discussed herein, Defendant must obtain a letter rogatory and permission from the Chinese government to depose

---

[1] Defendant separately filed a Memorandum in Support of his motion. Dkt. No. 112 (hereinafter "Def. Mem."). Citations to Defendant's motion and memorandum refer to the footer page number.

witnesses who are in China, which he has declined to do. Moreover, he has failed to demonstrate that exceptional circumstances exist to warrant the exceptional relief he seeks, and countervailing considerations strongly weigh against granting Defendant's motion. If the Court grants Defendant's motion, the Government respectfully asks the Court to order reciprocal discovery and further requests leave from the Court to depose prospective rebuttal witnesses who are also in China.

## I. BACKGROUND

### A. Charges Against Defendant

On June 24, 2020, the Grand Jury returned a Second Superseding Indictment, charging Defendant with seven wire fraud counts, in violation of 18 U.S.C. § 1343, and three counts of making false statements, in violation of 18 U.S.C. § 1001. Dkt. No. 75 (hereinafter "SSI"). The charges stem from Defendant's scheme to defraud the U.S. government and the University of Kansas (KU) to obtain federal grant funds and a substantial salary by concealing his affiliation with a foreign university, his foreign research support, and various financial benefits.

### B. Defendant's Fraudulent Scheme

As alleged in the Second Superseding Indictment, Defendant was employed by KU for five years as a full-time professor and researcher. *See* SSI ¶ 3. During that time, Defendant applied for and received federal grants through KU to fund his research projects at KU. *See id.* ¶¶ 4, 9-15. Related to his employment and federally funded research, Defendant had a duty to disclose financial conflicts, conflicts of time, and other research support, and he was required to obtain approval prior to engaging in external professional activities. *See id.* ¶¶ 5-8, 10, 13, 15.

Between approximately July and December 2017, while employed by KU, Defendant applied for the Chang Jiang Scholar Program through Fuzhou University (FZU), a research

institution in China.[2] *See id.* ¶¶ 24-26. The Chang Jiang Scholar Program is a Chinese-government talent plan designed to attract talented researchers to Chinese universities to bolster China's scientific and technological knowledge and expertise. *See id.* ¶ 21. Participants in the Chang Jiang Scholar Program and similar talent plans draw a salary from their employing Chinese universities and receive other financial and social benefits. *See id.* ¶¶ 19, 21.

In approximately December 2017, China's Ministry of Education selected Defendant to serve as a Chang Jiang Distinguished Professor at FZU. *See id.* ¶ 26. Following that designation, in early 2018, Defendant negotiated an employment contract with FZU. *See id.* ¶ 28-29. Defendant officially commenced his five-year term of employment at FZU in approximately May 2018. *See id.* ¶¶ 29-30.

Between approximately May 2018 and December 2018, Defendant engaged in activities related to his work at FZU (such as recruiting post-doctoral students to work on his research team, applying for research funding from the Chinese government, and designing a laboratory and obtaining the necessary equipment for FZU). *See id.* ¶ 31. Moreover, as part of his work at FZU, he traveled to China at various times during that period. *See id.*

Also, around that time, as part of his fraudulent scheme, Defendant sought to buyout his teaching responsibilities at KU for the Spring 2019 semester (i.e., January to May 2019). *See id.* ¶ 39(C). In connection with his buyout request, Defendant submitted to KU a proposed two-year sub-award contract between FZU and KU. *See id.* Pursuant to the contract, FZU would have been obligated to pay Defendant to perform research for FZU using KU's facilities and equipment. The contract was never approved, however, and Defendant's buyout remained

---

[2] Because of the nature of China's political system, Chinese universities are functionally extensions of the Chinese government and the Chinese Communist Party. *See id.* ¶¶ 19, 27.

unfunded. Nonetheless, unbeknownst to KU and contrary to KU's clear directive to remain on campus, Defendant effectively moved to China to work for FZU on December 11, 2018, while remaining employed by KU. *See id.* ¶ 31. At all relevant times, Defendant concealed from KU and the U.S. government his affiliation with FZU, his participation in the Chang Jiang Scholar Program, his Chinese research support, his foreign income, and other benefits and conflicts of interest and time. *See id.* ¶ 36.

      C.      **Defendant's Rule 15 Motion**

During a status conference on March 22, 2021, Defendant's counsel notified the Court that Defendant intended to seek depositions of several prospective witnesses in China pursuant to Rule 15. The Court thereafter issued a scheduling order with motions due by April 30, 2021. Dkt. No. 108. On April 29, 2021, Defendant filed an unopposed motion to extend the filing deadline to May 14, 2021, citing the need to "gather further information material to [his] motion." Dkt. No. 109 at 2. According to Defendant, the "language barrier, time difference, and other [unspecified] factors" necessitated a two-week extension. *Id.* at 2-3. Counsel further informed the Court that "the additional time would allow [them] to further research the logistics of [any] depositions." *Id.* at 3. The Court granted Defendant's continuance and scheduled a hearing for July 23, 2021. Dkt. 110.

**II.**      **APPLICABLE LAW**

The law generally requires that "the testimony of witnesses must be taken in open court." Fed. R. Crim. P. 26. There are commonsense rationales for such a rule. Witnesses "must give an oath or affirmation to testify truthfully . . . [i]n a form designed to impress that duty on the witness's conscience." Fed. R. Evid. 603. The oath is "the strongest indicator of the reliability of a witness' testimony." *See United States v. Banki*, No. 10-CR-08, 2010 WL 1063453, at *2

4

(S.D.N.Y. Mar. 23, 2010) (denying motion for remote testimony). Taking the oath in open court before a federal judge and jury emphasizes the gravity of the witness's testimony and, importantly, the consequences for lying under oath. Moreover, opposing counsel is best positioned to challenge the witness's credibility through face-to-face confrontation, *see id.* at *3, and the jury is best able to assess the truthfulness and reliability of the witness's testimony in open court, *see United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993) (noting that the jury's ability to observe the demeanor of deposed witnesses is limited). For these reasons and others, "[d]epositions generally are disfavored in criminal cases." *Id*. at 1551.

Nonetheless, the law recognizes that depositions may be appropriate in "exceptional circumstances" to preserve a witness's testimony for trial. *See* Fed. R. Crim. P. 15. But the law also cautions that foreign depositions can be particularly fraught with issues. *Drogoul*, 1 F.3d at 1551 ("[B]ecause of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored."); *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) ("Foreign deposition testimony, because of the absence of a sanction for perjury, is suspect."). Such concerns are significantly magnified when, as Defendant proposes here, a witness testifies remotely. *See United States v. Buck*, 271 F. Supp. 3d 619, 624 (S.D.N.Y. 2017) (denying defendant's motion to allow remote testimony, in part, because the witnesses resided in Switzerland and were "immune from perjury charges").

### A. Rule 15 Depositions Generally

Rule 15 allows either party to move to depose a prospective witness to preserve the witness's testimony for trial. Fed. R. Crim. P. 15(a). "The court may grant the motion because of exceptional circumstances and in the interest of justice." *Id.* While "[t]he word 'may' indicates that the . . . court has broad discretion," "the words 'exceptional circumstances' signify that only

in extraordinary cases will depositions be compelled." *United States v. Gragg*, 145 F.3d 1334, 1998 WL 246019, at *5 (6th Cir. 1998) (table decision) (citing *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994)).

"The burden is on the moving party to establish circumstances justifying the taking of depositions." *Drogoul*, 1 F.3d at 1552. Specifically, the movant must show that (1) "the witness's testimony could provide substantial proof of a material fact in a felony prosecution," (2) "there is a substantial likelihood that the witness's attendance at trial cannot be obtained," and (3) "taking the deposition [is] necessary to prevent a failure of justice." *See United States v. Fuentes-Galindo*, 929 F.2d 1507, 1509 (10th Cir 1991); *see also* Fed. R. Crim. P. 15(c)(3) (describing "case-specific findings" required to order depositions outside the United States). "[A] showing of exceptional circumstances must be considerably more concrete and particularized than mere speculation." *United States v. Morrison*, 946 F.2d 484, 490 (7th Cir. 1991).

With respect to a witness's availability, the movant must demonstrate that a "good-faith effort [was made] to produce the person to testify at trial." *United States v. Sanford, Ltd.*, 860 F. Supp. 2d 1, 4 (D.D.C. 2012) "A witness who resides abroad and outside the reach of a court's subpoena power is not automatically 'unavailable' without a further showing that he or she will not testify in court." *United States v. Warren*, 713 F. Supp. 2d 1, 4 (D.D.C. 2010). "[S]pecific reasons" must be provided to establish unavailability. *United States v. Pham*, No. 12-CR-423 (AJN), 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2015). "[C]onclusory statements of unavailability are insufficient." *Id.*

Evidence is "material" for purposes of Rule 15 if it is "highly relevant to a central issue in the case." *Drogoul*, 1 F.3d at 1556. This requires "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant." *United States v. Kelley*, 36 F.3d 1118,

6

1125 (D.C. Cir. 1994); *see also United States v. Turner*, No. 13-CR-572-2, 2014 WL 4783002, at *2 (N.D. Ill. Sept. 23, 2014) (denying defendant's Rule 15 motion, in part, because defendant was too "vague about the substance of . . . [the] anticipated testimony"). While not necessarily required, "courts have sensibly indicated that affidavits or declarations from the prospective witnesses outlining the testimony that they are prepared to provide are preferred." *United States v. Jefferson*, 594 F. Supp. 2d 655, 668-69 (E.D. Va. 2009). Courts may rely on an attorney proffer, but, "at the very least, the proffer must alert the . . . court to the substance of the evidence that is at peril of being excluded." *United States v. Des Marteau*, 162 F.R.D. 364, 368 (M.D. Fla. 1995) (finding testimony was material based on statements made by defendant's counsel at hearing).

Courts must also "weigh the moving party's showing of materiality and unavailability against countervailing considerations . . . to ensure that . . . depositions [are approved] only in rare instances . . . [as] Rule [15] clearly intended." *United States v. Hajbeh*, 284 F. Supp. 2d 380, 383-84 (E.D. Va. 2003); *see also Fuentes-Galindo*, 929 F.2d at 1509 (explaining that the phrase "exceptional circumstances" was intended "to ensure that the trial court exercised its discretion in determining whether a deposition should be taken under the particular circumstances presented"); *United States v. Dermen*, No. 2:18-CR-00365-JNP-BCW, 2019 WL 3536615, at *2 (D. Utah Aug. 2, 2019) (explaining that "materiality must still be balanced against 'countervailing factors which would render the taking of the deposition unjust'"); *Jefferson*, 594 F. Supp. 2d at 665 (explaining that, while unavailability and materiality are "essential to the Rule 15 calculus," the analysis "does not necessarily end" there and courts should "carefully consider all the circumstances").

Such considerations include "the likelihood that the testimony will be admissible at trial

7

and whether a deposition would cause excessive delay." *Hajbeh*, 284 F. Supp. 2d at 383; *see also United States v. Ordonez*, 242 F. Supp. 3d 466, 473 (E.D. Va. 2017) ("Of course, to be material, testimony must be admissible."); *United States v. Jinian*, No. CR-09-1103-JSW-EDL, 2010 WL 3910138, at *4 (N.D. Cal. Oct. 5, 2010) ("[A]dmissibility is a factor that courts consider in determining whether to allow a Rule 15 deposition."). While Rule 15 distinguishes between preserving testimony and admitting it at trial, *see* Fed. R. Crim. P. 15(f), "[courts] need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial." *Drogoul*, 1 F.3d at 1555; *see also United States v. Alexander*, 782 F.3d 1251, 1257 (11th Cir. 2015) (concluding that district court did not abuse its discretion by refusing to allow defendant to depose witness outside the United States, where proposed testimony would have constituted inadmissible hearsay); *Warren*, 713 F. Supp. at 5 ("The Court need not allow depositions in order to preserve testimony where the question of admissibility is not a close one and the evidence at issue is unsupported conjecture that does not exculpate defendant.").

In addition to admissibility, courts should also consider the reliability and trustworthiness of the proposed deposition, particularly as it relates to the taking of the oath and the penalty for false testimony. *Compare United States v. Moalin*, No. 10-CR-4246-JM, 2012 WL 3637370, at *6 (S.D. Cal. Aug. 22, 2012) (concluding that defendant failed to show that "an oath in Somalia is subject to penalties of perjury and judicial process like those available in the United States" and that "this factor of reliability and trustworthiness of the proposed depositions strongly disfavors Rule 15 depositions in Somalia") *with United States v. Sapse*, No. 2:10–CR–0370–KJD– GWF, 2011 WL 1576898, at *3 (D. Nev. Apr. 26, 2011) (ordering a deposition in Ukraine "so long as the witness takes an oath to tell the truth and is informed of the potential penalty for

false testimony pursuant to the [Treaty on Mutual Assistance in Criminal Matters between the United States and Ukraine] and Ukrainian law").

### B. Rule 15 Depositions Should Comply with Foreign Law

When ruling on depositions outside of the United States, courts must also consider applicable treaties or conventions and the laws of the host country. "[Rule 15(e)] directs that depositions are to be taken in the manner provided in civil actions, and [Fed R. Civ. P. 28(b)(1)(B)] authorizes the taking of deposition in foreign countries 'pursuant to a letter rogatory.'" *United States v. Korogodsky*, 4 F. Supp. 2d 262, 265 (S.D.N.Y. 1998). "Letters rogatory are requests from courts in one country to the courts of another country requesting the performance of an act which, if done without the sanction of the foreign court, could constitute a violation of that country's sovereignty." U.S. Department of State, "Preparation of Letters Rogatory," https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html; *see also* 28 U.S.C. § 1781 (authorizing the State Department to send and receive letters rogatory). District "courts have inherent authority to issue letters rogatory." *United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 LAK, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014); *see also Warren*, 713 F. Supp. at 2 (noting that defendant requested letters rogatory as part of his Rule 15 motion, because the witnesses he sought to depose were foreign nationals beyond the court's jurisdiction).

Letters rogatory are required for defendants to depose witnesses in China. According to the State Department, "China does *not* permit attorneys to take depositions in China for use in foreign courts." U.S. Department of State, "Judicial Assistance Country Information for China," https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (emphasis in original). "[T]aking depositions, whether voluntary or compelled, and

9

obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority [i.e., the Ministry of Justice] under the Hague Evidence Convention." *Id.* Absent such approval, "[p]articipation in such [depositions] could result in the arrest, detention or deportation of the American attorneys and other participants." *Id.* The Government advised Defendant's counsel of this information and provided a link to the State Department's website on April 14, 2021. Nonetheless, Defendant has declined to seek a letter rogatory, and his motion is devoid of any reference to the requirement.[3]

### III. DISCUSSION

As discussed below, the Court should deny Defendant's motion to remotely depose the four prospective witnesses in China. Defendant has made no attempt to obtain the necessary approval from the Chinese government to take the depositions in China. Regardless, even if Defendant sought and obtained the requisite authority to depose the witnesses in China, their apparent testimony is contradicted by the evidence and the lack of an effective oath and opportunity for in-person cross-examination and observation would render such testimony utterly unreliable. Defendant does little to alleviate those concerns by offering only vague, conclusory assertions about the prospective testimony, which falls short of Rule 15's exceptional circumstances requirement.

#### A.   Defendant Must Obtain Approval from the Chinese Government

As a threshold matter, foreign depositions must comply with Rules 15, which, in this

---

[3] This same requirement applies to the Government, albeit through a different mechanism. To depose witnesses who are in China the Government must obtain approval from China's Ministry of Justice through the U.S.-China Mutual Legal Assistance Agreement (MLAA). *See* Agreement Between the Government of the United States of America and the Government of the People's Republic of China on Mutual Legal Assistance in Criminal Matters, China-U.S., June 19, 2000, T.I.A.S. No. 13,102.

case, requires a letter rogatory. Depositions should also comply with China's laws. The State Department cautions that failure to obtain approval from China's Ministry of Justice could result in a participant's arrest. Defendant acknowledges as much, noting that "Chinese law . . . generally prohibits witnesses from testifying in mainland China." *See id.* at 5 n.2. And yet, rather than address the obvious issues, he glosses over them in a passing footnote, relying on the conclusory representations of unidentified "attorneys in China." *Id.* Defendant essentially asks the Court to take the word of unknown individuals that witnesses can legally testify in China as long as the court reporter (who presumably would be administering an oath) is in Hong Kong. *Id.* But Defendant offers no explanation, let alone any factual or legal support, for how that proposal is permissible under Chinese law.

Regardless of where the parties and court reporter sit, the witnesses would still be testifying *in China* under oath in connection with criminal proceedings in the United States.[4] According to the State Department, in such situations, a letter rogatory is required to obtain approval from the Chinese government.[5] Defendant offers the Court no explanation for why he is exempt from that requirement.

### B. Countervailing Considerations Strongly Weigh Against Depositions

Assuming *arguendo* that Defendant obtains a letter rogatory or otherwise sufficiently demonstrates that Chinese law permits remote depositions of witnesses who are in China, the Court should nonetheless deny Defendant's motion. The witnesses' prospective testimony (based

---

[4] Defendant makes no mention of what oath the witnesses would take and under which laws, if any, it would be enforceable. The issue of the oath is important both in terms of the reliability of the witnesses' proposed testimony, as discussed below, and the legality of taking depositions of witnesses in China.

[5] As noted above, if the Government sought to depose witnesses in China, it would have to obtain similar approval. It is nonsensical that this requirement would apply to the Government but not Defendant in the same case.

on the very limited preview that Defendant has offered) is contradicted by the evidence and lacks any indicia of reliability. The witnesses would purportedly testify that Defendant "rejected a job offer from Fuzhou University" and "never entered into a contract with or worked as an employee at Fuzhou University." Def. Mem. at 1. Yet public reporting at the time of Defendant's hiring in 2018 and FZU's own website, in addition to other evidence, tell a very different story.

Prior to Defendant's arrest, screenshots were obtained of Chinese-language websites that identified Defendant as a Chang Jiang Distinguished Professor hired by FZU. For example, a news report dated June 12, 2018, described a public meeting on June 1st (shortly after Defendant officially commenced his employment at FZU) between Defendant and FZU's Chinese Communist Party Chairman, Chen Yongzheng.[6] Gov. Ex. A.[7] The article, which included a photograph of the two, identified Defendant as a Chang Jiang Distinguished Professor who had recently joined FZU. As another example, FZU's website also identified Defendant as a member of its faculty. Gov. Ex. B. The website further described Defendant's research at FZU and provided other information related to his employment. This article (along with others) and the references to Defendant on FZU's website were removed from the internet after Defendant's arrest. It is, therefore, unsurprising that FZU representatives are willing to further disavow Defendant's employment given the charges in this case.

Additional evidence calls into serious question the truthfulness of the prospective testimony that Defendant was never employed by FZU. The following are but a few examples:

---

[6] It is the Government's understanding that this individual holds a position at FZU that is senior to the position of the prospective defense witness, Bingwen Shi.

[7] The attached exhibits are mostly in Chinese. Translations are offered to assist the Court; while some are verbatim, others are draft summaries and machine translations. The exhibits are also redacted, in part, to comply with the protective order issued in this case.

- Defendant maintained in his home a leather-bound official certificate of appointment at FZU as a Chang Jiang Distinguished Professor, which China's Ministry of Education issued to him in May 2018. Gov. Ex. C.

- Defendant represented himself as an employee of FZU in 2018 and 2019 when he applied to the National Natural Science Foundation of China (NSFC) for grants to fund his projects at FZU. As one of the earliest examples, on a March 2018 application, Defendant repeatedly identified himself as an FZU employee and Chang Jiang Distinguished Professor who was receiving subsidies from the Ministry of Education. Gov. Ex. D.[8] He further identified Yu Tang as another FZU employee and collaborator on the project, in addition to a third individual who also worked for Defendant at both KU and FZU. *Id.*

- Defendant recruited post-doctoral students ("postdocs") to join his research team at FZU. For example, on September 27, 2018, Defendant wrote to a prospective hire: "Are you interested in working as a postdoc at my group at Fuzhou University (also opportunity in USA)? . . . The salary is in the range of Y200K-240k [approximately $31,000 to $37,000 USD]." Gov. Ex. E. As another example, Defendant wrote to a prospective hire on February 10, 2019: "I supervise some postdocs in the group at Fuzhou University. If you are interested, you can be hired there and work as post doc under my supervision. The salary is about YMB240,000 [approximately $37,000]." *Id*.

- On October 15, 2018, Defendant wrote to a representative of a scientific publication: "I got a joint appointment at Fuzhou University (China) other than the current one. The package of this appointment is to have two supporting staff members . . . to help me on daily office work at Fuzhou." Gov. Ex. F.

Given concerns about the reliability of the prospective witnesses' testimony, the Court should also consider the fact that China does not have an extradition treaty with the United States. *See* 18 U.S.C. § 3181 (2019) (listing bilateral extradition treaties). As a result, the witnesses would "essentially be free of any penalty of perjury, calling into [further] doubt the reliability of [their] testimony." *Buck*, 271 F. Supp. 3d at 624. "Without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital. Thus, the strongest indicator of the reliability of [the witnesses'] testimony – the oath – is effectively absent here." *Banki*, 2010 WL 1063453, at *2. The lack of an effective oath – coupled with the lack of face-to-face

---

[8] Give the length of this document, which is almost entirely in Chinese, the Government has only attached a summary translation.

13

confrontation – would render the prospective witnesses' already suspicious testimony utterly unreliable.[9] The minimal details Defendant chose to share about the prospective testimony does not alleviate these concerns.

### C. Defendant Has Not Established that the Testimony is Material

Defendant, who carries the burden, has failed to establish that the testimony at issue would provide substantial proof of a material fact. He repeatedly makes the same conclusory assertion throughout his motion that the witnesses have "direct personal knowledge" that he "never worked at or for Fuzhou University." *See* Def. Mem. at 1, 3, 4, 11, 12, 13. But he provides little, if any, specific information about the actual substance and basis of each witness's prospective testimony. *See* Def. Mem. at 3-4. Based on the vague, unsubstantiated details contained in Defendant's motion, it is unclear whether some or all of the testimony would even be admissible at trial to warrant the extraordinary step of taking depositions.

Defendant identifies two individuals, Guoqing Chen and Ling-Jun Du, who purportedly work at FZU in the university's human resources department. Def. Mem. at 3. According to Defendant, Chen was "involved in an effort on behalf of Fuzhou University to hire" him and would testify that he "declined an offer to work . . . at Fuzhou University in 2018." But Defendant fails to provide the substance of Chen's actual testimony. Nor does he specify the basis of Chen's supposed knowledge that he declined FZU's offer. Tellingly, he does not even identify the date when he purportedly declined FZU's offer (only that it was in 2018). And he provides absolutely no insight into Du's actual testimony. Similarly, Defendant provides no information about the substance of Bingwen Shi's testimony. Def. Mem. at 4. Defendant's vague

---

[9] Adding to the reliability issues, it is unclear how Defendant intends to verify the identities of the witnesses, particularly where the court reporter would be outside of China.

assertions about the prospective witnesses' "personal knowledge" that he "never accepted a position . . . in 2018" is far from sufficient and leaves the Court to speculate as to the substance and admissibility of their testimony.

Defendant offers only slightly more information about Yu Tang's prospective testimony, but it still falls short of Rule 15's exceptional circumstances requirement. *See* Def. Mem. at 4. According to Defendant, Tang is a chemistry professor at FZU and is familiar with the other chemistry professors.[10] Apparently, Tang would testify that Defendant was not a chemistry professor at FZU between February and August 2019. But Tang's testimony is suspect. The evidence at trial will show that Defendant recruited Tang to work at FZU as part of his research team. Given the reliability concerns outlined above, Defendant's limited proffer is insufficient to show materiality.

Perhaps the paucity of information in Defendant's motion is a consequence of the issues he described in his request for an extension of his filing deadline. *See* Dkt. 109. But if that is the case, then Defendant's motion is truly speculative. As Defendant acknowledges, Rule 15 does not authorize pre-trial discovery. Def. Mem. at 5. Because Defendant is asking the Court to preserve testimony through Rule 15, he should be able to describe the substance of that testimony in some detail, especially given how he proclaims that the testimony "will fully and finally exonerate" him, Def. Mem. at 13.

Based on the current state of the record, Defendant has not met his burden, and the Court should deny his motion. While Defendant concludes that the prospective witnesses will confirm

---

[10] Defendant also states that Tang would testify that Defendant worked at KU between 2017 and 2019. But that testimony would not be material, at least not to Defendant's theory of defense. It is undisputed that Defendant worked at KU between 2017 and 2019.

his innocence, his motion provides no real substance to support that conclusion. It is also impossible to tell from the few details he shares whether some or all of the testimony would be admissible at trial to warrant preserving it through depositions. Moreover, as discussed above, there are reliability concerns and reasons for the witnesses to disavow Defendant's affiliation with FZU. Those concerns and Rule 15's materiality requirement are best addressed through affidavits from the witnesses, which Defendant has declined to produce. *See Jefferson*, 594 F. Supp. 2d at 668-69 (E.D. Va. 2009) (noting that affidavits, while not required, are often preferred).

### D. Defendant Has Not Adequately Addressed Each Witnesses' Unavailability

The Government agrees that, for purposes of taking depositions, unavailability is established if the Court finds that the witnesses are in China, beyond the Court's subpoena power, and are unlikely to appear for trial. But Defendant must provide the Court with the information necessary to make such a finding with respect to each witness. Defendant's motion is lacking. Rather than address each witness separately, Defendant represents that they collectively indicated that they are unwilling to travel to the United States for trial in October. Def. Mem. at 4, 7. He further speculates that it is "unsurprising [that they are unwilling to travel], especially during a worldwide pandemic," and suggests that the witnesses may have to take time off from their jobs and may need to quarantine.[11] If true, however, that information should come from each witness, not Defendant's counsel.

---

[11] The Government recognizes that the pandemic has generally complicated international travel. But Defendant's motion does not indicate that the pandemic is the actual reason for each witness's refusal to testify at trial.

### E. Reciprocal Discovery

The Government has repeatedly requested reciprocal discovery pursuant to Rules 16 and 26.2 of the Federal Rules of Criminal Procedure, to include copies of all statements made by the prospective witnesses. With one exception – a brief email that Defendant attributed to an unidentified witness[12] – he has not produced any discovery as of the date of this filing. Defendant's counsel has represented to the Government that Defendant does not intend to introduce any exhibits through the prospective witnesses, and so, reciprocal discovery may be limited. Nonetheless, if the Court grants Defendant's motion, the Government respectfully asks the Court to order Defendant to produce all reciprocal discovery in connection with Defendant's proposed depositions.

### F. Leave for Government to File Rule 15 Motions

Finally, if the Court grants Defendant's motion to depose the prospective witnesses, the Government respectfully asks for leave from the Court to file its own Rule 15 motion to depose prospective rebuttal witnesses. Given the strength of the evidence, the reliability issues outlined above, and other considerations, including China's history of not complying with most MLAA requests, the Government was not planning to seek Rule 15 depositions of potential witnesses in China. However, if Defendant is permitted to selectively depose four witnesses employed by FZU,[13] the Government would seek permission to depose others, including FZU's Chinese Communist Party Chairman, Chen Yongzheng, who publicly met with Defendant in June 2018

---

[12] Defendant's counsel first alerted the Government in February 2021 to a single unidentified prospective witness who purportedly works for FZU. Since that time, counsel repeatedly refused to prove the identities of any prospective defense witnesses in China. The Government only learned the names of the four witnesses from Defendant's Rule 15 motion.

[13] While Defendant may be free to call, email, or meet witnesses in China, the Government must submit a request through the U.S.-China MLAA to interview witnesses in China.

and who outranks the prospective defense witnesses at FZU.

## IV. CONCLUSION

For the reasons set forth above, the Court should deny Defendant's motion. If the Court grants Defendant's motion, the Government respectfully asks the Court to order reciprocal discovery with respect to the depositions; the Government further seeks leave from the Court to file its own Rule 15 motion to depose prospective rebuttal witnesses.

Respectfully submitted,

*/s/ Benjamin Hawk*
Benjamin J. Hawk
Adam P. Barry
Trial Attorneys
National Security Division
U.S. Department of Justice

*/s/ Christopher Oakey*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of June, 2021, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Benjamin Hawk*
Benjamin J. Hawk
