# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      v.                         Case No.   **19-20052-01-JAR**

**FENG TAO,**

      **Defendant.**

## GOVERNMENT'S MOTION TO STRIKE

COMES NOW the United States, by and through undersigned counsel, and hereby respectfully requests that the Court strike from the record Defendant Feng ("Franklin") Tao's untimely Motion for *Franks* Hearing and to Suppress Evidence (Doc. 127).

The defense filed its suppression motion on August 23, 2021, without leave from the Court, more than a year after the pre-trial motions deadline and less than two months before trial. While the defense claims that "good cause" exists, its reasons are contrived and hollow. As set forth below, the defense has possessed all relevant discovery since at least the June 29, 2020, status conference when the Court set the pre-trial motions deadline. The "new information" cited by the defense was simply the government's confirmation, in response to the defense's questions, that the defense had—and has had for quite some time—all relevant discovery. Thus, absent good cause, the defendant has waived his right to file his untimely motion to suppress.

Moreover, if the defense felt good cause existed and it needed additional time to prepare

a motion to suppress, the proper remedy would have been a request for an extension of the pre-trial motions deadline. Instead, the defense filed its surprise motion after the Court's August 17, 2021 status conference. At this stage, the Court should not consider extending the pre-trial motions deadline, because there is no "excusable neglect" for the delay. Rather, the timing of the motion appears to have been tactical, intended to create a strategic advantage before trial and the motions *in limine* deadline.

## I.   FACTUAL SUMMARY AND BACKGROUND

### A.   The Defense's Untimely Motion to Dismiss

The defense's delayed suppression motion bears remarkable similarity to its premature motion to dismiss. The latter was filed approximately two years ago on November 19, 2019, prior to any scheduling order (Doc. 30).

Both untimely motions focused extensively on the anonymous tipster. The motion to dismiss alleged that:

> The government's investigation into Dr. Tao grew out of fabricated allegations by a disgruntled, unpaid visiting scholar at KU, who, after failing to extort Dr. Tao for $300,000, later admitted to the FBI that she hacked into Dr. Tao's email account to fish for 'evidence' she could provide to the FBI and then, using phony aliases, fabricated complaints to both KU and the FBI regarding Dr. Tao.

Similarly, the motion to suppress alleges that:

> The investigation of Dr. Franklin Tao began two years ago when a former international visiting scholar . . . at the University of Kansas . . . tried to extort Dr. Tao for hundreds of thousands of dollars. When he refused to pay, she created fake email addresses, impersonated KU researchers who worked in Dr. Tao's lab, and fed lies to the FBI and KU, claiming that Dr. Tao was a Chinese spy who stole intellectual property and secretly worked at a second university in China.

### B.     Government's Relevant Discovery Productions

The government produced all relevant discovery that forms the basis of the defense's untimely motion to suppress, prior to the June 29, 2020 status conference when the Court set the pre-trial motions deadline. For example, in October 2019, the government produced the FBI reports documenting interviews of the tipster on July 9, 2019, and July 23, 2019. Also in October 2019, the government produced the email dated July 9, 2019, from the tipster to the FBI—the same email that is described in detail in both untimely motions—and the recording of the July 23, 2019 interview.

Additionally, by May 2020, the government had produced all emails from the tipster to the FBI. An email exchange between the government and the defense underscores that point. On June 8, 2020, the defense wrote: "Can you please let us know whether the government has produced to the defense all communications between the government and [the tipster]." The government immediately responded: "With the exception of a recent email from the FBI to [the tipster], all communications between [the tipster] and the government have previously been disclosed. The agents sent an email to [the tipster] a little over a week ago. Although [the tipster] hasn't responded, [we will provide that to you] this evening."

### C.     August 14, 2020 Pre-Trial Motions Deadlines

The defense disputes the pre-trial motions deadline, going so far as to file a notice on August 27, 2021, seeking to clarify the record and insinuating that the government had misled the Court (Doc. 134). The defense wrongly claims that pre-trial motions, including motions to suppress, were due by May 14, 2021. But the record is clear: that deadline pertained to the defense's Rule 15 motion. The defense's own filing requesting an extension of the Rule 15 motions deadline belies their current interpretation.

The pre-trial motions deadline was August 14, 2020, more than a year ago. On June 29, 2020, the Court held a status conference. The government represented that discovery was essentially complete and the parties were ready for a motions schedule. The Court then asked the defense their views on a reasonable motions deadline. The defense requested six weeks to file their motions, noting that they expected extensive motions practice. On August 14, 2020, the defense filed two motions to dismiss, which the Court denied. Despite having the ability to do so, the defense declined to file a motion to suppress at that time.

Subsequently, at a status conference on March 22, 2021, the defense raised with the Court for the first time the prospect of deposing witnesses in China pursuant to Rule 15 of the Federal Rules of Criminal Procedure. In response, the Court set April 30, 2021, as the deadline for any Rule 15 motions.[1] On April 29, 2021, after conferring with the government, the defense filed an unopposed motion to extend the deadline to file its Rule 15 motion to May 14, 2021 (Doc. 109). The defense's motion included the following observation: "In light of the defense's intention to file a Rule 15 motion, the Court entered the following briefing schedule and deadlines, as reflected in a March 23 scheduling order (ECF No. 108)."[2]

### D.     The Defense's August 16, 2021 Questions

On August 16, 2021, the defense asked the government two noteworthy questions about

---

[1] The parties indicated that they were ready for trial at the hearing, and the Court scheduled trial for October 25, 2021, and set the motions *in limine* deadline for September 17, 2021.

[2] The parties' communications further illustrate that the April 30/May 14 deadline applied to the defense's Rule 15 motion. For example, on March 29, 2021, the government wrote to the defense: "We think it would be useful for us to confer about the depositions prior to the motions deadline to see if there are any points of agreement." And, on May 6, 2021, the government wrote: "It is also our understanding that the May 14th deadline pertains to your Rule 15 motion, while motions in limine are due September 17th."

discovery. First, the defense noted that "on or about 10/23/2019" the government produced the FBI's report of its July 9, 2019 interview with the tipster but stated that it "ha[d]n't seen the notes." The defendant asked whether "the government has produced notes from" that interview. Second, the defense asked about the basis for the second footnote in "Special Agent Lampe's July 11, 2019 search warrant affidavit," which states, in part, that the tipster "later told agents that [the tipster] obtained the unsigned contract by accessing Tao's email account, with Tao's permission and at Tao's direction." The defense further explained: "We're having trouble finding evidence in the discovery that supports that assertion." Both questions directly related to the defense's motion to suppress.

On August 18, 2021, the parties exchanged emails about the defense's questions. The government asked why the defense asked its question about the July 11, 2019 search warrant. Rather than mention its forthcoming untimely suppression motion, the defense responded: "[W]e're having trouble finding a basis for Special Agent Lampe's statement in the discovery. We're concerned that we either haven't received the discovery that supports the statement, or we have received it and have somehow overlooked it, and are trying to confirm." On August 19, 2021, the government confirmed that it had produced all discovery and that there were no notes from the July 9, 2020 interview to produce.

E.  **The Court's August 17, 2021 Status Conference**

On August 17, 2021, the Court held a status conference with the parties. Inexplicably, the defense failed to raise with the Court its forthcoming untimely motion to suppress. Nor did the defense seek the Court's leave to file its untimely motion or provide the government with reasonable notice of its intent to file an untimely motion. Instead, the defense informed the government on Friday, August 20, 2021, that it planned to file its motion on Monday, August 23,

5

2021, approximately fourteen days before the September 8, 2021 status conference.[3]

## II.  ARGUMENT

The timing of the defense's motion to suppress—on the eve of trial more than a year after the pre-trial motions deadline—was purely tactical. And it achieved its intended result: the motion has required the government to focus on litigating *Franks* allegations while preparing for trial. Moreover, for unknown reasons, the defense declined to seek an extension of the pre-trial motions deadline. Instead, the defense filed its surprise motion soon after the most recent status conference. In a brief, unsupported footnote in its suppression motion, the defense claims that "good cause" exists for the Court to consider the motion. The defense, however, failed to articulate any legitimate basis for the timing of its motion. Accordingly, as discussed below, the defendant has waived his right to file a motion to suppress, and the Court should strike it as untimely.

### A.  The Defense Has Not Shown Good Cause

"Under Rule 12 of the Federal Rules of Criminal Procedure, a motion to suppress must be raised prior to trial or by the deadline established by the district court." *United States v. Sweat*, 573 F. App'x 292, 295 (4th Cir. 2014). "A defendant waives the right to file a suppression motion if he fails to file the motion prior to the deadline set by the district court, unless he can establish good cause for the waiver." *Id.*; *see also United States v. Bowline*, 917 F.3d 1227, 1230 (10th Cir. 2019) ("[Rule 12] clearly provides only one circumstance in which an untimely motion can be considered—when the movant 'shows good cause.'"). "[A]ppellate courts . . . give

---

[3] The filing date does not appear to be a coincidence. The defense informed the Courtroom Deputy that it believed the government was required to respond to its motion within fourteen days pursuant to the local rules.

6

deference to trial court decisions denying untimely motions to suppress." *United States v. Erikson*, 676 F.2d 408, 410 n.3 (10th Cir. 1982).

The Supreme Court has explained that, to demonstrate good cause under Rule 12, the moving party must show both (i) the cause for its failure to raise the claim, objection, or defense on time; and (ii) the prejudice that it would suffer from not being able to raise the claim, objection, or defense. *Davis v. United States*, 411 U.S. 233, 243 (1973) (upholding the district court's decision to deny relief from a Rule 12 waiver where the defendant failed to establish good cause to excuse his untimely motion and the prejudice that would result from not litigating his motion); *see also* See Fed. R. Crim. P. 12, Advisory Committee Note to 2014 Amendments ("The Supreme Court and lower federal courts have interpreted the 'good cause' standard under Rule 12(e) to require both (1) 'cause' for the failure to raise the claim on time, and (2) 'prejudice' resulting from the error.").

When determining whether good cause exists, the Tenth Circuit has focused on three primary concerns:

> (i) the late filing's effects on the trial court—both in terms of the trial court's ability to manage the case and its ability to retain the credibility of its deadlines in future cases; (ii) the late filing's effects on the United States—both in terms of preparing for trial in this case and scheduling its other cases; and (iii) the prejudice that the defendant may suffer if he or she cannot file the motion—i.e., the importance of the motion to the defendant's case and constitutional rights.

*United States v. Gonzalez*, 81 F. Supp. 3d 1212, 1225 (D.N.M. 2015). As another district court observed: "It is not difficult to conclude that, despite the significant prejudice that a defendant experiences by not being able to litigate a suppression motion, filing such a motion on the eve of trial . . . so significantly upends the trial court's docket, and the United States' schedule and trial strategy, that the balance of these factors weighed against finding good cause." *Id.*

Additionally, a claim that the court should consider an untimely motion in the "interests of justice" does not, by itself, establish good cause. *See United States v. Suggs*, 703 F. App'x 425, 427 (7th Cir. 2017) (noting that "counsel . . . did not try to justify the delay, instead merely asserting that he believed 'the motion to be meritorious and in the interests of justice'"). Nor does an "attorney's mistaken belief that he could file the motion whenever he wanted (thereby ignoring the court's express order of a specific motion deadline date)" establish "justifiable cause." *United States v.* Johnson, 844 F. App'x 838, 840-41 (6th Cir. 2021) (finding defendant did not establish good cause where motion to suppress was filed 15 days after the court's motion deadline).

Here, the defense filed a motion to suppress more than a year after the pre-trial motions deadline and without leave from the Court. In a footnote, the defense offered three manufactured excuses to show "good cause." Each quickly evaporates upon closer inspection.

First, according to the defense, it "learned new information from the government this month about key events detailed in this motion, including the lack of support for a material statement in the July 11, 2019, affidavit." The "new information" cited by the defense was the government's response to the defense's August 16, 2021 discovery questions. The government simply confirmed for the defense that it had all discovery relevant to its motion to suppress—the same discovery that it has had in its possession for well over a year.

Second, the defense claims that it "was only able to ferret out the full extent of government misconduct . . . once the government provided all of its discovery . . . in a database-searchable format . . . [on] May 13, 2021." The defense is referring to the government's suggestion—agreed to by the defense— to reproduce (*i.e.*, produce for a *second* time) certain

discovery with Bates numbering for the convenience of the parties.[4] As a courtesy, the government, on its own initiative, reproduced the bates-numbered discovery in a "load file." Of course, the defense had the same discovery in other formats for more than a year,[5] and, as the defense is aware, the government on numerous occasions has—and remains willing to—answer the defense's questions to the best of its ability.

Third, the defense argues that "[t]he development of facts for this motion, without access to witnesses at the FBI and KU, involved a painstaking review and analysis of the evidence." Again, the defense has had this discovery for a substantial period, and the government has answered various discovery-related (and factual) questions during that time.

Thus, the defense has failed to show "good cause." Moreover, as explained below, the timing of the defense's motion upends both the Court's docket and the government's schedule and trial strategy, which weighs against a finding of good cause. Accordingly, the Court should strike the defense's motion to suppress as untimely.

### B. The Defense Has Not Shown Excusable Neglect

Rule 45(b)(1) of the Federal Rules of Criminal Procedure provides that "the court on its own may extend the time, or for good cause may do so on a party's motion made, after the time expires if the party failed to act because of excusable neglect." Here, the defense did not file a motion with the Court to extend the pre-trial motions deadline, which would have been the appropriate remedy if the defense needed more time to prepare its motion. The Court also should not interpret the "good cause" footnote in the defense's suppression motion to be a request for an

---

[4] The reproduction did not include search warrant returns, which were produced in their original form.

[5] In fact, 15 of the 41 exhibits attached to the motion to suppress are not Bates-stamped, suggesting that the defense was able to identify those exhibits from the initial productions.

extension. Nonetheless, even if the defense asked to extend the deadline, there is no "excusable neglect" for the delay. Thus, the Court should not consider extending the motions deadline.

Courts consider four factors when determining whether a defendant has shown "excusable neglect": (1) the danger of prejudice to the government, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *United States v. Holliday*, No. CRIM.A. 12-20141-09, 2013 WL 6498984, at *3 (D. Kan. Dec. 11, 2013). (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). All four factors noted above weigh in favor of granting the government's motion to strike.

First, at this late stage of the proceedings, the timing of the defense's motion clearly prejudices the government. *See Holliday*, 2013 WL 6498984, at *3 ("Trial is only nine weeks away and the Government would be prejudiced by having to review defendant Holliday's motion to suppress at this late stage of the case, during the weeks leading up to the jury trial."). Trial is less than two months away. During this critical preparation period, the government has spent time drafting this motion to strike and is preparing its response to the motion to suppress. Moreover, the government's motions and trial strategy have been impacted by the defense's last-minute surprise motion. The defense seeks to suppress evidence that forms a significant part of the government's case-in-chief, and much of that evidence will likely be litigated through motions *in limine*, which are currently due on September 17, 2021.

Second, the length of delay is significant. The pre-trial motions deadline was August 14, 2020. Nonetheless, the defense waited more than a year to raise factual issues related to two

10

search warrants. Such delay is inexcusable, especially given the October 25, 2021, trial date.[6] *See id.* at *4 ("While [two months] may not seem like a significant delay by itself, this case is set for a multiple-defendant jury trial only 9 weeks away, making the impact of the delay significant and prejudicial to the Government.").

Third, the cause of delay was entirely within the control of the defense. As discussed above, the defense has had the relevant discovery for more than a year and failed to file a motion to suppress before the applicable deadline of August 14, 2020. The defense also declined to seek an extension of the deadline or any form of relief after the deadline.

Finally, the Court should consider whether the defense acted in good faith. Here, the defense filed a surprise motion raising factual issues related to two search warrants on the eve of trial. The purpose seems clear: to obtain a strategic advantage. *Id.* at *4 (noting that bad faith includes deliberately delaying the filing of a motion so as to obtain a tactical or strategic advantage in the case). Whether the pre-trial motions deadline was August 14, 2020, or May 14, 2021, it had passed. The parties are preparing for trial that is less than two months away. Despite knowing that the motion would be untimely and that it would impact motions *in limine* and trial, the defense chose not to raise it with the Court at the August 17th status conference or otherwise seek leave from the Court to file the motion or extend the motions deadline.

### III.    CONCLUSION

In sum, the Court should strike Defendant's motion as untimely. The defendant waived his right to file his suppression motion and has failed to demonstrate "good cause" and "excusable neglect." The defense had ample opportunity to file motions to suppress but instead

---

[6] The same holds true even if the May 14, 2021 deadline somehow also applied to motions to suppress.

decided to wait until the last minute after the motions deadline when trial preparation was under way.

               Respectfully submitted,

               */s/ Benjamin Hawk*
               Benjamin J. Hawk
               Adam P. Barry
               Trial Attorneys
               National Security Division
               U.S. Department of Justice

               */s/ Christopher Oakley*
               D. Christopher Oakley
               Assistant United States Attorney
               United States Attorney's Office for the
               District of Kansas

## CERTIFICATE OF SERVICE

I hereby certify that on the September 7, 2021, I caused the foregoing motion to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
