UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>       Plaintiff, )<br>  )<br>  v. )<br>  )<br>FENG TAO )<br>    a/k/a "Franklin Tao," )<br>  )<br>       Defendant. ) | Case No. 19-20052-JAR-JPO |

**DR. TAO'S OPPOSITION TO GOVERNMENT'S MOTION TO STRIKE
HIS MOTION FOR *FRANKS* HEARING AND TO SUPPRESS EVIDENCE**

**INTRODUCTION**

The Court should deny the government's Motion to Strike ("MTS") because Dr. Tao had "good cause" to file the *Franks* Motion after the August 14, 2020, pre-trial motions deadline.

There was ample good cause to file the *Franks* Motion in August 2021 because that is when the defense discovered the majority of the government's misrepresentations in the two affidavits at issue and that the misrepresentations were knowingly false, aided by newly searchable documents. And despite touting an early "open file" discovery policy, the government has only recently produced most of the documents to be suppressed, and just two weeks ago produced a *Brady* document that establishes that material misrepresentations in the affidavits were *knowingly* false. The government's claim that it will be prejudiced by the Court's consideration of the *Franks* Motion because it will distract from trial preparation is entitled to no weight in balancing the equities. The government has had more than ***two years*** to prepare for trial, and the defense would agree to a continuance if the government finds it necessary.

Accordingly, Dr. Tao had good cause under Rule 12(c)(3) to file his *Franks* Motion. The Court should not sacrifice Dr. Tao's rights, and justice, for the sake of expediency.

1

# ARGUMENT

## I. DR. TAO HAD GOOD CAUSE UNDER RULE 12 TO FILE HIS *FRANKS* MOTION AFTER THE PRE-TRIAL MOTIONS DEADLINE.

### A. "Good Cause" requires cause for the untimeliness of a motion, as well as prejudice to the movant if the Court declines to review the motion.

"If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Good cause requires: (1) cause for the untimely filing, and (2) that the movant would suffer prejudice if the Court does not consider the motion. *See United States v. Bowline*, 917 F.3d 1227, 1234, 1238 (10th Cir. 2019); MTS at 7 (citing two-part standard for "good cause"). This "flexible" standard "requires consideration of all interests in the particular case." *Bowline*, 917 F.3d at 1235 (internal quotation marks omitted).[1]

Courts also consider the interests of justice in deciding whether good cause exists, especially when "liberty is at stake, and a finding of guilt or innocence in th[e] case will profoundly affect the rest of [the defendant's] life." *United States v. Gonzalez*, 81 F. Supp. 3d 1212, 1227 (D.N.M. 2015). Good cause can also exist if the defendant's counsel are at fault for the untimely filing "in order to avoid penalizing the [defendant]." *United States v. Hall*, 565 F.2d 917, 920 (5th Cir. 1978). Notably, the good cause standard "does not require a district court to consider the prejudice that accepting an untimely motion may cause the United States." *Gonzalez*, 81 F. Supp. 3d at 1223; *see also Bowline*, 917 F.3d at 1234 (discussing two-part *Davis* standard and not mentioning prejudice to the government as a factor).

---

[1] The government claims that Dr. Tao "waived" his motion, citing an unpublished Fourth Circuit case, MTS at 6 (quoting *United States v. Sweat*, 573 F. App'x 292, 295 (4th Cir. 2014)), but Rule 12 abandoned this language in 2014 due to "confusion about the meaning and consequences of the word waiver." *Bowline*, 917 F.3d at 1234.

2

**B.      Dr. Tao had cause to file the *Franks* Motion after the pre-trial motions deadline for three reasons.**

**1.      Given hundreds of thousands of unsearchable documents, and the complexities of the case, the defense only ferreted out the full extent of government misconduct in August 2021 during trial preparation.**

A quintessential justification to file a late motion is not discovering the grounds for the motion until after the pre-trial motions deadline. *See, e.g.*, *United States v. Scott*, 607 F. App'x 191, 200 (3d Cir. 2015) (good cause where defense obtained and discovered evidence related to motion after the deadline); *United States v. Chavez*, 902 F.2d 259, 263–64 (4th Cir. 1990) (same); *United States v. Nero*, No. 17-CR-20183-5, 2020 WL 7316108, at *1 (E.D. Mich. Dec. 11, 2020) (good cause due to "complexity of the case and the overwhelming amount of discovery"); *United States v. Muse*, No. CR 17-2008 MV, 2019 WL 5310216, at *2 (D.N.M. Oct. 21, 2019) (good cause because workload prevented filing the pre-trial motion sooner).

Here, the defense discovered the true extent of the misrepresentations just last month, and thus lacked support to file the *Franks* Motion before the pre-trial motions deadline. The defense details how it discovered each of these misrepresentations in an attached affidavit. *See* Zeidenberg Aff. ¶¶ 4–26 (Ex. A). In short, the defense did not realize until August 2021, during trial preparation, that Lampe had apparently fabricated footnote 2 of the July 11, 2019 affidavit,[2] and then stated the truth in footnote 2 of the August 19, 2019, affidavit but failed to acknowledge the prior fabrication.[3] Zeidenberg Aff. ¶¶ 4–15 & Ex. 1. The government produced the July 11, 2019

---

[2] The government failed to produce until two weeks ago the email showing that Special Agent Carlson forwarded the July 9, 2019, confession email to Lampe on July 9, 2019, prior to Lampe's submission of the July 11, 2019 affidavit that was contradicted by the confession email. Zeidenberg Aff. ¶¶ 31–33 & Ex. 7. Instead, in May 2020, the government produced only a version of the confession email forwarded by Carlson to Lampe in *December* 2019. *Id.* Ex. 4. The defense had no way of knowing that Lampe's July 11, 2019 affidavit was knowingly false because (as far as the defense knew) Lampe received the confession email months after he filed his affidavit.

[3] The defense discovered that while footnote 2 of Lampe's August 2019 affidavit stated that he

and August 19, 2019 affidavits in late August 2019, and the defense promptly reviewed them, but the government waited until two months later to produce Government Informant's July 9, 2019 confession email and the FD-302 from the July 9, 2019 interview with Government Informant, which contradicted the July 11, 2019 affidavit. Zeidenberg Aff. ¶¶ 8–10 & Exs. 2, 3. As a result, when the defense reviewed the July 9, 2019 confession email and the FD-302 from the July 9, 2019 interview, the defense presumed these documents explained the change between footnote 2 of the July 11, 2019 affidavit and footnote 2 of the August 19, 2019 affidavit—not realizing that the July 9, 2019 confession email and the FD-302 from the July 9, 2019 interview *predated* the July 11, 2019 affidavit by two days, demonstrating that the FBI had actual or constructive knowledge of the July 11, 2019 affidavit's falsity. Zeidenberg Aff. ¶ 10.

When the defense realized the contradictions in August 2021 while re-reviewing documents, aided by 218,145 documents newly produced by the government in a searchable format in May 2021, the defense then investigated whether Lampe made other misrepresentations in his affidavits. *See* Katz Aff. ¶¶ 8–9; Zeidenberg Aff. ¶¶ 16–17. The defense was hindered in its ability to do this sort of digging prior to May 2021, because the defense did not have the resources to manually review every document. Zeidenberg Aff. ¶ 18.[4] The defense unearthed several more material misrepresentations and concealments in the affidavits, and promptly drafted and filed the

---

"suspect[ed]" that Government Informant hacked Dr. Tao's email, this was anything but candid, as Government Informant had *admitted* hacking Dr. Tao's email. Moreover, Lampe did ***not*** tell Chief Magistrate Judge O'Hara of the misrepresentation in the prior affidavit, giving the false impression that the hack was new information when, in fact, Lampe knew about it before submitting his July 2019 affidavit.

[4] The defense's delays could have been avoided if the government, as mandated by DOJ policy, had disclosed the facts that the defense painstakingly ferreted out. *See infra* note 6 (prosecutors must disclose *Brady* information, not just evidence). And if the government did not know about Lampe's misconduct, it cannot be heard to complain that the defense figured it out too late, because the government ***never*** figured it out.

*Franks* Motion. Zeidenberg Aff. ¶¶ 19–26.[5]

The foregoing discoveries provide ample basis for good cause. *See, e.g.*, *Scott*, 607 F. App'x at 200; *Chavez*, 902 F.2d at 263–64; *Nero*, 2020 WL 7316108, at *1; *Muse*, 2019 WL 5310216, at *2. And even if the Court concludes that more able defense counsel could have ferreted out the hidden misconduct sooner, the Court should not penalize Dr. Tao "for the inadvertence of his attorneys." *Hall*, 565 F.2d at 920.

### 2. The government withheld *Brady* evidence until September 9, 2021, that is key to the *Franks* Motion.

Dr. Tao also has cause because the government failed to timely produce *Brady* material. *See Scott*, 607 F. App'x at 200 (good cause based on newly produced evidence); *Chavez*, 902 F.2d at 263–64 (same). The government waited until September 9, 2021, to produce an email demonstrating that Lampe received the confession email on July 9, 2019, which contradicted his July 11, 2019 affidavit. Zeidenberg Aff. ¶¶ 31–33 & Ex. 7. This last-minute disclosure is the missing link that establishes that Lampe ***knowingly*** made material misrepresentations and concealments to Chief Magistrate Judge O'Hara. If this critical email had been timely produced, the need for a *Franks* hearing would have been obvious much sooner, even without the defense's painstaking investigation revealing multiple other misrepresentations in the affidavits.

Under *Brady* and its progeny, the government must produce material exculpatory and impeachment evidence for a defendant to have a fair trial consistent with due process. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense,

---

[5] The defense also realized for the first time that the FBI knew that Government Informant impersonated witnesses and made false reports ***before*** interviewing her on July 9, 2019, and almost certainly confronted Government Informant about this during that interview, but then deliberately ***omitted*** this discussion from the FD-302, dated two months after the interview.

5

the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "[T]he prosecution, which alone can know what is undisclosed … has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," and the prosecutor has "responsibility for failing to disclose known, favorable evidence rising to a material level of importance." *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995). DOJ policy also requires disclosure of *Brady* information (not just evidence).[6]

The government must produce evidence under *Brady* that undermines the truthfulness of a statement in a search warrant affidavit. *See United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) ("[W]e hold that the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant."); *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir. 1990) ("Timing is critical to proper *Brady* disclosure, and objections may be made under *Brady* to the state's failure to disclose material evidence prior to a suppression hearing."), *vacated on other grounds*, 503 U.S. 930 (1992); *United States v. Sheikh*, No. 2:18-CR-00119-WBS, 2020 WL 2940868, at *2–4 (E.D. Cal. June 3, 2020) (government must produce evidence that "tends to show that the government agent intentionally or recklessly made false or misleading statements or omissions in its warrant application"). Otherwise, "an officer could feel secure that false allegations in his or her affidavit for a search warrant could not be challenged … a result [that] would effectively deprive a criminal defendant of his Fourth Amendment right to challenge the validity of a search warrant." *Barton*,

---

[6] *See* Justice Manual § 9-5.001, www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings. The Kansas Rules of Professional Conduct require the same. *See* Rule 3.8(d), www.kscourts.org/Rules-Orders/Rules/3-8-Advocate-Special-Responsibilities-of-a-Prosecu. "As the Supreme Court has explained, between the sweep of *Brady* and a prosecutor's various statutory and ethical obligations, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure." *United States v. Giannukos*, No. 15-20016-01-DDC, 2020 WL 6680384, at *3 (D. Kan. Nov. 12, 2020) (internal quotation marks omitted).

995 F.2d at 935.

Here, the government withheld Lampe's July 9, 2019, receipt of Government Informant's confession email until September 9, 2021, even though the email *establishes* Lampe's **actual knowledge** of the falsity of statements in his affidavits and concealments, violating *Brady*. *See Barton*, 995 F.2d at 935; *Smith*, 904 F.2d at 965–66; *Sheikh*, 2020 WL 2940868, at *4; *Biles v. United States*, 101 A.3d 1012, 1018–20.[7] Similar to *Sheikh*, the evidence here "would be helpful to the defendant at the *Franks* hearing because it tends to show that the government agent intentionally or recklessly made false or misleading statements or omissions in its warrant application." *Sheikh*, 2020 WL 2940868, at *3.[8] The email should have been produced long ago, but it was withheld, further stymying the defense's ability to file a *Franks* Motion earlier.[9]

### 3. The government did not produce the fruits of the two unlawful search warrants until long after the pre-trial motions deadline.

Even if Dr. Tao had ferreted out the misrepresentations earlier, the defense was unable to make an informed decision whether to file the *Franks* Motion before the deadline because the government only recently produced the fruits of the unlawful warrants.

The warrants involved a two-step process. First, the July 2019 warrant required Google to "disclose" Dr. Tao's entire personal email account. Second, the government could "seize"

---

[7] The government's assertion that "the defense possessed **all relevant discovery** since at least the June 29, 2020, status conference" is thus demonstrably false. MTS at 1. Indeed, when the government made that assertion, it still had not disclosed the July 9, 2019 email to Lampe.

[8] The Court should also order the government to promptly disclose any additional *Brady* material that could support Dr. Tao's *Franks* Motion, or at least review potential *Brady* materials *in camera* so that the Court can determine what else the government must produce under *Brady* and Rule 16.

[9] On September 16, 2021, two business days before this Opposition was due, the government disclosed another *Brady* and *Giglio* document to the defense—a July 8, 2019, email from Lampe to Carlson and Special Agent Ng, dated one day before the July 9, 2019 interview of Government Informant, in which Lampe notes the possibility of *indicting* Government Informant. This confirms Lampe concluded Government Informant lied to the FBI, or committed other federal offenses— information he then concealed from the Court three days later. Zeidenberg Aff. ¶ 34 & Ex. 9.

7

information constituting the "fruits, contraband, evidence and instrumentalities" of the alleged fraud. *Franks* Motion Ex. 37. The August 2019 search warrant allowed the government to (1) "search[]" certain properties, and then (2) "review" the electronic information to "locate evidence, fruits, and instrumentalities described in this warrant." *Franks* Motion Ex. 38. The government obtained vast troves of information by imaging numerous devices from KU and Dr. Tao's home and family, and obtaining email accounts from service providers, and then, only much later,[10] it extracted documents described in the warrants. *See* DOJ, Searching and Seizing Computer and Obtaining Electronic Evidence in Criminal Investigations at 86, 134 (describing the two-step process for imaging devices and obtaining email accounts, and then searching them for documents described in the warrant).[11]

The government timely produced forensic images and email accounts, but it did not produce the documents extracted from the devices and email accounts pursuant to the warrants—the ***evidence***—until ***long*** after the pre-trial motions deadline. Katz Aff. ¶¶ 11-15. For example, the government did not produce documents extracted from a computer the government said it seized from Dr. Tao's KU office until April 26, 2021—***nine months*** after the deadline—and even then produced only a portion of the extracted documents, and produced the rest in the last few months. Katz Aff. ¶ 11. In August 2021 (a year after the deadline), the government produced 861,834 other documents from these search warrants. Katz Aff. ¶¶ 12–13. And in September 2021, the government produced 328 other documents from these search warrants. Katz Aff. ¶ 14.

The government's production of the forensic images and email accounts earlier in the

---

[10] The defense previously asked the government *when* it searched the forensic images and extracted the documents that it produced in April and August 2021 (and later in September 2021), but the government has declined to say.

[11] *See* www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ssmanual2009.pdf.

case—but not the documents seized from the device images under the warrants—did not satisfy its discovery obligations under Rule 16 or the Case Management Order. *See* Case Management Order at 14 (Aug. 27, 2019), ECF No. 11 ("All discovery in electronic media must be accessible, searchable, and organized. The parties agree to provide discovery in PDF, TIFF, or native/near-native file formats. *Imaged files must be searchable unless the receiving party agrees to accept discovery in a non-searchable format*." (emphasis added)); *United States v. Morgan*, 493 F. Supp. 3d 171, 199 & n.22 (W.D.N.Y. 2020) ("producing mirror images does not constitute compliance with Rule 16," as "the government has conceded at various times"); *cf. United States v. Scully*, 108 F. Supp. 3d 59, 95 (E.D.N.Y. 2015) (recognizing "the Government's ability to obtain the entire contents of [an] email account" so that it may then "determine which particular emails come within the search warrant"); *United States v. Perraud*, No. 09-60129-CR, 2010 WL 228013, at *11 (S.D. Fla. Jan. 14, 2010) (government has no "right to drown a defendant in a sea of irrelevant, or even tangentially relevant, documents in an effort to hide the few particularly relevant documents from a defendant in the hope that trial will ensue before the defendant discovers such materials," and, "[i]f it did, the rule might well present problems under the Fifth (due process) and Sixth Amendments (speedy trial)").

Because Dr. Tao did not receive the actual fruits of the warrants—the "evidence, fruits, and instrumentalities described in this warrant[s]"—until long after the pre-trial motions deadline, the defense lacked information to make an informed decision whether to move to suppress those withheld documents. Particularly with a limited budget, a defendant cannot blindly move to suppress evidence without knowing whether the evidence is even worth suppressing. Zeidenberg Aff. ¶¶ 27–30.

If the defense had known that discovery was ***far from complete***, it would not have agreed

to an August 2020 pre-trial motions deadline. Indeed, the government had repeatedly represented that discovery was complete before the Court set the deadline. *See* Hr'g Tr. at 5 (Apr. 30, 2020) ("[W]e think by Monday of next week the defense will have 99% of discovery in this case. … [S]o to summarize what's left, … we'll have … just the odds and ends – sort of the stray dogs and cats of the reports being finalized."); Hr'g Tr. at 5, 8 (June 9, 2020) ("[A]s far as discovery of everything that we have, that's gone out at this point. … Everything that we have, we've turned over. … [W]e've given them more than we're required to do. We've given it earlier than we've been required to do. We're just short of an open file discovery in this case."). Both the defense and this Court relied on those representations to set the agreed August 2020 pre-trial motions deadline. *See* Hr'g Tr. at 8 (June 29, 2020). This is another basis to find good cause.

And, in this respect, Dr. Tao's *Franks* Motion was arguably timely insofar as the defense lacked a basis for the motion—that the government ultimately extracted documents from the forensic images obtained under the warrants, which it did not produce until 2021—when the pre-trial motions deadline passed in August 2020.[12]

### C. Dr. Tao will suffer severe prejudice if the Court does not consider the *Franks* Motion on the merits, and the government does not argue otherwise.

Dr. Tao easily satisfies the prejudice requirement, and the government does not argue otherwise, effectively conceding this point. The *Franks* Motion details that the government gathered most of its evidence by violating Dr. Tao's Fourth Amendment rights, and the government now seeks to convict him based principally on the tainted evidence. Indeed, the vast

---

[12] *See* Fed. R. Crim. P. 12(b)(3) (suppression motions "must be raised by pretrial motion ***if the basis for the motion is then reasonably available***" (emphasis added)); 1A Fed. Prac. & Proc. Crim. § 194 (5th ed.) ("if the information" necessary to file the motion "is not available" before the deadline, "the Rule can be read to say that the motion is not untimely, and thus no showing of good cause would be required"); *United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017) (holding that a *Franks* motion filed after trial was timely and not subject to the "good cause" requirement because "[t]he basis" for the motion was testimony not "reasonably available" before trial).

majority of the evidence in this case, consisting of hundreds of thousands of documents recently produced to the defense, are the fruits of the two unlawful warrants. The Court's refusal to consider the *Franks* Motion could lead to a conviction in violation of Dr. Tao's Fourth Amendment rights. There can be no greater prejudice.

> **D.     The interests of justice, and the appearance of justice, also compel the Court to consider Dr. Tao's *Franks* Motion.**

As the district court in *Gonzalez*, a case cited by the government, explained:

> The Court has previously said that getting a decision in a case "right,"—i.e., correctly stating and applying the law to the facts of a case—"is only one-half of a judge's task." The other half of dispensing justice is "the appearance of justice"—i.e., "did the Court listen to the litigant's arguments, wrestle with those arguments, and deal with them in an intellectually honest way." In the Court's view, "Americans are relatively good about accepting a judicial decision—even an adverse one—and cease obsessing over an issue, if they are convinced that an authority figure has dressed up, taken them seriously, listened patiently and politely, wrestled with the arguments, addressed them, and accurately stated the facts." ***These concerns generally weigh in favor of litigating untimely motions.*** That [a defendant's] liberty is at stake, and a finding of guilt or innocence in this case will profoundly affect the rest of his life, however, makes these concerns even more significant … and ***counsels against using an overly formalistic interpretation of rule 12 to prevent him from exercising his constitutional rights.*** Consequently, this factor further tips the scale in favor of finding good cause.

81 F. Supp. 3d at 1227 (citations omitted; emphases added).[13] For these reasons, "[r]efusing to litigate a defendant's untimely suppression argument seems appropriate only when it is clear that the defendant is trying to game the system." *Id.*[14]

---

[13] This is particularly apt in a *Franks* motion, where "courts will choose to err on the side of granting more process than might be strictly necessary in order to ensure not only that justice is done but that justice is seen to be done." *United States v. Herrera*, 782 F.3d 571, 574 (10th Cir. 2015).

[14] The government contends that the interests of justice cannot alone establish good cause, MTS at 8, but fails to support this assertion with case law. The government's sole support for this proposition is an unpublished, out-of-circuit decision, *United States v. Suggs*, 703 F. App'x 425, 427 (7th Cir. 2017), where the court unsurprisingly rejected the movant's *ipse dixit* argument that his untimely motion should be reviewed because, according to the movant, it had merit. In any event, here, Dr. Tao has cause *and* the interests of justice on his side.

Here, the interests of justice, and the importance that justice appear to have been dispensed, compel this Court to review Dr. Tao's *Franks* Motion. The *Franks* Motion demonstrates that the case agent deliberately made misrepresentations to Chief Magistrate Judge O'Hara to secure search warrants for Dr. Tao's emails, computers, phone, home, and office. Other government investigators and attorneys likely either supported the misconduct or chose not to stop it, given their roles in the case and in securing the warrants.[15] Consideration of the *Franks* Motion will send a message to unethical government actors that this Court will not tolerate misconduct, no matter when it is uncovered. By contrast, refusal to consider the *Franks* Motion risks sending the opposite message—that expediency trumps the need to address misconduct.

The Court's review will also promote "the appearance of justice," as this Court will have "wrestled with the arguments, addressed them, and accurately stated the facts." *Gonzalez*, 81 F. Supp. 3d at 1227. This "concern" is particularly "significant" because "liberty is at stake, and a finding of guilt or innocence in this case will profoundly affect the rest of [Dr. Tao's] life." *Id.*

### E.   Dr. Tao did not file the *Franks* Motion after the deadline for "tactical" reasons, and any government prejudice is minimal.

The government's argument that Dr. Tao filed the *Franks* Motion nine weeks before trial for "tactical" reasons is meritless. Zeidenberg Aff. ¶ 35. If the defense had known the full extent of Lampe's deception in the two affidavits, and the volume of tainted evidence that the government would produce more than a year after the motions deadline, it would have filed the *Franks* Motion immediately. Zeidenberg Aff. ¶ 35. The contention that the defense deliberately waited to file so

---

[15] The two prosecutors originally on the case are no longer at DOJ. The original AUSA retired, and the original DOJ-NSD Trial Attorney was suspended and then forced to resign, according to public filings. *See Charles v. United States*, 1:21CV00864 (D.D.C. Mar. 31, 2021), ECF No. 1. Whichever prosecutor(s) reviewed the affidavits must have realized that there were material misrepresentations and concealments in them.

it could prejudice the government—while also distracting from its own trial preparations—is belied by the defense's willingness to accept a trial continuance, if required. *See Franks* Motion at 2 n.1 ("The defense hopes that this motion can be fully adjudicated in advance of the October 25, 2021 trial date, but understands that a continuance of trial may be necessitated by this motion.").

The government's argument that it will suffer "prejudice" fares no better. If prejudice to the government is relevant,[16] the government will suffer minimal (if any) prejudice. Dr. Tao filed the *Franks* Motion nine weeks (63 days) before trial, not on the "eve of trial," as the government claims,[17] and the government has already had two years to prepare for the trial. To put things in perspective, Congress expects the government to be ready for trial in 70 days under the Speedy Trial Act. 18 U.S.C. § 3161(c)(1). The government has had more than ten times that period to prepare. And a single motion filed nine weeks before trial should not derail the government's trial preparation two years after the indictment.

Courts often set pre-trial motions deadlines much closer to trial and have deemed tardy motions filed much closer to trial to be non-prejudicial. *See, e.g.*, *Chavez*, 902 F.2d at 263–64 (finding that the district court abused its discretion in refusing to consider a suppression motion filed 11 days before trial based on new information, reasoning that while "not unmindful of the pressures of pretrial activity, or the importance of court-imposed deadlines," the defendant filed

---

[16] The government cites *Gonzalez* to argue that the Tenth Circuit "focuses" in part on the "late filing's effects on the United States." MTS at 7. But *Gonzalez* merely observed that three Tenth Circuit decisions considered the effects on the government where the defendant (1) filed a motion ***one day*** before trial, (2) ***after*** trial, and (3) ***omitted*** an argument from its initial motion. 81 F. Supp. 3d 1212. Those decisions are inapposite. *Gonzalez* also made clear: "Notably, this standard ***does not require a district court to consider the prejudice that accepting an untimely motion may cause the United States in determining good cause***." *Id.* at 1223 (emphasis added). And the Tenth Circuit's recent *Bowline* case made no mention of government prejudice in analyzing the Supreme Court's two-part *Davis* test. 917 F.3d at 1234.

[17] The government claims that the defense filed the motion "less than two months before trial." MTS at 1. To the contrary, the defense filed the motion ***more than*** two months before trial.

the motion "two weeks prior to trial").[18] Any prejudice the government would suffer is minimal, is shared by the defense, and does not justify the denial of Dr. Tao's constitutional rights.

## II. AT A MINIMMUM, DR. TAO HAD EXCUSABLE NEGLECT UNDER RULE 45.

Even if Dr. Tao's *Franks* Motion were untimely, and there were no good cause, this Court should still consider the *Franks* Motion on the merits based on "excusable neglect" under Rule 45(b)(1)(B). The government points to four factors that can establish excusable neglect: (1) the danger of prejudice to the government, (2) length of the delay, (3) reason for delay, and (4) whether Dr. Tao acted in good faith. MTS at 10. These factors substantially favor Dr. Tao, as shown above.

"An additional consideration is whether the moving party's underlying claim is meritorious." *Jennings v. Rives*, 394 F.3d 850, 857 (10th Cir. 2005). Here, the *Franks* Motion is plainly meritorious, as it exposes eight material misrepresentations made by Lampe in the two search warrant affidavits, supporting a *Franks* hearing and suppression of the resulting evidence.

Accordingly, this Court should also consider the motion under Rule 45(b)(1)(B).

## CONCLUSION

The defense regrets that it did not more quickly put together the puzzle pieces that, when fully assembled, demonstrated that the government made material misrepresentations in its search warrant affidavits. But when it discovered the government's misconduct in August 2021, it immediately filed the *Franks* Motion to protect Dr. Tao's constitutional rights. Dr. Tao respectfully requests that the Court consider the *Franks* Motion, and suppress the evidence unlawfully obtained by the government.

---

[18] The government's reliance on *United States v. Holliday*, Criminal Action No. 12–20141–09–KHV, 2013 WL 6498984 (D. Kan. Dec. 11, 2013), is misplaced. There, the defendant did "not make any arguments with respect to the reasons or circumstances why he did not file his motion to join, or his own motion to suppress evidence, by the [deadline]." *Id.* at *2.

Dated:  September 20, 2021

Respectfully submitted,

/s/ Thomas H. Johnson
Thomas H. Johnson #13688
Petefish, Immel, Hird, Johnson,
Leibold & Sloan, LLP
842 Louisiana
Lawrence, KS 66044
Tel: (785) 843-0450
Fax: (785) 843-0407
tjohnson@petefishlaw.com

Peter Zeidenberg
Michael F. Dearington
Laura Zell
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Peter.Zeidenberg@arentfox.com
Michael.Dearington@arentfox.com
Laura.Zell@arentfox.com

*Attorneys for Defendant Franklin Tao*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 2021, I electronically filed the foregoing brief and its attachments with the Clerk of the Court using the CM/ECF system.

/s/ Thomas H. Johnson
Thomas H. Johnson