# UNITED STATES DISTRICT COURT

## District of Kansas

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                    Case No.  **19-20052-01-JAR**

FENG TAO,

        Defendant.

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A FRANKS HEARING AND TO SUPPRESS EVIDENCE (Doc. 127)

The United States of America, by and through undersigned counsel, hereby files its response to Defendant Feng ("Franklin") Tao's Motion for a *Franks* Hearing and to Suppress Evidence (Doc. 127 ("Def. Mot.")).  As set forth in the government's Motion to Strike (Doc. 141), the Court should not consider Defendant's untimely and surprise motion.  But if the Court reaches the merits, the government offers the following response, in which it demonstrates that Defendant has failed to satisfy the high standard for a *Franks* hearing and that, in any event, even excluding or including the allegedly deficient information, substantial evidence supporting probable cause for the warrants remains.[1]

---

[1] The fact that the Court may decide to address the merits of Defendant's suppression motion does not cure Defendant's waiver.  *See United States v. Galindo-Serrano*, 925 F.3d 40, 47-48

## I.        INTRODUCTION

On July 11, 2019, the Federal Bureau of Investigation ("FBI") executed a warrant to search Defendant's Google account.  An anonymous tip that was corroborated by open source reporting and emails from Defendant's University of Kansas ("KU") account established probable cause to believe that evidence of wire and program fraud would be found in Defendant's Google account.  On August 19, 2019, the FBI executed additional warrants to search Defendant's residences, laboratory at KU, and Google account (for the period between July 11, 2019, and August 19, 2019).  The affidavit supporting the August warrants built upon the probable cause from the July warrant.  In addition to information about the tip, open source reporting, and Defendant's KU emails, it included additional corroborating details from Defendant's Google account obtained through the July warrant.

Despite having the warrants and relevant discovery for well over a year, Defendant now seeks on the eve of trial to suppress all evidence discovered during, and the fruits of, these searches on the ground that the searches were unconstitutional.  Def. Mot. at 2.  Specifically, Defendant argues that the Court should order a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because the affidavits supporting the search warrants allegedly contained false statements and material omissions concerning the anonymous tipster (later identified as one of Defendant's former students) who first notified the FBI of Defendant's criminal conduct.  According to Defendant, he "easily satisfies the two-part test required to obtain a *Franks* hearing," because had the Court known of the allegedly false statements and material omissions, it "*never* would

_____

(1st Cir. 2019) (noting that "[e]ven when the district court rules on an untimely motion . . . an untimely motion to suppress is deemed waived unless the party seeking to suppress can show good cause as to the delay").  Unless otherwise noted, all internal quotation marks and citations are omitted in this brief.

have found probable cause to issue the warrant[s]."  Def. Mot. at 28 (emphasis in original).

Defendant, however, falls far short of making the "substantial preliminary showing" required under *Franks* to challenge the veracity of the search warrant affidavits in a full-dress adversarial proceeding.  *Franks*, 438 U.S. at 155-56.  Defendant alleges that eight statements or omissions in the affidavits were materially false or misleading, but he offers only innuendo, unsupported accusations, conjecture, and conclusory statements instead of proof to support the claim that they were inaccurate.  He accuses the FBI agent of wrongdoing and speculates about his knowledge and intent but fails to establish that any statements or omissions, even if they were false or material, were intentional or reckless.  And, most importantly, when analyzing whether the alleged omissions or false statements would have been material to the magistrate's probable cause determination, Defendant misleadingly states that the original tipster was the "*sole* source of the evidence and information used to show probable cause" in the affidavits.  Def Mot. at 16. (emphasis added).[2]  This gross mischaracterization conveniently ignores both open source information and the incriminating evidence found in Defendant's KU email account, neither of which depended on the tipster's credibility, and which comprised more than half of the paragraphs in the affidavit's probable cause section.  That evidence independently established probable cause for the essential allegation of the affidavit: that Defendant was employed elsewhere.  In sum, Defendant both repeatedly misstates the record and ignores controlling legal precedent, and his untimely motion should be denied.

---

[2] Defendant repeats some version of this misleading statement throughout his motion.  *See, e.g.*, Def. Mot. at 15 (the evidence of Defendant taking a second job at FZU "consisted almost entirely" of the tipster's claims) and 28 ("The July 11, 2019, search warrant was based almost entirely on [the tipster's] evidence and information . . . .").

## II.     BACKGROUND

### A.  The July 2019 Search Warrant Affidavit

In July 2019, the FBI applied to Chief U.S. Magistrate Judge James O'Hara for a warrant to search Defendant's Google account.  The supporting affidavit contained information that was "intended to show merely that there is sufficient probable cause for the requested warrant" and did "not set forth all of [the affiant's] knowledge about this matter."  Def. Mot., Ex. 37 ¶ 3 ("July 11, 2019 Aff.").  The affidavit then described why there was probable cause to believe that Defendant's Google account would contain evidence of violations of 18 U.S.C. §§ 1343 (wire fraud) and 666 (grant fraud).  First, it described Defendant's federal research and position at KU. *Id.* ¶¶ 8-9.  Then, it described Defendant's obligation to disclose to KU any conflicts of interest, including outside employment, and the fact that Defendant had "not disclose[d] outside employment on any of [his] reports" to KU.  *Id.* ¶ 10.  The remainder of the affidavit focused on why there was a fair probability that, contrary to his disclosures, Defendant worked for Fuzhou University ("FZU") in the People's Republic of China ("PRC") and evidence of his fraudulent scheme would be found in Defendant's Google account.

The probable cause that Defendant worked at FZU primarily consisted of the following:

- Complaints about Defendant submitted between April and June 2019 to KU and the FBI (likely provided by the tipster, referred to as "Student #1" in the affidavits);
- A purported unsigned contract between Defendant and FZU (provided by Student #1);
- Open source reports (including news articles and published scientific articles) identifying Defendant as a Changjiang Scholar recipient and/or professor at FZU (including photographs of Defendant with individuals the reports identified as officials in the PRC), which the affiant viewed (although they were provided by Student #1);
- Defendant's emails from his KU account appearing to show him, *inter alia*, applying for and receiving the Changjiang Scholar award, recruiting faculty to FZU, and stating to others that he had received "a joint appointment at Fuzhou University (China) other than the current [KU] one"; and

- An email contact card in another KU employee's email account that identified a FZU email address for Defendant.  *Id.* ¶¶ 11-17.

As noted above, the affidavit indicated that some of the information was provided anonymously and by an "individual claiming to be a former post-doctoral student sponsored by Tao to study in the United States" (*i.e.*, Student #1).[3]  *Id.* ¶ 11.  The "sum and substance of the complaints [from Student #1] were that Tao had taken a Changjiang position in China."  *Id.*  The affidavit continued: "Student #1 also provided what purports to be an unsigned contract between Tao" and FZU.  *Id.*  In a footnote, the affidavit stated that "Student #1 later told agents that she obtained the unsigned contract by accessing Tao's email account, with Tao's permission and at Tao's direction."  *Id.* at 5 n.2.  Notably, the affidavit included information about Student #1's potential motivation and bias, specifically that Student #1 "provided [the unsigned contract] to KU and to the FBI because *she was angry with Tao over not crediting her on a published research article*."  *Id.* (emphasis added).  Additionally, the affidavit stated that "some" of the open source reporting "was provided by Student #1 as well as anonymously."  *Id.* ¶ 12.  Lastly, after describing a few of the open source webpages, the affidavit acknowledged, "I have no information or knowledge concerning the accuracy of these websites or articles beyond the fact that they were discovered during open source searches of the internet."  *Id.*  With this information in hand, Chief Magistrate Judge O'Hara approved and swore out the search warrant on July 11, 2019.

### B.  The August 2019 Search Warrants Affidavit

Six weeks later, the FBI sought additional warrants from Chief Magistrate Judge O'Hara to search Defendant's residences, KU laboratory, and Google account for evidence of wire and

---

[3] The parties have used many terms to refer to the source, but because the affidavits refer to her as Student #1, the government primarily uses that term here.

grant fraud. *See* Def. Mot., Ex. 38 ("Aug. 19, 2019 Aff."). The August 2019 affidavit contained the same facts as the July 2019 affidavit and added information obtained from the search of Defendant's Google account. For example, among other things, the August 2019 affidavit identified various emails to and from Defendant's Google account showing that he had applied and been selected to be a Changjiang scholar, that he had received a draft FZU contract from someone at FZU, which largely mirrored the one Student #1 had provided to KU, and that he identified himself as being from FZU and was fulfilling many of his job responsibilities as specified in his draft FZU contract. *Id.* ¶¶ 19-23.

The August 2019 affidavit also corrected and clarified two sets of facts set forth in the July 2019 affidavit. First, the August 2019 affidavit clarified that Student #1 had given conflicting statements to the FBI about how she had obtained the draft contract between FZU and Defendant. *See id.* at 6 n.2.[4] Second, the affidavit corrected an error in the July 2019 affidavit regarding whether Defendant forwarded or responded to a specific email. *See id.* at 10 n.7. On August 19, 2021, Chief Magistrate Judge O'Hara approved the warrants to search Defendant's residences, laboratory, and Google account.

## III.    LEGAL STANDARD

Affidavits supporting search warrants are presumptively valid, and, thus, a defendant may challenge a facially sufficient affidavit in very limited circumstances. *See Franks*, 438 U.S. at 171-72. "Under the Supreme Court's decision in *Franks*, when a defendant makes a substantial preliminary showing that intentionally or recklessly false statements are included in an affidavit supporting a search warrant and that the affidavit without the false statements is insufficient to

---

[4] The footnote's details mirror those contained in Student #1's July 9, 2019 email to the FBI and the FBI's report of its interview of Student #1 and her subsequent email. *See* Def. Mot., Exs. 35 (FBI report) & 36 (Student #1's July 9, 2019 email).

support a finding of probable cause, the defendant is entitled to a hearing on the matter." *United States v. Corral-Corral*, 899 F.2d 927, 933 (10th Cir. 1990). "[T]he standards of 'deliberate falsehood' and 'reckless disregard' set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997).

Requiring the defendant to make a substantial preliminary showing is intended to "prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Franks*, 438 U.S. at 170. Accordingly, allegations of a deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof. *United States v. Williams*, 576 F.3d 1149, 1160 (10th Cir. 2009). Such an offer of proof "should point out specifically the portion of the warrant affidavit that is claimed to be false; and [the allegation] should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. "An affiant's negligence or innocent mistake resulting in false statements in the affidavit is not enough to satisfy a defendant's burden." *Corral-Corral*, 899 F.2d at 933. Because *Franks* requires a "substantial" showing of materiality and recklessness or intentionality, "a district court is not required to draw all logically permissible inferences favorable to a defendant seeking a *Franks* hearing." *United States v. Moses*, 965 F.3d 1106, 1111 (10th Cir. 2020). "The district court is, therefore, only required to make any inferences that would have been required when the warrant application was considered." *Id.* at 1112.

Since a defendant must prove both materiality and recklessness or intentionality, a failure to prove either is fatal. *Id.* at 1111. In determining the materiality of omitted or false information, a reviewing court looks "to see whether a warrant would issue in a but-for world where the attesting officer faithfully represented the facts." *Kapinski v. City of Albuquerque*, 964

F.3d 900, 905 (10th Cir. 2020).  To make such an assessment, the Court must make its

determination by removing any false information from the affidavit, including any omitted

information, and then determining whether the modified affidavit establishes probable cause for

the warrant.  *Id.*  "[I]f what is left is sufficient to sustain probable cause, [any] inaccuracies are

irrelevant."  *Franks*, 438 U.S. at 172 n.8.

        The Fourth Amendment does not impose "[t]echnical requirements of elaborate

specificity" upon nonlawyer affiants seeking to procure a search warrant.  *Illinois v. Gates*, 462

U.S. 213, 235 (1983).  The Court should be "mindful that 'affidavits are normally drafted by

nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of

elaborate specificity once exacted under common law pleadings have no proper place in this

area.'"  *United States v. Lopez-Garcia*, 14-20071-07-JAR, 2015 WL 4429687, at *2 (D. Kan.

July 20, 2015) (quoting *Corral-Corral*, 899 F.2d at 934).  "[I]f the warrant affiant had no reason

to believe the information was false, there was no violation of the Fourth Amendment."  *Franks*,

438 U.S. at 172 n.8.

## IV.    ARGUMENT

        Defendant's motion tells a sensational story of deceit and skullduggery in which the

Defendant is the victim.  On first glance, it appears that Defendant has uncovered grave

government misconduct.  Upon closer inspection and a review of the facts, however, Defendant's

motion is revealed for what it is—a tactical maneuver lacking any factual or legal substance.

*Franks*'s "substantial showing" requirement was intended for situations like this – to "wash out

at any early stage" meritless Fourth Amendment challenges.  *Franks*, 438 U.S. at 170.

### A.  The Affidavits Do Not Contain Materially False Statements or Omit Material Information

Defendant argues that the evidence shows that Student #1 "admitted that she had

repeatedly lied to the FBI and KU, fabricated evidence, impersonated witnesses, used fake email addresses, falsely accused Dr. Tao of espionage and intellectual property theft, and hacked his email." Def. Mot. at 28. This is not Defendant's first attempt to make this case about Student #1. *See, e.g.*, Mot. to Dismiss Indict. (Doc. 30). Based on this well-worn theme, Defendant claims that the affidavits contain five material omissions and three material false statements described below. If those false statements and omissions were corrected, Defendant argues, the resulting affidavits would lack probable cause.

Notably, Defendant fails to mention that substantial portions of the affidavits' probable cause section do not concern Student #1. Defendant does not discuss the corroborating emails from his KU account, nor the fact that one of his former students at KU, X.Z., had a contact card in her KU email account that listed Defendant's email address as taofeng@fzu.edu.cn. *See* July 11, 2019 Aff. ¶¶ 13-16. Defendant also minimizes that the affidavit was upfront about Student #1's possible motives and bias, stating that she told the FBI that she reported Defendant because she was "angry" with him over an authorship dispute. *Id.* at 5 n.2. At bottom, Defendant gets many of the facts wrong, but even if he were right, he fails to establish the materiality necessary to win a *Franks* hearing, much less suppression. Even if a magistrate judge accepted all of Defendant's inferences (many of them unsupported) and completely discredited Student #1, probable cause still existed for the magistrate to issue the warrants. In other words, even without Student #1's accusations, the warrants still had probable cause and all of the alleged misstatements and omissions described below are immaterial.

### 1. Omission regarding Student #1's impersonations

Defendant argues that it was material for the affidavit to omit that Student #1 – "the sole source of the evidence and information used to show probable cause" according to Defendant –

admitted to the FBI that she had impersonated others over email to submit tips to KU and the FBI. Def. Mot. at 16. Because Student #1 admitted to reporting Defendant using others' names, Defendant argues, the reliability of "all of the evidence and information" that she provided to the FBI was "undermined." *Id.* As an initial matter and as discussed above, *supra* at 3, Student #1 was not the *sole* source of evidence and information used to show probable cause. The affidavit also relied on Defendant's own emails from his KU account, open source reporting (including photographs of Defendant), his disclosures (or lack thereof) to KU, and a contact card for Defendant found in X.Z.'s KU account.

More importantly, because enough independent information established probable cause, Student #1's reliability in general was not material to the probable cause determination. The FBI's investigation of the tips, to include a review of Defendant's and X.Z.'s KU accounts, confirmed much of what Student #1 alleged: namely, that Defendant had been awarded a Changjiang Distinguished Professorship at FZU; that Defendant represented to others that he worked at FZU; that Defendant appeared to be recruiting others to join FZU; and that Defendant had a FZU email address. "When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000); *United States v. Sturmoski*, 971 2d. 452, 457 (10th Cir. 1992) ("[T]here is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information."); *see also, e.g.*, *United States v. Jenkins*, 313 F.3d 549, 555 (10th Cir. 2002) (informant's allegations combined with information provided by law enforcement was enough for probable cause). Including the fact that Student #1 had impersonated others to report Defendant certainly would not have been "so probative as to negate probable cause," which is the standard under *Franks* that Defendant has to satisfy to

obtain a hearing. *United States v. Gehrmann*, 731 F. App'x 792, 799 (10th Cir. 2018). In any event, the affidavit included information about Student #1's reliability, both with respect to her possible bias and motive, *see* July 11, 2019 Aff. at 5 n.2, and also with respect to the fact that many of the details that she provided were independently corroborated.

### 2. Omission regarding Student #1's admission that she lied to the FBI and use of other identities to submit tips

Defendant next argues that it was material for the affidavit to omit that Student #1 admitted to "lying to the FBI about Dr. Tao." Def. Mot. at 17. Again, Defendant plays loose with the facts. Contrary to Defendant's assertion, Student #1 was not a "serial liar" who "partnered" with the FBI. Def. Mot. at 20. She was Defendant's former student who, according to her own explanation and as supported by the evidence, quarreled with Defendant over an authorship issue and decided to report his misconduct to KU and the FBI because she was angry with him. The FBI interviewed her twice: once on July 9, 2019 (two days before swearing out the first search warrant), and again on July 23, 2019.[5] A few hours after her first interview, however, Student #1 emailed the FBI to "admit that [she] lied in some of the items" discussed during the interview. Def. Mot., Ex. 36 at 2. In that email, and on her own accord, she corrected four prior statements: (1) that she did "not know whether there are other person[s] reporting this issue or not," but that she had reported "using the name of others"; (2) that she downloaded Defendant's contract with FZU from "his email address"; (3) that she downloaded Defendant's funding applications related to FZU from "his proposal submission account"; and (4) that she "communicated with X.Z. sometimes last year [2018]," but not in 2019. *Id.* at 2-3. Student #1 then stated that the "[o]thers are correct information [sic] to the best of my knowledge." *Id.* She

---

[5] Due to travel delays, the case agent was unable to attend the first interview of Student #1. A colleague interviewed Student #1 instead, but the case agent conducted and recorded a lengthy follow-up interview on July 23, 2019.

did not, contrary to what Defendant implies, disavow her broader allegations about Defendant's work at FZU.  Thus, even if the affidavit had included the fact that Student #1 admitted to the FBI that she had initially lied and had reported Defendant by impersonating others, this would not have added much to the impeachment material already contained in the affidavit (concerning her motivation to attack Defendant), nor would it have detracted from the independent evidence that he was employed elsewhere.

First, Student #1's admission would not have affected Chief Magistrate Judge O'Hara's probable cause determination, because the affidavit did, in fact, address an important aspect of Student #1's reliability: it told Chief Magistrate Judge O'Hara that Student #1 was potentially biased, because she told the FBI that "she was angry with Tao over not crediting her on a published research article."  July 11, 2019 Aff. at 5 n.2.[6]

Second, even if the affidavit could have included more to undermine Student #1's credibility, it would not have mattered to the probable cause determination.  Defendant misapprehends a fundamental aspect of the affidavits here.  The core of the probable cause in the affidavits was not based solely, or even primarily, on Student #1's accusations.  The FBI independently corroborated many of her allegations through its own investigation and even Student #1 provided evidence (*i.e.,* documents, webpages with Defendant's photo, published research articles) to support her accusations.  Because the affidavit also contained independent and corroborating information, the veracity of Student #1 was largely irrelevant.  *See United*

---

[6] Even if the affidavit had included additional information regarding the reliability of Student #1, the magistrate would not have necessarily disregarded *all* of the information Student #1 provided.  *See United States v. Herrera*, 782 F.3d 571, 575-76 (10th Cir. 2015) (reversing district court's grant of suppression motion because, *inter alia*, there was no "sustainable way the court could have disregarded all of the confidential informant's evidence" when he had been correct on aspects of the defendant's drug enterprise).

*States v. Avery*, 295 F.3d 1158, 1167 (10th Cir. 2002), *abrogated on other grounds*, *United*

*States v. O'Brien*, 560 U.S. 218, 235 (2010) ("[T]he complete failure of an affidavit to discuss

the reliability of an informant does not automatically preclude a finding of probable cause."); *see*

*also Danhauer*, 229 F.3d at 1006 (no need to establish veracity of informant when there is

enough independent corroboration); *Sturmoski*, 971 F.2d at 457 (same).[7]

### 3.  Statement regarding where Student #1 said she got Defendant's contract

Next, Defendant argues that the July 2019 affidavit falsely stated in footnote 2 that

Student #1 told the FBI that she obtained the contract between Defendant and FZU by accessing

Defendant's email account "with Tao's permission and at Tao's direction."  Def. Mot. at 17.  As

described earlier, *supra* at 6, footnote 2 was clarified in the August 2019 affidavit.  The original

footnote 2 – which states that Student #1 said that she obtained the contract by accessing

Defendant's email account "with Tao's permission and at Tao's direction" – was, when the

affidavit was executed, a reasonable interpretation of Student #1's statements to the FBI.

Specifically, Student #1 told the FBI that she "downloaded [the contract] from his email address"

and that "[l]ast year [2018], he asked me to write proposals to apply to Chinese government.

The account and password for proposal submission are the same as his email in Fuzhou

University.  Sometimes I login [to] his email address and check some information."  Def. Mot.,

Ex. 36 at 3.  In other words, according to Student #1, Defendant gave Student #1 the account and

password for *some* account that Student #1 used to submit proposals to the Chinese government.

That account's credentials were the same as Defendant's FZU email account, which Student #1

---

[7] *United States v. Lull*, 824 F.3d 109 (4th Cir. 2016), is not to the contrary. There, the
confidential informant's statements were the "only evidence identifying" defendant as a drug
dealer, *id.* at 117, and "[m]uch of the information included in [the] affidavit came solely from the
informant," *id.* at 118.  Here, as described above, Student #1's statements triggered the
investigation, but independent evidence described in the affidavit corroborated her allegations.

"sometimes" logged into to "check some information." *Id.* From this, it was reasonable for the affiant to conclude that Defendant had given Student #1 permission to access his email account. At most, that interpretation was an innocent mistake, which is not enough to satisfy a defendant's burden for a *Franks* hearing. *Corral-Corral*, 899 F.2d at 933; *see also Lopez-Garcia*, 2015 WL 4429687, at *6 (holding that innocent, or even negligent, inaccuracies cannot invalidate a warrant when "there were many other accurate statements in the warrant that supported a finding of probable cause").

Far from intentionally concealing the truth, the affiant also updated footnote 2 in the August 2019 affidavit to acknowledge that Student #1 had given conflicting statements about how she obtained the contract. Aug. 19, 2019 Aff. at 6 n.2. And the affiant admitted that he was "unsure how [Student #1] obtained the contract, but [he] suspect[ed] she obtained it by hacking into Tao's email account (prior to any contact with agents)." *Id.* Considering the nuance of Student #1's July 9, 2019 email to the FBI, the term "hacking" was imprecise. Even so, in an abundance of caution, the affiant disclosed Student #1's conflicting statements (*i.e.*, he disclosed that she had lied earlier about where she got the contract) and his own suspicions regarding where he thought she got the contract. Significantly, the August 2019 affidavit acts as a sort of "but for" affidavit when compared to the July 2019 affidavit—Chief Magistrate Judge O'Hara found probable cause even after the August 2019 affidavit disclosed that Student #1 had lied to the FBI.

### 4.  Omission regarding contract metadata

Additionally, Defendant argues that it was material for the affidavit to omit that the metadata from the Student #1-provided contract showed that the document was created on the same day that Student #1 emailed the contract to KU. Def. Mot. at 18. This argument is

frivolous.  There is nothing probative about the metadata, because it could mean multiple things, none of which is more likely than any other: perhaps Student #1 downloaded the contract from Defendant's FZU email account and saved it to her computer the same day that she sent it to KU; or perhaps she had the contract in a different format and converted it to a PDF on the day she sent it.  The fact is, we do not know, and Defendant has not made an "offer of proof" as to what the metadata means.[8]  *Franks*, 438 U.S. at 171.  Defendant's conclusion that this "strongly suggest[s]" that Student #1 fabricated the document is pure speculation.  Indeed, despite repeatedly stating in his motion that Student #1 admitted to "fabricating" evidence,[9] Defendant has not pointed to a single example of Student #1 actually doing so.  While the Court may "draw all logically permissible inferences favorable to a defendant," *Moses*, 965 F.3d at 1111, it should not entertain highly speculative inferences that lack evidentiary support.

### 5.   Statement regarding the tips received anonymously and from Student #1

Paragraph 11 of the July 2019 affidavit stated, "[b]etween approximately April 2019 and the time of this filing, both KU and the FBI have received a series of complaints regarding Tao, both anonymously and from [Student #1]."  July 11, 2019 Aff. ¶ 11.  Defendant argues that the affidavit falsely stated that KU and the FBI received complaints about Defendant "both anonymously and from" Student #1 when, in fact, the FBI knew that all of the complaints were submitted by Student #1.  Def. Mot. at 18.  Defendant cobbles together a disjointed collection of

---

[8] We know that the draft contract was not "fabricated" on May 14, 2019, because multiple versions have been found on Defendant's devices and in his email accounts, including a draft that Defendant forwarded from one of his email accounts to another of his accounts.

[9] *See* Def. Mot. at 18 (the metadata "strongly suggested that [Student #1] had fabricated the contract"); 22 (Student #1 "admitted to . . . fabricating evidence"); 26 (metadata "strongly suggesting that [Student #1] had fabricated" the contract); 28 (Student #1 "was an admitted liar who had fabricated evidence and information"); *id*. (Student #1 "admitted that she had . . . fabricated evidence.").

documents to infer two facts: (1) that all of the tips were from Student #1, and (2) that the FBI knew at the time it submitted its affidavits that all of the tips were from Student #1. Despite Defendant's efforts, he has failed here, too, to carry his burden.

Over the course of approximately five-and-a-half weeks, seven tips were submitted to the FBI and KU:

- April 30, 2019 – anonymous tip to KU's Department of Environment, Health and Safety[10]
- May 10, 2019 – X.Z. tip to KU's Chancellor and Chemical Engineering Chair[11]
- May 12, 2019 – X.Z. tip to FBI Kansas City's Public Affairs Specialist[12]
- May 13, 2019 – X.Z. tip to KU's Human Resources Department[13]
- May 19, 2019 – anonymous tip to KU's Director of Security[14]
- June 4, 2019 – Student #1 tips to KU's Office of Integrity and Compliance and Internal Audit[15]
- June 9, 2019 – L.N. online tip to FBI[16]

Defendant reads far too much into a single sentence in an introductory paragraph. The affidavit acknowledged that a series of complaints came from *both* anonymous sources that the FBI had not yet identified *and* Student #1. It did not, as Defendant argues, state that Student #1 provided a *single* complaint that was supported by other sources. In fact, the affidavit only discussed the substance of Student #1's allegations and did not otherwise address the other complaints other than to provide that the "sum and substance" of all of them was that "Tao had taken a Changjiang Professor position in China." July 11, 2019 Aff. ¶ 11.

Even if the statement regarding the sources of the complaints was inaccurate, it was not

---

[10] Def. Mot., Ex. 17.

[11] *Id.*, Ex. 19.

[12] *Id.*, Ex. 16.

[13] *Id.*, Ex. 20. In correspondence with the tipster, KU's Director of Security called the tipster X.Z., but the email address used by the tipster contained the name of C.E.L.

[14] *Id.*, Ex. 24.

[15] *Id.*, Exs. 12 & 13.

[16] *Id.*, Ex. 33.

material.  Because "affidavits are normally drafted by nonlawyers in the midst and haste of a

criminal investigation," *Corral-Corral*, 899 F.2d at 934, nonlawyer affiants are not expected to

provide "elaborate specificity."  *Gates*, 462 U.S. at 235.  "*Franks* does not require that all

statements in an affidavit be true; it requires only that the statements be believed or appropriately

accepted by the affiant as true."  *United States v. Roybal*, 46 F. Supp. 3d 1127, 1150 (D.N.M.

2014).  At the time he submitted his affidavits, the affiant knew that Student #1 was behind some

of the tips and that others had been submitted anonymously.  In light of the independent evidence

he had obtained regarding Defendant's potential criminal conduct, the affiant did not think it was

significant to the criminal investigation to determine which of the tips could be attributed to

Student #1.  Irrespective of whether the tips came from Student #1 alone, anonymous sources, or

a combination of the two, by the time the affidavits were submitted, the affiant had already

corroborated with independent evidence the tips' core allegation—that Defendant was working

at FZU.  This is reflected by the fact that the affidavit did not really rely on the "anonymous"

tips.  It included the fact that tips were submitted by Student #1 and anonymously, but then

discussed only the information that was provided by Student #1.  The affidavit did not, for

example, discuss different information provided by different tipsters (*e.g.*, Tipster #1 stated X;

Tipster #2 stated Y) as if to corroborate one tip by referencing another.  While the affidavits

could have been drafted more conservatively and identified only a single source, they did not, as

Defendant implies, multiply one source into many in a way that inappropriately strengthened the

probable cause.

### 6.   Omission regarding Student #1's accusation of espionage and theft

Defendant also argues that it was material for the affidavits to omit that Student #1 had

accused Defendant of espionage and intellectual property theft.  Mot. Def. at 19.  The affidavits

sought searches of locations where probable cause existed to find evidence of wire and grant fraud.  *See* July 11, 2019 Aff. ¶¶ 18-19.   The affidavits need not include information that was unnecessary to establish probable cause to search the identified locations for evidence of the subject offenses.  Indeed, Defendant surely would have taken issue if the affidavits *had* included allegations of espionage and theft that were not material to establishing probable cause for the warrants at issue.  "A magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the facts and circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Kennedy*, 131 F.3d at 1377-78 (quoting *Gates*, 462 U.S. at 238).  The affidavits were intended to help with this task. They rightfully did not include irrelevant information.

Moreover, the Defendant is factually incorrect in stating that Student #1 "had no basis or evidence" for her accusations of espionage and intellectual property theft "as the FBI knew." Def. Mot. at 19.  While X.Z. (likely Student #1) told KU's Security Director on May 16, 2019 that she did "not have evidence at this moment" regarding the company that she believed Defendant and L.N. planned to start in the PRC to sell Ambient Pressure X-Ray Photoelectron Spectroscopy ("AP-XPS") equipment (technology that she later alleged belonged to KU and the U.S. government), she also stated that she "believe[d] it will come true in 2-3 years if no accident happens."  Def. Mot., Ex. 23 at 5.  Furthermore, when asked about the AP-XPS company during her interview, Student #1 said that she "does not know" if Defendant has a company in the PRC making AP-XPS equipment, but that "[Defendant] might have a website."  *Id.*, Ex. 35 at 2.  This is more than "no basis."  Regardless, even if these accusations had been included in the affidavit,

they would not have negated probable cause in light of the other corroborating evidence.

### 7.  Statement regarding the articles provided by Student #1 and anonymously

Paragraph 12 of the July 2019 affidavit stated, "[o]pen source reporting, some of which was provided by Student #1 as well as anonymously, corroborates many of the above-described complaints."  July 11, 2019 Aff. ¶ 12.  Defendant argues that the affidavit falsely stated that "some" of the open source reporting that corroborated the other evidence was "provided by Student #1 as well as anonymously," when, in fact, the three open source reports that the affidavits cited were provided by Student #1.  Def. Mot. at 19.  As a matter of factual accuracy, as with the tips, "some" of the open source reporting was provided by Student #1 and anonymously.  *See, e.g.*, *id.*, Ex. 17 at DOJ-00000021 (anonymous tip listing two websites).  In total, six different websites[17] and three published research articles were provided to KU and the FBI, and the information contained in those sources corroborated Student #1's accusation that Defendant was working at FZU.  The affidavit described three specific webpages as examples, but that was not an exhaustive list of the "[o]pen source reporting" that "corroborates many of" Student #1's complaints.  July 11, 2019 Aff. ¶ 12.

---

[17] The six webpages were: (1) *2017 Changjiang Scholars Suggested Candidate List*, http://news.sciencenet.cn/htmlnews/2019/1/399176.shtm (dated January 5, 2018); (2) *Secretary Chen Yong-zheng Visits Distinguished 'Yangtse River Scholar' Tao Feng at the Chemistry College*, http://fuzhou.xuexiaodaquan.com/news/2018/2016970.html (dated June 12, 2018); (3) *Good News! Pr. Tao Feng of Fuzhou University has been selected as a Distinguished Professor recommended candidate for the 2017 Changjiang Scholars Award Program*, https://freewechat.com/a/MzAxMzMyMDkzMA /2649334100/1 (dated Jan. 6, 2018); (4) *State Key Laboratory Academic Report: Near-atmospheric photoelectron spectrometer application and original position in catalytic research*, https://nengyuan.nxu.edu.cn/info/1045/1535.htm (dated Jan. 11, 2019); (5) *Salute to Our Teachers you are the Brightest Stars in the Night Sky – September 10 Fuzhou University Celebrating in Lecture Room of Library Congratulating 34 professors*, http://www.sohu.com/a/253293599_349424 (dated Sept. 11, 2018); and *Fuzhou University: Outstanding Talent Programs*, http://www.gaokeyan.com/university/details.php?uid=lll7&t=talent (undated).

Moreover, the affidavit expressly disavowed any "information or knowledge concerning the accuracy" of the webpages "beyond the fact that they were discovered during open source searches of the internet." *Id.* Even if the affidavit had stated that all of the open source reporting had come from Student #1, it would not have been a reasonable inference for the magistrate judge to disregard all of the open source reporting or conclude (as Defendant argues) that the webpages were fabricated, especially when some of the webpages included photos of PRC officials meeting with someone who appeared to be Defendant. *See Moses*, 965 F.3d at 1112-13 ("[O]ur cases hold that unsubstantiated inferences are not 'mandatory or automatic' in the *Franks* context."). Even if Student #1 were wholly incredible, the fact that the links to the websites came from Student #1 does not diminish what the affiant represented they were: multiple open source indications that Defendant had additional employment in China. *Cf.* Fed. R. Evid. 902 (some items of evidence "require no extrinsic evidence of authenticity in order to be admitted"). As with the other alleged misstatements identified by Defendant, this one is neither factually inaccurate nor material.

### 8.  Omission regarding Student #1's alleged "extortion" of Defendant

Lastly, Defendant argues that it was material for the affidavit to omit that Student #1 "had tried to extort Dr. Tao for hundreds of thousands of dollars." Def. Mot. at 20. This has been a theme of Defendant's since this prosecution was first brought. Defendant not only is wrong on the facts, but in the context of a *Franks* hearing, Student #1's motives in reporting Defendant are largely immaterial. *Cf. United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988) ("It would have to be a very naive magistrate who would suppose that a confidential informant would drop in off the street with . . . detailed evidence and not have an ulterior motive."). And to the extent that they are not, the affidavit disclosed Student #1's motivation and potential bias against

Defendant, stating that she had reported Defendant because she was angry with him over an authorship dispute. *See* July 11, 2019 Aff. at 5 n.2. The evidence presented by Defendant bears this out. On February 10, 2019, Student #1 told Defendant, "[i]f you are reluctant to give me a co-corresponding author to your next Chem Rev . . . please suggest a proper alternative to compensate my time contributed to your proposal." Def. Mot., Ex. 3 at DOJ-00127678. In response, Defendant wrote, "I will discuss with you how to compensate your time . . . ." *Id.* A few months later, on April 12, 2019, Defendant emailed Student #1 and wrote, "For your time you spent . . . we will pay you based on the time you spent. For helping editing the manuscript, we will also pay based on the time you spent. Please note me [sic] the time you spent and your account number so that we can pay you." *Id.*, Ex. 7 at DOJ-00146655. This looks like a negotiation.

Defendant also alleges that Student #1 "threaten[ed] to falsely report Dr. Tao as a 'tech spy' if he [did] not pay her hundreds of thousands of dollars." Def. Mot. at 2. In support, Defendant cites a June 4, 2019 email from Student #1 to Defendant written in Chinese where, according to the defense's translation, Student #1 wrote, "it seems that the term 'tech spy' is very popular nowadays. You should be careful. I have given you many chances and you didn't care. After a thing happens, any compensation will be out of date." *See id.*, Ex. 15 at 3.[18] But by June

---

[18] Defendant's Exhibit 15 is missing a preceding email in the chain from June 3, 2019, that provides necessary context. In the June 3 email, according to a machine translation, Student #1 wrote, "Mr. Tao, I'm really sorry. I learned that you did not keep your promise and that you were talking about me behind my back. I thought you were going to give up on this article and forget about it, but since you won't, let's see what the end result will be. I think even if KU is biased and wants this article to be accepted, they would know the fact that you have two units, right?" Defendant's Exhibit 6 (another email from Student #1 to Defendant) also is missing a paragraph in its translation which states, again according to a machine translation, "You should not blame others for not keeping your secret. Everyone has his or her own choice. Not everyone is free from the temptation of profit, and not everyone is willing to take the blame for others.

4, 2019, five tips regarding Defendant had already been submitted to KU and FBI.  And, as described above, Student #1's request for compensation was part of a larger conversation in which Defendant had *voluntarily agreed* to pay Student #1 for work she had already done.

Lastly, because the affidavit already disclosed that Student #1 had possible ulterior motives in reporting Defendant to the FBI, further disclosure of the details of her acrimonious relationship with him would not have negated probable cause.  *See Avery*, 295 F.3d at 1168 (disclosure "put[] the magistrate judge on notice that the confidential informant was not a model citizen"); *see also United States v. Hall*, 171 F.3d 1133, 1143 (8th Cir. 1999) ("We have rejected such contentions in the past, concluding, as a matter of law, that courts issuing warrants are aware of the possibility that a confidential informant may be seeking leniency in his or her own situation").

### B.  Defendant Has Not Offered Any Proof that the Alleged False Statements and Omissions Were Intentional or Reckless

Separate and apart from establishing either false statements or material omissions, to obtain a *Franks* hearing, Defendant must also make a "*substantial* showing" that the affiant acted intentionally or recklessly in including or omitting that information.  *Moses*, 965 F.3d at 1111 (emphasis in original).  A defendant's "attack must be more than conclusory and must be supported by more than a desire to cross-examine. . . . [A]llegations must be accompanied by an offer of proof."  *Franks*, 438 U.S. at 171.  "Regarding the affiant's mental state in making a false statement, the *Franks* standard is a high one."  *Roybal*, 46 F. Supp.3d at 1150.  "A reckless disregard for the truth exists when the affiant in fact entertained serious doubts as to the truth of

---

Ultimately, if you want people to know, you have to do it yourself."  If the Court orders a *Franks* hearing, the government respectfully requests that Defendant be ordered to provide certified translations of all documents (including *complete* email chains) that it intends to offer in support of its motion to suppress.

his allegations, . . . and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990).

Here, Defendant offers only unsupported assertions regarding the affiant's intent.  In the single paragraph that Defendant devotes to intent, Defendant argues in a conclusory fashion that because the affiant "knew the truth" about Student #1, he "deliberately chose to misrepresent and conceal these facts" about Student #1 "because he knew no reasonable magistrate judge would find probable [cause] based on Student #1's evidence and information."  Def. Mot. at 27.  But for many of the alleged omissions or misstatements, Defendant has not even alleged (let alone made a "substantial showing") that the affiant knew the underlying facts at the time he submitted the affidavits.  For example, Defendant recognizes that he has not presented any evidence that the affiant knew about the "extortion" June 6, 2019 email.  *See* Def. Mot. at 20 n.19 ("If the government possessed, but did not know about, the extortion email as of July 11, this was due to its own failing.").  Defendant argues that if the affiant did not know about the June 6, 2019 email, he *should* have.  But Defendant cites no authority for his view that a constructive knowledge standard should apply to *Franks* determinations.  And, indeed, applying such a standard would thwart the very purpose of *Franks*'s "substantial showing" requirement.  *See Moses*, 965 F.3d at 1111 ("The law cannot require a substantial showing of materiality at the same time as it forces a district court to simply infer it.").  Similarly, Defendant has offered no evidence that the affiant was aware of the metadata in the contract that Student #1 sent to KU, so his accusation that the affiant deliberately or recklessly omitted that information is meritless.

Importantly, Defendant neglects to mention that many aspects of the affidavits show that there was *no* intentional or reckless disregard of the truth.  For example, between the first and

second affidavits, footnote 2 was updated to clarify Student #1's statements regarding the contract's provenance. Footnote 7 in the August 19, 2019 affidavit corrected a minor error from the prior affidavit. Both affidavits stated that Student #1 reported Defendant because she was angry with him and that the affiant could not vouch for the accuracy of the open source webpages. And both affidavits included the standard caveat that they did not "set forth all of [the affiant's] knowledge about this matter." July 11, 2019 Aff. & Aug. 19, 2019 Aff. ¶ 3.

At most, Defendant has identified a few "innocent mistake[s] of fact" or examples of an officer reasonably misunderstanding "what events had transpired, causing the affiant to inadvertently include false information." *United States v. Troxel*, 564 F. Supp. 2d 1235, 1247 (D. Kan. 2008). But innocent error and inadvertence are not enough to make the "substantial showing" of intentionality or recklessness necessary for a *Franks* hearing. *See Franks*, 438 U.S. at 171; *United States v. Artez*, 389 F.3d 1106, 1116 (10th Cir. 2004) ("Allegations of negligence or innocent mistake are insufficient."); *Corral-Corral*, 899 F.2d at 933-34 (same); *United States v. Ross*, 920 F.2d 1530, 1534 (10th Cir. 1990) (same).[19] Thus, "sounds the death kneel of [Defendant's] request for an evidentiary hearing on his motion to suppress." *United States v. Stiffler*, 400 F. App'x 340, 344 (10th Cir. 2010).

## V. CONCLUSION

For the reasons stated above and in the government's Motion to Strike (Doc. 141),

---

[19] Citing to *Herrera*, Defendant argues in a footnote that even if he cannot satisfy *Franks*'s "substantial showing" requirement, he should still be granted an evidentiary hearing "to ensure not only that justice is done but that justice is seen to be done." Def Mot. at 23 n.23. But this quote from *Herrera* is inapposite and concerns the standard of review that the Tenth Circuit applied there. In *Herrera*, the Tenth Circuit recognized the uncontroversial legal rule that "[t]o win an evidentiary hearing to prove a *Franks* violation, a defendant *must* do more than allege a problem with the warrant," 782 F.3d at 573 (emphasis added). But the Tenth Circuit went on to hold that even if a defendant does not satisfy that standard, a district court does not abuse its discretion in nonetheless permitting an evidentiary hearing. *Id.* at 573-74.

Defendant's motion should be denied, and he should not be granted a *Franks* hearing.


Respectfully submitted,


*/s/ Adam P. Barry*
Adam P. Barry
Benjamin J. Hawk
National Security Division
U.S. Department of Justice


*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office
for the District of Kansas

**CERTIFICATE OF SERVICE**

I hereby certify that on the September 20, 2021, I caused the foregoing response to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
