**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 19-20052-JAR-JPO |
| | ) | |
| FENG TAO | ) | |
| a/k/a "Franklin Tao," | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION IN LIMINE #1:**
**TO EXCLUDE EVIDENCE ACCESSED BY GOVERNMENT INFORMANT**
**AND**
**FOR ADVERSE INFERENCE INSTRUCTION DUE TO**
**GOVERNMENT'S DELIBERATE DESTRUCTION OF EVIDENCE**

As Dr. Tao has recounted previously, this case began two years ago when a former international visiting scholar ("Government Informant") at the University of Kansas ("KU") tried to extort him for hundreds of thousands of dollars. When he refused to pay, she created fake email addresses, impersonated KU researchers who worked in Dr. Tao's lab, and fed lies to the FBI and KU, and claimed that Dr. Tao was a Chinese spy who stole intellectual property and secretly worked at a second university in China, Fuzhou University. She also provided materials to the FBI and KU in an effort to inculpate Dr. Tao, and she admitted on July 9, 2019, that she had hacked into Dr. Tao email account and grant proposal account to obtain evidence.[1]

On July 23, 2019, the FBI met with Government Informant in Berkeley, California, for an interview. During the interview, the FBI directed her to hack into an email account believed to be

---

[1] Dr. Tao's pending *Franks* Motion details how the FBI misrepresented and concealed information about Government Informant in order to obtain warrants to search Dr. Tao's email accounts, home, and office. *See Franks* Motion, ECF No. 127. Dr. Tao hereby incorporates by reference the Background and exhibits to his *Franks* Motion, and assumes the Court's familiarity with that motion and the facts therein.

Dr. Tao's Fuzhou University email address. Later in the interview, the FBI directed Government Informant to hack into the email account again, this time on an FBI laptop, and the FBI obtained the password so that they could hack into the account again later on their own time. After the interview, the FBI wiped the laptop—destroying exculpatory or potentially exculpatory evidence.

As demonstrated below, the Court should: (1) exclude emails that originated from the Fuzhou University email account because Government Informant had access and control over it and had a history of trying to extort Dr. Tao by fabricating evidence, rendering those emails unauthenticated and unreliable; and (2) provide an adverse-inference instruction to the jury regarding the evidence destroyed by the government.

## BACKGROUND

Special Agent Jeffery Carlson and Special Agent Angie Ng first met with Government Informant in Berkeley, California, on July 9, 2019. Prior to the interview, while using a fake email address and pretending to be a former researcher in Dr. Tao's lab (X.Z.), Government Informant had provided evidence to inculpate Dr. Tao. *See Franks* Motion at 5–10. Government Informant had also used a false identity to provide an unsigned employment contract between Fuzhou University and Dr. Tao to KU and the FBI. *Franks* Motion Ex. 21. During the July 9, 2019 interview, she stated that she obtained the unsigned employment contract between Fuzhou University and Dr. Tao from Dr. Tao's secretary. *Franks* Motion Ex. 35. This was a lie.

Following the interview, Government Informant admitted in an email to the FBI that she had hacked Dr. Tao's email to obtain the unsigned contract. She also admitted that she hacked a National Science Foundation of China account to obtain grant proposals. She stated:

> For the talk today, ***I have to admit that I lied*** in some of the items. … I do not know whether there are other person[s] reporting this issue or not. ***I reported it using the names of others***, such as [X.Z.], [L.N.], or [C.L.], via email or reported to FBI directly. I am sorry for my fault and I am sorry for making troubles to others. …

> *For the contract of Franklin, I downloaded it from his email address. Last year, he asked me to write proposals to apply to Chinese government. The account and password for proposal submission are the same as his email in Fuzhou University. Sometimes I login his email address and check some information*. …
> For his funding applications in Fuzhou University, *I downloaded it from his proposal submission account*, since last year when he asked me to write the proposal for him, he gave me the account and password.

*Franks* Motion Ex. 36 (emphases added). Thus, the FBI knew that Government Informant had hacked both accounts when it met with her two weeks later.

On July 23, 2019, Carlson, Ng, and Lampe of the FBI met with Government Informant at a coffee shop in Berkeley. They recorded the interview.

During the July 23, 2019 interview, the three FBI agents asked Government Informant to use her laptop to hack into the Fuzhou University email account believed to be Dr. Tao's (taofeng@fzu.edu.cn). The recording reflects the following conversation:

> **Carlson or Lampe:** Would that be in his Fuzhou email? Would that be in his Fuzhou email? In Tao's Fuzhou email? Would the people he reports to be in his email?
> **Government Informant:** You mean this person?
> **Ng:** Maybe, maybe if you log into his email, let him [Lampe] look at it, and he can see if there's anything interesting you might be able to see.
> **Government Informant:** Yeah. I logged in.
> **Ng:** Yeah. Let him, let him take a look.

Interview Recording, 56:30–56:36.[2]

The FBI agents then reviewed the hacked email account while asking Government Informant questions about its contents as they searched the account together:

> **Carlson or Lampe:** It's mostly in Chinese.

---

[2] The conversations from the interview reproduced here are based on a recording of the interview produced by the government and reflect the defense's current understanding as to who from the FBI said what. The defense can immediately provide a copy of the recording, which is more than two hours long, to the Court upon request. Apart from the recording, which the FBI apparently never transcribed, the FBI created only a three-sentence FD-302 of the interview, in which it stated that the interview occurred, that "[n]o investigative steps relevant to the investigation were taken as a result of the interview," and that the recording will be maintained in the files. Ex. 5 (FD-302 of the interview).

3

**Government Informant:** Yes.

**Carlson or Lampe:** [laughter] Yes.

**Ng:** There's a lot in Chinese. Yeah. Is there a lot of junk mail in there? Is there a lot of junk or not so much?

**Government Informant:** [inaudible] No, no junk email.

**Ng:** No junk emails?

**Government Informant:** Yeah, but maybe some emails he is not interested in.

**Ng:** Yeah. From what you can see, what is he mostly using that email for? What is he mostly using that email for? From what you can see.

**Carlson or Lampe:** What is he using this account for? Is he recruiting people with this account? Or is he using the SSW account to recruit?

**Government Informant:** You mean [inaudible].

**Ng:** Yeah. What is he using this account for?

**Carlson or Lampe:** Is it mostly for ordering parts?

**Government Informant:** Yeah. I think that [inaudible] some information from the university will go to this account and also if the university, he has to recruit students, the contact information also goes here. And, yeah, other recruitment and, yeah, uh, this one also comes here.

**Ng:** Oh. So he uses that account for communication with the business contracts. Yeah. That makes sense. So then they know that he's official at the university. [To Lampe, while he reviews the account:] You need a translator is what you need.

**Lampe:** I do.

Interview Recording, 1:00:33–1:03:45.

Later in the interview, the agents asked Government Informant to hack into the account again—this time on an FBI laptop, so that the agents could hack into the email account on their own after the interview:

**Ng:** [to Government Informant:] So, you know how you showed him [Lampe] Franklin's email, he couldn't read any of it. So can you log onto his computer so he can have his translator look at it.

**Government Informant:** I [inaudible]. [Logs in on FBI laptop].

**Carlson:** What else, Steve?

**Lampe:** Um.

**Ng:** Do you [Lampe] want – do you want the password [inaudible]? Once you log out, are you going to be able to log back on?

**Lampe:** I doubt it.

…

**Ng:** I can't, I'm, I can't download, I don't know how to download the Chinese so that we can review it on our computer. Do you know how to save a copy off line so that we can still see it. Because if not, the only other way – do you know how to do that?

**Government Informant:** I don't know either.

**Ng:** Then the other way would be, can you give him the password? So he can just log in when he has web access?

**Government Informant:** [Gives the password to the hacked Tao Fuzhou University email account to the agents, and Lampe writes it down]

**Ng:** [To Lampe:] Do you need to try it just to make sure it works? [inaudible] Just to make sure.

**Lampe:** [logs in] Thank you.

Interview Recording, 1:23:46–1:25:15, 1:52:13–1:54:00. Lampe also wrote down the username and password during the interview, which appear on his notes from the interview. Ex. 1 (Lampe notes from July 23, 2019, interview).[3]

Government Informant also provided eight documents to the FBI during the interview, which the FBI downloaded from her laptop to an FBI thumb drive. *See* Ex. 2 (May 13, 2020, email from Mattivi). Government Informant stated during the interview that she created a separate email address (an "@163.com" email) to recruit researchers to Fuzhou University when she had initially considered working there, Interview Recording, 14:29–15:30, and she stated that she drafted a failed research proposal for funding in China for Dr. Tao in 2018, which she said was poorly drafted because Dr. Tao was unsure if he would accept the offer from Fuzhou University when she wrote it in March 2018, Interview Recording, 1:13:58–1:15:48.[4] Government Informant either hacked the proposal submission account during the interview and provided the FBI with the proposals, or provided proposals that she had obtained from hacking the account in the past, and

---

[3] The government has strenuously objected to Dr. Tao's remote deposition of witnesses in China who, as the defense has represented, can establish that Dr. Tao never took a fulltime job at Fuzhou University because it claimed  that it lacked permission from the Chinese government to remotely collect evidence there. ECF No. 113. Those considerations appear not to have concerned the government when it sought evidence to support this prosecution.

[4] Although unclear from the recording, Government Informant also appeared to hack into a National Science Foundation of China account during the interview to download funding proposals there, or had done so before the interview, which she then provided to the government during and after the interview. She also appears to have provided a screenshot of the content to the FBI at one of the agent's request.

also provided a screenshot to the FBI. Interview Recording, 49:50–51:20. She stated that she was unaware of Dr. Tao receiving any funding in China. Interview Recording, 1:12:41–1:12:50. Following the interview, Government Informant emailed the FBI two "proposals" she had mentioned during the interview, one of which she said she "wrote for [Dr. Tao] last year," in 2018, and both of which she said failed. Ex. 3 (July 23, 2019 email from Government Informant to Carlson).

On May 13, 2020, the government made the following disclosure:

> We are also writing to note an exchange that occurred between [Government Informant] and the FBI during the recorded July 23rd interview. … After asking [Government Informant] about Mr. Tao's reporting relationships at Fuzhou University, *the agents asked her whether that information would be in Mr. Tao's Fuzhou University email account and suggested that she log in to the account, which she did on her own laptop*. … *Later, … the agents asked Ms. Liu to log in to the account on an FBI laptop so that the content could be translated after the interview.* Despite that request, however, the FBI did not access the account after the interview or otherwise receive, review, or translate its contents after the interview, and *the FBI laptop was wiped*.

Ex. 2 (emphasis added). The government stated that the government wiped the laptop "to avoid any potential litigation issues." Ex. 4 (June 4, 2020 email from government). When the defense asked for further information, the government refused to: (1) disclose when the laptop was wiped, (2) disclose who directed that the laptop be wiped, or (3) provide documentation regarding the wiping of the laptop. Ex. 4.

## LEGAL STANDARD

Motions in limine can "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. They also may save the parties time, effort and costs of preparing and presenting their cases." *Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 482 (D. Kan. 2001) (internal quotation marks and citations omitted). "The movant

has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Sav.*

*Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082 (D. Kan. 2000). "At trial, the court

may alter its limine ruling based on developments at trial or its sound judicial discretion." *Id.*

## ARGUMENT

I.   **THE COURT SHOULD EXCLUDE EVIDENCE OF EMAILS SENT FROM THE FUZHOU UNIVERSITY EMAIL ACCOUNT.**

"To satisfy the requirement of authenticating or identifying an item of evidence, the

proponent must produce evidence sufficient to support a finding that the item is what the proponent

claims it is." Fed. R. Evid. 901(a). This can include testimony from a witness with knowledge "that

an item is what it is claimed to be." *Id.* 901(b)(1). The Court should exclude from evidence any

emails from Dr. Tao's alleged Fuzhou University email account since that evidence cannot be

authenticated, and the evidence may have even been fabricated by Government Informant. Fed. R.

Evid. 901(a).

Government Informant admitted on July 9, 2019, that she hacked into Dr. Tao's Fuzhou

University email, and she confirmed she could hack into the email when she did so during the July

23, 2019, interview with the FBI. Interview Recording, 56:30–56:36, 1:00:33–1:03:45, 1:23:46–

1:25:15, 1:52:13–1:54:00. Given her history of falsifying email addresses to inculpate Dr. Tao and

submitting false reports to the FBI,[5] and her ability to access the Fuzhou University email account,

there is no reason to trust the authenticity of any emails from that account since Government

---

[5] As demonstrated in Dr. Tao's *Franks* Motion, Government Informant was bent on ruining Dr. Tao's life due to an authorship dispute she had with him, and she has repeatedly committed crimes to that end. To date, Government Informant has extorted Dr. Tao for money; admitted to stealing the identities of witnesses who worked in Dr. Tao's lab to submit false reports to the FBI; and, according to her own admission, hacked into email and grant proposal accounts to obtain documents that she could use to inculpate Dr. Tao. *See Franks* Motion at 2–14. Government Informant's conduct makes clear that she is willing to falsify and fabricate evidence, including by inventing email addresses, in order to inculpate Dr. Tao. *See Franks Motion* at 5–11, 14 .

Informant had both the means, the motive, and the history of fabricating evidence in order to inculpate Dr. Tao. *See Franks* Motion at 14, 17–18.[6] The government will therefore be unable to authenticate any emails from the Fuzhou Email account and show that they came from Dr. Tao, rather than Government Informant.[7]

The Court should also exclude such evidence under Rule 403 because it is inherently unreliable, and its probative value, if any, "is substantially outweighed by … unfair prejudice [and] confusing the issues." Fed. R. Evid. 403. While these unreliable emails lack probative value, they would be extremely prejudicial and could confuse the jury. The jury, when reviewing and weighing the evidence, is unlikely to evaluate and properly discount the evidence in light of Government Informant's repeated hacking into the email account, complex extortion scheme, identity theft, and propensity for fabricating evidence.[8]

## II.   THE COURT SHOULD GIVE AN ADVERSE INFERENCE INSTRUCTION RELATING TO THE GOVERNMENT'S DESTRUCTION OF EVIDENCE.

"The general rule is that bad faith destruction of [evidence] relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Courts give adverse inference instructions in criminal cases where the government's

---

[6] In fact, Government Informant continued to try to frame Dr. Tao even after he was indicted, stating that she planned to "set up a new case" against him, and she even threatened defense counsel. *See* Ex. 6 (collecting examples).

[7] The government has indicated that Government Informant is outside the country, and that it does not intend to call her as a witness at trial.

[8] The defense has not moved to exclude evidence obtained directly from Government Informant—despite its obvious authenticity and reliability issues—based on the government's representation that because it will not be calling Government Informant as a witness at trial, it would only seek to introduce evidence obtained directly from her via another authenticating witness. If this position changes, the defense reserves the right to move to exclude that evidence for the reasons stated in this motion.

spoliation of evidence is the result of either negligence or bad faith, and only some courts require prejudice to the opposing party. *See United States v. Hannah*, No. 18-CR-30071, 2021 WL 3173571, at *10 (C.D. Ill. July 27, 2021) (collecting cases applying each standard); *e.g.*, *United States v. Suarez*, Criminal Action No. 09–932 (JLL), 2010 WL 4226524, at *10 (D.N.J. Oct. 21, 2010) (considering culpability of party accused of spoliation and prejudice to the other party, and providing adverse-inference instruction where government did not preserve certain Jencks material).

The government wiped the FBI laptop for a bad faith reason. The government admitted that it wiped the FBI laptop used to hack into the email address believed to be Dr. Tao's so that it could "avoid any potential litigation issues," thus destroying evidence in order to gain a litigation advantage or avoid a litigation disadvantage. Ex. 4. Had the government created a documented mitigation plan, it could have stored the laptop in such a way that it could not be accessed by the FBI case agents, and then notify the defense post-indictment about the warrantless hack. Instead, the defense was deprived of the evidence.

The destroyed evidence had exculpatory value, or potentially exculpatory value, that the defense may have wanted to use at trial. This is evident from the fact that Government Informant and the FBI agents reviewed the email account together during a two-hour interview but found no evidence of wrongdoing or even of interest in the email account. The government apparently saw no evidence in the email account that, as alleged, Dr. Tao worked fulltime at Fuzhou University or had obtained funding from the Chinese government. They did not even discover evidence that Dr. Tao owned or used the account. Thus, the email account viewed by the FBI was exculpatory given what the FBI did *not* see in the account—evidence to support its charges. And the defense

could have cross-examined the agents at trial about the innocuous emails the agents saw, if the defense had that evidence.

In addition, if the defense could have reviewed the email account obtained by the FBI prior to the wipe—which the FBI had the benefit of reviewing—the defense might have been able to discover additional exculpatory evidence. For instance, the earliest email in the account could have been dated well after Dr. Tao allegedly took a fulltime job at Fuzhou University, suggesting that the email account is inauthentic, not used by Dr. Tao, and possibly a fabrication by Government Informant or by others seeking to use Dr. Tao's name to obtain funding. If the email account did not show regular email traffic—daily emails sent and received from the account reflecting ongoing work at Fuzhou University—this also would indicate that the account was not a real account used by Dr. Tao as part of a fulltime job at Fuzhou University. This seems likely, given Government Informant's observation during the July 23, 2019, interview that the account contained emails that would be of no interest to Dr. Tao. Interview Recording, 1:00:33–1:03:45.

To remedy the government's bad faith destruction of evidence, the Court should provide the jury with an instruction the first time that an email purportedly involving Dr. Tao's Fuzhou University email address is referenced during the government's case-in-chief. The instruction, which the defense can draft and submit for the Court's review prior to trial, should inform the jury of the government's warrantless hack and improper wipe of the FBI laptop, despite being relevant to the case, and instruct the jury that it should (or, at a minimum, that it may) infer from the wipe of the FBI laptop that the evidence in the Fuzhou University email account showed that Dr. Tao did not use the account. The Court should repeat this instruction when it gives other jury instructions following the close of evidence. This will restore fairness to the trial notwithstanding the government's destruction of exculpatory or potentially exculpatory evidence.

## **CONCLUSION**

The Court should not permit Dr. Tao to be convicted based on unreliable, unauthenticated emails sent from an account repeatedly accessed by Government Informant as part of her scheme to extort Dr. Tao for hundreds of thousands of dollars. The Court should also provide an adverse inference instruction to the jury to account for the potentially exculpatory evidence destroyed by the government when it wiped the FBI laptop used during the July 23, 2019 hack.

Dated:  September 24, 2021                                   Respectfully submitted,

                                          /s/ Thomas H. Johnson
                                          Thomas H. Johnson #13688
                                          Petefish, Immel, Hird, Johnson,
                                          Leibold & Sloan, LLP
                                          842 Louisiana
                                          Lawrence, KS 66044
                                          Tel: (785) 843-0450
                                          Fax: (785) 843-0407
                                          tjohnson@petefishlaw.com

                                          Peter Zeidenberg
                                          Michael F. Dearington
                                          Laura Zell
                                          ARENT FOX LLP
                                          1717 K Street, NW
                                          Washington, DC 20006
                                          Tel: (202) 857-6000
                                          Fax: (202) 857-6395
                                          Peter.Zeidenberg@arentfox.com
                                          Michael.Dearington@arentfox.com
                                          Laura.Zell@arentfox.com

                                          *Attorneys for Defendant Franklin Tao*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 24th day of September, 2021, I electronically filed the

foregoing Motion in Limine and exhibits with the Clerk of the Court using the CM/ECF system.

<div style="margin-left: 50%;">
/s/ Thomas H. Johnson
Thomas H. Johnson
</div>