UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>            )<br>     Plaintiff,    )<br>  v.         )     Case No. 19-20052-JAR-JPO<br>            )<br>FENG TAO      )<br>  a/k/a "Franklin Tao,"   )<br>            )<br>     Defendant.    ) | |

**MOTION IN LIMINE #4:
TO EXCLUDE
<u>INADMISSIBLE EXPERT TESTIMONY</u>**

**<u>INTRODUCTION</u>**

The government made Rule 16(a)(1)(G) disclosures for eight proposed expert witnesses in this case. Dr. Tao's Motion in Limine #2 seeks to exclude the testimony of the government's China expert, Glenn Tiffert. In contrast, this motion seeks to exclude five other proposed experts: Brian Koechner, Morgan Becker, Joshua Clevenger, Steven Schmidt, and Dr. Rebecca Keiser.

The Court should exclude these witnesses from serving as experts because their disclosures are deficient, as they do not summarize their opinions or the bases for their opinions. The Court should also exclude Dr. Keiser as an expert on the subject of the threat of foreign government interference and talent plans because she is unqualified to serve as an expert on this topic, and the Court should exclude her testimony as to all topics under Rule 403 since she represents an alleged victim in the case.

**<u>LEGAL STANDARD</u>**

Rule 16(a)(1)(G) requires that the government "give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal

1

Rules of Evidence during its case-in-chief at trial," and "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). These disclosures enable the defendant to "determine whether in fact the witness is an expert within the definition of Federal Rule of Evidence 702." *Id.* advisory committee notes to 1993 amend. They also "permit more complete pretrial preparation" by the defense. *Id.* And, "perhaps most important," they provide the defense with a "summary of the bases of the expert's opinion." *Id.* "If a party fails to comply with this rule, the court may: … (C) prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2).

## ARGUMENT

**I.   THE COURT SHOULD EXCLUDE EXPERT TESTIMONY FROM THE FIVE PROPOSED EXPERTS WHOSE DISCLOSURES ARE DEFICIENT.**

The government's expert disclosures for Koechner, Becker, Clevenger, Schmidt, and Keiser flout Rule 16(a)(1)(G)'s requirements. *See* Ex. 1 (Koechner, Becker, Clevenger, and Schmidt disclosures); Ex. 2 (Keiser disclosures). The disclosures merely list topics that the experts may opine about and provide *curricula vitae* for each. *See, e.g.*, Ex. 1 (Koechner and Becker "testimony may involve [their] technical and specialized knowledge regarding the examination and analysis of financial records"; Clevenger and Schmidt "testimony may involve [their] technical and specialized knowledge regarding the examination of computers and electronic evidence"); Ex. 2 (Keiser testimony "will relate to the following topics…."). None of these disclosures includes "a written summary of any testimony" or "describe[s] the witness's opinions, the bases and reasons for those opinions." Fed. R. Crim. P. 16(a)(1)(G). This plainly violates Rule 16(a)(1)(G).

The Court should exclude these witnesses from testifying as experts due to the deficiency of their disclosures. *See, e.g.*, *United States v. Jenkins*, No. 3:09-CR-42, 2009 WL 3152189, at *2

2

(E.D. Tenn. Sept. 28, 2009) ("[A] general statement of intent to call an expert in a certain field falls well short of the requirements of Rule 16."). These deficiencies prevent the defense from determining "whether in fact the witness is an expert" qualified to provide the proffered opinions, because the defense is unaware of what those opinions are. Fed. R. Crim. P. 16(a)(1)(G), advisory committee notes to 1993 amend. And without knowing the "bases and reasons for those opinions," the defense is unable to test whether the proposed experts' "experience leads to the conclusion[s] reached, why that experience is a sufficient basis for the opinion[s], and how the experience is reliably applied to the facts." *United States v. Nacchio*, 555 F.3d 1234, 1257 (10th Cir. 2009) (en banc). The defense is also unable to meaningfully prepare for cross examination of these witnesses at trial. Fed. R. Crim. P. 16(a)(1)(G), advisory committee notes to 1993 amend.; *see also United States v. Cervantes*, No. CR 12-792 YGR, 2015 WL 7734281, at *2 (N.D. Cal. Dec. 1, 2015) ("As other courts have noted, the Advisory Committee Note to the 1993 Amendment of Rule 16 indicated 'that the bases and reasons must be sufficient to allow counsel to frame a *Daubert* motion (or other motion in limine), to prepare for cross examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony.")

The Court should therefore exclude all five of these witnesses from testifying as experts due to the government's noncompliance with Rule 16(a)(1)(G). *See* Fed. R. Crim. P. 16(d)(2) ("If a party fails to comply with this rule, the court may: … (C) prohibit that party from introducing the undisclosed evidence."). Any other sanction would not account for the government's deliberate disregard of Rule 16(a)(1)(G)'s requirements,[1] or the prejudice to the defense if it must prepare a

---

[1] Any subsequent disclosure would particularly prejudice the defense, because it will have occurred after the motions in limine deadline. Notably, the defense informed the government that the disclosures were deficient and provided an opportunity for the government to cure before the motions in limine deadline, but the government declined.

3

*Daubert* motion or motion in limine based on any supplemental disclosure close to the start of trial. *See United States v. Baca*, No. CR 16-1613 JB, 2018 WL 6602216, at *9 (D.N.M. Dec. 17, 2018) ("In selecting a proper sanction, a court should typically consider: (1) the reasons the government delayed producing requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance.").

## II.   THE COURT SHOULD EXCLUDE EXPERT TESTIMONY OF DR. KEISER FOR TWO ADDITIONAL REASONS.

The Court should exclude Dr. Keiser's expert testimony for two additional reasons. **First,** the Court should also exclude Dr. Keiser from testifying as an expert as to "the threat of foreign government interference to NSF research security and the U.S. science and engineering enterprise; in particular, certain provisions contained with some foreign talent recruitment program agreements." Ex. 2.

Dr. Keiser is not qualified to testify as an expert on these matters. She has no advanced degrees related to this topic, she has not had a lengthy career focused on this topic, and she has not published any peer-reviewed papers on this topic.

Dr. Keiser's position for the last 18 months as "Chief of Research Security Strategy and Policy," a newly minted position at NSF, also does not qualify her as an expert on this topic. Ex. 2. While her current role may concern the threat of foreign government interference or talent plans, it is apparently not a focus, as her *curriculum vitae* makes clear that she is a research security generalist who provides "policy guidance on *all* aspects of research security strategy." Ex. 2 (emphasis added). Any experience she does have with the threat of foreign government interference and talent plans is apparently not substantial enough to have been included in her five-page, single-spaced resume. And her current role has only given her 18 months of experience,

4

which is not significant enough to be an expert, especially if her portfolio has a much broader compass than this particular issue. Ex. 2.

Critically, any experience Dr. Keiser has gained in her current position over the past 18 months also *post-dates* the relevant conduct in this case, as Dr. Keiser accepted her new position after this case was already indicted. Ex. 2. Thus, she is not qualified to opine on threat of foreign government interference and talent plans *as they existed* when Dr. Tao allegedly concealed information from NSF, since she was an NSF policy generalist during the relevant time periods in this case. Ex. 2.[2] Any experience Dr. Keiser has gained over the past 18 months is therefore irrelevant to Dr. Tao's case.[3] Thus, the Court should exclude her as an expert on this topic, or at a minimum hold a *Daubert* hearing.

Second, the Court should exclude Dr. Keiser's expert testimony on all topics because her expert testimony would be unfairly prejudicial and would have minimal, if any, probative value. The probative value of Dr. Keiser's expert testimony is minimal given her lack of expertise. Her expert testimony would be unfairly prejudicial because Dr. Keiser has an extraordinary bias in this case. Not only is she a high-level official at NSF—an alleged victim in this case—but her current role at NSF relates to stamping out research security violations like the kind Dr. Tao is accused of.

---

[2] Dr. Keiser's resume states that she was Head of the Office of International Science and Engineering at NSF from April 2015 to March 2021. Ex. 2. Her LinkedIn profile, however, shows that she switched from this position in February 2020. Rebecca Spyke Keiser, Linkedin, https://www.linkedin.com/in/rebecca-spyke-keiser-94698913 (last visited Sept. 24, 2021). In either event, her research security role began after this case was indicted.

[3] After the defense alerted the government to Dr. Keiser's deficient expert disclosure and lack of expertise, the government provided a link to congressional testimony she gave in November 2019 about "Securing the U.S. Research Enterprise from China's Talent Recruitment Plans." Permanent Subcomm. on Investigations of the S. Comm. on Homeland Sec. and Gov't Aff. (Nov. 19, 2019) https://www.hsgac.senate.gov/imo/media/doc/Keiser%20Testimony.pdf. This testimony, even if prepared by Dr. Keiser based on her own personal experience, however, also post-dates the alleged conduct in this case, and it does not render her an expert.

Thus, she is not just biased, she is *opposed* to Dr. Tao in this case. Dr. Tao's conviction would be a credential for her and a career success. It would be difficult for the defense to fully expose this degree of bias to the jury. The jury may also be confused as to which testimony she gives is lay testimony versus expert testimony, and the jury may give her lay testimony undue weight because she is cloaked as an expert. In short, the Court should not permit a fact witness, employed by a victim agency, and whose career stands to benefit from a conviction, be presented to the jury as an expert on matters embraced by the case.

## **CONCLUSION**

For the foregoing reasons, the Court should exclude as experts Brian Koechner, Morgan Becker, Joshua Clevenger, Steven Schmidt, and Dr. Rebecca Keiser.

Dated:  September 24, 2021

Respectfully submitted,

/s/ Thomas H. Johnson
Thomas H. Johnson #13688
Petefish, Immel, Hird, Johnson,
Leibold & Sloan, LLP
842 Louisiana
Lawrence, KS 66044
Tel: (785) 843-0450
Fax: (785) 843-0407
tjohnson@petefishlaw.com

Peter Zeidenberg
Michael F. Dearington
Laura Zell
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Peter.Zeidenberg@arentfox.com
Michael.Dearington@arentfox.com
Laura.Zell@arentfox.com

*Attorneys for Defendant Franklin Tao*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2021, I electronically filed the foregoing Motion in Limine and exhibits with the Clerk of the Court using the CM/ECF system.

/s/ Thomas H. Johnson
Thomas H. Johnson