# UNITED STATES DISTRICT COURT
## District of Kansas

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                        Case No.  **19-20052-01-JAR**

FENG TAO,

        Defendant.

## GOVERNMENT'S OMNIBUS MOTION *IN LIMINE*

The government anticipates that Defendant may attempt to introduce information extraneous to his legal arguments at trial to confuse the issues and invite jury nullification. Accordingly, the United States of America, by and through undersigned counsel, hereby respectfully moves *in limine* to exclude irrelevant and unfairly prejudicial evidence.

As the Court is well aware, Defendant is charged with wire fraud and false statements related to his scheme to defraud his employer and the U.S. government. The charges allege straightforward crimes that fall within the heartland of traditional money and property fraud. But that has not prevented Defendant from introducing superfluous information in his briefs to push a false narrative about this prosecution. Nor has it prevented him from seeking to put others on trial to distract from the core issue before the Court and ultimately the jury—his own guilt. Of course, Defendant is entitled to present his defense at trial, but he is bound by the law and evidence.

As discussed herein, the government respectfully moves the Court to preclude Defendant from offering the following improper defenses, and irrelevant and unfairly prejudicial arguments, during any phase of the trial, including jury selection, opening statements, examination of witnesses (including Defendant, if he elects to testify), and summation:

1) Defendant is the victim of an unjust government dragnet;

2) The government sought to catch a spy and settled on fraud charges;

3) Defendant is the victim of selective prosecution;

4) "Student #1"[1] is to blame for Defendant's indictment; and

5) Defendant faces imprisonment and has suffered other consequences.

## I.    Legal Standard

It is axiomatic that only relevant evidence is admissible at trial. Fed. R. Evid. 402. And evidence is relevant only if it tends to make a fact of consequence more or less probable. Fed. R. Evid. 401. Even when evidence is relevant, however, it may still be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403.

Questions of relevancy and unfair prejudice under the Rules of Evidence often overlap with the issue of jury nullification. *See, e.g. United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) ("Defendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law."); *United States v. Warwick*, 2017 WL 5027295, at *2 (D.N.M. Oct. 30, 2017) ("[B]ecause Defendant's belief regarding the law is irrelevant and because it would be introduced for the improper purpose of assisting jury

---

[1] Student #1 has been referred to as an informant and tipster, as well as her true name, at various times.

2

nullification, it should be excluded under Federal Rule of Evidence 403 because its (non-existent) probative value is substantially outweighed by its unfair prejudicial value, it would be likely to confuse the issues, and it would be likely to mislead the jury."). "Jury nullification occurs when a jury ignores the evidence and the court's instructions on the law and acquits a criminal defendant whom the government has proven guilty beyond a reasonable doubt." *United States v. Mandell*, No. 12 CR 842, 2014 WL 287520 (N.D. Ill. Jan. 27, 2014) ("[J]ury nullification is 'a legitimate concern of prosecutors because acquittals cannot be appealed.'") (quoting *United States v. Mcknight*, 671 F.3d 664, 665 (7th Cir.2012)).

Courts of appeal are unanimous that, "[w]hile . . . a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath." *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir.1983); *see also United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016) ("[A] criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law."); *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) ("[Jury nullification] is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."); *United States v. Gonzalez*, 596 F.3d 1228, 1237 (10th Cir. 2010) (quoting *Trujillo*, 714 F.2d at 106; *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (noting that there is "no right to jury nullification.") (citing *Thomas*, 116 F.3d at 615); *United States v. Adame*, No. 1:20-CR-01861 KWR, 2021 WL 65507 (D.N.M. Jan. 7, 2021) (rejecting defendant's request "that he be allowed to inform jurors that they can return a verdict of not guilty if they find [him] guilty but believe conviction to be unjust").

Because the law is crystal clear that jury nullification arguments are improper and impermissible, courts regularly grant motions *in limine* prohibiting defendants from advancing

such arguments and introducing evidence intended to provoke the jury to disregard the law. *See, e.g.*, *United States v. Thompson*, No. 99-41007, 2001 WL 498430, at *16 (5th Cir. Apr. 9, 2011) (unpublished) (affirming decision to grant motion *in limine* preventing jury nullification arguments because "the right to make closing argument does not include the right to have counsel make an improper argument"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[A] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Warwick*, No. 16-CR-4572 MCA, 2017 WL 5027295 (D.N.M., Oct. 30, 2017) (granting government's motion to preclude the defense from presenting evidence that the defendant believes that the Second Amendment supersedes 18 U.S.C. § 922(g), rendering the statute unconstitutional); *United States v. Reulet*, No. 14-40005-DDC, 2016 WL 126355, *5 (D. Kan. Jan. 11, 2016) (granting "the government's motion and prohibit[ing] defendants from presenting any irrelevant evidence intended to provoke the jury to disregard the law, or any evidence or argument urging jury nullification"); *United States v. Smith*, Crim. No. 08-00389-WS, 2009 WL 692149, at *4 n.3 (S.D. Ala. Mar. 13, 2009) (granting motion *in limine* and stating "[a]ny effort by [the defendant] at trial to encourage or solicit jury nullification would be improper"); *United States v. Schneider*, No. CR 07-10234-MLB, 2009 WL 10645219, at *1 (D. Kan. Jan. 28, 2009) (ruling that Defendants will not attempt to introduce jury nullification evidence or arguments).

## II.    Motions *in Limine*

### 1.    Motion *in Limine* No. 1: The Court Should Preclude Defendant from Offering an Improper Defense that He Is the Victim of an Unjust Government Dragnet

In his motion to dismiss, which the Court rightly denied, Defendant portrayed himself as

the victim of the Department of Justice's China Initiative.[2] (Doc. 82). The China Initiative, however, has no bearing whatsoever on Defendant's guilt or innocence. Defendant's ploy to focus on the China Initiative was, and remains, an obvious distraction from the charges in this case and the issues before the Court. At trial, it would further waste time and confuse the issues. Moreover, any defense, argument, or suggestion, whether direct or indirect, that the jury should find Defendant not guilty because "[he] was swept up in the China Initiative dragnet even though he is not alleged to have engaged in any of the activities the initiative was meant to punish and deter" (Doc. 82 at 1) smacks of jury nullification. The Department of Justice's strategic priorities and Defendant's views on that topic are not proper issues for the jury to consider. Thus, the Court should prohibit Defendant from referencing the China Initiative by name or otherwise in his opening or at any other time during trial.

2.    **Motion *in Limine* No. 2: The Court Should Preclude Defendant from Offering an Improper Defense that the Government Settled on Fraud Charges**

As part of his China Initiative claims, Defendant has noted that "[h]e is not alleged to have stolen trade secrets; or committed economic espionage" (Doc. 82 at 1). That is correct—he is charged with a money and property fraud scheme. Any uncharged crimes are irrelevant, and the Court should prohibit Defendant from referencing them in any way, including by arguing or suggesting, whether directly or indirectly, that the jury should acquit him because he was not charged with, or there is no evidence to prove, other federal offenses. For example, it would be improper for Defendant to argue that the government settled on fraud charges because it could not prove economic espionage. More colloquially, it would be improper to argue that the

---

[2] The Department of Justice's China Initiative reflects the strategic priority of countering national security threats from the People's Republic of China government.

government wanted a "spy" and settled on Defendant.[3] At bottom, the lack of evidence to prove uncharged crimes, coupled with the government's exercise of prosecutorial discretion to charge crimes that can be proven beyond a reasonable doubt, is not a viable defense at trial. The purpose of presenting such an irrelevant and unfairly prejudicial argument to the jury is jury nullification.

### 3. Motion *in Limine* No. 3: The Court Should Preclude Defendant from Offering an Improper Selective Prosecution Defense

Defendant never raised a selective prosecution claim in this case, and for good reason, because such a claim is meritless.[4] Defendant cannot now raise that legal claim for the first time with the jury. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also United States v. Bryant*, 5 F.3d 474, 476 (10th Cir. 1993) (finding that defendant's selective prosecution claim at trial was untimely and therefore waived); *United States v. Abboud*, 438 F.3d 554, 579-80 (6th Cir. 2006) ("The defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury."); *cf. United States v. Deberry*, 430 F.3d 1294 (10th Cir. 2005) ("[J]udicial review of prosecutorial decisions can 'chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement

---

[3] Defendant surely would cry foul if the government attempted to inject the word "spy" into the trial or otherwise referenced uncharged crimes absent a 404(b) ruling. Indeed, Defendant took issue with the simple fact that the FBI case agent was correctly identified to the grand jury as being assigned to a Counterintelligence Squad (Doc. 83).

[4] Defendant certainly had the opportunity to raise such a claim in August 2020 when various organizations and individuals filed a motion for leave to enter their appearances as *amici curiae* and to file a brief supporting Defendant's motion to dismiss (Doc. 86). The *amicus* brief appeared to have been written to support a selective prosecution claim, which Defendant had not raised.

policy.") (quoting *Armstrong*, 456 U.S. at 465). Nor should Defendant be permitted to backdoor

such a claim by arguing or suggesting, whether directly or indirectly, that the decision to charge

him with wire fraud and false statements was motived by a discriminatory purpose or had a

discriminatory effect. *See Bryant*, 5 F.3d at 476 (affirming trial court's decision to prohibit cross-

examination regarding racial bias).

4.    **Motion *in Limine* No. 4: The Court Should Preclude Defendant from Offering an Improper Defense of Blaming Student #1**

At every stage of these proceedings, Defendant has attempted to make this case about

Student #1, portraying himself as a victim of her alleged attempts "to extort [him] for hundreds

of thousands of dollars" and her "unlikely partnership" with the FBI (Doc. 127). Despite

Defendant's characterizations, Student #1's role in this case was limited and straightforward: she

provided the University of Kansas (KU) and FBI with information from April to June of 2019

and was then interviewed by the FBI twice in July 2019. The FBI then exchanged several emails

with her. The government has not communicated with Student #1 for a significant period of time

and does not intend to call Student #1 at trial. While her information may have contributed to the

initiation of the investigation, the FBI thereafter independently developed evidence to prove

Defendant's guilt beyond a reasonable doubt.[5]

Defendant first offered his allegations about Student #1 in his premature November 2019

motion to dismiss (Doc. 30). The fact that the information about Student #1 was wholly

irrelevant to the motion itself did not stop Defendant from including it and openly identifying her

and her personal details. Most recently, Defendant repeated those same claims in his untimely

---

[5] Notably, the evidence also corroborates Student #1's information. Whatever biases and motivations she may have had to report Defendant to KU and the FBI, the majority of the information she provided was ultimately verified.

motion to suppress (Doc. 127). And, at various times during the pendency of this prosecution, Defendant, through counsel, has repeated those same claims—that Student #1 sought to extort and blackmail Defendant because she did not get appropriate credit in article acknowledgements—to the government for various reasons. In fact, Defendant has taken his allegations one step further in conversations with the government, alleging that Student #1 had motive and opportunity to "frame" Defendant as a "Chinese spy" and that she committed numerous felonies to do so. Given Defendant's focus on Student #1 for the past two years, the government fully anticipates that Defendant is planning to make his own trial all about Student #1 to distract the jury, waste time, and confuse the issues.

This case is plainly not about Student #1. The Court should reject any attempt by Defendant to create a sideshow by putting her on trial for uncharged conduct or claiming that she "framed" him without any evidence to support that claim. Whether Student #1 committed a crime or not is entirely irrelevant to the charges against Defendant. Moreover, as noted above, the government does not know her whereabouts and does not intend to call her as a witness. Her credibility, therefore, is not at issue to the extent these topics would constitute proper cross-examination, which the government does not concede they would.

In sum, Student #1 is not relevant to this prosecution other than the fact that she provided some information that was later proven to be true. A defense blaming her for the fact that the FBI developed independent evidence to charge Defendant with wire fraud and false statements would be improper and a blatant attempt to garner sympathy to invite jury nullification.

5.    **Motion *in Limine* No. 5: The Court Should Preclude Defendant from Referencing Sentencing and Other Consequences**

In his motion to dismiss (Doc. 82), Defendant claimed that, "[i]n a breathtaking example of prosecutorial overreach, the government has contrived a 10-count Indictment." He further

noted for the Court that the charges could potentially subject him to "decades in prison." While a reference to sentencing may or not have been appropriate for a motion to dismiss, it is certainly not appropriate for the jury to consider.

The Supreme Court has recognized that "a jury has no sentencing function," and "it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573,579 (1994) (internal quotation marks omitted). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task." *Id*; *see also* Tenth Circuit Pattern Instr. 1.20 ("If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict."). The Tenth Circuit has further recognized that "presenting information to the jury about possible sentencing is prejudicial." *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980). Thus, "[u]nless a statute specifically requires jury participation in determining punishment, the jury shall not be informed of the possible penalties." *United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir. 1991), *abrogated on other grounds by United States v. Wacker*, 72 F.3d 1453 (10th Cir. 1996).

Impermissible references to punishment could be overt; for example, "The defendant is facing a prison term if convicted." But such references could also be subtler; for example, that "the Defendant is facing a lot of time," "the case has serious consequences for the Defendant," "the Defendant's liberty is at stake in this trial," "this employment dispute should have been resolved by human resources, not with the threat of jail time," or "your decision will have consequences for a long time to come." Once the jury hears anything about punishment or other consequences, the bell simply cannot be unrung or the damage neutralized by a curative instruction. Thus, the Court should preclude Defendant from referencing punishment in any way

or otherwise inviting jury nullification as it relates to the consequences of a criminal conviction.

Moreover, the Court should preclude Defendant from arguing or suggesting, whether directly or

indirectly, that the jury should acquit him because he has already suffered in some way as a

result of the indictment and the length of these proceedings, which have been ongoing for two

years for reasons beyond the control of the government.

Respectfully submitted,

*/s/ Benjamin J. Hawk*
Benjamin J. Hawk
Adam P. Barry
Trial Attorneys
National Security Division
U.S. Department of Justice

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of September, 2021, I caused the foregoing response to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas

11