UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 19-20052-JAR-JPO |
| ) | |
| FENG TAO ) | |
| a/k/a "Franklin Tao," ) | |
| ) | |
| Defendant. ) | |

**MOTION IN LIMINE #2:
TO EXCLUDE EVIDENCE REGARDING CHINA, THE CCP, TALENT PLANS, AND
INTELLECTUAL PROPERTY THEFT
AND TO EXCLUDE OR HOLD A *DAUBERT* HEARING AS TO
PROPOSED EXPERT TESTIMONY OF GLENN TIFFERT**

The government charged Dr. Tao with making false statements and defrauding the University of Kansas ("KU"), the National Science Foundation (NSF), and the Department of Energy (DOE) by allegedly taking a second job as a fulltime professor at Fuzhou University but failing to disclose the job in his Conflict of Interest (COI) forms and grant applications.

Although this is a nondisclosure fraud case, the government seeks to convict Dr. Tao based on the conduct of his native country of China. The government intends to introduce expert testimony and other evidence regarding the Chinese government's economic and national security goals, as well as its use of talent plans to steal intellectual property from the West and achieve those goals. This evidence is irrelevant, including because Dr. Tao's brand of research is meant to be openly published, not to create technology or support China's economic or national security goals, and there is no evidence to the contrary. Dr. Tao is also not accused of stealing intellectual property. Yet this type of evidence is highly prejudicial. During a worldwide COVID-19 pandemic traced to China and a years-long Trade War, reports of growing anti-Asian discrimination and

1

xenophobia in this country have sharply increased in the last two years. Evidence of an ascendant China and its underhanded tactics would create a grave danger that a juror would vote to convict partly based on ill will and anger toward China, or based on confusion over whether Dr. Tao is accused of intellectual property theft—rather than whether Dr. Tao committed fraud or made false statements.

The government's method of introducing this prejudicial evidence is also flawed. The government intends to call Glenn Tiffert as an expert who would opine about the Chinese government and its development goals and industrial policies, talent plans, and academia, even though the government has disclosed nothing that would qualify Mr. Tiffert as an expert on these topics, let alone that show that his experience supports his opinions. The Court should therefore exclude this unreliable evidence.

For these reasons, Dr. Tao respectfully requests that the Court: (1) exclude evidence and argument regarding the Chinese government or its goals, the Communist Party of China (CPC), talent plans, and intellectual property theft; (2) exclude evidence or argument that Dr. Tao sought to benefit China or the PRC; and (3) exercise its gatekeeping function by excluding the irrelevant, unreliable, and highly prejudicial testimony of Glenn Tiffert, the government's proposed China expert, or at a minimum hold a *Daubert* hearing.

## ARGUMENT

**I. THE COURT SHOULD EXCLUDE EVIDENCE, ALLEGATIONS, AND ARGUMENT REGARDING THE CHINESE GOVERNMENT OR ITS GOALS, THE CPC, TALENT PLANS, AND CHINA'S THEFT OF INTELLECTUAL PROPERTY.**

Evidence regarding the Chinese government, the CPC, China's talent plans, and China's theft of intellectual property from the West—and any allegations or arguments related to these

topics—is substantially more prejudicial than probative and should be excluded under Rules 401 and 403.

***First,*** the court should exclude evidence and argument on these topics because they are irrelevant to the fraud and false statements charges against Dr. Tao. *See* Fed. R. Evid. 401 (evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

Paragraphs 16 through 21 of the Second Superseding Indictment attempt to create a fictional connection between Dr. Tao's alleged failure to disclose a second job in China to his employer KU, and China's efforts to steal intellectual property from the West and enhance its standing in the world. ECF No. 75. The Indictment seeks to use the allegation that a Changjiang Scholarship (part of a "talent plan") funded Dr. Tao's alleged employment at Fuzhou University as a fulcrum to launch into an attack on the China and talent plans writ large. *Id.* ¶¶ 17, 21. Specifically, the Indictment alleges that China uses its talent plans to enhance its "autonomy and national security" and spur "rapid economic growth." *Id.* ¶¶ 16, 17, 20. The Indictment further alleges that China uses talent plans "to encourage the transfer of original ideas and intellectual property from U.S. universities to PRC Government institutions." *Id*. ¶ 17. And the Indictment generalizes that all academics in China are "extensions of the PRC Government and the Chinese Communist Party." *Id.* ¶ 19. Contrary to the impression left by these allegations, however, Dr. Tao is charged only with failure to disclose an outside position to KU on his Conflict of Interest forms and on his grant applications. He is not alleged to have stolen anything or shared anything improper with anyone in China.

The above allegations are irrelevant to the charges.[1] Even if China uses talent plans to enhance its "autonomy and national security" and spur "rapid economic growth," *id.* ¶¶ 16, 17, 20, China's motivations are not at issue in this case. Moreover, these goals are untethered from the allegations in this case. There is no evidence that Dr. Tao's research could have advanced China's national security or economic growth. He does not work in applied sciences, and he does not create technology, let alone technology that could enhance China's national security or promote economic growth. Rather, Dr. Tao conducts non-proprietary research and then publishes his findings in papers for the world to see. That China allegedly uses talent plans to encourage intellectual property theft is also irrelevant to this case. *Id.* There is no evidence or allegation that Dr. Tao stole intellectual property and transferred it to China.[2] Indeed, publications are the only fruits of Dr. Tao's type of research.

**Second,** the Court should exclude evidence, allegations, and argument about these topics because it would be unfairly prejudicial to Dr. Tao and would likely confuse and mislead the jury about the issues and accusations. *See* Fed. R. Evid. 403 (evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"); *see Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

---

[1] The defense raised concerns about these allegations during the May 19, 2020, status conference, and after a colloquy the Court stated that ordinarily its practice "would not be to let the entire indictment go to the jury." H'g Tr. at 15 (May 19, 2020).

[2] Nor would it makes sense for someone in Dr. Tao's small, niche field of researchers to steal intellectual property and then publish it back to the authors and others in the field.

Amidst the outbreak of a global pandemic traced to China, coupled with a Trade War against a rising China, discrimination against Asians in this country has risen sharply in the last two years. According to the FBI, hate crimes against Asian-Americans increased by 70% from 2019 to 2020.[3] A study by Pew Research Center showed that 45% of Asian adults have said they have experienced at least one of five offensive incidents since the start of the COVID-19 outbreak.[4] As President Biden aptly stated in an address in March 2021: "Too many Asian Americans have been … attacked, blamed, scapegoated, and harassed," and this country "cannot be complicit."[5]

These factors exacerbate the likelihood that the government's use of irrelevant evidence about China will enflame the jury against Dr. Tao and that, due to confusion and misleading evidence, the jury will scapegoat Dr. Tao for China's conduct.[6] This risk is particularly pronounced at a trial in which the effects of COVID-19 will be omnipresent, as virtually everyone in the courtroom will be wearing masks and taking other precautions. The jury would see that Dr. Tao is

---

[3] Dan Mangan, *Hate Crimes against Asian and Black people rise sharply in the U.S., FBI says*, CNBC (Aug. 30, 2021), https://www.cnbc.com/2021/08/30/fbi-says-hate-crimes-against-asian-and-black-people-rise-in-the-us.html (analyzing FBI report).

[4] Neil G. Ruiz, Khadijah Edwards, & Mark Hugo Lopez, *One-Third of Asian Americans fear threats, physical attacks and most say violence against them is rising*, Pew Research Center (Apr. 21, 2021), https://www.pewresearch.org/fact-tank/2021/04/21/one-third-of-asian-americans-fear-threats-physical-attacks-and-most-say-violence-against-them-is-rising/.

[5] Fact Sheet: President Biden Announces Additional Actions to Respond to Anti-Asian Violence Xenophobia and Bias, Press Release, The White House, (Mar. 30, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/30/fact-sheet-president-biden-announces-additional-actions-to-respond-to-anti-asian-violence-xenophobia-and-bias/

[6] As the district court in *United States v. You* explained: "Since the outbreak of the pandemic, Asian American and Pacific Islander ('AAPI') communities have been targets of xenophobic backlash, racial harassment, and violence, as China and the Chinese have been blamed for the spread of the COVID-19 virus. … This Court cannot find that the Magistrate Judge erred by including the COVID-19 global pandemic as part of her Rule 403 analysis." Mem. Op. and Order at 19–20, No. 2:19-CR-14 (E.D. Tenn. Mar. 4, 2021), ECF No. 248 (Ex. 3); *see also United States v. Doe*, 903 F.2d 16, 21 (D.C. Cir. 1996) (observing that it is "much too late in the day to treat lightly the risk that racial bias may influence a jury's verdict in a criminal case").

Chinese, know that he was born in China, and then hear evidence about misconduct of the Chinese government as though Dr. Tao is responsible for that conduct, even though it has nothing to do with him. This would lead to a high risk that a juror would falsely associate Dr. Tao with the government of China and will vote to convict based on emotions and feelings of ill will toward China, even if subconsciously. The risk for confusion is also substantial. Although Dr. Tao was not a member of the CPC, did not work for the CPC, did not work on projects that could promote the Chinese economy or national security, and did not steal intellectual property—and there is no evidence to the contrary—evidence and argument on these topics would risk leading the jury to conclude that the opposite is true, or to speculate that Dr. Tao may have been involved in these activities, despite a complete lack of evidence.

Accordingly, the Court should exclude this evidence under Rules 401 and 403.

## II. THE COURT SHOULD EXCLUDE EVIDENCE AND ARGUMENT THAT A PURPOSE OF DR. TAO'S ALLEGED SCHEME WAS TO BENEFIT CHINA OR THE CPC.

The Indictment attempts to tether Dr. Tao's charges to the irrelevant and extraneous allegations about China by alleging that Dr. Tao's "purpose" was to benefit China. Second Superseding Indictment ¶ 33. This evidence and argument should be excluded under Rules 401 and 403.

The evidence is irrelevant because it is not an actionable objective under the wire fraud statute, which proscribes schemes to deprive persons of money or property. *See* 18 U.S.C. § 1343; ECF No. 99 at 7–8 (court's order denying Dr. Tao's motion to dismiss, but ruling that wire fraud prohibits schemes to deprive a victim of money or property). It is also highly prejudicial for the reasons stated above, and because this type of evidence could cause jurors to question Dr. Tao's loyalty to the United States, and consider him an enemy, further enflaming the jury against him.

In addition, it could confuse the jury into erroneously believing that benefitting China is an unlawful objective under the wire fraud statute.

The Court should therefore reject the government's attempt to shoehorn China's policies and goals into this case by claiming that Dr. Tao sought to commit fraud in order to somehow benefit China or the CPC.

**III.   THE COURT SHOULD EXCLUDE IRRELEVANT, HIGHLY PREJUDICIAL, UNHELPFUL, AND UNRELIABLE TESTIMONY OF PROPOSED EXPERT GLENN TIFFERT, OR AT A MINIMUM HOLD A *DAUBERT* HEARING.**

The government's expert disclosure for Glenn Tiffert states that his expected testimony relates to: (1) the "PRC government's national development goals and industrial policies," including that it tries to obtain science and technology by "unlawful means"; (2) the "Changjiang Scholars Program (CJSP) and related talent recruitment programs," including "misconduct associated with the programs"; (3) "[a]cademic institutions, academic bureaucracy, and censorship in the PRC"; and (4) that "[c]ertain exhibits introduced at trial through other witnesses are consistent with [Dr. Tao's] participation in the CJSP and work with Fuzhou University." Ex. 1. The Court should exclude this evidence because it is irrelevant, highly prejudicial, unhelpful to the jury, and completely unreliable. At a minimum, the Court should hold a *Daubert* hearing.

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert witness testimony. Under Rule 702, expert testimony is admissible only when (1) it "will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) it "is based on sufficient facts or data"; (3) it "is the product of reliable principles and methods"; and (4) the expert has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. These requirements obligate the court to perform a "gatekeeping role" when determining the admissibility of expert testimony. *Daubert*, 509 U.S. at 597.

The proponent of the testimony bears the burden of establishing that it is reliable. *United States v. Nacchio*, 555 F.3d 1234, 1257 (10th Cir. 2009) (en banc). When an expert bases his testimony on experience rather than science, "'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1244 (quoting Fed. R. Evid. 702 advisory committee's note, 2000); *see Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 151 (1999) (holding that *Daubert* applies even when an expert's opinion relies on skill or experience-based observation). The expert must base his opinion on "facts which enable [her] to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (internal quotation marks omitted). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it" or accepting the expert's "*ipse dixit*." *Nacchio*, 555 F.3d at 1258. Rather, the court must "scrutinize the proffered expert's reasoning to determine if that reasoning is sound." *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1186 (D.N.M. 2016).

Expert testimony must also be relevant to pass muster under Rule 702. *Kumho*, 526 U.S. at 141; *Daubert*, 509 U.S. at 597 (trial court must conduct an inquiry into whether the proposed testimony is sufficiently "relevant to the task at hand"). "[E]ven if a court concludes that expert testimony is relevant and reliable, it may still exclude the testimony if the probative value of such testimony is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or undue consumption of time." *United States v. Liew*, No. CR 11-00573-1 JSW, 2013 WL 6441259, at *2 (N.D. Cal. Dec. 9, 2013).

Mr. Tiffert's expert testimony fails to satisfy these standards in four ways. **First,** Mr. Tiffert's expected testimony fails under Rule 401 substantially for the reasons stated above. *See*

8

*supra* Section I. Mr. Tiffert's generalizations about the Chinese government, theft of intellectual property, talent plans and their misconduct, and censorship and bureaucracy at Chinese universities are not probative of whether Dr. Tao committed fraud and made false statements in Kansas, or any elements of those offenses. *See supra* Section I. To the extent the government contends that Mr. Tiffert's testimony is relevant to the issue of intent, moreover, Rule 704(b) excludes such testimony. *See* Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or a defense. Those matters are for the trier of fact alone."); *e.g.*, *United States v. You*, Mem. Op. and Order at 17 & 19, No. 2:19-CR-14 (E.D. Tenn. Mar. 4, 2021), ECF No. 248 (Ex. 3) (Rule 704(b) bars the expert's opinion as to the defendant's intent based on opinions regarding Chinese talent plans).

**Second,** even if Mr. Tiffert's opinions were relevant, that relevance is substantially outweighed by the danger of unfair prejudice to Dr. Tao and confusing or misleading the jury. In *United States v. Liew*, No. CR 11-00573-1 JSW, 2013 WL 6441259, at *2 (N.D. Cal. Dec. 9, 2013), the district court excluded an expert's opinion that "[n]ational industrial policy goals in China encourage intellectual property theft, and an extraordinary number of Chinese in business and government are engaged in this practice." *Id.* The court reasoned "that any probative value is substantially outweighed by the potential for prejudice and to confuse the issues." *Id.* The principle from *Liew*, where the defendant was charged with economic espionage, applies with even greater force here, where Dr. Tao is not accused of stealing intellectual property and conveying it to China.

The expert disclosure also suggests that Mr. Tiffert is an anti-China advocate and hawk, more than an expert, such that Mr. Tiffert's testimony would likely incense the jury over China's misconduct. *See, e.g.*, Ex. 1 ("[H]e has worked extensively with government and civil society

9

partners to document and build resilience against authoritarian interference with democratic institutions."); *see also United States v. You*, Mem. Op. and Order at 21, No. 2:19-CR-14 (E.D. Tenn. Mar. 4, 2021), ECF No. 248 (Ex. 3) (in excluding evidence of proposed China expert in economic espionage case, stating that the "tone of [his] writing suggests him to be more of an advocate than an expert"). The Hoover Institution's website for one of Mr. Tiffert's main projects, "China's Global Sharp Power," employs graphics in which the United States and China are squaring off on a global chess board.[7] He has accused American companies of being soft on China, using inflammatory and militant language to criticize them.[8] As part of his "China's Global Sharp Power" project, he has advocated for decreasing collaborations between U.S. and Chinese scientists, which he thinks threaten national security, and he stated that research partners have "declared open season on our research."[9] His fears and disdain for China could easily enflame the jury and cause it to convict based on emotions, including fears of a rising China.

---

[7] China's Global Sharp Power, https://www.hoover.org/research-teams/chinas-global-sharp-power-project (last visited Sept. 24, 2021).

[8] *See* China's Zoom Bomb, https://www.chinafile.com/conversation/chinas-zoom-bomb ("China has conscripted another Western entity to silence dissent beyond its borders and bury history. With this ham-fisted gesture, Zoom joins a growing list of foreign entities that are carrying water internationally for the Chinese Communist Party (CCP). Airlines, hotel chains, media companies, clothing retailers, universities, and technology companies have all surrendered to the CCP's political preferences with respect not just to operations in China, but globally. They are hastily redrawing maps, recalling products, revising websites, changing advertising campaigns, and muzzling and firing employees in a thankless effort to stay one step ahead of the CCP's brutally Leninist version of cancel culture. … I am used to the idea that the CCP suppresses, sanitizes, and rewrites the past to suit its political whims. What is harder to stomach is a Western firm, headquartered in a jurisdiction that enjoys freedom of expression and the rule of law, now taking up the baton for China's leaders and invoking the shield of legal compliance to justify its avarice.").

[9] Video at 13:34–41, 1:13:18–23, Global Engagement: Rethinking Risk In The Research Enterprise, Hoover Institution, https://www.hoover.org/events/global-engagement-rethinking-risk-research-enterprise.

***Third,*** Mr. Tiffert's testimony should be excluded under Rule 702 and *Daubert* substantially for the reasons stated above, *see supra* Section I, because it will not help the jury to "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Instead, it risks confusing or misleading the jury. *See supra* Section I.

***Fourth,*** Mr. Tiffert's expected testimony is unreliable under Rule 702 and *Daubert* because it is not "based on sufficient facts or data" and is not "the product of reliable principles and methods." Fed. R. Evid. 702.

For starters, Mr. Tiffert appears to be unqualified to testify as to any of the four topics in his notice. Mr. Tiffert's *curriculum vitae* shows that, since he received a Ph.D. in history in 2015, he has only five peer-reviewed papers. None of these papers appear to focus on the topics in his expert disclosure. Ex. 2. He appears to lack any particular focus with respect to China, as his interests and publications on China are broad and varied, ranging from digital currencies to Chinese film reviews. Ex. 2. Indeed, his website at the Hoover Institution indicates that his expertise is in Asia, China, Communism, Contemporary History, Cybersecurity, and Law.[10] His focus and expertise, if any, appear to be Chinese constitutional law—not Chinese talent programs and academia. Ex. 2.[11]

---

[10] Hoover Institute Fellows, https://www.hoover.org/profiles/glenn-tiffert (last visited Sept. 23, 2021). Mr. Tiffert's purported expertise as to "Asia" and "China" does not qualify him here any more than a so-called expert on "North America" or the "United States" would be qualified to testify about specific topics related to U.S. academia.

[11] Mr. Tiffert's dissertation focused on China's judiciary in the first half of the 20th century. *See* Tiffert, Judging Revolution: Beijing and the Birth of the PRC Judicial System (1906-1958), UC Berkeley, https://escholarship.org/content/qt2gh4c96c/qt2gh4c96c.pdf.

Mr. Tiffert's expert disclosure also does not include "the bases and reasons for [his] opinions." Fed. R. Crim. P. 16(a)(1)(G); *see* Ex. 1.[12] It discloses *no* basis for the opinions, and it therefore fails to "explain how [Mr. Tiffert's non-scientific] experience leads to the conclusion[s] reached, why that experience is a sufficient basis for the opinion[s], and how that experience is reliably applied to the facts." *Nacchio*, 555 F.3d 1234, 1258 (internal quotation marks omitted); *accord* Fed. R. Evid. 702, advisory committee note, 2000 am. This is fatal to Mr. Tiffert's testimony. An expert who bases his opinion on experience "must do more than aver conclusorily that his experience led to his opinion." *Scott v. Deerbrook Ins. Co.*, 714 F. Supp. 2d 670, 674 (E.D. Ky. 2010) (internal quotation marks omitted).

Mr. Tiffert's qualifications and the (undisclosed) bases for his opinions are even weaker than that of Gen. Robert Spalding III—whom the government withdrew as an expert in this case and replaced with Mr. Tiffert after another district court held that his opinions, now offered by Mr. Tiffert, were unreliable.[13] In *United States. v. You*, the government alleged that the defendant stole trade secrets from employers and then used them to apply for a Chinese talent program. Mem. Op. and Order at 1–2, No. 2:19-CR-14 (E.D. Tenn. Mar. 4, 2021), ECF No. 248 (Ex. 3) (preliminary ruling). The government offered as an expert Gen. Spalding, a published author who served on the National Security Council, in the military, and at the State Department, and who had a decades-long career focused on United States–China relations and policies. *Id.* at 2. Like here, Gen. Spalding's expected testimony in *You* was meant to focus on "the role that the 'Thousand Talents Program,'" a Chinese talent plan, "and related provincial-level talent programs play in that strategy

---

[12] To the extent the FD-302 forms produced by the government regarding interviews of Mr. Tiffert are meant to fill this void, they also fail to adequately show the bases and reasons for his opinions.

[13] The government noticed Gen. Spalding's expert testimony in August 2020, ECF Nos. 81 & 84. The government filed a notice withdrawing Gen. Spalding in March 2021. ECF No. 106.

12

… to obtain technology, even though they are aware that it induces the theft of foreign technology and causes economic damage to the victims of such theft, including the U.S. and other foreign corporations," as well as "the Chinese Communist Party's strategy for acquiring technology from foreign sources, including U.S. sources." *Id.* at 2–3.

Performing its gatekeeping duty, the district court in *You* ruled that Gen. Spalding should be excluded from testifying about talent programs and related matters, just as the magistrate judge had found before, because of the unreliability of his proposed opinions. The court explained:

> The Court fails to find the necessary connection between Gen. Spalding's decades of experience and the conclusions drawn in the proposed testimony related to the talent programs …. There is no mention of how Gen. Spalding's experience with Chinese talent programs led to his conclusion that the programs are ploys in a greater CCP strategy for technology acquisition from foreign sources. … There is no elaboration as to how his professional expertise leads to the conclusion that talent participants experience monetary benefits and preferential treatment apart from the program's description found on its direct website. … Finally, Gen. Spalding does not provide any link between his experience and the conclusion that certain exhibits to be introduced at trial are consistent with the Defendant's participation in Chinese talent programs. Gen. Spalding does not indicate that he has any experience with prior talent program participants or in reviewing successful and unsuccessful program applications in the past as part of his professional experience.

*Id.* at 13–14. The district court also ruled that the expected testimony should be excluded under Rule 403 because the probative value of Gen. Spalding's testimony was outweighed by the danger of unfair prejudice. *Id.* at 21.

These problems apply with even greater force in the context of this case, which, unlike the *You* case, does not involve the theft of intellectual property. The government has failed to disclose any connection between Mr. Tiffert's professional experience—which is quite limited compared to Gen. Spalding's experience—and his proposed testimony about China's talent programs and the other topics of his proposed testimony. It is unclear what experience, if any, Mr. Tiffert actually has with respect to Chinese talent plans or the other topics he plans to testify about. Nor has the

13

government provided a link between Mr. Tiffert's experience and talent plans or the other topics. These failures mandate Mr. Tiffert's exclusion as an expert.

## **CONCLUSION**

This case is about Dr. Tao—not China, its geopolitical goals, the CPC, or intellectual property theft by China. The Court should grant this Motion to ensure that the jury understands this critical point and does not convict him as a surrogate for his native country, especially given the rising tide of animosity and ill will toward China by segments of this country.

Dated:  September 24, 2021

Respectfully submitted,

/s/ Thomas H. Johnson
Thomas H. Johnson #13688
Petefish, Immel, Hird, Johnson,
Leibold & Sloan, LLP
842 Louisiana
Lawrence, KS 66044
Tel: (785) 843-0450
Fax: (785) 843-0407
tjohnson@petefishlaw.com

Peter Zeidenberg
Michael F. Dearington
Laura Zell
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Peter.Zeidenberg@arentfox.com
Michael.Dearington@arentfox.com
Laura.Zell@arentfox.com

*Attorneys for Defendant Franklin Tao*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2021, I electronically filed the foregoing Motion in Limine and exhibits with the Clerk of the Court using the CM/ECF system.

/s/ Thomas H. Johnson
Thomas H. Johnson