UNITED STATES DISTRICT COURT

District of Kansas

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                      Case No.   **19-20052-01-JAR**

**FENG TAO,**

        **Defendant.**

# GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* #1: TO EXCLUDE EMAIL EVIDENCE AND FOR AN ADVERSE INFERENCE INSTRUCTION

The Court should deny Defendant's motion *in limine* to exclude unspecified email evidence under Fed. R. Evid. 901 and 403 and to obtain an adverse inference instruction (Doc. 153; hereinafter "Def. Mot."). Defendant's authenticity arguments are premature. The Court can best address any objections at trial. The Court should also summarily reject Defendant's undeveloped and meritless Rule 403 argument. Finally, Defendant's adverse inference instruction is not grounded in fact or law. At bottom, Defendant's motion is yet another example of his longstanding efforts to push a false narrative and blame others for his own criminal conduct.[1]

---

[1] Defendant's instant motion, which follows an established pattern, underscores the government's concern, expressed in its omnibus motion *in limine* (Doc. 156), that he will seek to make irrelevant and unfairly prejudicial arguments at trial to confuse the issues and otherwise invite jury nullification.

## I.   The Court Should Not Prelude Email Evidence in Advance of Trial

Defendant raises authenticity questions that are best addressed at trial.[2] He argues in conclusory fashion without any supporting case law that "[t]he Court should exclude from evidence any emails from Dr. Tao's alleged Fuzhou University email account since that evidence cannot be authenticated" pursuant to Fed. R. Evid. 901. He further speculates that "the evidence may have even been fabricated" by Student #1 and relies purely on his own suspicion to argue that the Court should not trust the unspecified evidence. For the following reasons, the Court should deny Defendant's motion, at a minimum, as premature. *See, e.g.*, *United States v. Iiland*, No. 99-CR-20-K, 1999 WL 35798471 (N.D. Okla. Sept. 1, 1999) ("The Court finds that said objection is premature. The Court will hear argument on the authenticity of the video at the appropriate time at trial.")

"Authentication is an aspect of relevancy." *United States v. Safavian*, 435 F. Supp. 2d 36, 39 (D.D.C. 2006) (concluding that there was ample evidence for jury to find that exhibits were, in fact, e-mail exchanges between defendants and other individuals); *see also United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991). "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Safavian*, 435 F. Supp. 2d at 39 (quotation marks omitted). "The threshold for the Court's determination of authenticity is not high." *Id.* (citing cases from the First, Third, and Eighth Circuits); *see also United States v. Pluta*, 176 F.3d 43, 50 (2d Cir. 1999) ("[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove

---

[2] Notably, Defendant's motion assumes that the evidence is relevant under Fed. R. Evid. 401 and 402.

beyond any doubt that the evidence is what it purports to be."). "The question for the Court under Rule 901 is whether the proponent of the evidence has offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is." *Safavian*, 435 F. Supp. 2d at 39 (quotation marks omitted). "The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the jury ultimately might do so." *Id.*; *see also United States v. Meienberg*, 263 F.3d 1177, 1181 (10th Cir. 2001) ("Any question as to the accuracy of the printouts . . . would have affected only the weight of the printouts, not their admissibility."); *United States v. Laden*, No. 98 CR. 1023 (LBS), 2001 WL 276714, at *1 (S.D.N.Y. Mar. 20, 2001) ("Once the Government has met the low bar of 'rational basis,' the problem is no longer one of admissibility to be determined by a judge, but one of credibility to be measured by a jury.").

Here, the government will be able to establish the authenticity and admissibility of the emails it will seek to admit at trial. Among other things, the evidence will prove that Defendant worked at Fuzhou University, and, in connection with that employment, as is the standard practice globally, he received a Fuzhou University email address (taofeng@fzu.edu.cn). Numerous emails, which speak for themselves, show that Defendant used his Fuzhou University email address to communicate with others. The following are but a few illustrative examples:

- Defendant sent emails from his personal Gmail address to his Fuzhou University email address. *See* Gov. Ex. A (email dated August 3, 2019, forwarding Fuzhou University revised contract).

- Defendant sent emails from his KU email address to his Fuzhou University email address. *See, e.g.* Gov. Ex. B (email dated March 11, 2019, forwarding an invitation directed to Professor Tao Feng at Fuzhou University).

- Defendant sent emails from his Fuzhou University email address to his KU email address. *See, e.g.*, Gov. Ex. C. (email dated April 29, 2019, forwarding attachments).

- Defendant copied (cc) his Fuzhou University email address on emails he sent from his KU email address. *See, e.g.*, Gov. Ex. D (email dated July 25, 2018, forwarding attachments).

- Defendant sent Student #1 an email from his KU email and blind copied (bcc) his KU email address, his personal Gmail address, and his Fuzhou University email address. Go. Ex. E (email dated February 15, 2019).

- Defendant used his Fuzhou University email address to communicate with his KU research assistants (e.g., Xioyan Zhang). *See, e.g.*, Gov. Ex. F (email dated July 4, 2018); Gov. Ex. G (email dated July 6, 2018).

The government will be able to authenticate these and other emails at trial. Should Defendant question the authenticity of any specific exhibit, trial would be the appropriate time to object.

Defendant's additional undeveloped claim that certain unspecified emails are "inherently unreliable" and should be excluded under Rule 403 is also without merit. Defendant posits, without any support, that the jury would be "unlikely to evaluate and properly discount the evidence in light of Government Informant's repeated hacking into the email account, complex extortion scheme, identity theft, and propensity for fabricating evidence." He claims, against the weight of the evidence, that Student #1 engaged in some sort of elaborate years-long scheme to frame him because of an authorship dispute that apparently arose in early 2019. *See* Gov. Ex. E (discussing the nature of the dispute). The Court should summarily reject this argument. Defendant has failed to explain why this evidence is *unfairly* prejudicial, as opposed to being incriminating, and a jury is more than capable of deciding fact from fiction at trial.

**II.     The Court Should Not Give an Adverse Inference Instruction to the Jury**

Defendant has failed to demonstrate that the government 1) destroyed evidence "relevant to proof of an issue at trial" and 2) acted in "bad faith." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Nonetheless, he seeks an adverse inference instruction "that the evidence in the Fuzhou University email account showed that Dr. Tao did not use the account." Def. Mot.

4

at 10. Defendant's frivolous request finds no support from the facts or the law. The Court should reject his accusation that the FBI committed the crime of "hacking" and deny his motion.

By way of background, Defendant was a tenured professor and researcher at KU. Student #1 was a post-doctoral student who assisted Defendant with his research responsibilities.[3] The hierarchical nature of their relationship is clear from the evidence: Student #1 took direction from Defendant. *See, e.g.*, Gov. Ex. H (email dated July 13, 2018, Defendant asking Student #1 to revise a contract[4]). As part of Defendant's employment contract with Fuzhou University, he was required to submit research proposals and recruit post-doctoral students to join his research group at Fuzhou University. Reflective of his position over Student #1, Defendant directed her to help him with those efforts. On May 13, 2018, she created an email account—fzuzhaopin.163.com (hereinafter the "163 account")—at his behest and drafted an advertisement, which he edited, to recruit post-doctoral students to join his research group at Fuzhou University. *See*, e.g., Gov. Ex. I (email dated June 8, 2018); Gov. Ex. J (email dated July 5, 2018). He also directed her to help draft research proposals for his group at Fuzhou University. *See, e.g.*, Gov. Ex K (email dated March 15, 2018).

The FBI interviewed Student #1 on June 9, 2019, and then conducted a more fulsome recorded interview on July 23, 2021. Defendant mischaracterizes the facts and evidence by alleging that "the FBI knew that Government Informant had hacked both accounts [presumably the 163 account and the Fuzhou University email account] when it met with her [on July 23rd]." Def. Mot. at 3. As reflected in the case agent's pre-interview notes, he intended to ask Student #1

---

[3] Student #1 worked for an Australian university. She was also briefly at KU and another U.S. university. She was not at Fuzhou University.

[4] This proposed subaward contract between the University of Kansas and Fuzhou University was never funded and relates to Defendant's attempt to secure a buyout for the Spring 2019 semester.

to download the content of the 163 account, which she had created at Defendant's behest and which she had authority to access. Def. Ex. 1 at 3 ("Can she dump the 163 email . . . She set it up, so she should be able to."). Moreover, based on Student #1's July 9, 2019 statements to the FBI,[5] she had apparent authority to access his other accounts, which is consistent with the nature of their relationship and email evidence attached hereto. Defendant's own arguments also support that understanding. *See* Def. Mot. at 2 (arguing that "Government Informant had access and control over [Defendant's Fuzhou University email account]").[6]

During the July 23rd recorded interview, the FBI asked Student #1 if she could log in to Defendant's Fuzhou University email account on her laptop and then asked her how Defendant used the account. *See* Def. Mot. at 3-4 (transcript excerpts); Def. Ex. 2. As reflected in the transcript, the content of the account was in Chinese.[7] Later in the interview, the FBI asked Student #1 to log in to the account on an FBI laptop, and she wrote down the username and password. Despite that request, however, the FBI did not receive, review, or translate its contents after the interview. *See* Def. Ex. 2.

---

[5] *See* Def. *Franks* Mot. (Doc. 127), Ex. 35 ("[S]he added that Tao asked her to assist in writing the applications to the National Science Foundation of China. . . [Student #1] was shown the email address [fzuzhaopin.163.com]. She said she created it and it means Fuzhou recruitment. She said she was asked to create this email address for interested applicants that might want to work with Franklin [Tao] at Fuzhou."); *id.*, Ex. 36 ("Last year, he asked me to write proposals to apply to Chinese government. The account and password for proposal submission are the same as his email in Fuzhou University. Sometimes I login his email address and check some information . . . .").

[6] Defendant's authenticity and adverse instruction arguments are contradictory. Either Student #1 had authority to access the account or she did not. Defendant seems to want to have it both ways.

[7] Throughout his motion, Defendant draws various inaccurate conclusions. For example, he claims that the government "saw no evidence that, as alleged, Dr. Tao worked fulltime at Fuzhou University." Def. Mot. at 9. But he omits the fact that the content was in Chinese, which the agents could not read, and that the agents did not conduct a complete examination of the account.

Defendant seizes on the word "wiped," to allege bad faith, but nothing from the Fuzhou University email account was downloaded to the FBI laptop. Consistent with FBI protocol, the FBI laptop was wiped because it had been used to access a foreign email server that could have subjected the laptop to malware and other computer intrusion software. To the extent Defendant believes that exculpatory evidence exists in his own email account, he can access it, as can his counsel who received the username and password in discovery, *see* Def. Ex. 1 at 4. In any event, the FBI laptop would not have contained the contents of the Fuzhou University email account.

The government's emails to the defense, attached to Defendant's instant motion and other briefs, show that the government has always acted in good faith. On May 13, 2020, the government brought the relevant portions of the recorded interview (disclosed in October 2019) to the defense's attention and then answered the defense's questions. Def. Ex. 2 & 4. The government did not, as Defendant claims, "destroy[] evidence . . . to gain a litigation advantage or avoid a litigation disadvantage." Def. Mot. at 9. Rather, after the July 23rd interview, the government chose not to search the Fuzhou University account to avoid litigating any Fourth Amendment and suppression issues; the government assumed that the defense understood as much from their communications. Simply put, making an investigative judgment call to avoid unnecessary litigation risk and then notifying the defense about it does not equal bad faith.

Defendant cites several cases, none of which advances his cause. The only Tenth Circuit case Defendant included was a civil case involving lost business records. *Aramburu*, 112 F.3d at 1407. In that case, the Tenth Circuit concluded that a witness did not act in bad faith, a necessary showing to receive an adverse inference instruction. Here, Defendant has failed to show bad faith, let alone that the content of the laptop was relevant to prove an issue at trial.

The two district court opinions cited by Defendant are also readily distinguishable. In *United States v. Hannah*, No. 18-CR-30071, 2021 WL 3173571, at *10 (C.D. Ill. July 27, 2021), the district court explained that bad faith requires "proof of an official animus or a conscious effort to suppress exculpatory evidence, and necessarily turns on an official's subjective knowledge that the evidence in question had exculpatory value at the time it was lost or destroyed." The court found that that the investigator did not act in bad faith by requesting a phone from a witness, who proceeded to wipe the phone. The court further explained that "regardless of whether a showing of bad faith is required, [the defendant] has not shown how the destruction of evidence prejudiced him with respect to his criminal liability."

The second case, *United States v. Suarez*, Criminal Action No. 09–932 (JLL), 2010 WL 4226524, at *10 (D.N.J. Oct. 21, 2010), involved missing statements (i.e., text messages) of a testifying cooperating witness. Those are not the facts before this Court. In *Suarez*, the court did not find bad faith, which the Tenth Circuit requires, but nonetheless gave an adverse inference instruction after concluding that the defendant was prejudiced by the loss of evidence. That instruction read, in pertinent part, "You may infer from the Government's failure to preserve these messages, or the fact that they were deleted by agents, that the missing text messages were relevant to this case and that they were favorable to [the defendants]." As described above, that is not the case here. FBI did not destroy evidence, and even if Defendant's baseless accusations were true (they are not), he has not suffered any prejudice. He could have accessed his Fuzhou University email account at any time during the pendency of these proceedings to retrieve the allegedly exculpatory evidence.[8]

---

[8] Notably, he has not provided any reciprocal discovery from his account to support his claims.

### III.     Conclusion

In sum, Defendant's motion is another transparent attempt to make this case about the government and Student #1, rather than his own criminal conduct. To the extent he has an authenticity objection, he should raise it at trial when the government seeks to admit a particular piece of evidence. Moreover, the government did not destroy exculpatory evidence, nor did it act in bad faith to warrant an adverse inference instruction. Accordingly, for the reasons discussed above, the Court should deny his motion.

Respectfully submitted,

*/s/ Benjamin J. Hawk*
Benjamin J. Hawk
Adam P. Barry
Trial Attorneys
National Security Division
U.S. Department of Justice

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2021, I caused the foregoing response to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas
