1              UNITED STATES DISTRICT COURT
                  DISTRICT OF KANSAS
2

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         v.                          Case No. 19-20052-JAR

6    FENG TAO, a/k/a "Franklin
     Tao,"                            Kansas City, Kansas
7                                     Date:  6 October, 2021
          Defendant.
8    .........................

9       TRANSCRIPT OF GOVERNMENT'S MOTION TO CONTINUE JURY TRIAL
              BEFORE THE HONORABLE JULIE A. ROBINSON
10         UNITED STATES CHIEF DISTRICT COURT JUDGE

11
                  A P P E A R A N C E S
12

13   For the Plaintiff via telephone:

14   Mr. Adam Barry                Mr. Christopher Oakley
     Mr. Benjamin Hawk            U.S. ATTORNEY'S OFFICE
     U.S. DEPARTMENT OF JUSTICE    500 State Avenue
15   950 Pennsylvania Avenue, NW   Suite 360
     Washington, D.C. 20530        Kansas City, Kansas 66101
16
     For the Defendant via telephone:
17

18   Mr. Michael F. Dearington
     Mr. Peter R. Zeidenberg
19   ARENT FOX, LLP
     1717 K Street NW
20   Washington, D.C. 20006

21

22

23

24   _____
            Proceedings recorded by machine shorthand,
25     transcript produced by computer-aided transcription.

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT:  We will do this on the record.  This is |
| 3 | United States versus Feng Tao, 19-20052.  And who appears for |
| 4 | the government? |
| 5 | MR. BARRY:  Good morning, Your Honor.  This is Adam |
| 6 | Barry along with my colleagues Chris Oakley and Ben Hawk on |
| 7 | behalf of the government, and I'll be arguing the motion to |
| 8 | continue this morning. |
| 9 | THE COURT:  All right.  And who appears for Dr. Tao? |
| 10 | MR. ZEIDENBERG:  Good morning, Your Honor.  Peter |
| 11 | Zeidenberg and Michael Dearington. |
| 12 | THE COURT:  And Dr. Tao is on the line as well? |
| 13 | THE DEFENDANT:  I'm here, Your Honor.  Yes, I'm here |
| 14 | Your Honor.  Thank you. |
| 15 | THE COURT:  Thank you. |
| 16 | All right.  Mr. Barry, go ahead. |
| 17 | MR. BARRY:  Thank you, Your Honor.  Since our hearing |
| 18 | about a month ago the government has been diligently preparing |
| 19 | for trial.  We filed and responded to motions *in limine*, we |
| 20 | filed our witness and exhibit lists, and we responded to the |
| 21 | defendant's late-filed and surprise motion for a *Franks* |
| 22 | hearing.  We've also been preparing for possible *Franks* and |
| 23 | *Daubert* hearings for next week, and this is all on top of the |
| 24 | other typical trial preparation tasks. |
| 25 | Last Wednesday we learned that two essential witnesses |

1   from the U.S. Department of Energy have specific health-related

2   concerns about traveling to trial during the COVID pandemic.

3   The details are described further in the Government's Sealed

4   Exhibit A, and we would ask that if the Court wants to get into

5   those health specifics, that we would do so in a sealed

6   setting.

7          But generally speaking, the news concerning the two

8   DOE witnesses forced us to rethink whether a continuance was

9   necessary and this is especially in light of some of the

10  pending motions and the fact that another essential witness who

11  was defendant's direct supervisor and the dean of his

12  department at KU is undergoing treatment for a serious illness

13  and is having major surgery or had major surgery that will

14  prevent him from attending trial.

15         In light of this the government concluded last week

16  that a continuance was necessary to avoid a miscarriage of

17  justice and filed this motion on Friday.

18         An ends of justice continuance and the exclusion of

19  time under the Speedy Trial Act is warranted for multiple

20  reasons.  The first reason, the defendant's surprise *Franks*

21  motion filed on August 23, 2021, has significantly prejudiced

22  the government.

23         As a result of that motion, which should have been

24  filed a year earlier, the parties as the Court knows have

25  engaged in significant litigation over the *Franks* motion and

1   the related motion to strike.  This litigation has gone

2   concurrently with trial preparation and other pretrial

3   deadlines resulting in a two-day hearing and possible *Franks*

4   hearing next week which the government also has had to prepare

5   the agents for in advance.

6        As described in our motion to strike, we view the

7   *Franks* motion as a tactical maneuver by the defense intended to

8   gain a strategic advantage.  We don't think good cause exists,

9   and we think that the *Franks* motion is factually and legally

10  meritless.  But the reality is that it's forced the government

11  to spend time on this motion that otherwise would have been

12  spent on trial prep.

13       Now, until we told the defense about the likely

14  unavailability of the three key government witnesses, the

15  defense seemed to agree with us.  They stated repeatedly in

16  opposition to our motion to strike that they would not object

17  to a continuance if the government required more time in light

18  of the *Franks* motion.  In fact, just two weeks ago the defense

19  counsel stated in a sworn affidavit to this Court that the

20  defense was, quote, amenable to continuing the trial date.

21       Despite those prior statements the defense now

22  equivocates and opposes the present motion.  If anything, this

23  underscores the tactical nature of the *Franks* motion.  In light

24  of the circumstances under which the *Franks* motion was filed, a

25  continuance would serve the ends of justice by allowing the

1    government to regain some of the lost time caused by that late

2    filing.

3            The second reason an ends of justice continuance is

4    warranted, three essential witnesses are unavailable or likely

5    unavailable for trial.  Now, the specific health-related

6    reasons for those witnesses' unavailability are detailed in the

7    sealed exhibits.

8            One of the witnesses, the chair of the defendant's

9    department at KU, informed us in late August of this year that

10   he was undergoing a serious surgery at the beginning of this

11   month and would not be able to attend trial because he'd be

12   recovering.

13           At the time we learned this, which was just three days

14   after defense filed its surprise *Franks* motion, we attempted to

15   prepare for trial in his absence.  Despite our attempts,

16   however, it's become increasingly clear to us that his

17   testimony is crucial.  He is on multiple communications with

18   the defendant and would introduce many of defendant's relevant

19   statements.  He'd also address materiality and some of the

20   defendant's expected defenses such as his overall performance

21   at KU.

22           The other two witnesses who are from the Department of

23   Energy are also essential to the government's case.  They are

24   program managers in DOE's office of science who communicated

25   with defendant regularly about his DOE grants, and we expect

1   them to introduce relevant communications and elicit testimony

2   from them regarding the materiality of defendant's false

3   statements and omissions.

4           A continuance would allow us to determine whether we

5   can identify and adequately prepare sufficient alternatives for

6   these three witnesses or whether we need to move for Rule 15

7   depositions.  These are essential government witnesses

8   important to the case.

9           Even after we informed the defense of the these

10  witnesses' likely unavailability, the defense -- and the

11  defense objected our to motion to continue, the defense

12  nevertheless identified all three witnesses on its witness list

13  seeming to confirm their importance.  Proceeding to trial

14  without these witnesses would be a miscarriage of justice.

15          Separately, due to these essential witnesses'

16  unavailability, the Court can grant a continuance and exclude

17  time under Section 3161(h)(3) of the Speedy Trial Act.

18          The third reason an ends of justice continuance is

19  warranted, as discussed at the last hearing, Mr. Hawk is

20  currently unavailable for trial, and the government has had to

21  adjust from a three-person trial team to a two-person trial

22  team.

23          While this staffing adjustment was not an issue when

24  we first learned of Mr. Hawk's likely unavailability, it

25  strained the trial team in light of defendant's increasingly

1    contentious and time-consuming litigation strategy.  And as we

2    said at the prior hearing, while we're not asserting Mr. Hawks'

3    current unavailability as the sole basis for a continuance,

4    under the ends of justice factors of Subsection 87(b), a

5    continuance of the trial date may allow for a continuance of

6    counsel, which is something the Court can consider.

7            So at a minimum, a continuance would certainly serve

8    the ends of justice by permitting the government the necessary

9    time to adjust this staffing change.

10           The last reason why an ends of justice continuance is

11   warranted, defendant's Rule 15 motions depose four witnesses in

12   the People's Republic of China, which as the Court knows this

13   party spent months litigating, remains pending.  Defendant has

14   claimed that these four witnesses possess exculpatory

15   information.  But defense refused to follow the prescribed

16   mechanism to obtain this evidence on its own, i.e. they refused

17   to follow the Hague Convention and submit to the letters

18   rogatory process.

19           Instead we had to litigate this issue, and after the

20   Court made its preliminary materiality and unavailability

21   findings, the government took the extraordinary step of

22   offering to supplement its pending mutual legal assistance

23   agreement request to the PRC government, to ask the PRC

24   government for permission to conduct the depositions that

25   defendant claims will exonerate him.

1           The government submitted that request less than a

2    month ago on September 10th, and the PRC government has not yet

3    engaged us on a request relating to defendant's Rule 15

4    depositions.  The PRC government has, however, engaged us on

5    our initial request.

6           If as defendant claims these witnesses possess

7    information that will exonerate him, then the government thinks

8    that the ends of justice will be served by a continuance that

9    allows the PRC government additional time to respond especially

10   live in light of the effort and expense that the government

11   voluntarily undertook to submit an MLAT request when defendant

12   had alternative means to obtain these depositions at his own

13   disposal and expense but refused to exercise those means.

14          Moreover, Section 3161(h)(8) of the Speedy Trial Act

15   permits the Court to exclude up to a year of delay if it finds

16   that an official request for evidence, such as the MLAT request

17   we submitted to the PRC government, has been submitted and that

18   it reasonably appears that such evidence is in a foreign

19   country.

20          This is another independent basis to grant a

21   continuance and exclude the associated time under the Speedy

22   Trial Act, and because defendant's Rule 15 motion remains

23   pending, Section 3161(h)(1)(D) would apply and the Court can

24   exclude the time from the filing of that motion, which would

25   either be April 30th or May 14th depending on how the Court

1  treats defendant's motion to continue the initial deadline

2  until now.

3          Now, lastly, on a related point, the government wants

4  to inform the Court of two late-breaking developments since we

5  filed this motion on Friday that also warrant consideration.

6          First, on Monday night we finally heard back from

7  German law enforcement regarding a request that we sent them

8  back in January of 2021.  Specifically we asked them to

9  interview a professor at the Fritz Haber Institute in Germany

10 where defendant told KU he was working in the spring of 2019.

11 The German professor confirmed what the government already

12 believes, which is that the defendant was not in fact at the

13 Fritz Haber Institute during this time period.

14         The evidence at trial will show that the defendant was

15 in the PRC working for Fuzhou University during this period.

16 This German professor's testimony is important to show that the

17 defendant intentionally concealed his work at Fuzhou from KU

18 by, among other things, lying to KU and more specifically the

19 department chair who is currently unavailable for trial about

20 his work or the lack thereof in Germany.  We just received this

21 information and produced it to the defense this morning.

22         But if a continuance is granted, we likely will work

23 with the German authorities to determine whether the German

24 professor is willing to travel to the U.S. for trial or sit for

25 a Rule 15 deposition.

1        The second late-breaking development, yesterday the

2    Taiwanese government responded to our May 2021 MLAT request to

3    interview a professor in Taiwan who worked with defendant while

4    he was at Fuzhou University in 2019.  This professor and

5    defendant jointly applied to the National Natural Science

6    Foundation of China for a cross-state collaboration between

7    universities in the PRC and in Taiwan.

8        Furthermore, e-mail communications obtained via legal

9    process also show that the professor in Taiwan agreed to --

10       THE REPORTER:  Counsel, please repeat that and slow

11   down.

12       MR. BARRY:  You want me to slow down?  Yeah, I'm

13   sorry.  Sure.

14       So the second point is about the professor in Taiwan,

15   and essentially we believe that that professor has material

16   information related to defendant's activities at Fuzhou

17   University.

18       We learned just yesterday that that -- that the

19   Taiwanese authorities are willing to interview that individual,

20   and so if a continuance is granted, we would also work with the

21   Taiwanese authorities to determine whether that witness is

22   available to testify at trial or sit for Rule 15 depositions.

23       So in closing, beginning trial on October 25th would

24   result in a miscarriage of justice.  It would lock in the

25   prejudice that the government has already suffered as a result

1    of defendant's surprise *Franks* motion.  It would prevent

2    testimony from essential witnesses in the United States and

3    abroad, and it would reduce the prospect of Mr. Hawk being able

4    to join us at trial.

5            There also are separate and independent reasons to

6    grant a continuance and exclude time under other subsections of

7    3161.  And I know that I went through those subsections pretty

8    quickly, but I'm happy to cite them again if that'd be helpful.

9            And while the government did not initially seek a

10   continuance when the *Franks* motion was filed, the cumulative

11   effect of that motion and the recent developments regarding

12   witnesses has caused the government to conclude that a

13   continuance is necessary to avoid a miscarriage of justice.

14           It's also to keep in mind that all of this is

15   happening in a context of a COVID pandemic in which the

16   government and the Court has had to substantially deviate from

17   typical trial preparation practices.  A continuance would serve

18   the ends of justice, and based on the procedural history and

19   the particularities of this case, those ends outweigh the

20   public's and the defendant's interest in a speedy trial.

21           I'm now happy to answer any questions the Court may

22   have.

23           THE COURT:  I don't have any questions at this point.

24   Thank you, Mr. Barry.

25           Who is responding on behalf of Dr. Tao?

 1         MR. DEARINGTON:  Peter Zeidenberg, who may be on mute.

 2         MR. ZEIDENBERG:  I'm sorry, Your Honor.  I was on

 3    mute.  I will respond on behalf of Dr. Tao.

 4         THE COURT:  Okay.  Go ahead.

 5         MR. ZEIDENBERG:  Your Honor, I'm a little taken aback

 6    by the government's rationale that they state now because I've

 7    got open and I'm looking again at the government's motion for a

 8    continuance, and it doesn't say anything about its inability to

 9    prepare -- this was a motion that was filed, again, just a

10    couple of days ago, okay, on Friday night.  It's only been two

11    business days since then.

12         Since they filed it Friday night, apparently they've

13    decided that actually they aren't really being -- they aren't

14    really ready for trial because they're too busy doing other

15    things.  That's not what they said in their motion.  Their

16    motion was based on one reason, an inability to have three

17    witnesses at trial, which I'm going to address.

18         Now we're told that's not even their first reason that

19    they give today.  They say the first reason is, well, we've

20    been tied up filing responses to the *Franks* motion, which of

21    course their last response to that was filed more than two

22    weeks ago.

23         They made no mention in their motion for continuance

24    about Mr. Hawk's inability to attend trial, an issue that the

25    parties, the defense and the Court as far as I'm aware, has no

1    knowledge about the background to.  When the Court inquired

2    when this was raised on September 8th at our hearing, the Court

3    specifically asked if the government would be looking for a

4    continuance so that Mr. Hawk could attend a trial.  He

5    declined.  He said they have a very capable team without him.

6        We don't know why -- it's a complete black box, a

7    mystery about why he's unable to or unwilling to attend this

8    trial as scheduled.  But he specifically said he didn't want a

9    continuance then.  Now they need a continuance for that reason.

10        And then, finally, Your Honor, we're told they want to

11    do Rule 15 depositions on the basis of a witness that they just

12    reached out to in May of 2021, three months ago, almost two

13    years after this trial -- after this case was initiated and

14    indicted.  And now they're talking about, oh, this could be

15    helpful evidence, we want to do a Rule 15 deposition.

16        And I have to remind the Court and the government that

17    when we filed a Rule 15 deposition to say that witnesses at

18    Fuzhou University would testify that Dr. Tao never accepted the

19    job and turned down the job offer, we were told that that

20    information was not material, and now we're being told that

21    this was so critical we need to delay a trial that's already

22    two years old to pursue evidence that was available to the

23    government preindictment.  And now they've waited until the eve

24    of trial to say, well, you know, we need a continuance so we

25    can pursue additional evidence.

1        So the real reason that they apparently -- at least

2    the reason they state in their motion and I think the reason

3    why they're now grasping for other explanations is because the

4    motion that they filed is so flimsy.  The basis is inadequate

5    for the Court to find an ends of justice continuance.  These

6    witnesses are neither essential nor are they unavailable under

7    the law.

8        The witnesses indicated that they would prefer not to

9    travel.  Well, you know, I think that that would probably apply

10   to all the witnesses involved in the case who are traveling to

11   Kansas.  No one wants to travel right now.  So there's nothing

12   unique about their situation.

13       Your Honor, these are Department of Energy employees.

14   They can -- there has been no indication that they have been

15   subpoenaed, that they've indicated that they would refuse a

16   subpoena, that they have indicated that their employer couldn't

17   allow them to take a week off of work and drive to Kansas City.

18   None of those things are referenced.  They simply say that they

19   would prefer not to travel.  And, again, look at the motion

20   that the government filed and the reason that they said.  They

21   want a continuance so they can look for alternative witnesses.

22       Well, Your Honor, there is no reason in God's green

23   earth that it takes a month to find alternative witnesses.

24   These are Department of Energy employees testifying about

25   whether submissions to the Department of Energy were material

1    or not.  There are enumerable witnesses listed on the

2    government's witness list from the Department of Energy and

3    from the KU.

4         In fact, Your Honor, Ms. Schwartz and Raul Miranda

5    worked together.  Raul Miranda is Ms. Schwartz's supervisor, so

6    I think it's highly unlikely that both of these witnesses would

7    have been both been called at trial in any event, and certainly

8    there are other people that at the Department of Energy who can

9    testify about the materiality of submissions to the agency.

10        Your Honor, the idea that these are essential

11   witnesses is -- doesn't withstand scrutiny.  The case law on

12   that is that essential witnesses are ones whose testimony would

13   be extremely important to the proceeding, providing proof that

14   was not otherwise available.  In other words, a witness so

15   essential to the proceedings the continuation without the

16   witness would either impossible or result in a miscarriage of

17   justice.

18        And, Your Honor, I think the Court has seen enough

19   from all the pleadings that it has read about this case that

20   there is nothing essential about these witnesses' testimony.

21   This case is going to hinge on whether the Court -- whether the

22   government can prove based on e-mails and recordings that they

23   have obtained that Dr. Tao had a job, a full-time employment or

24   some type of employment at Fuzhou University that was a

25   reportable event and was material to the Department of Energy

1   and NSF, and it's not going to turn on whether the NSF

2   employees are there; it's going to turn on whether Dr. Tao --

3   whether the government can establish there was outside

4   employment that was reportable.

5          So, frankly, Your Honor, we think that continuing this

6   case further would be a violation of the speedy trial; it would

7   be over Dr. Tao's objection; and just to go back because I

8   think the government has misstated and is not being accurate in

9   its assertion about what we've previously represented about our

10  willingness for continuance.

11         Going back, Your Honor, to the motion for *Franks*

12  hearing, initially the government objected because they said

13  that this was done as a tactical maneuver by the defense to

14  prejudice the government by deliberately sitting on this and

15  filing it late so it prejudiced their trial preparation.

16         And we said at that time that if the government can't

17  prepare for trial and a *Franks* hearing, then we would

18  understand that and would not object to a continuance.  The

19  government didn't take us up on that offer.  We had a hearing

20  on this.  The Court then ordered briefings.  The government

21  filed their briefs.  And now -- now after all the briefs are

22  filed, they're saying, oh, actually we do need that

23  continuance.

24         I think it's -- they're being disingenuous frankly,

25  Your Honor.  If that were the case, they would have put that in

19-20052-JAR   USA v. Feng Tao   10.06.21                    17

1    their motion which they filed on Friday.  I think in reality

2    they're realizing that they're probably not as ready for trial

3    as they thought they would be and they simply want more time.

4    And because these witnesses are neither essential under the law

5    nor has the government demonstrated that they've exercised due

6    diligence as that's defined in the statute to obtain their

7    presence at trial, that they're not -- an ends of justice

8    continuance would be unwarranted and a violation of the speedy

9    trial.

10             THE COURT:  All right.  I have some very targeted

11   questions, and I'll just call on you by name and ask you to

12   answer the questions that I ask, and I'll start with you,

13   Mr. Zeidenberg.

14             Is the defendant withdrawing his Rule 15 motion on

15   those four witnesses in China?

16             MR. ZEIDENBERG:  We're not withdrawing it, Your Honor.

17   Our view on that was that --

18             THE COURT:  I just want to know if you're withdrawing

19   them because you made the point to me that you needed more

20   time, even though you started the process late and I gave you

21   more time, but my sense was that neither you nor the government

22   were happy with my wanting to hold to this October 25th date.

23             We had status conferences.  I obviously intended to

24   ask you at our hearing next week where we are at on these

25   witnesses, which the government as the government has said in

19-20052-JAR   USA v. Feng Tao   10.06.21                    18

1   this hearing, you know, took a somewhat unusual step in

2   initiating that process that you should have initiated, so if

3   you're going to insist on the October 25th date, my first

4   question is:  Are you withdrawing your Rule 15 motion?

5          MR. ZEIDENBERG:  The answer is, no, Your Honor, we're

6   not.

7          And if I could explain -- if I could explain our view

8   on that is that we disagree with the government's position that

9   this needs to be done through the MLAT process.  We understand

10  that the Court, although I don't think it's issued a written

11  ruling by all indications, disagreed with our position and

12  accepted the government's position.

13         So unless the Court is prepared to suspend the trial

14  until we get these witnesses made available to us, which I

15  don't think the Court is -- I'm not expecting the Court to

16  agree to, we think it's wholly unreasonable to think the

17  government of China is going to respond to a request that was

18  filed a week into September any time in the next 12 to

19  18 months or ever.  I think we'll probably never hear from

20  them.

21         So I think it's just -- you know, continuing the case

22  for a couple months is going not to -- you know, we're not

23  going to get any satisfaction with the Rule 15 process, which

24  is an exercise that we think was not required by the law.

25         So, no, we're not withdrawing our motion, but we

1   understand that it -- you know, given that the -- the process

2   that's underway that the Court thinks is appropriate, that it

3   may mean that we're not able to obtain this testimony.

4        THE COURT:  Well, you filed the Rule 15 motions and

5   ordered to depose witnesses in China, and the People's Republic

6   of China, the evidence I heard or argument I heard, takes the

7   position that it is illegal for their citizens to be deposed by

8   foreign government on Chinese grounds.

9        So we talked about an alternative of whether they

10  would be willing to travel outside of China and, because of

11  COVID issues and perhaps other issues as well, did not look

12  like that was an alternative.  So I took that into

13  consideration in terms of this October 25th date.  I think we

14  all recognized it may not happen, but I essentially strongly

15  encouraged the government to get the process initiated since

16  you didn't do that even though this case has been on file since

17  early 2019.

18       So you're now telling me that you're not going to

19  agree to a government's motion to continue, but you are in a

20  position that you're essentially admitting that it was an

21  exercise in futility to seek Rule 15 depositions when you can't

22  force those witnesses to be deposed.  I'm not going to enter an

23  order that is an illegal order and you know that.

24       So that's why I wanted to get your position on it

25  because that's going to factor in as well because when we were

1   last together on these particular motions, you were convincing

2   me that these are material to your -- witnesses that are

3   material to your defense, that you needed more time.  I wanted

4   to hold to the October 25th date.  I wanted you though to have

5   the opportunity to get those witnesses, and I wanted status

6   updates, and I encouraged the government to get the ball

7   rolling since you didn't do it even though it was your

8   responsibility to do so.  So here we are.

9           So all right.  That answers that question.

10          MR. ZEIDENBERG:  If I may, Your Honor, just to

11  clarify, the witnesses -- we weren't trying to force them to

12  testify.  They were willing to testify.

13          And our understanding of the law as we put in our

14  papers was that there was no impediment to their testifying.

15  The government argued that there was.  We don't think that

16  they're right.  But we are where we are.

17          So this was a motion that we thought we could have

18  proceeded on in the manner in which we proposed, which was to

19  do a video deposition with a court reporter either in Kansas or

20  in Hong Kong, and the government objected to that process and

21  the Court agreed with the government.

22          So essentially, Your Honor, when the Court agreed with

23  the government and said we're going to go through this MLAT

24  process, from our perspective, that was going to be a process

25  that would be -- probably never be fruitful because I don't

1    think there's ever been a deposition that I'm aware of that's

2    ever been allowed under those circumstances.  So if we were

3    going to go through that route, it was, you know -- it was

4    going to be a fruitless exercise.

5         So delaying the trial for that, from Dr. Tao's

6    perspective, is going to be pointless because we're never going

7    to get satisfaction.

8         THE COURT:  Well, that's the first time you've made

9    this argument because when we had this hearing on this before,

10   what I heard and was much more compelling information than what

11   you offered was that it was illegal for me to enter an order

12   ordering the government, government employees, to not follow

13   the process that has been designated to obtain testimony from

14   foreign witnesses, whether it's through the Hague Convention

15   or, you know, one of the other treaties or one of the other

16   processes.

17        I'm not going to enter an order that tells government

18   employees from a separate branch of government to do something

19   that violates the Hague Convention or violates whatever the

20   processes that are in place.

21        You didn't raise this futility argument before.  You

22   were raising an argument that we really need these witnesses

23   and we can get these witnesses and they're willing to testify

24   and, you know, we think it would be fine to do that.

25        So that's where -- that's where we were at before.

1   Now I have other questions.  We'll move on.

2           Mr. Barry, so let's talk about --

3           MR. BERRY:  Yes, Your Honor.

4           THE COURT:  Let's talk about whether these three

5   witnesses are essential because based on what you've submitted

6   under seal, I'm convinced that they have specific

7   particularized individual reasons why they can't travel.

8   Everybody is concerned about COVID.  Defense raised concerns

9   about COVID, and that's why I told you all at the last hearing

10  I think it was that the Court has all kinds of measures in

11  place to protect the general population, obviously.

12          But these people seem to have specific particularized

13  health issues that give me some concerns about them traveling

14  as well, but are they essential?  Can you call somebody in

15  their stead?

16          And I think what I heard you say is you had planned to

17  call these folks, you need to figure out if there are other

18  employees that you can call in their stead, and if there are

19  not, you're going to be filing a motion for Rule 15 and at that

20  point I can determine whether they're material or not.

21          Is that fair?

22          MR. BARRY:  So, Your Honor, I would put them into two

23  separate buckets and without getting into names.  So the first

24  bucket is the KU witness.  We view that witness as essential

25  and very difficult, if not irreplaceable, and the reason being

1   is that that is the defendant's supervisor at KU.  It's his

2   department chair.  Numerous pieces of evidence having to do

3   with the fraught scheme were directed at that individual,

4   including the German piece that I mentioned earlier, and that

5   individual is also best situated to opine on defendant's

6   overall performance at KU as a professor, which based on prior

7   arguments that the defense has raised we anticipate being one

8   of their defenses.

9           Now, there are other witnesses that we have been

10  working with to see if we can kind of cobble together the

11  necessary testimony that that witness would have been able to

12  provide, and that's why we waited to decide whether or not we

13  would need him.  But as we've been approaching trial and

14  getting more and more into the exhibits, it's become clear to

15  us that that witness is essential.

16          Now, the important thing without getting into the

17  details is his particular health situation is slightly

18  different than the other two witnesses because we do not even

19  know if he will be available at some future date.  We have to

20  sort of see how it goes on a day-by-day basis.  All we know is

21  that currently based on the recent surgery that he underwent,

22  he will definitely not be available later this month.

23          The other two witnesses who are the Department of

24  Energy program managers -- now, the first thing to note is that

25  Mr. Zeidenberg is incorrect in saying that there are plenty of

1  other DOE witnesses on the witness list.  There are three DOE

2  witnesses.  Two of them are these two individuals, and they are

3  essential for similar but different reasons.

4       The first is that both of them had personal

5  involvement as reflected in e-mail communications and other

6  evidence with defendant's submission of DOE grants which form

7  the basis for part of the fraudulent scheme.  These witnesses

8  also understand the specific omissions and misrepresentations

9  that defendant made in order to obtain the DOE grants, and they

10 would be able to testify about the materiality of those

11 omissions or misstatements.

12      Because we just learned about those witnesses'

13 unavailability last week, we don't know yet if it's possible to

14 identify an alternative witness, educate that person about the

15 underlying evidence including the exhibits, and present them as

16 a witness for trial.  That's part of the basis for the motion

17 for continuance is to simply give us time to determine whether

18 or not there is an alternative because at this point we don't

19 know, right; we just learned about the particular health

20 circumstances of those witnesses last week.

21      And as the Court recognized, it's much different than

22 just kind of all of the general angst and anxiety about

23 traveling during COVID.  They have particular health concerns,

24 and many -- as you can imagine, many other witnesses have also

25 expressed concern about traveling or testifying during trial --

1    or during COVID, and we have expressed to them the various

2    precautions that the Court is taking, and for those witnesses

3    we haven't sought a continuance because they're similarly

4    situated to us or to the Court or to the Court's staff.

5           But the three witnesses who we deem are essential and

6    who are currently unavailable for the October 25th date we

7    believe have individual health reasons that justify a

8    continuance.

9           THE COURT:  Mr. Barry, how long a continuance are you

10   seeking?

11          MR. BARRY:  So this is a tough question.  I think at a

12   minimum we would need time to evaluate whether or not these

13   three witnesses either can testify at a later date or whether

14   or not there are alternatives who can be educated.  In

15   particular, for the KU witness, you know, it's uncertain

16   because his surgery just occurred and we at a minimum need to

17   give him time to recover before we can even evaluate how his

18   health is doing.

19          I also know that ASUA Mr. Oakley has a trial with you

20   beginning in December.  So I think in terms of a specific date,

21   we would suggest Q1 2022, which would give us sufficient time

22   to deal with not only the witnesses but the other factors that

23   we believe are -- that I talked about in my initial argument

24   that are relevant for an ends of justice analysis.

25          MR. ZEIDENBERG:  Your Honor, if I may, I don't believe

1    the government has addressed the issue about why Ms. Schwartz's

2    boss would also be an essential witness if Ms. Schwartz

3    appeared.  Paul Miranda is her boss.  So that's not at all

4    clear why they would both be essential witnesses since they're

5    both DOE employees.  And --

6          THE COURT:  All right.  Let me just stop here.  Here's

7    what I think I'm going to do:  I think the government does -- I

8    think they fairly need some time to figure out whether they can

9    supplement -- or substitute one employee for another.  They

10   just got this information is what they're telling me.  They got

11   this information within the last few days or whatever, so I

12   want to give them time.

13         I want to proceed with the hearings that we're going

14   to have next week, the 14th and the 15th.  I want to proceed

15   with the *limine* hearings.  I want to proceed with the *Daubert*

16   hearings.  I want to get all of that done and accomplished, and

17   I don't think that is at all compromised by this.  I don't

18   think any of the witnesses that would be subject to a *Daubert*

19   hearing next week are the ones you're talking about.

20         Is that fair, Mr. Barry?

21         MR. BARRY:  Yes.  I will say, the one thing I'll just

22   note if we're going to stick with those dates especially on a

23   *Daubert* hearing is the expert who would be prepared to present

24   his testimony at a *Daubert* hearing learned yesterday that he

25   has been exposed to somebody who had COVID, so he is getting

1  tested.  He will need to fly in from out of town.  I will know

2  as soon as he knows whether that's possible, but I just want to

3  flag that for the Court.  Obviously if he tests negative, we're

4  fine, but if he tests positive, that witness could be -- that

5  would be an issue obviously.

6           THE COURT:  When will -- do you know when he'll have

7  his test results?

8           MR. BARRY:  He should have them by Saturday.  You have

9  to wait to do the PCR test a few days after you've been exposed

10  to get an accurate test so he --

11           THE COURT:  I found out I was exposed yesterday, so I

12  have to go through the same things.  And one of my staff

13  members has been tested.  I mean, this is the world we live in

14  right now.

15           But I still want to go -- proceed with the 14th and

16  15th to the greatest extent we can.  I mean, because I think we

17  can do everything else.  Hopefully that witness -- well, I'm

18  not going to -- I'm going to continue this trial.  I don't see

19  how I can go forward when you're telling me for sure one of

20  these witnesses is essential and you need to evaluate whether

21  you can substitute two others and, if not, whether you can do a

22  Rule 15 motion because it sounds like their medical issues are

23  such that even if I were to continue it for one month or two

24  months or three months, they may still have these medical

25  issues, so we may be going into Rule 15 territory with these

1    witnesses as well, unless -- unless I'm not convinced they're

2    essential, I'm convinced you can call somebody else in their

3    stead.  So I don't know that we can hold to the October 25th

4    date.

5        The defendant did not want the October 25th date until

6    the government filed this motion to continue, frankly.  The

7    defendant was advocating for more time.  They never raised

8    any --

9        (Court reporter interruption for clarification due to audio

10   failure.)

11       THE COURT:  The defendant was advocating for more time

12   until -- in response of this motion to continuance.  The

13   defendant wanted more time to get these witnesses deposed.

14   There was an issue about whether or not that could be

15   accomplished, et cetera, et cetera, but the defendant was

16   advocating for more time that was material to the defense.

17       So now we're in a different landscape because the

18   government is the one asking for a continuance and defendant is

19   opposing that.  Obviously if I grant a continuance, that may

20   help the defendant, although apparently now the argument has

21   become an exercise in futility unless I am willing to grant

22   what I view to be an illegal motion -- or an illegal order.

23       Another thing that was not part of defendant's

24   specific motion but I read in one of the briefs, I think in one

25   of the *limine* filings, is a concern about -- raised by the

1    defendant about the measures the Court will take when we have a

2    trial in this environment, including everyone wearing a mask.

3    And the fact -- unfortunate and I think tragic fact that we,

4    you know, live in a time when there are certain people that

5    have anti-Asian bias and, you know, may be triggered by the

6    fact that we're wearing masks.  I don't know what to do about

7    that.

8            But that is something that obviously concerns me.  It

9    obviously concerns the defendant.  I've never had a motion

10   about, you know, for continuance based on that, but I was

11   concerned when I read that in the papers, and in particular I

12   was concerned when now the defendant takes the position that we

13   need to have this trial on October 25th.

14           Frankly, I suspect that that's something that if

15   Dr. Tao gets convicted, that's going to be an argument on

16   appeal that I've never been able to address because it wasn't

17   directed at me in a specific filing.

18           So I've got a lot of concerns here.  And I don't want

19   gamesmanship.  I want fairness and I want due process and I

20   wanted this trial date to go on October 25th.  And frankly part

21   of the reason is I've got a number of other criminal cases,

22   including the one in December that Mr. Oakley is involved in is

23   a case that's even older than this and one of the defendants is

24   in custody.

25           So, I mean, I've got some real limitations here in

1    terms of trying to give everybody due process within the

2    parameters of COVID and, you know, time available to try cases,

3    so I wanted to hold the date.  I still don't want to give this

4    date up, but frankly, I'm not going to deny the government the

5    right to call three essential witnesses, if in fact they're

6    essential.

7          And I directed the government to start the process so

8    we could at least try to get the defendant's four witnesses

9    deposed with the blessing of the People's Republic of China if

10   that could happen.  I'm disappointed that I'm now being told it

11   was futile, we knew it was futile.  That's interesting.

12         But in any event I'm not going to give you a new trial

13   date yet.  I want to proceed with the hearings next week.

14   Don't worry about subpoenaing your witnesses for October 25th.

15   It's pretty clear that's not going to be available.

16         Let's talk when we're together next week on the 14th

17   and 15th about how much of a continuance needs to happen.

18   There are a lot of reasons that there is excludable time under

19   the Speedy Trial Act, if in fact there's essential witnesses

20   that aren't available.  I don't know if that's the case yet,

21   but that would be a basis.  Also a basis would be the ends of

22   justice for a lot of these reasons that I've already expressed.

23   This is a complex case.

24         I'm not granting a continuance frankly on the basis

25   that the government has now determined there's some foreign

1   witnesses that they may be able to get their testimony.  I

2   mean, that's great for the government, but if they can't get it

3   accomplished, they can't get it accomplished.  That's not the

4   basis for a continuance.

5         It was the basis for a continuance to some extent for

6   Dr. Tao, on the other hand, because he has the right to present

7   a defense with witnesses that have material information.

8         The government also has the right to present a case

9   with witnesses that are essential, and cases have to be tried

10  with witness testimony.  Exhibits are admissible only,

11  generally speaking -- unless there's, you know, Rule 901 that

12  affects certification -- generally speaking through witnesses,

13  and I've not heard anything about stipulation to admissibility

14  and exhibits without any of these witnesses, and I don't know

15  even if the defendant were inclined to do that, whether the

16  government could still make a compelling case that they need

17  live testimony on other things other than exhibits.

18        So that's where we're at.  We'll revisit all of these

19  things on the 14th and 15th.  Even if that one witness that

20  you've spoke of, Mr. Barry, can't be available for the 14th or

21  15th, I think we should still proceed and get as much of this

22  nailed down as we can because, frankly, I just want to get this

23  trial as trial ready as possible, but I also want to make sure

24  that the government is able to have whatever essential

25  witnesses that, you know, they have on their list available and

1    at the same time, you know, a benefit in at least having more

2    time for what I hope is not an exercise of futility; I hope

3    that Dr. Tao can get these witnesses deposed or maybe they'll

4    even travel to the United States if they're given more time.

5            You know, and another issue, counsel -- I know the

6    defense disagrees with me about my ruling, but I'm not going to

7    enter an illegal order and tell the government employees, these

8    prosecutors, that they've got to travel to China or Hong Kong

9    or whatever without going through the legat process.

10           But another thing to keep in mind is there's

11   restrictions in China.  There's restrictions in Hong Kong.

12   There's restrictions in -- I forget what the other jurisdiction

13   was -- about travel.  That was part of the issue too that I

14   heard at this last hearing.  Even if I were to enter an order,

15   it doesn't mean these witnesses can actually get into Hong Kong

16   and leave Hong Kong or vice versa.  And it doesn't mean you all

17   can do the same.

18           So we've got a lot of unique and difficult limitations

19   here.  Nonetheless, Dr. Tao has a right to a fair trial.  He

20   has due process rights.  We've got to do the best that we can

21   for him.  The government has the right to a fair trial.  We've

22   got to do the best that we can for them.

23           So that's what I'm working with.  It will never be a

24   perfect solution, but we'll talk about it again next week and

25   I'll look forward to having you all --

1        MR. ZEIDENBERG:  Your Honor, if I may, it's Peter

2    Zeidenberg for the record.  Just to go back, I feel like this

3    is very important because the Court seems to be of the view

4    that this is new information that the MLAT treaty process with

5    China is not going to be successful.

6        In the government's opposition to our Rule 15

7    deposition, they talked about China's history of not complying

8    with MLAT requests.  Okay.  So we're relying in part on the

9    government's representations that these requests are not

10   successful -- that's what they said -- and that, therefore,

11   this process was going to be fruitless.

12       And that is why, you know, we did not believe that it

13   was necessary because -- for the reasons we said.  I'm not

14   going to reargue that.  But this is not new news -- should not

15   be news to the Court, certainly not new news to the government.

16   They said it.

17       And finally, we have -- Dr. Tao has never asked for a

18   continuance in this case.  We did -- we never requested a

19   continuance.  We thought that we could do the deposition in the

20   manner in which we had proposed and it wouldn't require a

21   continuance of the trial date.

22       And, again, this is not gamesmanship.  We want to go

23   forward at trial.  We also wanted our rule -- our *Franks*

24   hearing heard, and we didn't want to have a situation where the

25   Court felt that it was squeezing the government by making them

1    respond.  That's why we made that offer, but it was simply so

2    that the government could respond to the Rule 15 -- to the

3    *Franks* motion, the motion to suppress.

4         So I just want the record to be clear that we did

5    never ask for a continuance and now all of a sudden we wanted a

6    continuance and now we don't want a continuance.  Our position

7    has always been the same; we want to get this trial over with.

8         THE COURT:  Well, Mr. Zeidenberg, you may not have

9    ever expressly asked for a continuance, but you waited

10   18 months or two years to reveal that you wanted to depose

11   witnesses that are in mainland China, and you also, you know,

12   waited -- and I know you expressed reasons why you waited and I

13   understand that, but it was a very late filed *Franks* motion, a

14   year or so after the motions deadline.

15        And I'm not -- I mean, I allowed you to do it

16   obviously because I thought, okay, that's fine, but it does

17   squeeze the government.  It does squeeze the Court.

18   Nonetheless, I was committed to this October 25th date and

19   committed to making decisions on very important issues

20   including the *Franks* issues and all these *limine* issues ahead

21   of an October 25th date.

22        But when the government, who has the burden of proof,

23   tells me that they have three essential witnesses that they're

24   not sure at this point they can substitute with other witnesses

25   and they need a little bit more time to figure that out and

1   when those witnesses have real and particularized medical

2   reasons for not traveling in the middle of a pandemic, I'm not

3   going to ignore that.

4          And so that's where we're at, but we'll talk about

5   this further on the 14th and 15th.  And I thank counsel --

6          MR. BARRY:  Your Honor, this is Mr. Barry.  I'd like

7   to clarify one thing for the record on the MLAT request based

8   on the representations Mr. Zeidenberg made, and the main point

9   of clarification is that there's a key distinction between the

10  U.S. Government to gain evidence from the People's Republic of

11  China versus private citizens like the defendant, and as we

12  laid out in our briefing, there are different processes

13  pursuant to international agreements dependent on the identity

14  of the party seeking such evidence.

15         We did not say that was futile for defendant to seek

16  such evidence through the MLAT process pursuant to the

17  government's offer.  In fact, we submitted the MLAT request,

18  and as I said at the beginning, at least the government's

19  original MLAT request that the PRC has engaged with us on, but

20  the reality is that we're a little bit in unchartered territory

21  in terms of the Rule 15 depositions and the use of the MLAT to

22  try to get the PRC government's permission to allow the U.S.

23  Government to participate in those, and the reason we're in

24  unprecedented and unchartered territory is because of the

25  defendant's failure to follow the Hague Convention.  So I just

1   want to make sure that that's clear.

2          THE COURT:  Well, all right.  That's fine.  For the

3   record, I will say -- and I'm going to have the last word on

4   this -- I've never heard anything about being futile.

5          What I heard was that it should have been -- the

6   process should have been initiated a long time ago and that it

7   would be very difficult to get it done on an expedited basis.

8   I urged and urged the government to get it going even though it

9   was the defendant's responsibility to get that process going,

10  and they chose not to for whatever reason.

11         And so here we are.  And I'm glad to hear that the

12  People's Republic of China has engaged in some way.  At least

13  they're not ignoring it.  But I never heard that it was a

14  futile process.  I'm hoping it's not a futile process.  If the

15  defendant thought it was a futile process, it would have been

16  nice to have heard that, you know, when I was hearing the Rule

17  15 motions, but I didn't hear that.

18         MR. ZEIDENBERG:  Your Honor, I'm --

19         THE COURT:  Nope.  I'm having the last word on it.

20  We're done.  I'll see you back on the 14th and 15th.  We'll be

21  in recess.

22         (The proceedings were adjourned to October 14, 2021,

23  at 9:00 a.m.)

24

25

1                   C E R T I F I C A T E

2        I, Danielle R. Murray, a Certified Court Reporter and the

3    regularly appointed, qualified, and acting official reporter of

4    the United States District Court for the District of Kansas, do

5    hereby certify that the foregoing is a true and correct

6    transcript from the stenographically reported proceedings in

7    the above-entitled matter.

8        SIGNED 13th of October, 2021

9

10                       /s/Danielle R. Murray
                         DANIELLE R. MURRAY, RMR, CRR
11                       United States Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25