UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 19-20052-JAR-JPO |
| ) | |
| FENG TAO ) | |
| a/k/a "Franklin Tao," ) | |
| ) | |
| Defendant. ) | |

**DR. FRANKLIN TAO'S MOTION TO STRIKE THE GOVERNMENT'S
<u>UNTIMELY MOTION FOR RULE 15 DEPOSITIONS</u>**

The government's Rule 15 motion to depose five witnesses is inexcusably late. Without leave of Court, the government filed its motion 25 months after the indictment, 15 months after the pre-trial motions deadline, six months after the Rule 15 deadline, five to ten weeks after it knew about its witness' health statuses, and three weeks after the Court instructed the government to file any such motions. The government also filed its motion *after* the trial was originally set to begin, on October 25, and just weeks before the new trial date of December 6. The government's motion is untimely in every possible way, and the government provides no explanation for its late filing.

Good cause does not justify the government's untimely motion, and the government does not even attempt to argue otherwise. The government seeks to depose witnesses in Germany and Taiwan that it failed to even contact until 17–21 months after indictment, well past the pre-trial motions deadline. And it seeks to depose three witnesses from DOE and KU whose health circumstances the government has known about for five to ten weeks, and should have inquired about earlier in the year to ensure that they were available for trial. Instead, the government waited until weeks before the original October 25 trial date to seek a continuance, and then waited until

1

weeks before the second trial date of December 6 to seek Rule 15 depositions—when the Court instructed it three weeks earlier to immediately file any such motions.

For the reasons stated below, the Court should strike the government's motion because it fails to even argue, let alone demonstrate, good cause for its untimeliness.[1]

## BACKGROUND

Dr. Tao was indicted on August 21, 2019. Indictment, ECF No. 1. After roughly a year of discovery and two superseding indictments, on June 29, 2020, the Court set a pre-trial motions deadline for August 14, 2020. Scheduling Order, ECF No. 80. The government filed no pre-trial motions. When the defense discovered key witnesses in China who were willing to be deposed, but who refused to attend trial and could not be subpoenaed, the Court set a deadline of April 30, 2021 for the defense to file a Rule 15 motion, Scheduling Order, ECF Nos. 108, which was later continued to May 14, 2021, Order, ECF No. 110. The government filed no Rule 15 motion, and it never indicated that it might need to file Rule 15 depositions as to any of the five witnesses it now seeks to depose.[2]

On October 1, 2021, just over three weeks before the original October 25 trial date, the government moved to continue the trial. Gov't Motion to Continue Jury Trial, ECF No. 169. The government stated that two Department of Energy (DOE) witnesses "expressed concerns about traveling" due to health reasons, and a University of Kansas (KU) witness was scheduled for

---

[1] The government's Rule 15 motion also fails on the merits, because it does not satisfy the Rule 15 standard, and its alternative request for live two-way video testimony during trial would violate Dr. Tao's Confrontation Clause rights under *Maryland v. Craig*, 497 U.S. 836 (1990); *see, e.g.*, *United States v. Pangelinan*. Case No. 19-10077-JWB, 2020 WL 5118550 (D. Kan. Aug. 31, 2020). Indeed, the government's reliance on Second Circuit case law to argue for live testimony— an outlier circuit that split with the Tenth Circuit on the issue—betrays the weakness of its request.

[2] During the July 23, 2021 Rule 15 hearing, the government stated only that it was considering filing a Rule 15 motion as to a rebuttal witness in China. Hear'g Tr., ECF No. 123, at 32–33.

2

surgery that could prevent him from testifying at the October 25 trial. *Id.* at 2–3. Despite their "concerns," none of the witnesses stated that he or she refused to attend trial, and neither of the DOE witnesses stated that his or her doctor advised that it would be unsafe for him or her to travel for trial. The government argued that it "require[d] a brief continuance to locate alternative witnesses, if any, or to conduct depositions." *Id.* at 2. The Court stated during a status conference on October 6, 2021 that it would continue the October 25 trial date given the government's representations.

During the October 15, 2021 motions hearing, the government stated that they "were told that there are no alternatives" to the two DOE witnesses, and the government did "not believe they can be replaced," so the government "will be seeking Rule 15 depositions of the two of them." Hear'g Tr. (10/15/2021) at 138. The government stated that it would check with the KU witness to determine whether he would be available to testify once the Court sets a new trial date and, if not, the government would move to depose him as well. *Id.*

During the same hearing, the Court reiterated that it would continue the October 25 trial date, but instructed the government to file any Rule 15 motions forthwith. *See id.* at 153–54 ("Here's what I want … [T]he government needs to file a motion for Rule 15 deposition, and you need to respond so we can be teed up so that I can fully understand whether these witnesses are essential."); *id.* at 163 ("But I think you should file a motion for Rule 15 depositions. If that's what you're going to do, you need to do that and tee it up."). The Court subsequently issued a notice cancelling the October 25, 2021 trial, Notice of Cancelled Hearing, ECF No. 180, and it informed the parties by email that it set the new trial date for December 6, 2021.

On November 4, 2021, *three weeks after* the Court advised the government to promptly file any Rule 15 motions, the government filed its Rule 15 motion, without leave of Court or a

3

request for an extension of the pre-trial motions deadline, seeking to depose five witnesses. The government included no good cause argument in its motion. The Court should strike the motion as untimely and for lack of good cause shown.

## ARGUMENT

**I. The Court should strike the Government's Rule 15 motion as untimely and for lack of good cause.**

"If a party does not meet the deadline for making a [pre-trial] motion, the motion is untimely," and the Court may consider the motion only "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Good cause requires: (1) cause for the untimely filing, and (2) that the movant would suffer prejudice if the Court does not consider the motion. *United States v. Bowline*, 917 F.3d 1227, 1234, 1238 (10th Cir. 2019). The government satisfies neither requirement as to any of the five prospective deponents, and it does not argue to the contrary.

**A.    The government fails to argue or demonstrate cause.**

The government's motion fails to assert that there is cause for its untimeliness, let alone demonstrate such cause through evidence or representations. Nor can it. The motion is inexcusably late with respect to all five prospective witnesses. Each is addressed in turn below.

1. <u>The Foreign Witnesses</u>

The government's delay in moving to depose the witnesses in Germany and Taiwan is due to its own untimely attempt to interview the witnesses. The government admits that it waited until January 2021, five months after the pre-trial motions deadline passed, to try to interview Dr. Schlogl in Germany. Gov't Rule 15 Motion, ECF No. 186, at 1. It admits that it waited until May 2021, nine months after the pre-trial motions deadline, to try to interview Dr. Chen in Taiwan. *Id*. If the government thought these witnesses were important, it should have interviewed them before

4

indicting Dr. Tao in August 2019.[3] Instead, it waited until 17 months after indictment to try to interview Dr. Schlogl, and 21 months after indictment to try to interview Dr. Chen, without ever notifying the Court or the defense that it may seek to depose the witnesses. It then filed its surprise motion for continuance weeks before the original October 25 trial date. The government's claim that "the timing of the government's motion is not due to the government's lack of effort to secure the witnesses' testimony," Gov't Rule 15 Motion, ECF No. 186, at 2 n.2, is belied by these uncontested facts.

      2.    <u>The DOE Witnesses</u>

The government's delay in moving to depose the two DOE witnesses is also inexcusable. One DOE witness asserted in late September 2021 that he would rather not travel for trial due to COVID-19 because he is 70.[4] The other DOE witness asserted in late September 2021 that she would rather not travel for trial because she has had a health condition since May 2021 or earlier. If the government had timely communicated with these witnesses about their availability for trial— witnesses who the government has claimed are "essential" to its case—it would have learned of their health conditions six months ago and could have moved for Rule 15 motions in May 2021, when Dr. Tao filed his Rule 15 motion. The government's failure to communicate with its witnesses about their availability until weeks before trial is inexcusable, and it is not cause for delay. In addition, even after the government belatedly learned about the witnesses' health

---

[3] Indeed, the government claims that Count 7 of the Superseding Indictment, returned June 24, 2020, is based on an email exchange with Dr. Chen. Gov't Rule 15 Motion, ECF No. 186, at 7. Thus, the government was on notice in June 2020 at the latest that it might need Dr. Chen to testify at trial or to depose him. But rather than file a timely Rule 15 Motion, it waited 11 months, until May 2021, to even try to contact him.

[4] The defense limits its discussion of the witnesses' health conditions herein to the facts stated by the government in its publicly filed Motion for Continuance and Motion for Rule 15 Depositions, and it assumes the Court's familiarity with the sealed exhibits thereto.

concerns, it waited five weeks to file its Rule 15 motion, which was three weeks after the Court instructed the government to immediately file any such motions. This delay was also inexcusable.

   3.  The KU Witness

The government learned on August 26, 2021 that the KU witness had surgery scheduled for early October 2021. Gov't Motion to Continue Jury Trial, ECF No. 169, at 2.[5] The government failed to file a Rule 15 motion at that time or notify the Court or defense. Instead, it waited more than a month, until weeks before the original October 25 trial date, to move to continue the trial date. After that, it waited an additional five weeks to file its Rule 15 motion, despite the Court's instruction on October 15 that it file any such motion immediately. In all, the government waited 10 weeks after finding out about the KU witness's surgery before filing a Rule 15 motion. The government has no excuse for this delay.

  **B.**  **The government fails to argue or demonstrate that it would be prejudiced if the Court struck the motion.**

Even if the government could demonstrate cause for its untimeliness—and it cannot—the Court should still strike the government's Rule 15 motion as untimely because the government fails to demonstrate that it would suffer prejudice if the Court were to strike the motion.

The government's asserted purpose for the testimony of the German witness, Dr. Schlogl, is solely to prove the allegation that, "[c]ontrary to Dr. Tao's claims to Dr. Weatherley," Dr. Tao's supervisor at KU, Dr. Tao "never visited [the Fritz Haber Institute]" in Germany in spring 2019. Gov't Rule 15 Motion, ECF No. 186, at 6. Aside from the tenuous relevance of this testimony to whether Dr. Tao defrauded KU, DOE, and NSF or made false statements to DOE and NSF, the

---

[5] A common thread with the DOE and KU witnesses is that the government never communicated with the witnesses about their trial availability, and the witnesses apparently had to affirmatively contact the government to volunteer this information. The government's failure to determine the availability of its witnesses for a trial originally set for October 25, 2021, and which had been scheduled since March 2021 is negligent, and it does not justify delay.

government admits that it does not need Dr. Schlogl to prove that Dr. Tao never visited Germany in spring 2019, because Dr. Tao's passport does not show such a visit. *Id.* at 6 n.5. The government thus concedes that it has other ways to prove that Dr. Tao did not visit Germany in spring 2019 without Dr. Schlogl's testimony, belying the argument that the testimony is necessary.

Dr. Schlogl also has not stated that he *is unwilling* to travel to the United States to testify at trial such that he could be unavailable under Rule 15, or that he *is willing* to be deposed. *See* Gov't Rule 15 Motion, ECF No. 186, at 14 (stating only that it is "unclear" to the government "whether [Dr. Schlogl] will agree to travel to the United States" for trial, and that the government is still "in the process of confirming" whether he would be willing to be deposed). The government is essentially asking the Court to rule on a hypothetical situation—*if* Dr. Schlogl later indicates he is unwilling to travel to Kansas for a trial, and *if* Dr. Schlogl agrees to be deposed, is a Rule 15 deposition proper? The Court should not provide an advisory opinion based on a factual predicate that may not occur, and Dr. Tao should not be forced to expend his resources and his counsel's time on litigating motions premised on what might happen in the future. The government therefore fails to satisfy its burden of demonstrating that it would suffer prejudice if the Court strikes the motion to depose Dr. Schlogl.

The government's asserted purpose for the testimony of the witness in Taiwan, Dr. Chen, is to prove the allegation that Dr. Tao applied for funding from the Chinese government through Fuzhou University. Gov't Rule 15 Motion, ECF No. 186, at 14–15. Again, the government admits that it does not need Dr. Chen to prove this allegation, because it claims it has an email from Dr. Tao to Dr. Chen, cited in Count 7 of the indictment, *id.*, and that it has an alleged funding application submitted by Dr. Tao to a Chinese granting authority, *see id.* Ex. B, at 2–3, which already purportedly demonstrates this.

7

In addition, Dr. Chen—like Dr. Schlogl—has also not stated that he *is unwilling* to travel to the United States to testify at trial such that he could be unavailable under Rule 15, or that he *is willing* to be deposed. *See* Gov't Rule 15 Motion, ECF No. 186, at 15 (stating only that Dr. Chen "was unsure" whether he would agree to travel to the United States for trial, and that the government is still "in the process of engaging him through Taiwanese authorities regarding a Rule 15 deposition"). In fact, the government's FD-302 summary of its recent interview with Dr. Chen suggests that the government never even asked Dr. Chen whether he would be willing to be deposed. *Id.* Ex. B, at 4. And Dr. Chen stated that he was not sure that he would testify against another professor. *Id.* Like with Dr. Schlogl, the Court's adjudication of such a motion would waste Dr. Tao's and the Court's resources, and its decision would be an improper advisory opinion. The government therefore fails to satisfy its burden of demonstrating that it would suffer prejudice if the Court strikes the motion to depose Dr. Chen.

The government cannot show prejudice as to the DOE witnesses because it can easily replace them with other witnesses from DOE. The government states that the witnesses are expected to testify about "DOE's grant award practices, expectations, and disclosure requirements, the competitive nature of grant applications, and the agency's reliance on principal investigators and universities to be honest and to follow their internal policies." Gov't Rule 15 Motion, ECF No. 186, at 10. The suggestion that these two DOE witnesses are the only ones who can testify about the DOE grant process is preposterous. A simple Google or LinkedIn search shows that DOE has numerous program managers, who can capably testify about DOE's grant award practices, expectations, disclosure requirements, competition, and reliance on principal investigators and universities to be honest and to follow internal policies. If the government cannot find a single program manager at DOE who can provide testimony similar to the two DOE witnesses who

8

happened to manage Dr. Tao's grants, one has to wonder how DOE can expect principal investigators like Dr. Tao to be fully informed of all DOE grant requirements, even though there are purportedly only two employees within the DOE who are sufficiently knowledgeable to testify what these requirements are.

The government also states that one of the DOE witnesses, Dr. Miranda, must testify to rebut a possible defense that the Current & Pending Support disclosure requirements in the DOE grant applications did not clearly call for disclosure of foreign research grants. *Id.* at 10–11. The government asserts that an "exchange" between Dr. Tao and Dr. Miranda would rebut this defense. The government fails to note, however, that the exchange occurred over email, which is the best evidence of the exchange. *See* Email Exchange Between Dr. Tao and Dr. Miranda, Dec. 1–16, 2014, attached as Ex. A hereto. Dr. Miranda's testimony on this point is unnecessary, and it would violate the best evidence rule. *See* Fed. R. Evid. 1002. The government therefore fails to satisfy its burden of demonstrating that it would suffer prejudice if the Court strikes the motion to depose Dr. Schwartz or Dr. Miranda.

The government states that Dr. Weatherley, Chair of Chemical and Petroleum Engineering (CPE) at KU, would testify about Dr. Tao's "employment responsibilities at KU," his "performance during the relevant period," his "buyout request for the Spring 2019 semester," his "claims regarding [the Fritz Haber Institute]," and his "absence from KU during the Spring 2019 semester." Gov't Rule 15 Motion, ECF No. 186, at 13. The government claims that this testimony is necessary to prove that Dr. Tao allegedly defrauded KU of salary. *Id.* But the evidence regarding performance, the buyout request, and the Fritz Haber Institute consists of email evidence, such that Dr. Weatherley's testimony about the contents of the emails would not only be unnecessary, but it would also be inadmissible under the best evidence rule. *See* Fed. R. Evid. 1002.

9

The government also already identified a replacement for Dr. Weatherley: Professor Russell Dean Ostermann, Director of Petroleum Engineering at CPE. The government listed Professor Ostermann on its witness list on October 1, 2021, at a time when it was aware of Dr. Weatherley's circumstances, and it presumably plans to call him to testify if Dr. Weatherley is unavailable. *See* Government Witness List, ECF No. 165, at 2. Professor Ostermann can testify about "Dr. Tao's performance during the relevant time period," and his alleged "absence from KU during the Spring 2019 semester." Gov't Rule 15 Motion, ECF No. 186, at 13. He can also contextualize any email evidence about Dr. Tao's buyout request, claims regarding the Fritz-Haber Institute, or absence from campus in the spring of 2019, to the extent appropriate. *Id.*[6]

In addition, the government has not stated that Dr. Weatherley agrees to and is able to be deposed. *See* Gov't Rule 15 Motion, ECF No. 186, at 13–14 (stating that it is "unclear whether he will be able to testify at a deposition" prior to trial). Thus, the Court's adjudication of the motion as to Dr. Weatherley would needlessly waste Dr. Tao's and the Court's resources, and render any decision on the motion an improper advisory opinion. The government therefore fails to satisfy its burden of demonstrating that it would suffer prejudice if the Court strikes the motion to depose Dr. Weatherley.

### C. The Court should also strike the government's motion to avoid prejudicing the defense.

When the defense filed a pre-trial motion nine weeks before the original October 25 trial date, the government cried prejudice and argued that the motion should be stricken because it would interfere with its trial preparations, an argument to which the Court was sympathetic. Here, the government's inexcusably late motion is even more prejudicial.

---

[6] That the government has not produced an FD-302 for Professor Ostermann suggests that it has not even interviewed him, let alone confirmed that he is unable to testify about these topics.

In the weeks before trial, the defense would need to turn its attention away from trial preparation—as it has in order to draft this motion—and toward responding to the government's untimely motion. If the government's motion is granted, moreover, the defense would need to prepare for and attend between one and five depositions in the weeks before the December 6 trial, during a major holiday. The government does not even contend that this is plausible, much less doable without prejudicing the defense's trial preparations.[7]

## CONCLUSION

Two months ago, the government argued that the Court should strike Dr. Tao's untimely pre-trial motion because Dr. Tao did not seek leave of Court or move for an extension of the pre-trial motions deadline, and because it would prejudice the government's trial preparations. *See* Gov't Motion to Strike, ECF No. 141, at 1 (arguing that "[t]he defense filed its suppression motion … without leave from the Court"); *id.* at 5 ("Nor did the defense seek the Court's leave to file its untimely motion"); *id.* at 8 ("Here, the defense filed a motion to suppress … without leave from the Court"); *id.* at 11 ("Despite knowing that the motion would be untimely … the defense chose not to … seek leave from the Court to file the motion or extend the motions deadline"); *id.* at 10 ("[A]t this late stage of the proceedings, the timing of the defense's motion clearly prejudices the government."). The Court agreed: "To the extent the defendant thought [the motion] was important, they could have asked for an extension of the … motions deadline. They could have asked for leave to file a motion out of time. None of which is before the Court in this case. So defendant fails to meet the first prong to show good cause for delay." Hear'g Tr. (10/14/2021) at 241.

---

[7] In this respect, the government's motion may be part of a tactical move to convince the Court to continue the trial date without the government moving for a continuance, in violation of Dr. Tao's speedy trial rights.

Now that the roles are reversed, the government apparently believes that seeking leave of Court or an extension of the pre-trial motions deadline is unnecessary, and that prejudice to the opposing party is unimportant. The government asks the Court to apply a double-standard. The Court should reject this invitation, and it should make clear that Rule 12(c) applies equally to both parties—not just the defense. The Court should strike the motion for lack of good cause.

Dated:  November 8, 2021                                        Respectfully submitted,

/s/ Thomas H. Johnson
Thomas H. Johnson #13688
Petefish, Immel, Hird, Johnson,
Leibold & Sloan, LLP
842 Louisiana
Lawrence, KS 66044
Tel: (785) 843-0450
Fax: (785) 843-0407
tjohnson@petefishlaw.com

Peter Zeidenberg
Michael F. Dearington
Laura Zell
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
Tel: (202) 857-6000
Fax: (202) 857-6395
Peter.Zeidenberg@arentfox.com
Michael.Dearington@arentfox.com
Laura.Zell@arentfox.com

*Attorneys for Defendant Franklin Tao*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November, 2021, I electronically filed the foregoing Motion to Strike and Exhibit with the Clerk of the Court using the CM/ECF system.

/s/ Thomas H. Johnson
Thomas H. Johnson