## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

                                          Case No. 19-20052-JAR

FENG TAO,

      Defendant.

## MEMORANDUM AND ORDER

Defendant Feng Tao is charged in a ten-count Second Superseding Indictment with seven counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of making false statements, in violation of 18 U.S.C. § 1001.[1]  Before the Court is Defendant's Motion for Rule 15 Depositions (Doc. 111).  Defendant requests permission under Fed. R. Crim. P. 15 to take depositions of four prospective witnesses located in the People's Republic of China ("PRC") by remote means.  The Court heard oral argument on Defendant's motion on July 23, 2021.  The Court indicated during the hearing that it was inclined to grant Defendant's Rule 15 motion, as the anticipated testimony is material and the prospective witnesses are unavailable.

However, the legal and logistical obstacles presented by Defendant's Rule 15 motion needed to be resolved before the Court could rule, so the Court held a follow-up conference on August 17, 2021 to address possible solutions.  Based on the parties' representations at the conference, the Court concluded that having the witnesses travel to Hong Kong or Macau to sit for their depositions was not a viable solution.  Despite its opposition to the Rule 15 motion, the Government offered as a solution to submit, on Defendant's behalf, a request to conduct the

---

[1] Doc. 75.  The Second Superseding Indictment also charges these crimes through 18 U.S.C. § 2.  *See id.*

remote depositions to the Chinese government under the Mutual Legal Assistance Agreement ("MLAA") between the United States and the PRC.  Defendant did not propose an alternative solution.  The Court thus agreed that the Government should pursue the MLAA process.  The Government submitted the MLAA request to the Chinese government on September 10, 2021, and it has since provided the Court with several updates on the status of the MLAA request, which remains pending.  On October 15, 2021, the Court took Defendant's Rule 15 motion under advisement.  For the reasons explained below, the Court conditionally grants Defendant's Rule 15 motion upon the Chinese government approving the MLAA request to conduct the remote depositions at least 30 days before trial.

## I.    Factual Background

The Court assumes the reader is familiar with its prior ruling on Defendant's motions to dismiss and restates the facts, as alleged in the Second Superseding Indictment ("SSI"), only to the extent necessary to frame its discussion of Defendant's Rule 15 motion.  At all relevant times, Defendant was a full-time professor and researcher at the University of Kansas ("KU"), a public research university governed by the Kansas Board of Regents ("KBOR").  KBOR policies required Defendant annually to disclose conflicts of interest or time using KU's Institutional Responsibilities form ("Conflict form"), which included a certification that he was in compliance with KBOR policies, that he would "secure approval prior to engaging in any external personal, professional activities[, and that] he agreed to report any changes as soon as they become known to him and no later than 30 days after acquiring a new significant financial interest."[2]

In July 2017, Defendant applied to the Chang Jiang Scholar Program ("Scholar Program"), a "talent plan" sponsored by the PRC.  Among other benefits, applicants accepted

---

[2] *Id.* ¶ 6.

into the Scholar Program receive the title of Chang Jiang Distinguished Professor at their universities in the PRC.  The SSI alleges that Defendant was accepted into the Scholar Program in December 2017, with the understanding that he would be employed full time at Fuzhou University ("FZU") and would conduct research there involving renewable energy for the benefit of the PRC.  Beginning in May 2018, Defendant signed a five-year contract requiring him to be a full-time employee at FZU.

Defendant certified on two separate Conflict forms that he did not have any conflicts of interest or time under the KBOR policies, first on January 9, 2018, and again on September 25, 2018.  On January 29, 2018, in a grant proposal for research funded by the U.S. Department of Energy ("DOE"), Defendant certified to KU that he had made all relevant disclosures, financial and otherwise, as required by KU and the KBOR.  On May 17, 2018, Defendant submitted a proposal to KU for collaborative research with FZU, and later proposed using that budget to buy out his spring 2019 teaching requirement.  On July 16, 2018, Defendant represented to the DOE that he was only receiving and only expected to receive funding from the United States Government ("USG"), despite allegedly expecting to receive funding from FZU and the PRC. On June 15, 2019, Defendant submitted a progress report to the DOE stating he had no changes to current or expected support.

The SSI alleges that these communications were misrepresentations that were part of a scheme to defraud KU of his salary and the USG of grant funds.  Counts 1 through 7 of the SSI charge Defendant with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.  Counts 8 through 10 charge him with making false statements, in violation of 18 U.S.C. §§ 1001 and 2.

## II.      Standard

Fed. R. Crim. P. 15 authorizes pretrial depositions in criminal cases in "exceptional circumstances and in the interest of justice."[3]  Depositions are generally disfavored in criminal cases, and foreign depositions, in particular, are considered suspect because of the absence of a sanction for perjury.[4]  The moving party bears the burden of showing that "exceptional circumstances" warrant the preservation of testimony through a deposition.[5]  In deciding whether exceptional circumstances exist, courts consider whether: "(1) the witness'[s] testimony [i]s material; (2) the witness w[ill] be unavailable to testify; and (3) taking the deposition [i]s necessary to prevent a failure of justice."[6]  But these three factors, while critical to the Rule 15 analysis, are neither exhaustive nor dispositive.[7]  The court must consider "the particular circumstances presented" and ensure that Rule 15 depositions are authorized only in the exceptional circumstances contemplated by the rule.[8]  Whether to grant a Rule 15 motion is a decision committed to the court's discretion.[9]

## III.      Discussion

Defendant moves under Rule 15 to take remote depositions of four prospective witnesses located in the PRC, all of whom work at FZU: Guoqing Chen, Ling-Jun Du, Yu Tang, and Bingwen Shi.  Below, the Court considers the pertinent factors to assess whether exceptional

---

[3] Fed. R. Crim. P. 15(a)(1).

[4] *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993).

[5] *United States v. Fuentes-Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991) (quoting *Simon v. United States*, 644 F.2d 490, 498 n.12 (5th Cir. 1981)).

[6] *Id.* at 1509 (citing *United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962)); *see also United States v. Allerheiligen*, No. 97-40090-01-DES, 1998 WL 386210, at *1 (D. Kan. June 22, 1998).

[7] *Fuentes-Galindo*, 929 F.2d at 1509.

[8] *Id.*

[9] *Id.*; *United States v. Edwards*, 69 F.3d 419, 437 (10th Cir. 1995).

circumstances exist such that it is in the interest of justice to allow Defendant to depose these four prospective witnesses before trial.

### A.    Materiality

For purposes of Rule 15, testimony is material if it is "highly relevant to a central issue in the case."[10]  This requires "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant."[11]  Defendant argues that the testimony of the prospective witnesses is material because it is highly exculpatory.  All ten counts charged in the SSI are predicated on the allegation that Defendant accepted a position as a full-time professor at FZU and concealed that information from KU and the USG.  And Defendant proffers that all four prospective witnesses would testify, based on "direct personal knowledge," that he never accepted a position or worked at FZU, "belying the central allegations in the [G]overnment's case against [him] and demonstrating his innocence as to all charges."[12]

The Government contends that Defendant must describe the substance and basis of each prospective witness's testimony "in some detail" to satisfy the materiality requirement, yet all he offers are conclusory assertions that each witness has direct personal knowledge that he never worked at or for FZU.[13]  The Government also takes issue with Defendant's failure to produce affidavits from the prospective witnesses, urging that the materiality requirement would be "best addressed through affidavits."[14]  As the Government recognizes, however, Rule 15 does not require affidavits; the moving party may show materiality by several other means, including

---

[10] *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993).

[11] *United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994).

[12] Doc. 112 at 12.

[13] Doc. 113 at 14.

[14] *Id.* at 16.  The Government also raises concerns about the truthfulness of the prospective witnesses' testimony because, it asserts, the testimony is contradicted by the evidence and the witnesses may have a motive to lie.  The Court addresses these concerns below in the context of considering whether countervailing factors counsel against granting Defendant's Rule 15 motion.

"proffered testimony[] or calling a witness to the stand."[15]  The proffer must at least "alert the district court to the substance of the evidence that is at peril of being excluded" to satisfy the materiality requirement.[16]  Here, Defendant has sufficiently apprised the Court of the substance of the anticipated testimony.

Specifically, Defendant proffers that the first prospective witness, Guoqing Chen, would testify that "in 2018 he was directly involved in an effort on behalf of [FZU] to hire [Defendant] as a full-time professor," but Defendant declined the offer and never worked at FZU.[17]  Chen has at all relevant times worked in human resources at FZU.  The second prospective witness, Ling-Jun Du, is a director of human resources at FZU, a position senior to that of Chen.  Defendant proffers that Du would similarly testify based on direct personal knowledge that Defendant never accepted a position or worked at FZU.

The third prospective witness, Yu Tang, is an associate professor at the FZU College of Chemistry and a former KU graduate student.  Defendant proffers that Tang would testify that, at least since he joined the faculty in 2019, Defendant has never worked at FZU.  Finally, Defendant proffers that the fourth prospective witness, Bingwen Shi, would testify that Defendant "failed to provide necessary information to obtain employment at [FZU]," and "as a result, [Defendant] has never worked at or for [FZU]."[18]  Shi is the Secretary of the CPC Committee of the FZU College of Chemistry.[19]

---

[15] *United States v. Ramos*, 45 F.3d 1519, 1523 (11th Cir. 1995); *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008) (collecting cases); *see also United States v. Farfan-Carreon*, 935 F.2d 678, 679–80 (5th Cir. 1991) ("We find no requirement in the language of Rule 15 that the motion must be supported by an affidavit, nor do the cases we have reviewed indicate that our court has imposed such a rigid requirement.").

[16] *Ramos*, 45 F.3d at 1523.

[17] Doc. 112 at 4.

[18] *Id.* at 5.

[19] *Id.*

In short, Defendant specifies each prospective witness's position at FZU that gave them direct personal knowledge whether he accepted a position or worked there and indicates that all four would testify that he never did.  Testimony that Defendant never accepted a position or worked at FZU is material both to whether he committed fraud and to whether he made any false statements.  The Government does not dispute that such testimony is exculpatory for Defendant.[20]  Where, as here, the anticipated testimony "goes to the very heart" of the charges alleged in the indictment, the materiality requirement is met.[21]

The Government also questions, without citation to any Federal Rule of Evidence, whether the deposition testimony would be admissible at trial.  Defendant urges that a motion in limine, not Rule 15, is the appropriate vehicle for excluding evidence but nonetheless counters that the testimony would be admissible under Fed. R. Evid. 804(b)(1), which establishes an exception to the general rule against hearsay for former testimony.[22]  The Court agrees with Defendant that the Government's admissibility concerns are premature.  Rule 15 makes clear that "[a]n order authorizing a deposition to be taken under this rule does not determine its admissibility."[23]  The Court need not, of course, "engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial."[24]  But the Government does not argue that

---

[20] Although the Government does not dispute that the anticipated testimony is exculpatory, it suggests that Defendant is using his Rule 15 motion to obtain pretrial discovery.  But Defendant seeks to depose prospective defense witnesses, not prospective government witnesses.  Thus, his motion is properly based on an effort to preserve testimony.  *See United States v. Carrigan*, 804 F.2d 599, 602 (10th Cir. 1986); *see also, e.g.*, *United States v. Laymon*, 127 F.R.D. 534, 535 (D. Colo. 1989) (finding that Rule 15 was "not being abused as a discovery tool" because the defendant had "moved to depose *defense* witnesses," and not "the adverse party's witnesses").

[21] *United States v. Drogoul*, 1 F.3d 1546, 1554 (11th Cir. 1993).

[22] Fed. R. Evid. 804(b)(1) (providing that former testimony is "not excluded by the rule against hearsay if the declarant is unavailable as a witness"; the former testimony "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one"; and the former testimony "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination").

[23] Fed. R. Crim. P. 15(f).

[24] *Drogoul*, 1 F.3d at 1555.

the depositions would be clearly inadmissible at trial, and the Court cannot so conclude at this time.  The Court will not prevent Defendant from preserving testimony that is material to his case merely because it is possible that, in the end, the depositions will be inadmissible.

### B.   Unavailability

To show unavailability at this stage, the moving party need not prove conclusively that the prospective witness will be unavailable to testify at trial.[25]  For purposes of Rule 15, a prospective witness is unavailable "whenever a substantial likelihood exists that the proposed deponent will not testify at trial."[26]  The Tenth Circuit has explained that there must be "some showing" that the "witness'[s] attendance could not be obtained by subpoena."[27]  Several district courts outside the Tenth Circuit have found that a witness who is beyond a court's subpoena power will not be deemed "unavailable" for purposes of Rule 15 unless the moving party also shows that the witness is unable or unwilling to travel to the United States to testify at trial.[28]  District courts within the Tenth Circuit, however, are typically satisfied that a witness not subject to the subpoena power of the United States is unavailable for Rule 15 purposes, without requiring any further showing.[29]

Here, the four prospective witnesses whom Defendant seeks to depose are foreign nationals living outside the United States, so they are beyond a court's subpoena power.

---

[25] *Id.* at 1553 (citing *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985)).

[26] *Id.*; *see also* Fed. R. Crim. P. 15(c)(3)(B) (providing that a deposition may be taken abroad without the defendant's presence only if "there is a substantial likelihood that the witness's attendance at trial cannot be obtained").

[27] *United States v. Fuentes-Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991) (citing *United States v. Lopez-Cervantes*, 918 F.2d 111, 113 (10th Cir. 1990)).

[28] *See, e.g.*, *United States v. Warren*, 713 F. Supp. 2d 1, 4 (D.D.C. 2010); *United States v. Al Fawwaz*, No. 98-1023-LAK, 2014 WL 627083, at *1 (S.D.N.Y. Feb. 18, 2014).

[29] *See, e.g.*, *United States v. Dermen*, No. 18-00365, 2019 WL 3536616, at *2 (D. Utah Aug. 2, 2019); *United States v. 4. Fnu Lnu*, No. 15-00272-REB, 2016 WL 11658805, at *2 (D. Colo. Sept. 7, 2016); *United States v. Wei Liu*, No. 13-20114-KHV, 2014 WL 218624, at *3 (D. Kan. Jan. 21, 2014).

Moreover, Defendant represents that the prospective witnesses have all refused to travel to the United States to testify at trial, but each witness is willing to participate in a remote deposition. The Government responds that Defendant has not established the unavailability of the prospective witnesses because he does not specify the reason for their unwillingness to travel to the United States; Defendant merely remarks that their refusal is "unsurprising, especially during a worldwide pandemic."[30]  The Government contends that the COVID-19 pandemic may be the reason why the witnesses are unwilling to travel to the United States, but that information should come from each witness, rather than Defendant's counsel.

While "[a] more concrete showing of unavailability, of course, may be required at the time of trial before a deposition will be admitted in evidence,"[31] the Court finds that Defendant has made a sufficient showing of unavailability to preserve the testimony of the prospective witnesses through Rule 15 depositions.  The prospective witnesses are beyond a court's subpoena power, and Defendant represents that all four refuse to travel to the United States.[32] Representations by counsel are sufficient to establish unavailability.[33]  Thus, the Court finds that all four prospective witnesses are unavailable for purposes of Rule 15.

### C.    Interests of Justice

The Court next considers whether authorizing Defendant to conduct the depositions is necessary to prevent a miscarriage of justice.  "The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that

---

[30] Doc. 112 at 5.

[31] *See United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993).

[32] *See, e.g.*, *United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) ("[T]he Canadian witnesses were unavailable for trial [under Rule 15] because they were beyond the subpoena power of the United States and refused voluntarily to attend.").

[33] *See United States v. Farfan-Carreon*, 935 F.2d 678, 679–80 (5th Cir. 1991).

testimony to the case."[34]  Yet, while "simple fairness" generally requires allowing the moving

party to preserve that testimony if it is material and the witness is unavailable, there may be

"significant countervailing factors which would render the taking of the testimony unjust."[35]

 The Government raises, as a countervailing factor, that the evidence "calls into serious

question the truthfulness" of the witnesses' anticipated testimony that FZU never employed

Defendant.[36]  The Government submits several exhibits in support of this contention, including,

among other things, a Chinese article that identified Defendant as a new Chang Jiang

Distinguished Professor at FZU and a webpage of FZU's website that identified him as a

member of its faculty and described his research.[37]  The Government states that several articles

and references to Defendant on FZU's website were removed from the Internet after Defendant's

arrest, which, in its view, further calls into question the truthfulness of the anticipated testimony.

While the Government's concerns about the truthfulness of the prospective witnesses' testimony

may be legitimate, concerns of witness credibility are not a sound basis for the Court to prevent

Defendant from taking the depositions; determining the weight and credibility of a witness's

testimony belongs to the jury.

 That said, as a general matter, foreign depositions are suspect, and thus disfavored,

"because of the absence of procedural protections afforded parties in the United States."[38]  The

Court should therefore consider whether the proposed testimony has sufficient indicia of

reliability.[39]  Here, the Government notes that the witnesses would not take an oath in open court

---

[34] *Drogoul*, 1 F.3d at 1552.

[35] *Id.* at 1552, 1554.

[36] Doc. 113 at 12.

[37] *See* Docs. 113-1, 113-2, 113-3, 113-4, 113-5, 113-6.

[38] *Drogoul*, 1 F.3d at 1551.

[39] *See id.* at 1554–55.

to testify truthfully, and because there is no extradition treaty between the United States and the PRC, their testimony would not be subject to charges for perjury.  The Government argues that the lack of an effective oath—"the strongest indicator of the reliability of a witness'[s] testimony"[40]—coupled with the absence of face-to-face confrontation, would render the testimony "utterly unreliable."[41]

But the Government points out another, larger problem with Defendant's Rule 15 motion: Defendant has not obtained permission from the Chinese government to conduct the depositions. The Government states that, according to the U.S. Department of State, "China does not permit attorneys to take depositions in China for use in foreign courts," and "taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention."[42]  Without permission, "[p]articipation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants."[43] The Government represents that it notified Defendant of this information in April 2021 and explained that he would need to seek a letter rogatory to take the depositions of the four prospective witnesses, but Defendant opted not to seek a letter rogatory.[44]

---

[40] Doc. 113 at 13 (quoting *United States v. Banki*, No. 10 CR. 08 (JFK), 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010) ("Without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital.")).

[41] *Id.* at 13–14.

[42] *Judicial Assistance Country Information: China*, U.S. Dep't of State, https://travel.state.gov/content /travel/en/legal/Judicial-Assistance-Country-Information/China.html (last updated May 1, 2019) (emphasis omitted).

[43] *Id.*

[44] Rule 15(e) directs depositions to be taken "in the same manner as a deposition in a civil action," and Fed. R. Civ. P. 28(b)(1)(C) authorizes the taking of depositions in foreign courts "under a letter of request, whether or not captioned a 'letter rogatory.'"  "Letters rogatory are 'the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country.'"  *United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 LAK, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (quoting

Defendant's opening brief relegates his entire discussion of the legality under Chinese law of taking remote depositions to one footnote, which reads:

> Defense counsel have consulted with attorneys in China to confirm that such a deposition would not pose liability to the witnesses under Chinese law, which generally prohibits witnesses from testifying in mainland China.  The attorneys in China indicated that the prospective witnesses can testify from their homes or offices in China without running afoul of local laws, so long as the court reporter is located in Hong Kong (or a similar location outside mainland China), such that the location of the deposition would be deemed Hong Kong and not mainland China.[45]

The Government retorts that regardless of where the parties and court reporter are located, the witnesses would testify in the PRC under oath in connection with a criminal proceeding in the United States, so Defendant must obtain permission from the Chinese government before the depositions can proceed.  The Government notes that Defendant has offered no authority to support his position and "essentially asks the Court to take the word of unknown individuals."[46]

At the July 23, 2021 hearing on the Rule 15 motion, the Court asked Defendant to provide authority to substantiate his assertion that the proposed remote depositions would comply with Chinese law.  But Defendant did not provide any and continued to cite the advice of attorneys in the PRC, whose identities he did not disclose.  Defendant clarified that those attorneys advised that "the PRC Judiciary Department has not published any formal statement indicating whether the remote voluntary deposition of a witness located in China via video conference . . . would constitute taking of evidence or an investigation under Article 277 of the PRC Civil Procedure Code," the Chinese law that "seems to be . . . at issue here."[47]  Article 277,

---

*DBMS Consultants Ltd. v. Comput. Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990)).  District courts have "inherent authority to issue letters rogatory."  *B & L Drilling Elecs. v. Totco*, 87 F.R.D. 543, 545 (W.D. Okla. 1978).

[45] Doc. 112 at 6 n.2.

[46] Doc. 113 at 11.

[47] Doc. 123 at 7:10–16.

the Chinese law on which the State Department advisory is based, provides that "no foreign authority or individual shall, without permission from the competent authorities of the [PRC], serve process or conduct investigation and collection of evidence within the territory of the [PRC]."[48]  Defendant acknowledged that "the judiciary department could take the position that Article 277 disallows a deposition in these particular sets of circumstances even if it has not done so according to our counsel's awareness to date, so . . . they're unwilling to rule [that] out or say that there's no risk of that."[49]  Given this risk, Defendant offered to pay reasonable legal fees to allow the witnesses to consult with an attorney before or during the depositions.

As the Court stated on the record, Defendant fails to show that Chinese law allows him to take depositions of witnesses located in the PRC by remote means.  It is possible that Chinese authorities would narrowly construe Article 277 and conclude that a deposition does not occur "within the territory of the [PRC]" if the deposition is taken by remote means and the witness is the only participant located in the PRC.  But, as Defendant concedes, it is also possible that Chinese authorities would decline to read Article 277 in a manner that would provide a loophole for remote depositions.  The Court will not direct or encourage the parties to participate in a proceeding that puts them at risk of violating Chinese law.[50]

In his reply brief, Defendant suggests as a potential solution that the "witnesses travel to Hong Kong, Macau, or another nearby location to conduct the depositions—if the witnesses are

---

[48] *Zhizheng Wang v. Hull*, No. C18-1220RSL, 2020 WL 4734930, at *1 (W.D. Wash. June 22, 2020); *see also Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, No. 17-CV-02191-SK, 2019 WL 6134958, at *1 (N.D. Cal. Nov. 19, 2019).

[49] Doc. 123 at 8:5–10.

[50] *See, e.g.*, *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194, 2019 WL 1441130, at *11 (E.D.N.Y. Mar. 31, 2019) (striking a witness's video-link trial testimony when it came to light on cross-examination that he was in the PRC because the proceeding exposed participants to legal sanctions under Chinese law); *Zhizheng Wang v. Hull*, No. C18-1220RSL, 2020 WL 4734930, at *1 (W.D. Wash. June 22, 2020) (declining to compel a plaintiff to appear for a video deposition in the PRC because such a proceeding "appears to violate Chinese law").

willing to do so."[51]  But at the July 23, 2021 hearing, Defendant could not confirm that any of the four witnesses were both willing and able to travel to Hong Kong or Macau to attend their depositions.[52]  Nonetheless, the Court gave Defendant additional time to determine whether traveling was an option for each witness.  The Court also instructed the Government to investigate the feasibility of coordinating depositions by videoconference with the United States Consulate in Hong Kong, which serves both Hong Kong and Macau.  Having the witnesses sit for their depositions at a United States consulate would allow consular officers to administer the oaths and monitor the proceedings, and thus provide sufficient reliability safeguards.  The Court set a follow-up conference to address these matters for August 17, 2021.

During the August 17, 2021 conference, Defendant stated that only two of the four witnesses responded to his inquiry, and he could not represent that either of the two witnesses he heard back from was both willing and able to travel to Hong Kong to sit for a deposition at the U.S. Consulate there.  One witness said he was open to traveling to Hong Kong, but Defendant noted that Hong Kong's quarantine requirements could create some complications.  Defendant also stated that both witnesses were "inclined to travel to Macau" rather than Hong Kong if travel was necessary, but Macau has visa requirements.[53]  "Just to be clear," Defendant stressed, "the defense still moves to have the depositions be conducted remotely from Fujian Province . . . where the witnesses are located to ensure they actually do attend and especially as to the two

---

[51] Doc. 116 at 12–13.

[52] *See United States v. Sim*, No. 07-425-JLR, 2008 WL 11391249, at *2 (W.D. Wash. July 7, 2008) (denying a Rule 15 motion as to two proposed deponents because it was "unclear whether [they were] available or willing to testify at depositions in Cambodia").

[53] Doc. 140 at 3:4–14.

who haven't gotten back to us."[54]  Defendant did not specify which two witnesses had responded to his inquiry.

The Government then informed the Court that having the witnesses travel to Hong Kong or Macau to sit for their depositions would not obviate the need for permission from the Chinese government because "criminal depositions involving the U.S. government . . . require approval . . . regardless of the location within China."[55]  As a solution, the Government proposed to submit an MLAA request to conduct the remote depositions to the Chinese government on Defendant's behalf.  Defendant did not propose any alternative solution.  Because having the witnesses travel to Hong Kong or Macau was not a viable solution, the Court agreed that the Government should confer with defense counsel and pursue the MLAA process.  The Government submitted the MLAA request to the Chinese government on September 10, 2021, and as of the last update the Court received on October 15, 2021, the MLAA request remains pending.  For the reasons stated above, the Court concludes that conducting the depositions will serve the interests of justice only if the Chinese government approves the pending MLAA request.[56]

### D.      Case-Specific Findings

Because Defendant moves to take the depositions outside the United States and without his presence, Rule 15(c)(3) requires the Court to make "case-specific findings of all the

---

[54] *Id.* at 3:15–17.

[55] *Id.* at 4:23–5:2.

[56] On October 6, 2021, during a hearing on the Government's motion to continue the jury trial, Defendant argued for the first time that the MLAA process "was a fruitless exercise."  Doc. 177 at 21:2–4.  As the Court stated on the record at that hearing, Defendant did not raise this futility argument when the Government offered to submit the MLAA request back in August.  Nor did he raise this argument at the status conference held on September 8, 2021, two days before the Government submitted the MLAA request to the Chinese government, to discuss the status of the MLAA request.  In any event, as explained above, Defendant has failed to provide the Court with any viable alternative solution.

following":

> (A) the witness's testimony could provide substantial proof of a
> material fact in a felony prosecution;
> (B) there is a substantial likelihood that the witness's attendance at
> trial cannot be obtained;
> (C) the witness's presence for a deposition in the United States
> cannot be obtained;
> (D) the defendant cannot be present because:
>> (i) the country where the witness is located will not permit
>> the defendant to attend the deposition;
>> (ii) for an in-custody defendant, secure transportation and
>> continuing custody cannot be assured at the witness's
>> location; or
>> (iii) for an out-of-custody defendant, no reasonable
>> conditions will assure an appearance at the deposition or at
>> trial or sentencing; and
> (E) the defendant can meaningfully participate in the deposition
> through reasonable means.[57]

Neither party addresses the elements set forth in Rule 15(c)(3). Nonetheless, the Court proceeds to make the required case-specific findings.

Defendant has already established the first two elements by showing that the testimony of the prospective witnesses is material and that the prospective witnesses will be unavailable to testify at trial. Similarly, the Court finds that the prospective witnesses' presence for a deposition in the United States cannot be obtained because all four are beyond a court's subpoena power and have refused to travel to the United States.[58]

The Court also finds that Defendant cannot be present at the depositions because no reasonable conditions would assure an appearance in this case. Indeed, the Court required Defendant to surrender his passport, issued by the PRC, as a condition of pretrial release.[59]

---

[57] Fed. R. Crim. P. 15(c)(3).

[58] *See United States v. Dermen*, No. 18-00365, 2019 WL 3536616, at *2–3 (D. Utah Aug. 2, 2019).

[59] *See* Doc. 10 at 2.

Defendant surrendered his passport to the custody of the Court in August 2019.[60]  Moreover, by specifically requesting to take the depositions by remote means, Defendant agrees to not attend the depositions in person.[61]

The final element requires the Court to find that Defendant "can meaningfully participate in the deposition through reasonable means."[62]  In *United States v. Dermen*, the District of Utah found this element was met where the defense proposed that "the deposition be live-streamed to a courtroom . . . where the [d]efendant [could] view the deposition and have a member of his legal defense team present."[63]  Here, similarly, defense counsel proposes that Defendant participate in the remote depositions via videoconference.  The Court is satisfied that this will allow Defendant to meaningfully participate in the remote depositions.

In sum, the Court finds that the anticipated testimony is material and that the prospective witnesses are unavailable for purposes of Rule 15.  But Defendant fails to show that the proposed remote depositions would comply with Chinese law.  Because the remote depositions would put participants at risk of violating Chinese law, the Court concludes that conducting the depositions will serve the interests of justice only if the Chinese government authorizes them.  If the pending MLAA request to conduct the remote depositions is granted, the remote depositions may proceed without Defendant's physical presence because Rule 15(c)(3)'s requirements have all been met.

---

[60] *See* Doc. 17.

[61] *See United States v. Xiaorong You*, No. 2:19-CR-14, 2020 WL 3549828, at *4 (E.D. Tenn. June 30, 2020) ("By not opposing the Government's motion to hold this deposition and by specifically requesting that the Court allow defense counsel to be present, Defendant has stipulated that Defendant will not be able to be physically present to attend the deposition in person.").

[62] Fed. R. Crim. P. 15(c)(3)(E).

[63] 2019 WL 3536616, at *4.

### E.    Leave to File Rule 15 Motions

Both parties seek leave to file Rule 15 motions past the pretrial motions deadline. Defendant requests permission to file supplemental Rule 15 motions to depose additional prospective witnesses "as the need arises between now and trial."[64]  The Government, for its part, requests leave to file a Rule 15 motion to depose prospective rebuttal witnesses located in the PRC, including Chen Yongzheng, should the Court grant Defendant's Rule 15 motion.

Defendant's Rule 15 motion has been fully briefed since June 28, 2021.  Since then, Defendant has not indicated a need to depose additional prospective defense witnesses, and the Government has not notified the Court that it intends to file a Rule 15 motion to depose prospective rebuttal witnesses who are in the PRC.[65]  The Court therefore denies as moot both parties' requests for leave to file Rule 15 motions.

### F.    Reciprocal Discovery Request

Finally, the Government asks the Court to order Defendant to produce all reciprocal discovery in connection with Defendant's proposed depositions pursuant to Fed. R. Crim. P. 16 and 26.2 if the Court grants his Rule 15 motion.  The Government asserts that it has repeatedly requested discovery pursuant to Rules 16 and 26.2, including "all copies of all statements made by the prospective witnesses," but aside from a brief email that Defendant attributed to an unidentified witness, he has not produced any.[66]  Defendant responds that the Government's reciprocal discovery request is premature.  Indeed, Rule 16 does not provide for pretrial

---

[64] Doc. 112 at 13.

[65] On November 4, 2021, the Government filed a Rule 15 motion to take the depositions of five witnesses not encompassed by its request for leave.  The Court will address the Government's new Rule 15 motion in a separate order after it is fully briefed.

[66] Doc. 113 at 17.

discovery of statements made by prospective defense witnesses.[67]  And Rule 26.2 applies only to witnesses who actually testify.[68]  Defendant also states that, if the Court grants his Rule 15 motion, he will "fully comply with any discovery obligations under Rules 16 and 26.2, and the parties can meet and confer if the [G]overnment believes it is entitled to documents that have not been produced ahead of the depositions."[69]  To the extent the Government's reciprocal discovery request seeks discovery of witness statements, the request is denied as premature.  And to the extent the Government's reciprocal discovery request includes requests for other documents it is entitled to, the request is denied as moot in light of Defendant's representations.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Feng Tao's Motion for Rule 15 Depositions (Doc. 111) is **granted** under the condition that the Chinese government approves the pending MLAA request to conduct the remote depositions at least 30 days before trial.

**IT IS FURTHER ORDERED** that the parties' respective requests for leave to file Rule 15 motions are **denied as moot**, and the Government's reciprocal discovery request is **denied**.

**IT IS SO ORDERED.**

Dated: November 9, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[67] *See* Fed. R. Crim. P. 16(b)(2)(B) ("Rule 16(b)(1) does not authorize discovery or inspection of . . . a statement made to the defendant, or the defendant's attorney or agent, by . . . a prospective . . . defense witness.")

[68] *See* Fed. R. Crim. P. 26.2(a) (providing that this rule applies "[a]fter a witness other than the defendant has testified on direct examination").

[69] Doc. 116 at 10 n.8.