# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )
        v.                     )       Case No. 19-20052-JAR-JPO
                               )
FENG TAO                       )
        a/k/a "Franklin Tao,"  )
                               )
               Defendant.      )

## DR. FRANKLIN TAO'S [REDACTED] OPPOSITION TO
## THE GOVERNMENT'S MOTION FOR RULE 15 DEPOSITIONS AND
## OBJECTION TO CONTINUED TRIAL DATE

The Sixth Amendment guarantees that, "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. am. VI. The accused can "compel[] [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Maryland v. Craig*, 497 U.S. 836, 845 (1990) (quoting *Mattox v. United States*, 156 U.S. 237, 243 (1895)). "The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to … rigorous adversarial testing." *Id.* 846. For these reasons, appellate courts have reversed convictions where the government made an inadequate showing of necessity to deny a defendant's confrontation rights.[1]

---

[1] *See United States v. Pangelinan*, No. 19-10077-JWB, 2020 WL 5118550, at *3 (D. Kan. Aug. 31, 2020) (citing examples).

The government seeks to eviscerate defendant Dr. Franklin Tao's confrontation rights. It requests the Court's permission to depose *five witnesses* under Rule 15, and in the alternative requests that two witnesses be allowed to testify via two-way video. Two of the witnesses, who live in Germany and Taiwan, have not even said they are willing to be deposed, and a deposition in Germany would be illegal. The other three witnesses, from DOE and KU, are available to testify at trial, despite expressing a *preference* not to testify at trial due to health concerns. None of the five witnesses' testimony is material. The government's motion therefore fails to satisfy Rule 15's exceptional circumstances standard, let alone *Craig*'s more demanding standard for permitting live video testimony. The Court should therefore deny the government's motion in its entirety.

## LEGAL STANDARD

A "primary object" of the Confrontation Clause "was to prevent depositions" that courts "sometimes admitted in civil cases." *Craig*, 497 U.S. at 845 (quoting *Mattox*, 156 U.S. at 242). "Depositions generally are disfavored in criminal cases," because of "the factfinder's usual inability to observe the demeanor of deposition witnesses, and the threat that poses to the defendant's Sixth Amendment confrontation rights." *United States v. Drogoul*, 1 F.3d 1546, 1551, 1552 (11th Cir. 1993) (footnote omitted). Given these concerns, depositions can be permissible only "when doing so is necessary to achieve justice," because the "testimony is critical to the case," and the deposition "may be done consistent with the defendant's constitutional rights." *Id.* at 1551.

Under Rule 15(a)(1), the court can permit depositions "in order to preserve testimony for trial" only "because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1).[2] "The words 'exceptional circumstances' bespeak that only in extraordinary cases will

---

[2] "The burden is on the moving party to establish exceptional circumstances justifying the taking of depositions." *Drogoul*, 1 F.3d at 1552; *accord United States v. Kelley*, 36 F.3d 1118, 1124–25 (D.C. Cir. 1994).

depositions be compelled." *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994). In determining whether "exceptional circumstances" exist, the Tenth Circuit considers whether "(1) the witness'[s] testimony was material; (2) the witness would be unavailable to testify; and (3) taking the deposition was necessary to prevent a failure of justice." *United States v. Fuentes-Galindo*, 929 F.2d 1507, 1509 (10th Cir. 1991). Even then, courts will deny a motion if significant countervailing factors would render the deposition unjust. *See Drogoul*, 1 F.3d at 1552.

The standard for allowing live video testimony is even more stringent. Under *Craig*, the court can only allow live video testimony and deny confrontation rights if (1) "'the denial of such confrontation is necessary to further an important public policy,'" and (2) "'the reliability of the testimony is otherwise assured.'" *United States v. Pangelinan*, No. 19-10077-JWB, 2020 WL 5118550, at *3 (D. Kan. Aug. 31, 2020) (quoting *Craig*, 497 U.S. at 850); *see Craig*, 497 U.S. at 844, 850 (although a defendant does not have an "*absolute* right to a face-to-face meeting with witnesses against them at trial," the "face-to-face confrontation requirement" should not "easily be dispensed with"). The movant must make "an adequate showing of necessity," which is "case-specific," and the "trial court must hear evidence" in making its determination. *Craig*, 497 U.S. at 855; *see Pangelinan*, 2020 WL 5118550, at *1 (noting that "the court held an evidentiary hearing" before ruling).

## <u>ARGUMENT</u>

I.   **The government's requested depositions fail to satisfy Rule 15 and would deny Dr. Tao his confrontation rights.**

The government fails to satisfy the Rule 15 standard as to all five witnesses it seeks to depose. The Court should therefore deny the government's motion.

  A.  **The government's motion to depose Dr. Schlogl is meritless because he is not unavailable, his testimony is not material, the motion is untimely, there is no extradition treaty with Germany, and depositions are unlawful in Germany.**

First, the government has failed to demonstrate "a substantial likelihood" that Dr. Robert Schlogl, a scientist in Germany at the Fritz Haber Institute, will be unavailable for trial. To establish unavailability for purposes of Rule 15 "the government must demonstrate that 'a substantial likelihood exists that the proposed deponent will not testify at trial.'" *United States v. Daniels*, 194 F.R.D. 700, 702 (D. Kan. 2000) (quoting *Drogoul*, 1 F.3d at 1553). The movant must also have made "a good faith effort to secure the presence of the[] witnesses at trial, such as by offering to pay their travel expenses." *United States v. Oudovenko*, No. 00-CR-1014, 2001 WL 253027, at *2 (E.D.N.Y. Mar. 7, 2001); *see United States v. Donado*, No. 4:18-CR-00144, 2021 WL 261000, at *2 (E.D. Tex. Jan. 25, 2021) ("The standard for proving exceptional circumstances is high and requires the movant make a good faith effort to make the desired witness available before resorting to less-reliable foreign depositions."); *United States v. Stein*, 482 F. Supp. 2d 360, 365 n.24 (S.D.N.Y. 2007) (movant's "affirmation that the witnesses would not voluntarily travel to the United States to testify at the trial fails to establish that he or the [movant] made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses." (brackets omitted)).

Dr. Schlogl has not stated that he refuses to travel to the United States to testify at trial. *See* Gov't Rule 15 Motion, ECF No. 186, at 14 (stating only that it is "unclear" to the government "whether [Dr. Schlogl] will agree to travel to the United States" for trial, and that the government is still "in the process of confirming" whether he would be willing to be deposed). The government also has not stated that it made "a good faith effort to secure the presence" of Dr. Schlogl, as required, "such as by offering to pay [his] travel expenses." *Oudovenko*, 2001 WL 253027, at *2; *see Donado*, 2021 WL 261000, at *2; *Stein*, 482 F. Supp. 2d at 365 n.24. The government's

showing—that it has not asked and does not know whether Dr. Schlogl is unavailable—does not establish unavailability and is fatal to its motion.

Second, Dr. Schlogl's testimony is not material. To establish materiality, the testimony must be "critical to the case." *Drogoul*, 1 F.3d at 1552. "[T]he Government must show the testimony lies at the very core of the charges in the indictment and enables the government to make its case against defendant." *United States v. Berganza Espina*, No. 4:19-CR-00228, 2021 WL 4943651, at *2 (E.D. Tex. Oct. 22, 2021) (internal quotation marks omitted). Testimony fails to satisfy this requirement if it "is merely desirable," as the testimony of any witness on a party's list is expected to be, but does not prove or negate "an element of the crime." *Donado*, 2021 WL 261000, at *3; *United States v. Sledziejowski*, No. 3:16-CR-101-B, 2018 WL 1757777, at *4 (N.D. Tex. Apr. 12, 2018) ("Rule 15 materiality in the context of establishing a criminal case, then, must mean more than simply that the requested testimony is desirable or helpful. And the government's burden to establish Rule 15 materiality requires it do more than simply assert that the forecasted deposition testimony is material."). Even if the proposed testimony is material, the "court may properly deny the motion if the proposed testimony would be cumulative or consists of hearsay." *United States v. Grossman*, No. S2 03 CR. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005); *see Donado*, 2021 WL 261000, at *3 (testimony is not material if it is "merely corroborative or cumulative of other evidence"). The government fails to meet this standard.

The government's asserted purpose for Dr. Schlogl's testimony is to prove the allegation that, "[c]ontrary to Dr. Tao's claims to Dr. Weatherley," Dr. Tao's supervisor at KU, Dr. Tao "never visited [the Fritz Haber Institute]" in Germany in spring 2019. Gov't Rule 15 Motion, ECF No. 186, at 6. This testimony is clearly not "critical to the case" against Dr. Tao for allegedly defrauding KU, DOE, and NSF or making false statements to DOE and NSF, *Drogoul*, 1 F.3d at

1552, and it does not "lie[] at the very core of the charges," *Berganza Espina*, 2021 WL 4943651, at \*2, even if the government thinks it would be "desirable," *Donado*, 2021 WL 261000, at \*3, or helpful, *Sledziejowski*, 2018 WL 1757777, at \*4. The notion that the government's case turns on Dr. Schlogl's testimony is particularly unavailing given that the government indicted Dr. Tao without ever having spoken to Dr. Schlogl, and it only contacted him 17 months after indictment.

The government also concedes that this evidence is cumulative or corroborative. *See Grossman*, 2005 WL 486735, at \*3 ("the court may properly deny the motion if the proposed testimony would be cumulative"); *Donado*, 2021 WL 261000, at \*3 (testimony is not material if it is "merely corroborative or cumulative of other evidence"). Dr. Schlogl's testimony is not necessary because, according to the government, Dr. Tao's passport does not show a visit to Germany. *See* Gov't Rule 15 Motion, ECF No. 186, at 6 n.5. The government thus concedes that it has other ways to prove that Dr. Tao did not visit Germany in spring 2019 without Dr. Schlogl's testimony, belying the argument that the testimony is necessary.

Third, a countervailing factor that weighs against the deposition is that the government's motion is untimely, because the pre-trial motions deadline passed in August 2020, roughly 15 months before the government filed its Rule 15 motion. *See United States v. Hayat*, No. 2:05–cr–0240 GEB DB, 2017 WL 6539610, at \*2 (E.D. Cal. Dec. 20, 2017) ("the timeliness of the party's motion" is relevant to whether to grant deposition); *United States v. Al Kassar*, No. S307CR354(JSR), 2008 WL 4735269, at \*2 (S.D.N.Y. Oct. 27, 2008) ("undue expense to the non-moving party and significant delays in trying the matter" are relevant to whether to grant a deposition request).[3] The government failed to argue in its motion that good cause existed, and it

---

[3] Dr. Tao's Motion to Strike argued that the Rule 15 motion should be struck because it is untimely and the government failed to demonstrate or argue good cause. Separately, the Court should

had no excuse for its delay, since the government acknolwedged that it waited until January 2021, five months after the pre-trial motions deadline, and 17 months after indictment, to even attempt to interview Dr. Schlogl. *See* Gov't Rule 15 Motion, ECF No. 186, at 1; Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a [pre-trial] motion, the motion is untimely," and the Court may consider the motion only "if the party shows good cause."). The government's claim that "the timing of the government's motion is not due to the government's lack of effort to secure the witnesses' testimony," Gov't Rule 15 Motion, ECF No. 186, at 2 n.2, is contradicted by these uncontested facts.

Fourth, a countervailing factor that weighs against the deposition is that Article 16(2) of the German Constitution prohibits the extradition of a German citizen to a country outside of the European Union.[4] *See United States v. Tao*, Case No. 19-20052-JAR, 2021 WL 5205446, at *5 (D. Kan. Nov. 9, 2021) (citing approvingly the government's argument that the absence of an extradition treaty, coupled with the absence of face-to-face confrontation, "would render the testimony 'utterly unreliable'").[5] Thus, Dr. Schlogl could lie during the deposition without fear of extradition and prosecution in the United States.

Fourth, a countervailing factor that weighs *heavily* against the deposition is that Germany does not allow for depositions. According to the United States Embassy in Germany's website, "The Hague Evidence Convention does not apply to criminal cases. Obtaining evidence in criminal

---

consider the untimeliness when applying the "exceptional circumstances" test under Rule 15. *Hayat*, 2017 WL 6539610, at *2; *Al Kassar*, 2008 WL 4735269, at *2.

[4] *See* Art. 16(2), Basic Law for the Federal Republic of Germany, *available at* https://www.gesetze-im-internet.de/englisch_gg/ (last visited Nov. 17, 2021) ("No German may be extradited to a foreign country. The law may provide otherwise for extraditions to a member state of the European Union or to an international court, provided that the rule of law is observed.").

[5] Foreign depositions are particularly "suspect, and consequently, not favored," due to "the absence of procedural protections afforded parties in the United States." *Drogoul*, 1 F.3d at 1551.

cases must be handled by a German court pursuant to written questions submitted under cover of a letter rogatory."[6] The government either overlooks or deliberately disregards this limitation in its motion. Even if a German court questioned the witnesses using questions prepared by the parties, the transcript would not be admissible against Dr. Tao, and the procedure would not satisfy Dr. Tao's Sixth Amendment right to confront the witnesses against him. *Cf. Hayat*, 2017 WL 6539610, at *2 (courts should consider "whether the deposition procedures in the foreign country are compatible with fundamental issues of fairness" (internal quotation marks omitted)).

Fifth, Dr. Schlogl has not stated that he is willing to be deposed. The Court's decision to permit him to be deposed would be an inappropriate advisory opinion, since the government's request is not ripe for decision. For these reasons, the Court should deny the motion to depose Dr. Schlogl.

### B. The government's motion to depose Professor Chen is meritless because he is not unavailable, his testimony is not material, the motion is untimely, and he has not said he is willing to be deposed.

First, the government has failed to demonstrate "a substantial likelihood" that Professor Chen, a professor in Taiwan, will be unavailable for trial. *Daniels*, 194 F.R.D at 702. Professor Chen has not stated that he *is unwilling* to travel to the United States to testify at trial. *See* Gov't Rule 15 Motion, ECF No. 186, at 15 (stating only that Dr. Chen "was unsure" whether he would agree to travel to the United States for trial, and that the government is still "in the process of engaging him through Taiwanese authorities regarding a Rule 15 deposition"). In fact, the government's FD-302 summary of its recent interview with Dr. Chen indicates that the government never even asked Dr. Chen whether he would be willing to be deposed. *Id.* Ex. B, at

---

[6] Judicial Assistance, U.S. Embassy & Consulates in Germany, https://de.usembassy.gov/judicial-assistance/ (last visited Nov. 17, 2021).

4. The government also has not shown that it made "a good faith effort to secure the presence" of Professor Chen "such as by offering to pay [his] travel expenses." *Oudovenko*, 2001 WL 253027, at *2; *see Donado*, 2021 WL 261000, at *2; *Stein*, 482 F. Supp. 2d at 365 n.24. The government's meager showing does not establish unavailability.

Second, Professor Chen's testimony is not material. The government's asserted purpose for the testimony is to prove the allegation that Dr. Tao applied for funding from the Natural Science Foundation of China through Fuzhou University. *See* Gov't Rule 15 Motion, ECF No. 186, at 14–15. But the government admits that it does not need Professor Chen to prove this allegation, because it claims it has an email from Dr. Tao to Professor Chen, cited in Count 7 of the indictment, *id.*, and that it has an alleged funding application submitted by Dr. Tao to the Natural Science Foundation of China, *see id.* Ex. B, at 2–3, which already purportedly demonstrate this fact. Professor Chen's testimony about these documents would be cumulative and violate the best evidence rule. *See* Fed. R. Evid. 1002 (best evidence rule); *Grossman*, 2005 WL 486735, at *3 ("the court may properly deny the motion if the proposed testimony would be cumulative"); *Donado*, 2021 WL 261000, at *3 (testimony is not material if it is "merely corroborative or cumulative of other evidence").[7]

The argument that an element of the government's case turns on Professor Chen's testimony is especially unpersuasive because the government indicted Dr. Tao without ever having spoken to Professor Chen. Thus, the testimony cannot be "critical to the case," *Drogoul*, 1 F.3d at 1552, and it does not "lie[] at the very core of the charges." *Berganza Espina*, 2021 WL 4943651,

---

[7] The government also admits that all of the five witnesses' testimony "is corroborated by other independent evidence." Gov't Rule 15 Motion, ECF No. 186, at 7 n.6. That admission alone is sufficient to deny the government's entire motion, since the testimony is not material or necessary if it is cumulative of other evidence that demonstrates the same facts. *See, e.g.*, *Donado*, 2021 WL 261000, at *3.

at *2. That it may be "desirable" or "helpful" to the government is insufficient to establish materiality. *Donado*, 2021 WL 261000, at *3; *Sledziejowski*, 2018 WL 1757777, at *4.

Third, a countervailing factor that weighs against Professor Chen's deposition is that the government's motion is untimely, because the pre-trial motions deadline passed in August 2020, roughly 15 months before the government filed its motion. The government failed to argue good cause, and it had no excuse for its delay, since the government admitted that it waited until May 2021, nine months after the pre-trial motions deadline, to even attempt to interview Professor Chen. *See* Gov't Rule 15 Motion, ECF No. 186, at 1; *see Hayat*, 2017 WL 6539610, at *2 (courts consider "the timeliness of the party's motion" in deciding whether it should be granted under Rule 15); *Al Kassar*, 2008 WL 4735269, at *2.

Fourth, a countervailing factor that weighs against Professor Chen's deposition is that the United States does not have an extradition treaty with Taiwan that would allow the United States to require Professor Chen to be extradited if he committed perjury. *See Tao*, 2021 WL 5205446, at *5 (citing approvingly the government's argument that the absence of an extradition treaty, coupled with the absence of face-to-face confrontation, "would render the testimony 'utterly unreliable'"). This also weighs against the deposition.

Fifth, Professor Chen has said he is "uncomfortable" testifying against Dr. Tao, and he has not agreed to be deposed. Nor can the government force him. According to the U.S. State Department website, unless the witness volunteers to be deposed, the  most Taiwan will permit is examination by a court in Taiwan: "If the letters rogatory requests the taking of evidence, the Taiwan court will not permit examination of witnesses by attorneys; witnesses would be examined

by the court on the basis of written questions."[8] This is not a deposition, and it would not be admissible, nor would it satisfy Dr. Tao's confrontation rights. *Cf. Hayat*, 2017 WL 6539610, at *2 (courts should consider "whether the deposition procedures in the foreign country are compatible with fundamental issues of fairness" (internal quotation marks omitted)). Thus, the government's request is not ripe for decision, and the Court's grant of a deposition conditioned on Professor Chen's possible future willingness to be deposed would be an improper advisory opinion.[9] For these reasons, the Court should deny the motion to depose Professor Chen.

### C. The government's motion to depose Dr. Schwartz is meritless because she is not unavailable for trial, her testimony is not material, and the government's motion is untimely.

The government's Rule 15 motion to depose Dr. Schwartz, one of Dr. Tao's DOE program managers, is meritless for multiple reasons. First, Dr. Schwartz is not unavailable for trial merely because she would *prefer* not to testify at trial. She has never refused to travel to Kansas City to testify at trial, and she instead stated that she "would *like to* avoid" traveling "in the near future." *See* Gov't Motion to Continue Jury Trial, ECF No. 169, Ex. A (emphasis added). As the government admits, however, a witness is unavailable for trial due to health problems only when the health problems "*prevent* the witness from testifying live at trial." Gov't Rule 15 Motion, ECF No. 186, at 8 (emphasis added); *see also Drogoul*, 1 F.3d at 1553 (unavailability requires that a "substantial likelihood exists that the proposed deponent *will not* testify at trial," and holding that witnesses were unavailable where they "cannot be compelled to testify at [the defendant's] trial"

---

[8]    Taiwan, U.S. Department of State, Travel.State.Gov., https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Taiwan.html (last visited Nov. 17, 2021).

[9] Under Rule 12(c)(3), the Court also cannot permit a deposition in Germany or Taiwan without Dr. Tao being physically present absent certain case-specific findings. The government is silent on this issue, waiving any argument that the facts support a foreign deposition without Dr. Tao's physical presence.

(emphasis added)). Similarly, as the government concedes, her deposition testimony would not even be admissible at trial unless she "cannot be present or testify at trial." Gov't Rule 15 Motion, ECF No. 186, at 8 n.7 (quoting Fed. R. Evid. 804(a)(4)).

Dr. Schwartz's health concerns also do not prevent her from testifying at trial. Dr. Schwartz states that she would prefer not to travel because  . Gov't Motion to Continue Jury Trial, ECF No. 169, Ex. A. The government supplemented its motion with a letter from redacted that states:

ECF No. 196. But the letter from redacted

. *Id.*[10] Instead, redacted

.

These concerns do not rise to a level of severity to excuse the witness's attendance at trial and deny the defendant's confrontation rights. For example, in *United States v. Casher*, CR 19-65-BLG-SPW, 2020 WL 3270541 (D. Mont. June 17, 2020), a witness moved to quash a subpoena to

---

[10] The second sentence of the letter states redacted

testify at a June 2020 trial because he was "63-years-old and suffers from high-blood pressure, hypothyroidism, an enlarged prostate, and an irregular heartbeat, in addition to smoking for over 45 years," and his doctor told him "there are concerns with air travel in regards to Covid" and that he was "at a high risk of complications were he to become infected." *Id.* *1. The court nevertheless ordered the witness to testify at trial. While the court was "sympathetic" to the witness's health condition, those "risks do not rise to the level of a 'necessity' to forego [the defendant's] rights." *Id.* at *3. The witness "could choose to drive to limit his potential exposure," a 16-hour drive from Madison, Wisconsin, to Billings, Montana (according to Google Maps), or the witness could fly and take the "several precautionary measures" similar to what the court would take during the trial. *Id.*[11]

Dr. Schwartz's health issues, to the extent they still exist, are far less severe than the health issues that afflicted the witness in *Casher*, 2020 WL 3270541, at * 1–3. And *Casher* was also decided in June 2020, when vaccines were unavailable. Dr. Schwartz is, by now, presumably vaccinated, or will be by April 2022, just like nearly 60% of the population of the United States, a number that is sure to have risen substantially by April 2022, when trial is set to occur.[12] Dr.

---

[11] *See also People v. Frett*, CASE NO. ST-2018-CR-00208, 2020 WL 1875242 (Virgin Isl. Sup. Ct. Apr. 6, 2020) (denying the government's motion for deposition of paraplegic witness who told the government her condition would not improve before trial because there was no evidence that the witness was "medically unable to travel and attend trial to testify"); *C.A.R.A. v. Jackson Cnty. Juvenile Office*, 2021 WL 2793539, --- S.W.3d --- (Miss. Ct. App. July 6, 2021) (defendant's Confrontation Clause rights were violated where witness testified remotely because, although COVID-19 is "an infectious disease affecting the entire community," there was "no evidence, or findings, concerning the prevalence or risks of COVID-19 in Jackson County or in Kansas City, or in the circuit court's own facilities," and "the safety measures in place in the courtroom [were] sufficiently protective to permit" attorneys and court staff to be present).

[12] *See* Our World in Data, https://ourworldindata.org/covid-vaccinations?country=USA (last visited Nov. 17, 2021). redacted

Schwartz's health issues are also far less severe than the witnesses in the cases cited by the government where depositions were permitted, and those cases often involved unvaccinated witnesses in higher-risk situations.[13]

In addition, if Dr. Schwartz's concerns over air travel are so significant that she refuses to fly, she can drive from the Washington, D.C., area to Kansas City, Kansas, which would take roughly the same time as the witness in *Casher*, whom the court said could drive from Madison, Wisconsin, to Billings, Montana (~16 hours, according to Google Maps) rather than deny the defendant his confrontation rights. Dr. Schwartz could also travel by train. In either event, it is

redacted

---

[13] *See United States v. Bond*, 362 F. App'x 18, 22 (11th Cir. 2010) (witness had "grave physical hardship" that made her "unable to be present or to testify at trial," and defendant never challenged the witness's unavailability at the trial court); *United States v. Keithan*, 751 F.2d 9, 12–13 (1st Cir. 1984) (elderly witnesses who could not leave their home or were unable to walk were deemed unavailable); *United States v. Konrad*, No. Crim. A. 4:95-CR-HLM, 1996 WL 735566, at *1 (N.D. Ga. Nov. 27, 1996) (witness with "multiple cardiac conditions" with medical opinion that he should not testify at trial); *United States v. Karoly*, Crim. No. 08-592, 2009 WL 1872083, at *2 (E.D. Pa. June 29, 2009) (witness deemed unavailable where he was 77 years old, had been diagnosed with at least five serious medical conditions, including several types of cancer, and a medical opinion stated that it "would be overwhelming and cause undo-stress" for him to testify at trial); *United States v. Akhavan*, 523 F. Supp. 3d 443 (S.D.N.Y. 2021) (witness had hypertension and atrial fibrillation, his wife had hypertension, he and his wife had to take care of his 83-year-old mother-in-law, and neither the witness, his wife, nor his mother-in-law were fully vaccinated); *United States v. Davis*, No. 19-101-LPS, 2020 WL 6196741, at *1 (D. Del. Oct. 22, 2020) (permitting remote testimony prior to availability of vaccines); *United States v. Benson*, 79 F. App'x 813, 820–21 (6th Cir. 2003) (85-year-old witness testified via video because she testified that she was "too ill to travel" due to "extensive health problems" and recent "major stomach surgery" that left her "underweight and fatigued"); *United States v. Griffin*, No. 11-cr-936 (RJS) 2021 WL 3188264 (S.D.N.Y. July 28, 2021) (witness was "unable to testify in person" during supervised release hearing because she gave birth two weeks earlier, had been advised by a doctor not to fly, and she was unvaccinated); *United States v. Donziger*, No. 11-CV-691 (LAK), 2020 WL 5152162, at *1 (S.D.N.Y. Aug. 31, 2020) (72-year-old witness permitted to testify remotely after he stated that he refused to travel to the trial scheduled for June 2020, before vaccines were available).

incumbent upon the government to offer to arrange for such accommodations,[14] and the government has made no showing that it has done so. *See Oudovenko*, 2001 WL 253027, at *2 (the movant must make "a good faith effort to secure the presence" of the witness); *Donado*, 2021 WL 261000, at *2 *Stein*, 482 F. Supp. 2d at 365 n.24.

Second, Dr. Schwartz's testimony is not material. The government states that Dr. Schwartz is expected to testify about "DOE's grant award practices, expectations, and disclosure requirements, the competitive nature of grant applications, and the agency's reliance on principal investigators and universities to be honest and to follow their internal policies." Gov't Rule 15 Motion, ECF No. 186, at 10.[15] The suggestion that Dr. Schwartz is the only person at DOE who can testify about the DOE grant process is risible. A simple Google or LinkedIn search shows that DOE has numerous program managers like Dr. Schwartz who can capably testify about DOE's grant award practices, expectations, disclosure requirements, competition, and reliance on principal investigators and universities to be honest and to follow internal policies.[16] The government can easily replace Dr. Schwartz with another DOE witness who can testify as to the topics she will testify about, rendering her testimony immaterial.

---

[14] The government asserts, without any support or evidence, that a one-night stay in a hotel would put Dr. Schwartz and Dr. Miranda "at unreasonable risk." Gov't Rule 15 Motion, ECF No. 186, at 11–12. The court should reject this *ipse dixit* assertion. The prosecutors are not medical professionals or public health experts who are qualified to opine on this subject, and redacted

[15] Because the government claims that Dr. Schwartz and Dr. Miranda expect to testify about these exact same topics, it is indisputable that at least one of the two witnesses is not material, since their testimony would be cumulative. *See Donado*, 2021 WL 261000, at *3.

[16] If the government cannot find a single program manager at DOE who can provide testimony similar to Dr. Schwartz's testimony, one has to wonder how DOE can expect principal investigators like Dr. Tao to be fully informed of all DOE grant requirements.

To the extent the government argues that Dr. Schwartz must testify because she was Dr. Tao's program manager, that argument also fails. All of the alleged conversations the government may seek to introduce into evidence between Dr. Tao and Dr. Schwartz are in writing and over email, obviating the need for her to testify about those documents. The government's interview memorandum for Dr. Schwartz does not identify any oral communications between Dr. Schwartz and Dr. Tao, much less one that is germane to an element of the charges. ECF No. 186-3.

Third, a countervailing factor that weighs against the deposition is that the motion is untimely and no good cause exists. *Hayat*, 2017 WL 6539610, at *2; *Al Kassar*, 2008 WL 4735269, at *2. Dr. Schwartz's ███████████ the same month as Dr. Tao's deadline to file his Rule 15 motion. The government either knew about ███████████ in May 2021 or earlier, but failed to alert Dr. Tao or the Court until the eve of trial, or it failed to communicate with Dr. Schwartz until weeks before the October 25 trial date, despite claiming that she is a key witness. Either way, the government's delay in seeking her deposition is the government's fault. Had the government timely communicated with Dr. Schwartz, it would have been able to move for her deposition before the May 2021 deadline for Dr. Tao to file his Rule 15 motion. Instead, it delayed until weeks before the October 25 trial date, and instead of filing a Rule 15 motion, it moved for a continuance. The government then waited five more weeks to file its Rule 15 motion, and it failed to argue good cause, effectively conceding that it did not exist. For these reasons, the Court should deny the motion to depose Dr. Schwartz.

### D. The government's motion to depose Dr. Miranda is meritless because he is not unavailable for trial, his testimony is not material, and the government's motion is untimely.

The government's Rule 15 motion as to Dr. Miranda is meritless for multiple reasons. First, Dr. Miranda is not unavailable to testify at trial. Dr. Miranda has never refused to travel to Kansas City to testify at trial, and he instead expressed a "personal reason" why he did "not *want* to travel

to Kansas." Gov't Motion to Continue Jury Trial, ECF No. 169, Ex. A (emphasis added). Dr.

Miranda explained that ███redacted█████████████████████████████████████████████

█████████████████████████████████████████████. *Id.* The government later

supplemented its motion with a letter from ███redacted████████████,[17] which stated: ███redacted███

███████████████████████████████████████████████████████████████████████

██████████████████████████████ ECF No. 196. ███redacted█████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

The concerns of Dr. Miranda ███redacted██████ do not justify denying Dr. Tao his

confrontation rights. Like the concerns of Dr. Schwartz, Dr. Miranda's health concerns are far less

severe than the health concerns of witnesses where courts have denied depositions, including the

witness in *Casher*, where the court required the witness to testify at trial. 2020 WL 3270541, at

*3; *see supra* Part I.C. In addition, like the witness in *Casher*, Dr. Miranda can take "several

precautionary measures" when he flies if he is concerned about catching COVID-19, and if Dr.

Miranda does not want to fly to Kansas City, the government should pay for him to travel by car

or train. *Casher*, 2020 WL 3270541, at *3. The government cannot demonstrate unavailability

given its apparent failure to offer or arrange such alternative accommodations. *Oudovenko*, 2001

WL 253027, at *2 (the movant must make "a good faith effort to secure the presence" of the

witness); *Stein*, 482 F. Supp. 2d at 365 n.24; *Donado*, 2021 WL 261000, at *2. Dr. Miranda is not

unavailable to testify at trial in these circumstances.

---

[17] *See* ███redacted███████████████████████████████████████████████████████

██ (last visited Nov. 17, 2021).

Second, Dr. Miranda's testimony is not material. Like with Dr. Schwartz, the government states that Dr. Miranda is expected to testify about "DOE's grant award practices, expectations, and disclosure requirements, the competitive nature of grant applications, and the agency's reliance on principal investigators and universities to be honest and to follow their internal policies." Gov't Rule 15 Motion, ECF No. 186, at 10. And just like with Dr. Schwartz, innumerable DOE program managers could testify about these topics. The government also asserts that Dr. Miranda needs to testify about an "exchange" between Dr. Tao and Dr. Miranda that would purportedly rebut a potential defense that the Current & Pending Support disclosure requirements in the DOE grant applications did not clearly call for disclosure of foreign research grants. *Id.* at 10–11. The government fails to note, however, that the exchange occurred over email, which is the best evidence of the exchange. *See* Email Exchange Between Dr. Tao and Dr. Miranda, Dec. 1–16, 2014, ECF No. 187-1. Dr. Miranda's testimony on this point is unnecessary, and it would also violate the best evidence rule. *See* Fed. R. Evid. 1002. Thus, none of Dr. Miranda's testimony is "critical to the case," *Drogoul*, 1 F.3d at 1552, and it does not "lie[] at the very core of the charges." *Berganza Espina*, 2021 WL 4943651, at *2. The government therefore fails to satisfy its burden of demonstrating that Dr. Miranda's testimony is material.

Third, a countervailing factor that also weighs against the deposition is that the motion is untimely and no good cause exists for the delay. *Hayat*, 2017 WL 6539610, at *2; *Al Kassar*, 2008 WL 4735269, at *2. ▮redacted▮ could not have been a surprise to the government, and the government either knew about his health concerns but concealed it from Dr. Tao and the Court until the eve of trial, or it failed to properly communicate with him about the trial until weeks before the trial was then set to begin (on October 25). Either way, like with Dr. Schwartz, the government's delay in seeking his deposition is the government's fault. Like with Dr. Schwartz,

the government waited until just weeks before the October 25 trial date to alert Dr. Tao and the Court about Dr. Miranda's concerns, and instead of filing a Rule 15 motion, it moved for a continuance. The government then waited another five weeks before it filed its Rule 15 motion, and it did not argue that good cause existed, effectively conceding that it did not exist. For these reasons, the Court should deny the motion to depose Dr. Miranda.

       E.  **The government's motion to depose Dr. Weatherley is meritless because he is not unavailable for trial, his testimony is not material, the government's motion is untimely, and Dr. Weatherley has not agreed to be deposed.**

First, Dr. Weatherley, a former supervisor of Dr. Tao, is not unavailable to testify at trial. On August 26, 2021, KU notified the government that Dr. Weatherley redacted █████████████████ █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. The government later supplemented its motion by representing that redacted ████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████ but may be available to testify next year whether by deposition, two-way video, or in person." ECF No. 196. redacted ████████████████████████████████████████ ████████████████████████. To date, Dr. Weatherley has not refused to testify at trial or even stated that he is unable to testify at trial, let alone why he would be unable to testify. Far from being unavailable for trial, the government admits that he *may be available* to testify at trial next year, which is when the trial is currently scheduled to begin. *Id.* A witness who may be available for trial is not, by definition, unavailable for trial.

Dr. Weatherley's testimony is also not material. Dr. Weatherley is Chair of Chemical and Petroleum Engineering (CPE) at KU. The government states that Dr. Weatherley would testify about Dr. Tao's "employment responsibilities at KU," his "performance during the relevant

period," his "buyout request for the Spring 2019 semester," his "claims regarding [the Fritz Haber Institute]," and his "absence from KU during the Spring 2019 semester." Gov't Rule 15 Motion, ECF No. 186, at 13. The government claims that this testimony is necessary to prove that Dr. Tao allegedly defrauded KU of salary. *Id.* But the evidence regarding performance, the buyout request, and the Fritz Haber Institute consists entirely of email evidence, such that Dr. Weatherley's testimony about the contents of the emails would not only be unnecessary, but it would also be inadmissible under the best evidence rule. *See* Fed. R. Evid. 1002. The government also claims that it has Dr. Tao's passport, suggesting it can prove that Dr. Tao was not on campus by showing his travel history.

Moreover, the government has already identified a replacement for Dr. Weatherley: Professor Russell Dean Ostermann. Professor Ostermann is Director of Petroleum Engineering at CPE, a supervisor in the same department as Dr. Weatherley. The government listed Professor Ostermann in its witness list on October 1, 2021, at a time when it was aware of Dr. Weatherley's circumstances, and it presumably plans to call him to testify at trial, especially if Dr. Weatherley is unavailable. *See* Government Witness List, ECF No. 165, at 2. Professor Ostermann can testify about "Dr. Tao's performance during the relevant time period," and his alleged "absence from KU during the Spring 2019 semester." Gov't Rule 15 Motion, ECF No. 186, at 13. He can also contextualize any email evidence about Dr. Tao's buyout request, claims regarding the Fritz-Haber Institute, or absence from campus in the spring of 2019, to the extent appropriate. *Id.*[18] Thus, none of Dr. Weatherley's testimony is "critical to the case," *Drogoul*, 1 F.3d at 1552, and it does not

---

[18] That the government has not produced an FD-302 for Professor Ostermann suggests that it has not even interviewed him, let alone confirmed that he is unable to testify about these topics.

"lie[] at the very core of the charges." *Berganza Espina*, 2021 WL 4943651, at *2. The government

therefore fails to satisfy its burden of demonstrating that Dr. Weatherley's testimony is material.

Third, a countervailing factor that weighs against the deposition is that the motion is

untimely and no good cause exists for the delay. *Hayat*, 2017 WL 6539610, at *2; *Al Kassar*, 2008

WL 4735269, at *2. The government has known about Dr. Weatherley's ████████████ since

at least August 26, 2021, but it waited until just weeks before the October 25 trial to alert Dr. Tao

and the Court, and instead of filing a Rule 15 motion, it moved for a continuance. It then waited

five more weeks to file its Rule 15 motion. Had the government promptly filed a Rule 15 motion

when it learned about Dr. Weatherley's health concerns, and the Court granted the motion, the

parties could have conducted the deposition without postponing the October 25 trial date. Instead,

the government used it as an excuse to continue the trial, denying Dr. Tao his right to a speedy

trial. The government's motion also failed to argue that good cause existed for the delay,

effectively conceding that it did not. For these reasons, the Court should deny the motion to depose

Dr. Weatherley.

\* \* \* \* \*

In sum, the government has failed to satisfy its burden of demonstrating that "exceptional

circumstances" and the "interest of justice" warrant any of the requested depositions. The

proposed depositions are not "necessary to prevent a failure of justice," *United States v. Fuentes-*

*Galindo*, 929 F.2d 1507, 1509 (10th Cir. 1991), and they would instead subject Dr. Tao to a

failure of justice by denying him his confrontation rights without justification.

## II. If the Court permits Rule 15 depositions, fairness requires that they occur during trial to prevent the government from previewing Dr. Tao's trial strategy before the trial begins.

Another reason the Court should deny the government's meritless Rule 15 motion in the

interest of justice is that, if granted, the government would gain an unfair trial advantage. If the

Court grants the motion, the government can depose the witnesses and then decide whether to use the testimony or discard it. An effective cross-examination would have no benefit to Dr. Tao if the government discards the testimony. More problematic, by getting a sneak peek at the defense's cross examination, the government will get to preview the defense's trial strategy and arguments well in advance of trial, and it can then prepare the rest of its witnesses before trial essentially with a script of the defense's cross-examinations in hand.

For these reasons, if the Court grants any of the depositions, it should take a one- or two-day recess toward the end of the government's case-in-chief so that the parties can conduct the depositions and, if admissible, introduce them at trial. That would only delay the trial one or two days—or not at all, if conducted over a weekend—while avoiding giving the government an unfair advantage at trial of getting to preview the defense's trial strategy before presenting its case. It would also avoid subjecting Dr. Tao to the expense of having to prepare for depositions and separately prepare for trial months later. And, if any of the witnesses the Court deems unavailable become available by trial, no unnecessary depositions will have been taken.

## III. The government's alternative request to conduct live video testimony of Dr. Schwartz and Dr. Miranda fails to satisfy the two-part test from *Craig*.

The government's alternative request for Drs. Schwartz and Miranda to testify live via two-way video is also meritless and would violate Supreme Court precedent from *Craig*, which established a stringent two-part test governing video testimony. *See Craig*, 497 U.S. at 850 ("[O]ur precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."). The government fails to satisfy this standard.

Tellingly, the government relies exclusively on two district court cases that applied the Second Circuit's *Gigante* standard to support the government's argument that live video testimony is appropriate (*Akhavan* and *Davis*). *See* Gov't Rule 15 Mot., ECF No. 186, at 11–13. But the Second Circuit is the *only* appellate court that does *not* apply *Craig*'s two-part test to determine whether live video testimony is consistent with a defendant's Sixth Amendment confrontation rights. *See Pangelinan*, 2020 WL 5118550, at *2 ("With the exception of the Second Circuit, which applied a more lenient standard, however, courts have applied the *Craig* standard in determining whether a witness may testify by two-way video.). Unlike the Second Circuit, "[t]he Tenth Circuit has recognized that the *Craig* standard is applicable when determining whether the confrontation requirement has been met absent physical, face-to-face confrontation." *Id.* at *3. The government's reliance on cases applying the wrong standard, which is "more lenient" than the *Craig* standard applied by the Tenth Circuit, is disingenuous at best, and it betrays the weakness of the government's argument.

Indeed, the government cannot satisfy either prong of the *Craig* test—that the video testimony is "necessary to further an important public policy and … reliability of the testimony is otherwise assured"— substantially for the reasons it fails to satisfy the Rule 15 standard. *See supra* Parts I.C, I.D. The government also disregards that the "trial court must hear evidence and determine whether" the video testimony of the particular witness is "necessary" to vindicate the important public policy. *Craig*, 497 U.S. at 855; *see Pangelinan*, 2020 WL 5118550, at *1 (noting that "the court held an evidentiary hearing" before ruling). While the court should not grant the government's motion without an evidentiary hearing, no hearing is necessary because the government has failed to make even a threshold showing that it can satisfy *Craig*. Accordingly, the Court must deny the government's request for live video testimony.

**IV.    Dr. Tao reiterates his assertion of his Speedy Trial rights and objects to the Court's continuances of the October 25 and December 6 trial dates.**

The government's obvious inability to satisfy the Rule 15 or *Craig* standard in this case begs the question whether the government's motion, which came on the heels of a motion to continue the trial date for the same reasons, is merely a pretext to delay the trial while denying Dr. Tao his speedy trial rights. The Court has since granted the government's motion to continue the October 25, 2021 trial date, and scheduled trial for December 6, 2021, and it subsequently *sua sponte* continued the December 6 trial date until April 18, 2022. For the record, Dr. Tao respectfully objects to the Court's continuances of the October 25 and December 6 trial dates, as well as the findings in the Court's November 19, 2021 order. *See* Memorandum & Order, ECF No. 195 (hereafter, "Speedy Trial Order").

First, the government's Motion to Continue—based on meritless excuses about witness unavailability—was a government pretext to continue the October 25, 2021 trial because the government was not ready for trial, despite having 26 months to prepare since the August 21, 2019 indictment. For example, the government admitted on October 15, 2021 that it had failed to translate and produce numerous foreign-language documents included in its exhibit list, Speedy Trial Order at 5, which it did not produce until after the October 25 trial date. The government failed to process and produce roughly 830,000 documents until two months before the October 25 trial date, despite having the document in its possession since prior to the indictment. *See, e.g.*, Affidavit of Lauren Katz, ECF No. 150, ¶ 13 (describing a production of 831,289 files by the government on August 30, 2021). The government filed its CIPA notice relating to potentially discoverable classified information *after* the October 25 trial date, Gov't CIPA Mot., ECF No. 183 (Oct. 28, 2021)—a notice that prosecutors customarily file at the outset of a case so that, without needlessly delaying trial, the Court can have time to appoint a CISO and adjudicate the *ex parte*

CIPA motion, the government can file an interlocutory appeal (if necessary), and the defense counsel can have time to obtain security clearances if classified information must be produced. In addition, even as of the date of this filing, the government has apparently failed to even interview numerous witnesses on its witness list that it plans to call as witnesses at trial, as evidenced by its failure to produce an FD-302 interview summary for most of the witnesses on its witness list as of the date of this filing.[19] The government's claim that it was ready for trial on October 25 is not credible given these indisputable facts. That is why the government moved for a continuance and then moved for meritless depositions, securing months of extra time to prepare for trial.

Second, the Speedy Trial Order states that Dr. Tao opposed but did not file a response to the government's October 1, 2021 Motion for Continuance, Speedy Trial Order at 1, but that was only because the court granted the continuance during a status conference three business days after the government filed the motion, well before the defense's 14-day deadline to file a response, effectively preventing the defense from responding. *See* 10/6/21 Hear'g Tr., ECF No. 177, at 30:13–17 ("Don't worry about subpoenaing your witnesses for October 25th. It's pretty clear that's not going to be available. Let's talk when we're together next week about how much of a continuance needs to happen."), *id.* at 32:21–22 ("The government has the right to a fair trial. We've got to do the best that we can for them."); Minute Order (Oct. 6, 2021), ECF No. 176 ("The Court will discuss a new trial date with counsel at the hearing scheduled for October 14-15, 2021."). *But see* L.R. 6.1(d)(1) (permitting a party 14 days to respond to a non-dispositive motion).

---

[19] These witnesses include: Doug Girod, Christopher Lyon, Kimberly Wittman, Kelly Mason, Matthew Battison, Bradley Bernet, Sarah Craig, Brian Laird, Jim Hammen, Russell Dean Ostermann, Tim Spencer, Jane Johns, Evelyn Haaheim, Angie Loving, Julie Fugett, Greg Haehl, Robert Amenta, Jill Herr, Babette Grout, and Michael Armellino. The defense has serious concerns that, once the government contacts its prospective witnesses, it will assert additional unavailability claims and seek to further delay trial and deny Dr. Tao his Speedy Trial rights. The Court should not allow any further such motions.

Third, the Speedy Trial Order suggests that the Court postponed the October 25 trial on October 15, Speedy Trial Order at 2, but the Court had already postponed the trial on October 6. *See* 10/6/21 Hear'g Tr., ECF No. 177, at 30:13–17 ("Don't worry about subpoenaing your witnesses for October 25th. It's pretty clear that's not going to be available. Let's talk when we're together next week about how much of a continuance needs to happen."); Minute Order (Oct. 6, 2021), ECF No. 176  ("The Court will discuss a new trial date with counsel at the hearing scheduled for October 14-15, 2021.").

The Court then scheduled the trial for December 6, 2021, via email dated October 26, 2021, which it later continued *sua sponte* despite Dr. Tao's objection so that the Court could accommodate another case and avoid trying this case in close proximity to the holidays. Specifically, during a status conference on November 9, 2021, which was meant to discuss the government's recent CIPA notice, the government explained that its CIPA notice did *not* require a continuance. *See* 11/9/21 Hear'g Tr., ECF No. 197, at 3:2–14 (Mr. Barry [government]: "So the purpose of the pretrial conference under Section 2 of the Classified Information Procedures Act is really just to give the Court a brief overview of the process and to answer any questions that you may have. … So big picture is we do not believe that the underlying information should affect the trial date."). The Court nevertheless continued the December 6 trial date for reasons unrelated to the government's CIPA notice, stating:

> [I]t sounds like it can be done fairly expeditiously. But I will tell you, we're no longer going to go to trial on December 6th anyway. … I have another case that is a very simple case but a very serious case that has – speedy trial clock is ticking. … It's only been on file a few months, but in any event, I'm now going to try that case December 6th. This case would have been difficult to shoehorn into December 6th anyway because it's an estimate[d] three weeks, and of course there's the holidays. And I was very concerned about seating a jury … I'm sure we could have accomplished it, but it would have probably taken some time to seat a jury. We might have lost a whole day just to that.

*Id.* at 7–8. Dr. Tao objects that these are not reasons that justify denying him his Speedy Trial rights and not proceeding with the trial on December 6, 2021. Even if they were valid reasons, moreover, the trial was originally set for October 25—not in proximity to the holidays—and the Court only postponed the original trial date because of the government's Motion to Continue, which the government filed because it was unready for trial.

Fourth, several of the Court's reasons for continuing the trial from December 6, 2021 until April 18, 2022 are due only to the government's failure to timely prepare for trial—the real reason it moved for a continuance. The court highlights: (i) delays due to the government's CIPA notice, Speedy Trial Order at 6, but the government should not have waited until 27 months after indictment to file its CIPA notice; (ii) the government's motion for depositions, *id.* at 3, but the motion sought to depose witnesses who are, as demonstrated herein, neither essential nor unavailable, and the motion was untimely and without good cause, as demonstrated in Dr. Tao's motion to strike (which the court denied orally two days after Dr. Tao filed it, without requiring a government response); and (iii) the government's inexplicable failure to translate all foreign-language documents in time for trial, *id.* at 5.

Fifth, the Court cites Dr. Tao's motion to suppress, filed nine weeks before trial but after the pre-trial motions deadline, *id.* at 6, noting that the defense offered to postpone the trial if need be at that time, *id.* at 8; but this was an offer the government declined, instead preferring to use untimeliness as a reason to seek denial of the motion, which it did successfully. (Thus, the Court held that the motion was untimely while also *sua sponte* using the untimeliness as a reason to continue the trial date even though the government's Motion to Continue never mentioned the Motion to Suppress as a reason to continue the October 25 trial.) A motion filed nine weeks before

trial, and denied as untimely, cannot be the basis for a *sua sponte* continuance, especially when the government has not sought a continuance on that basis.

Sixth, Dr. Tao also objects to the Court's designation of this case as complex 27 months into the case, *id.* at 5, which neither party requested or asserted, and which is at odds with the fact that it is a single-defendant case that the government has described as "straightforward." Gov't Opp. to Mot. to Dismiss, ECF No. 88, at 45. Any complexity the Court believes the government's CIPA notice injected into the case, moreover, is due only to the lateness of the filing—not the filing itself. The Court could have easily resolved any CIPA-related issues in the 26-month span from indictment until the October 25 trial date if the government had timely filed the CIPA notice. It would be a dangerous precedent if the government could wait until the eve of trial to file its CIPA notice in order to delay the trial. At its core, CIPA is a discovery procedure, and the government has no excuse to wait until just before trial to start a potentially time-consuming discovery process. Such a tactic does not justify denying Dr. Tao his Speedy Trial rights.

Seventh, Dr. Tao further objects to the Court's reliance on the government's MLAA request, purportedly submitted on Dr. Tao's behalf, Speedy Trial Order at 9, but which Dr. Tao never requested and which the government refused to show the defense. Thus, Dr. Tao is being denied his right to a speedy trial in order for the government to attempt to procure witness testimony, purportedly on Dr. Tao's behalf, in a process that Dr. Tao is not allowed to participate in. In addition, Dr. Tao previously agreed on the record to forego the MLAA request so that he can have a speedy trial. *See* 10/15/21 Hear'g Tr., ECF No. 182, at 164 (Mr. Zeidenberg [defense counsel]: "As for our Rule 15 deposition and those witnesses, Your Honor, just for the record, while we wanted those witnesses, we've – and I've spoken to Dr. Tao about this – … to the extent that the Court is extending this – to assist the defense in the ability to get those witnesses, we would

foregoing that, with the understanding that if we had a trial date sooner, it would make it almost – you know, very unlikely they would be produced."). The Court cannot continue a trial over Dr. Tao's objection, denying him his Speedy Trial rights, on the purported basis that it is helping him with his defense.

Eighth, the Court has not made a finding that five more months is necessary (until April 18, 2022) before the case will be ready for trial. Even accepting *arguendo* the Court's other findings, there is no explanation in the Speedy Trial Order of why the Court chose April 18, 2022 for trial. If the Court's calendar does not permit Dr. Tao's case to be tried until April 18, 2022, Dr. Tao requests that the Court reassign this case to another judge who can hold the trial earlier than April 18, 2022.

In sum, Dr. Tao objects to the Court's two continuances, as well as to the Court's findings in support of those continuances, and he requests that the Court reinstate the December 6 trial date, or schedule the trial for the earliest possible date after that.

## CONCLUSION

If courts allowed the government to try defendants based on deposition or video testimony merely because the witnesses would *prefer* not to testify at trial for personal reasons, as is the case here, it would happen in every trial, eviscerating a defendant's Sixth Amendment confrontation rights. Witnesses in every trial have significant personal reasons not to testify—including health concerns, childcare responsibilities, work obligations, and family commitments, to name just a few. But Rule 15 and *Craig* require *extraordinary* circumstances before a court can dispense with a defendant's confrontation rights—and such extraordinary circumstances are not present here. Therefore, the Court should deny the government's motion. It should also reinstate the December 6, 2021 trial date to vindicate Dr. Tao's Speedy Trial rights.

Dated:  November 23, 2021          Respectfully submitted,

          /s/ Thomas H. Johnson
          Thomas H. Johnson #13688
          Petefish, Immel, Hird, Johnson,
          Leibold & Sloan, LLP
          842 Louisiana
          Lawrence, KS 66044
          Tel: (785) 843-0450
          Fax: (785) 843-0407
          tjohnson@petefishlaw.com

          Peter Zeidenberg
          Michael F. Dearington
          Laura Zell
          ARENT FOX LLP
          1717 K Street, NW
          Washington, DC 20006
          Tel: (202) 857-6000
          Fax: (202) 857-6395
          Peter.Zeidenberg@arentfox.com
          Michael.Dearington@arentfox.com
          Laura.Zell@arentfox.com

          *Attorneys for Defendant Franklin Tao*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of November, 2021, I electronically filed the foregoing brief to be filed with the Clerk of the Court using the CM/ECF system.

          /s/ Thomas H. Johnson
          Thomas H. Johnson