# EXHIBIT F





**Peter Zeidenberg**
Partner

**Michael Dearington**
Associate

September 18, 2020

VIA E-MAIL

Anthony Mattivi, Esq.
Assistant United States Attorney
U.S. Attorney for the District of Kansas

Benjamin J. Hawk, Esq.
Trial Attorney
National Security Division
U.S. Department of Justice

**Subject:** United States v. Tao, 2:19-CR-20052 (D. Kan. filed Aug. 21, 2019)

Dear Messrs. Mattivi and Hawk:

We write to reiterate our request for *Brady* material in the above-captioned case against Dr. Franklin Tao. As we have repeatedly reminded the government, the government is obligated to search the files of the U.S. Department of Energy ("DOE"), the National Science Foundation ("NSF"), and the University of Kansas ("KU") for *Brady* materials, because all of these government agencies have been closely aligned with the prosecution team, including by assisting the government in its investigation and prosecution of Dr. Tao.

The government's refusal to confirm that it has searched and produced all *Brady* materials from these agencies, and its refusal to even acknowledge its duty to do so, raise issues of constitutional magnitude, including by denying Dr. Tao due process and a fair trial.

Accordingly, the defense requests that the government immediately confirm that it will search the files of these agencies for *Brady* materials, including for the categories of documents identified below, and produce such documents forthwith.

**Arent Fox**

A. **The Government's *Brady* Obligations Extend to DOE, NSF, and KU, because they are government agencies that have been closely aligned with the prosecution team.**

Several federal and state and government agencies have jointly investigated Dr. Tao in connection with this case, apart from the U.S. Attorney's Office for the District of Kansas, the Department of Justice National Security Division, and the Federal Bureau of Investigation (collectively, "DOJ"). Specifically, DOE, NSF, and KU have all been closely aligned with and part of the prosecution team.

For example, DOJ and DOE have jointly conducted multiple investigative interviews and other inquiries regarding Dr. Tao's alleged conduct. DOJ prosecutors and investigators jointly conducted interviews with DOE on June 3 and 4, 2020, and DOE provided DOJ with requested documents to assist it with the prosecution. Upon information and belief, DOJ has also worked with NSF in a similar fashion to investigate Dr. Tao's alleged conduct in this case.

KU, a state agency, has also conducted substantial investigative and prosecutorial activities on behalf of the government in this case since at least May 2019. This has involved hundreds of emails, phone calls, text messages, and meetings between KU investigators and DOJ prosecutors or case agents—the vast majority of which were not pursuant to a subpoena or other compulsory process and were instead voluntary—aimed at assisting the government in its prosecution of Dr. Tao.

KU's assistance and coordination with the prosecution team continued long after Dr. Tao's arrest and indictment. For example, the government has farmed out certain investigative functions to KU as part of the prosecution team. On October 28, 2019, AUSA Mattivi divulged to KU personnel that the prosecution team was considering bringing a superseding indictment and asked KU personnel if there was "anyone at KU who can help [the prosecution team] identify any [false] statements" made by Dr. Tao that could support a charge under 18 U.S.C. § 1001. KU personnel responded that it would be "no hassle at all," and identified "the best two people to assist you in determining the 1001 violation on the grants," and also indicated that KU would share details about a private meeting between Dr. Tao's attorneys and KU regarding employment matters.

Mr. Mattivi also discussed prosecution strategy with KU investigators, stating that bringing § 1001 charges was "a tactical move we should strongly consider." On November 18, 2019, after the defense filed a motion to dismiss, Mr. Mattivi emailed KU personnel and stated: "In light of the motion filed yesterday, I'd like to prioritize our review of evidence for the possibility of filing a superseding indictment. Would you please let me know your availability later this week?" Following the motion hearing, which KU investigators apparently attended, KU investigators debriefed with the government, asking: "What was [Mr. Mattivi's] feeling on

today?" An FBI investigator responded, "We are good," again signifying that the government and KU had investigated and were prosecuting Dr. Tao as a team. The KU investigator agreed: "Overall I felt that as well." These examples are illustrative, but far from exhaustive.

As we stated in our July 17, 2020 email, because DOE, NSF, and KU are government agencies that are or were closely aligned with the prosecution team in this case, the government is required to search the files of those agencies and produce *Brady* materials in their possession, custody, or control. *See, e.g.*, *United States v. Combs*, 267 F.3d 1167, 1175 (10th Cir. 2001) (observing that the duty to search for *Brady* materials extends to "files maintained by branches of government closely aligned with the prosecution" (quoting *United States v. Brooks*, 966 F.2d 1500, 1500–04 (D.C. Cir. 1992)); *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) ("Information possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case."); *accord United States v. Black*, No. 16-20032-JAR, 2016 WL 6967120, at *7 n.44 (D. Kans. Nov. 29, 2016) (Robinson, J.); *see also United States v. Safavian*, 233 F.R.D. 12, 17 (D.D.C. 2005) ("Under *Brady*, the prosecutors have an affirmative duty to search possible sources of exculpatory information, including a duty to learn of favorable evidence known to others acting on the prosecution's behalf, including the police, and to cause files to be searched that are not only maintained by the prosecutor's or investigative agency's office, but also by other branches of government closely aligned with the prosecution. (citation and internal quotation marks omitted)); *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) (noting that, in joint investigations, "the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence," and "any argument that the Government's duty does not extend so far merely because another agency, not the USAO, is in actual possession of the documents created or obtained as part of the joint investigation is both hypertechnical and unrealistic" (citations and internal quotation marks omitted)); *United States v. Lacey*, No. CR1800422001PHXSMB, 2020 WL 3488615, at *9 (D. Ariz. June 26, 2020) (observing that, "when federal and state authorities pool investigative energies to a considerable extent and state investigators function as agents of the federal government under the principles of agency law, a court may require federal prosecutors to disclose related *Brady* material").

    **B.**    **The Government Should Immediately Confirm that It Will Search and Produce *Brady* Materials from DOE, NSF, and KU Files.**

To date, despite repeated requests by the defense, the government has refused to acknowledge its duty to search the files of DOE, NSF, and KU for *Brady* material, and has instead, in an email dated July 21, 2020, stated only that it is "aware" of its *Brady* obligations and will produce exculpatory information in "our" (presumably meaning DOJ's) possession. The government's position disregards its *Brady* obligations to ensure Dr. Tao's right to due process and a fair trial.

Accordingly, the defense requests that the government immediately search the files of DOE, NSF, and KU for *Brady* material within their possession, custody, or control and produce such files to the defense. If any such materials have been destroyed, the government should inform the defense of when such files were destroyed, what the files contained, and why they were destroyed.

Documents and information that the defense deems *Brady* material include but are not limited to the following categories of information in the possession, custody, or control of DOE, NSF, and KU:

1. **DOE/NSF**

    a. Documents reflecting that DOE or NSF personnel have acknowledged or suggested that principal investigators or other individuals who work on or help apply for grants were unaware that they needed to disclose to their research institutions and/or the granting agencies all affiliations or work with outside universities or entities (*e.g.*, as Current and Pending Support), including but not limited to documents suggesting that the agencies or research institutions considered modifying or enhancing their regulations, policies, training materials, and/or other resources to make these disclosure requirements, if any, clearer or more widely understood.

    b. Documents reflecting that a research institution submitted a grant application to DOE or NSF from 2014 to 2019, disclosing an affiliation or work with a university in China, and that DOE or NSF nevertheless awarded the grant. This evidence would tend to indicate that, during the time period at issue in this case, DOE or NSF did not view such affiliations or work as a conflict or as material to its decision to award or pay a grant.

    c. Documents reflecting that DOE or NSF was or became aware, between 2014 and 2019, that a principal investigator or other individual who has worked on a grant did not disclose an affiliation or work with another university or entity in China to the research institution or agency, but the agency continued to make grant payments and/or declined to take action with respect to the nondisclosure. This evidence would tend to indicate that, during the time period at issue in this case, the agencies did not deem nondisclosure of such information to be material to their decisions to award or pay grants.[1]

---

[1] *See, e.g., Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003–04 (2016) ("[I]f the Government regularly pays a particular type of claim in full despite actual

# Arent Fox

Anthony Mattivi, Esq.
September 18, 2020
Page 5

    d. Documents reflecting, showing, or suggesting that Dr. Tao may not have had an actual conflict of interest with respect to any of the DOE or NSF grant applications or grants he allegedly worked on while at KU, including but not limited to documents that indicate that Dr. Tao's job responsibilities were not adversely impacted by any outside work or affiliations.

    e. Documents reflecting, showing, or suggesting that there may not have been any scientific overlap between any of the DOE or NSF grant applications or grants Dr. Tao allegedly worked on while at KU and any grant applications Dr. Tao allegedly submitted or worked on in coordination with other universities or research institutions than KU.

    f. Documents or communications suggesting that a researcher's participation in a foreign talent plan is not itself illegal, improper, or a basis to reject a grant application or terminate a grant.

    g. Documents reflecting or suggesting that KU's Conflict of Interest policies or processes were or may have been inadequate in any way or may need clarification, modification, or enhancement.

**2. KU**

    a. Documents reflecting that KU personnel have acknowledged, recognized, or discussed Dr. Tao's fulfillment of his teaching, research, or other duties and obligations owed to KU as an employee, in exchange for which Dr. Tao received his salary, including but not limited to documents relating to positive performance reviews, evaluations, or awards that Dr. Tao has received for his work at KU.

    b. Documents reflecting that KU personnel were or may have been aware of Dr. Tao's alleged affiliation or alleged work with Fuzhou University or any other university while he was a KU employee.

    c. Documents reflecting that KU personnel have acknowledged or suggested that KU or its employees (including Dr. Tao) may not have been fully aware, or properly instructed, that principal investigators and other individuals who help apply for or work on KU grants allegedly needed to disclose to KU and/or the granting agencies all affiliations or work with other universities or entities.

---

knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.").

# Arent Fox

Anthony Mattivi, Esq.
September 18, 2020
Page 6

    d. Documents reflecting or suggesting that KU's Conflict of Interest policies or process were inadequate in any way or may need clarification, modification, or enhancement.

    e. Documents reflecting that a KU employee has disclosed an affiliation or work with another university or entity in a Conflict of Interest form, but where KU did not terminate or discipline the employee, or require the employee to immediately abandon the outside affiliation or work, upon receiving the disclosure.

    f. Documents reflecting that KU was or is aware that an employee other than Dr. Tao has submitted a Conflict of Interest form omitting an affiliation or work with another university or other entity. To the extent KU has not disciplined these individuals, and kept paying their salary, this evidence would tend to show the lack of materiality of the nondisclosure to KU's decision to pay the individual's salary.

    g. Documents reflecting or showing that Dr. Tao's salary at KU would have remained the same in any given pay period or year irrespective of whether DOE or NSF awarded KU certain grants.

    h. Documents reflecting discussions or consideration by KU personnel of ways in which the prosecution against Dr. Tao, which KU has assisted with, may be in KU's interest, including but not limited to because it could (A) help KU in its employment dispute with Dr. Tao; (B) help ensure that KU continues to receive or be eligible for grant funding from DOE, NSF, or another federal agency; or (C) help KU or its personnel avoid civil or criminal liability related to the alleged conduct.

While the defense believes that the exculpatory nature of these categories of information is self-evident, if the government disagrees, we would be happy to discuss that matter with you.[2]

\* \* \* \* \*

It has now been more than a year since the government filed its first indictment, and the government still has not represented that it has complied with its *Brady* obligations by searching the files of entities aligned with the prosecution. The defense therefore requests that the

---

[2] If the government has searched DOE, NSF, and KU files for the categories of documents listed herein, as well as other *Brady* materials, and concludes that no such documents exist, we ask that the government please make that representation in writing to the defense.

government immediately do so, and provide any *Brady* evidence to the defense, before Dr. Tao suffers any further prejudice.

Sincerely,

/s/ Peter Zeidenberg

Peter Zeidenberg
Michael F. Dearington
Laura Zell