# UNITED STATES DISTRICT COURT

## —— District of Kansas ——

UNITED STATES OF AMERICA,

                   Plaintiff,

          v.                             Case No.  **19-20052-01-JAR**

FENG TAO,

                   Defendant.

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL

As he did in the leadup to the October 2021 trial date, Defendant has again filed a meritless motion on the eve of trial related to issues that could have been raised more than a year ago. The Court should reject Defendant's eleventh-hour fishing expedition and summarily deny his motion to compel the Government to conduct an expansive search of Department of Energy (DOE) and National Science Foundation (NSF) files and records for internal deliberations and communications that Defendant speculates may be related to policy changes and clarifications that are otherwise publicly available, and which have no bearing on the particular facts of this case. *See* Doc. 227 (hereinafter, "Def. Mot."). The Tenth Circuit has not imposed such an onerous task on the Government, and the Court should decline to do so now, particularly given the circumstances and timing of Defendant's motion.

## I.    CHARGES AGAINST DEFENDANT

At trial, the Government expects the evidence to prove that, from at least mid-2017 to August 2019, Defendant engaged in a fraudulent scheme to obtain a salary from the University of Kansas (KU) and federal grant funds from DOE and NSF, while concealing his extensive work at, and in support of, a foreign research institution. Specifically, in the second half of 2017, while employed fulltime at KU and receiving federal research grant funds, Defendant applied for the position of Chang Jiang Distinguished Professor at Fuzhou University (FZU) in the People's Republic of China (PRC). Defendant received the appointment at FZU, engaged in contract negotiations with FZU personnel, including its president, and began working for FZU in approximately May 2018. Defendant's work for FZU involved, among other activities, building a research team at FZU, building a laboratory at FZU that mirrored his KU laboratory, applying for research grants from the PRC government on behalf of FZU, advising and recruiting FZU students, and traveling extensively to the PRC to work for FZU. In furtherance of his scheme, Defendant made multiple misleading and false statements to KU, NSF, and DOE for the purpose of concealing his work at FZU so that he could continue to receive his KU salary and NSF and DOE research funds in connection with his employment at KU. Defendant's fraud continued until one of his former colleagues reported him and he was arrested in August 2019.

## II.    BACKGROUND

Given Defendant's representations, the Government offers the following background and attached exhibits to ensure a complete and accurate record.

### A.    Discovery Pertaining to DOE and NSF

Defendant states that "the defense made a *Brady* request similar to the one it made here 17 months ago." Def. Mot. at 16. Relying solely on a September 18, 2020 discovery letter (Def.

Ex. F), Defendant argues that the information he now seeks "should have been produce[d] long ago." *Id.* at 17. But Defendant provides the Court with an incomplete and inaccurate picture. He inexplicably fails to fully address and attach to his motion the remainder of the pertinent communications between the parties concerning his prior discovery requests on September 18, 2020, November 25, 2020, and January 4, 2021.[1] As a result, his motion leaves the false impression that the Government was unresponsive and otherwise failed to take seriously its discovery obligations in this case.[2] In fact, the Government responded to each of Defendant's specific requests and exceeded its discovery obligations.

The missing letters and email exchanges between the parties are attached hereto as Government Exhibits A (Gov. Letter with Attachments, dated October 16, 2020), B (Def. Letter, dated November 25, 2020), C (Gov. Letter with Attachments, dated December 22, 2020), and D (Email Exchange, dated January 25, 2021). As those communications make clear, Defendant's legal arguments that KU, DOE, and NSF are members of the prosecution team and his fishing attempts to obtain internal KU, DOE, and NSF materials are nothing new. What is new is Defendant's motion to compel, which he filed on the eve of trial more than a year after the parties addressed and resolved similar issues.

---

[1] Defendant limited his description of the Government's October 16, 2020, letter (Gov. Ex. A) to a sentence, Def. Mot. at 16-17, and relegated a portion of the Government's comprehensive December 22, 2020, letter (Gov. Ex. C) to a footnote, Def. Mot. at 17 n.6, where he claims without support that NSF created a document "to bolster the prosecution's positions in lieu of providing *Brady* evidence." The fact that Defendant chose not to provide this document to the Court is telling. *See* Gov. Ex. C at 13.

[2] For example, Defendant wrongly alleges that the Government is "choosing to bury its head in the sand rather than uncover exculpatory evidence that could jeopardize its case," Def. Mot. at 3, and that the Government's response to the defense's February 3, 2022, requests "begs the question whether the government understands its *Brady* obligations in other facets of the case," Def. Mot. at 15.

As an initial matter, the Government produced extensive discovery in this case, including numerous materials and interview reports relevant to Defendant's DOE and NSF grants, and otherwise exceeded its discovery obligations.[3] *See* Gov. Ex. A at 1-2; Gov. Ex. C at 1. Among other materials, the Government produced Defendant's grant applications and related materials obtained from DOE, NSF, and KU, interview reports of DOE, NSF, and KU employees about Defendant's grants, as well as numerous email communications between Defendant, DOE, NSF, and KU, in which Defendant's grants were discussed. The Government also produced multiple presentations by NSF's Dr. Rebecca Keiser, an interview report of Dr. Keiser from an unrelated case, and two interview reports of DOE employees from an unrelated case (the *Chen* case that Defendant discusses at length). And, as discussed below, the Government ensured that the defense knew where to find the relevant and applicable policies and disclosure requirements.

Moreover, although the parties strongly disagree as to whether DOE and NSF are members of the prosecution team, the Government nonetheless exercised its due diligence to obtain exculpatory information to the extent it existed. *See* Gov. Ex. A at 1-2; Gov. Ex. C at 2-3, 11-12. The Government asked DOE's Office of Inspector General (DOE-OIG) and NSF's Office of Inspector General (NSF-OIG) to produce *Brady* materials, if any, and provided examples of potentially exculpatory information, which the Government relayed to the defense, Gov. Ex. C at 2 & n.6, and the defense acknowledged in January 2021, Gov. Ex. D at 3.

In addition, as early as July 2020, the Government offered to facilitate the defense's requests for specific and reasonable requests for materials from DOE and NSF.[4] *See* Gov. Ex. A

---

[3] As the Court is aware, the full extent of the Government's discovery productions in this case was also the subject of prior pleadings. *See, e.g.*, Doc. 159 (Reply to Def. Opp. to Gov. Mot. to Strike *Franks* Mot.).

[4] Defendant wrongly claims that the Government had only sought from DOE and NSF "evidence

at 1, 6, 14. While the defense's discovery requests were neither reasonable nor specific, the

Government nonetheless provided the defense's September 18, 2020, and November 25, 2020,

requests to DOE-OIG and NSF-OIG and shared any responses with Defendant in a display of

good faith. Gov. Ex. C at 3, 6. Both DOE-OIG and NSF-OIG generally explained that the

defense's broad requests were impractical to fulfill. Gov. Ex. C at 3.

      NSF also provided the following information regarding certain disclosure requirements

that form, in part, the basis of Defendant's motion to compel (and which Defendant improperly

describes as Dr. Keiser's attempt to "bolster the prosecution's positions," Def. Mot. at 17 n.6):

> NSF has been clear in its communication and training materials that
> the requirement to submit current and pending support information
> has been a decades-long disclosure requirement. Over time, NSF has
> revised the language in its Proposal and Awards Policies and
> Procedures Guide (PAPPG) to make the language as clear as
> possible, but the requirement to report C&PS remains unchanged.

Gov. Ex. C at 13. During an interview with the FBI, which was produced to the defense, Dr.

Keiser further elaborated on this topic and other NSF requirements, including the contents of a

principal investigator's biographical sketch (i.e., biosketch) and a grantee university's conflict of

interest requirements.

      Additionally, in its December 22, 2020 letter, the Government explained to the defense

that its requests pertaining to DOE and NSF policies and internal materials were apparent fishing

expeditions unlikely to net relevant information. Gov. Ex. C at 10. The Government again

expressed its continued willingness to assist the defense in obtaining the information it sought

from DOE and NSF, even though the Government was under no obligation to do so, and invited

the defense to submit requests that were specific and reasonable. Gov. Ex. C at 10.

---

it thinks will support its case" and completely ignores this entire series of communications earlier
in the case. Def. Mot. at 21.

On January 4, 2020, the defense acknowledged the Government's efforts to assist the defense: "We appreciate the government's willingness to consider our requests despite its disagreement with certain of our positions." Gov. Ex. D at 3. The defense then posed additional "follow up questions and requests" related to DOE and NSF, which the Government addressed on January 19, 2020, and January 25, 2020. The defense thanked the Government for the additional information and stated: "We'll let you know if we have any follow-up questions." Gov. Ex. D at 1. The defense thereafter ceased to engage further on its discovery requests pertaining to DOE and NSF and declined to file a motion to compel with the Court regarding its September 18, 2020, and November 25, 2020, requests, indicating to the Government that any potential issues and discovery disagreements with respect to DOE and NSF and the scope of the prosecution team had been resolved. Thus, Defendant's claim that the Government should have produced the information he now seeks "long ago" rings hollow. Def. Mot. at 16-17.

In addition, as noted above and reflected in the attached communications, the Government went to great lengths to address the defense's interrogatory-like requests for information concerning DOE and NSF (and KU), despite having no obligation to do so. Gov. Ex. C. at 4-10; Gov. Ex. E at 1-3. In each instance, the Government invited the defense to ask further questions to ensure the defense understood the disclosure requirements and policies at issue in this case.

Specifically, the Government explained to the defense that the charges relate to Defendant's intentional misrepresentations and concealment of his conflicts of interest and time commitments and other support, including those resulting from his participation in a foreign

talent program; the charges do not hinge on his mere participation in such a program.[5] Gov. Ex.

A at 2; Gov. Ex. C at 6. The Government also identified relevant federal regulations and policies,

Gov. Ex. C at 4-5, Gov. Ex. E at 2-3, pointed the defense to the relevant discovery, Gov. Ex. C at

2, and clarified the defense's misunderstanding about a July 2019 NSF policy regarding talent

plans that applied to NSF employees, Gov. Ex. C at 4.

### B.    Timing of Defense's January 28, 2022 Request

Defendant relies on a January 25, 2022 article quoting a (former) DOE official to justify

the timing of his February 3, 2022 request for internal DOE deliberations and communications

vaguely related to an October 2020 DOE policy change.[6] Def. Mot. at 7. He further states that

"[t]he defense could not have known [of the] information earlier." Def. Mot. at 16. Defendant

otherwise brushes aside the timing of his request for internal NSF deliberations and

communications, claiming it is of no moment, because, in his expansive view, the Government

has a duty to search NSF's files for any information he seeks at any time. Def. Mot. at 16.

Defendant neglects to mention to the Court that he was fully aware of this information,

including the October 2020 DOE policy change, at least as early as February 18, 2021, when the

defense gave a presentation to the Government regarding the pending charges. Notably, this

presentation immediately followed the defense's earlier discovery requests and the attached

---

[5] Throughout his motion, Defendant repeatedly characterizes the charges against him as a failure
to disclose his participation in a talent plan. *See, e.g.*, Def. Mot. at 13. But the charges are not
merely based on his failure to disclose his participation in a talent plan. Rather, his participation
in a talent plan is relevant insofar as it relates to his conflicts of interest and time and other
funding support, which he had a duty to disclose to KU, DOE, and NSF.

[6] Defendant also references the *Chen* case in connection with this article and spends considerable
time discussing it and a DOE interview report produced in discovery out of caution (consistent
with the Government's discovery practices in this case). Def. Mot. at 4-6. The interview report,
however, does not stand for any grand proposition with respect to DOE disclosure requirements,
nor does it suggest any ambiguity. The DOE employee applied the agency's biosketch
requirements to the particular facts of that case, which are not analogous to the allegations here.

communications, and yet, Defendant waited one year to file a motion to compel. Relevant here, during its February 2021 presentation, the defense described as "Newly Discovered Evidence" NSF employee Jean Feldman's April 2020 presentation, NSF's 2020 policy clarifications, and DOE's October 2020 disclosure requirement changes. Gov. Ex. F (Select Slides from PowerPoint, dated February 18, 2021). Defendant's instant motion is premised on those same materials: DOE's October 2020 changes, NSF's 2020 policy clarifications, and Jean Feldman's April 2020 presentation. Def. Mot. at 7-8.

The Government recognizes that its discovery obligations are ongoing. However, these issues are not new to the parties, and the justification for the delay that Defendant provides to the Court cannot be taken seriously. As the Government respectfully informed the defense, the defense's January 28, 2022 requests appear to be yet another tactical maneuver during the critical trial preparation phase.

The parallels between Defendant's instant motion and his earlier untimely *Franks* motion (Doc. 127) are remarkable. As the Court is aware, more than a year after the pre-trial motions deadline, and less than eight weeks before the prior trial date, Defendant filed a *Franks* motion on a Friday afternoon approximately 14 days before a status conference (Doc. 141). Similarly, here, more than a year after the parties exchanged discovery letters and the defense's presentation, and less than five weeks before the March 21, 2022 trial date, Defendant filed the instant motion on a Friday afternoon approximately 14 days before the final pre-trial status conference.

## II.    LEGAL ANALYSIS

*Brady v. Maryland*, 429 U.S. 545 (1977), and its progeny impose on the prosecution a duty to disclose evidence in its possession that is both exculpatory and material to guilt. *United*

8

*States v. Jackson*, 850 F. Supp. 1481, 1501-03 (D. Kan. 1994) (Crow, D.J.). As discussed below, the information in question is not in possession of the Government, and even if this Court were to conclude that knowledge of all DOE and NSF records should be imputed to the Government, Defendant's far-reaching request for the mental impressions of any number of federal employees in any form is a blatant fishing expedition outside the bounds of *Brady*. Ultimately, Defendant has failed to carry his burden to show that the information he is seeking – which is irrelevant to the charges against him and is at most cumulative to information he already possesses – is material to his guilt or innocence.

A.      **The Information Sought Is Not in the Possession of the Prosecution Team**

DOE and NSF are large federal agencies responsible for, among other things, the administration of federal grant programs and are victims of Defendant's fraudulent scheme. Neither agency was involved in the criminal investigation of Defendant, and neither agency is a member of the prosecution team for purposes of *Brady*. Each agency has an Office of Inspector General (OIG) that is an independent oversight authority established in compliance with the Inspector General Act of 1978. While DOE-OIG and NSF-OIG agents assisted the FBI with its investigation, their involvement does not mean that all DOE and NSF files and records are within the Government's possession for purposes of *Brady*.

Courts that have addressed the scope of the prosecution's duty to search the files of another federal agency have generally held that such a duty applies only to the files of agencies that are acting on behalf of the prosecution team or involved in the investigation and prosecution of the case. *See, e.g., United States v. Webb*, 651 F. App'x 740, 744 (10th Cir. 2016) ("The U.S. Attorney's Office is not required to disclose information it is unaware of and that is in the possession of a separate federal agency not involved in the prosecution or investigation of the

present case."); *United States v. Combs*, 267 F.3d 1167, 1175-76 (10th Cir. 2001) (discussing but declining to directly answer this question with respect to Pretrial Services); *United States v. Jackson*, 850 F. Supp. 1481, 1502 (D. Kan. 1994) ("A duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is some reasonable prospect or notice of finding exculpatory evidence."); *see also United States v. Redcorn*, 528 F.3d 727, 744 (10th Cir. 2008) (analyzing claim that government was responsible for materials in state agency's files and concluding that there was "nothing in the record . . . to indicate that the U.S. Attorney's Office and the [state agency] had a working relationship close enough to trigger such a rule [imposing on the government a duty search] if it existed"). "The key to the analysis . . . is the level of involvement between the United States Attorney's Office and the other agencies." *United States v. Wilmington Tr. Corp.*, No. CR 15-23-RGA, 2016 WL 3749860, at *2 (D. Del. July 12, 2016) (quoting *United States v. Upton*, 856 F. Supp. 727, 749 (E.D.N.Y. 1994)). "Interacting with the prosecution team, without more, does not make someone a member of the prosecution." *United States v. Meregildo*, 920 F. Supp. 2d 434, 442-43 (S.D.N.Y. 2013).

In determining whether another federal agency is part of the prosecution team, courts treat each office and component of the agency separately. In other words, the involvement of an agency's criminal investigators does not mean that the entire agency is a part of the prosecution team. *See, e.g.*, *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005) (holding that involvement of Department of Labor (DOL) agents did not mean DOL in its entirety was part of the prosecution team); *United States v. Brodnik*, 710 F. Supp. 2d 526, 545 (S.D. W.Va. 2010) ("The fact that IRS agents participated in this investigation does not mean that the entire IRS is properly considered part of the prosecution team."). This principle is particularly true when, as

here, OIGs are involved in an investigation. *See, e.g.*, *United States v. Shelley*, No. CR-16-237-D, 2017 WL 3470940 (W.D. Okla. Aug. 11, 2017) (referencing an unpublished order where the court concluded that, "with the exception of the FDIC-OIG, the FDIC was not otherwise part of the 'prosecution team' for *Brady/Giglio* purposes"); *United States v. Lillemoe*, No. 15-CR-25 (JCH), 2016 WL 1555668, at *3 (D. Conn. Apr. 18, 2016) (concluding that component of USDA was not a part of the prosecution team, despite the involvement of a USDA-OIG special agent). To hold otherwise would require the Court to adopt a "monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis." *United States v. Chalmers*, 410 F. Supp. 2d 278, 288 (S.D.N.Y.2006) (concluding that federal agencies that separately investigated or oversaw humanitarian oil-for-food program were not part of the prosecution team) (citations omitted); *see also Wilmington Tr. Corp.*, 2016 WL 3749860, at *4 (declining to "broadly declare that the USAO is in constructive possession of all documents held by the Fed and the SEC relating to [the defendant] . . . because doing so would considerably overstate the USAO's interaction with these other agencies . . . and would amplify the USAO's discovery obligations beyond what is required").

The Third Circuit's decision in *United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005), is particularly instructive. In that case, the court held that the Pension and Welfare Benefits Administration (PWBA), a component of DOL, was not a member of the prosecution team for purposes of *Brady*, even though DOL agents were "integral members of the prosecution team." In reaching its conclusion, the court explained that there was "no indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared labor and resources" or that "the prosecution had any sort of control over . . . PWBA officials." *Id.* at 218. The court further concluded that the participation of "other agents in the DOL . . . does not mean that the entire

DOL is properly considered part of the prosecution team." *Id.*

Similarly, in *United States v. Brodnik*, the defendant sought, among other things, internal IRS records pertaining to the IRS's formulation of specific public notices and its internal interpretations of those notices. *Brodnik*, 710 F. Supp. 2d at 543. The court denied the defendant's motion, recognizing that "[p]rosecutors are not required to provide documents and things possessed by agencies which had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents." *Id.* at 544 (internal quotation marks omitted). After analyzing the facts before it, the court concluded that the IRS office that promulgated the materials requested by the defendant was not part of the prosecution team, because it did not engage in a joint investigation or otherwise share labor or resources and there was no indication that the prosecution had control over that office, notwithstanding the fact that IRS agents had participated in the investigation. *Id.* at 545.

Here, FBI conducted the investigation in this case with the assistance of DOE-OIG and NSF-OIG. These offices provide independent oversight of DOE and NSF, respectively, and are designed to prevent and detect fraud, waste, and abuse. DOE-OIG and NSF-OIG helped facilitate criminal investigative interviews and obtained Defendant's grants and other evidence of his crimes. In contrast, DOE and NSF are the victims of Defendant's fraudulent scheme. The offices within those agencies that are responsible for the administration of federal grants did not conduct parallel investigations in this case, let alone a joint investigation with the prosecution. *See, e.g.*, *Lillemoe*, 2016 WL 1555668, at *3. Nor did they act in any way at the direction of or under the control of the prosecution team in pursuing their own enforcement objectives. *See, e.g*, *Wilmington Tr. Corp.*, 2016 WL 3749860, at *2. Witnesses from those offices provided information to the prosecution in response to questions during criminal investigative interviews

and requests for evidence pertaining to Defendant's grants, as is common in any case.

According to Defendant, however, anyone who does not "resist[] a document request or interview with the prosecutors or the FBI" is "clearly" a member of the prosecution team. Def. Mot. at 19. Such an expansive view is not the law in the Tenth Circuit, let alone any other, and Defendant offers nothing of substance in support of that proposition. His arguments are conclusory in nature, presupposing that DOE and NSF are "closely aligned" with the prosecution and "jointly investigated" him. Def. Mot. at 17-20. He regularly conflates the OIGs with their respective agencies, and his examples of alleged joint investigative activity, while difficult to decipher, at most reflect ordinary engagement between criminal investigators and witnesses and victims of crime. On this basis alone, Defendant's motion should be denied.

### B.     Defendant's Request Is a Fishing Expedition

Even if DOE and NSF were closely aligned with the prosecution team, the Defendant's motion should still be denied. *Brady* is not an evidentiary rule that grants broad discovery powers to a defendant, because there "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). It is well settled that the Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667 (1957)); *see also United States v. McNaul*, No. 6:12-CR-10210-JTM, 2015 WL 3670492 (D. Kan. June 12, 2015) ("[A] Brady request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an in camera inspection of the government's files in every case.") (quoting *United States v. Phillips*, 854 F.2d 273 (7th Cir. 1988); *United States v. Schneider*, No. CR 07-10234-MLB, 2008 WL 11396769 (D. Kan.

July 24, 2008) ("Contrary to defendants' position, *Brady* and *Giglio* do not change the rules regarding discovery of the government's evidence. Rather, these cases place upon the government an affirmative duty of disclosure of certain types of evidence and/or information. They do not permit a defendant to go on a fishing expedition through the government's files looking for favorable information.") (citation omitted).

Defendant's demand that the Government search two large federal agencies for "emails and other documents that *suggest* that *anyone* at DOE or NSF *thought* that [in essence, the disclosure requirements were unclear and required revisions]" is a blatant fishing expedition, and the Court should reject it as such. Gov. Ex. E at 5 (emphasis added). In his motion, Defendant attempts to minimize the obvious expansive nature of his discovery request. He describes it as "reasonable," Def. Mot. at 10, and claims that it "can be accomplished quickly and efficiently," Def. Mot. at 20, speculating that it "would likely have involved contacting the handful of individuals responsible for revising the policies at DOE and NSF," Def. Mot. at 11. A close reading of the actual language of the request, however, shows that it is anything but reasonable.[7] Defendant's counsel appeared to recognize as much in communications with the Government. Upon receipt of the Government's written response, counsel sought to "negotiate scope" but then declined the Government's invitation to submit a revised request for its consideration, explaining that the defense did not "see any benefit to negotiating against ourselves." Gov. Ex. E.

Defendant's suggestions on how the Government could conduct a search reveal the true purpose of his request: Defendant wants the Government to conduct an investigation for him. For example, he surmises that the Government could simply talk to NSF's Jean Feldman (the author

---

[7] Defendant argues that "the government [has not] denied that this evidence exists." Def. Mot. at 13. But the Government has also not stated that it does exist. The Government simply does not know, because, if it does exist, it is not in the Government's possession.

of the April 2020 presentation noted above) or the former DOE official quoted in the January 25, 2022, article. Defendant, of course, is free to do so himself. *Brady* does not require the government to gather information on his behalf. *See, e.g., United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel."); *see also United States v. Lujan*, 530 F. Supp. 2d 1224, 1231 (D.N.M. 2008) (citing *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant.")).

### C.      The Information Is Not Material and Is Otherwise Known to Defendant

Finally, the Defendant's motion should be denied because the information he seeks is not material, and it is otherwise known to him. "*Brady* does not require the government to disclose everything that might influence a jury." *United States v. Daniels*, 195 F.R.D. 681, 682 (D. Kan. 2000); *see also Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995) ("The Constitution, as interpreted in *Brady*, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant.). Rather, the Government need only disclose information in its possession that is favorable and material. *Daniels*, 195 F.R.D. at 682. Evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding [would] have been different. A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome." *Id.* (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, (1987)). "The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994); *see also United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) ("A *Brady* claim fails if the existence of favorable evidence is merely suspected. That

the evidence exists must be established by the defendant."). Put another way, a court must ask whether the absence of the evidence at trial "shakes [its] confidence in the guilty verdict." *United States v. Cooper*, 654 F.3d 1104, 1120 (10th Cir. 2011). Defendants have the burden to establish materiality. *United States v. Lopez*, No. 5:21-CR-40026-TC, 2021 WL 5279923, at *5 (D. Kan. Nov. 12, 2021); *United States v. Uphoff*, 907 F. Supp. 1475, 1477 (D. Kan. 1995).

Defendant has failed to show that the information he is seeking – generally speaking, internal deliberations and communications about publicly available policy changes – is material to his guilt or innocence. The disclosure requirements relevant to the charges in this case (i.e., those in effect between approximately July 2017 and August 2019) are in writing and clear and unambiguous, as the evidence at trial will show. And many of Defendant's false or misleading statements and actions in this case are informed by KU's own policies and procedures regarding conflicts of interest or time and outside activities. Defendant claims otherwise, pointing to additional requirements that DOE and NSF imposed on principal investigators after his arrest in August 2019. He further argues that "the government would have no need to call its DOE and NSF witnesses" "[i]f the policies in place from 2017 to 2019 were clear about what information DOE and NSF expected to be disclosed," Def. Mot. at 15, but that is nonsensical.

Any additional disclosure requirements put into effect by DOE and/or NSF after August 2019 are irrelevant to whether Defendant made false or misleading statements to KU, DOE, and NSF about his work for FZU prior to August 2019, as are the statements and impressions of non-witnesses about such disclosure requirements. The Government would object to any attempt to introduce that information at trial. Regardless, Defendant already possesses that information, as his motion to compel clearly demonstrates. He can make use of it to prepare for trial and, to the extent permissible by law, rely on it at trial. As the Tenth Circuit has explained, "a defendant is

not denied due process by the government's nondisclosure of evidence if the defendant knew of the evidence anyway." *Erikson*, 561 F.3d at 1163. Despite having the burden, Defendant fails to adequately explain how internal DOE and NSF deliberations and communications pertaining to the information he already possesses would alter the outcome of the trial. If anything, it is cumulative evidence and thus immaterial. *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir.1999) ("If a defendant already has a particular piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial.").

## III.   CONCLUSION

The Court should recognize Defendant's motion to compel for what it is – yet another tactical maneuver on the eve of trial. For the reasons set forth above, the Court should deny Defendant's motion to compel.

Respectfully submitted,

*/s/ Benjamin J. Hawk*
Benjamin J. Hawk
Adam P. Barry
Trial Attorneys
National Security Division
U.S. Department of Justice

*/s/ Christopher Oakley*
D. Christopher Oakley
Assistant United States Attorney
United States Attorney's Office for the
District of Kansas

**CERTIFICATEOF SERVICE**

I hereby certify that on the 28th day of February, 2022, I caused the foregoing motion to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*/s/ Christopher Oakley*
D. Christopher Oakley

18