1            UNITED STATES DISTRICT COURT
                  DISTRICT OF KANSAS
2

3    UNITED STATES OF AMERICA,

4         Plaintiff,
                                    Case No. 19-20052-JAR
5         v.

6    FENG TAO, a/k/a "Franklin       Kansas City, Kansas
     Tao,"                           Date:  6 April, 2022
7
          Defendant.                 Day 13
8                                    Pages 2425 - 2432
     .........................

9
                  TRANSCRIPT OF JURY TRIAL
10          BEFORE THE HONORABLE JULIE A. ROBINSON
            SENIOR UNITED STATES DISTRICT COURT JUDGE
11

12                 A P P E A R A N C E S

13   For the Plaintiff:

14   Mr. Adam Barry                 Mr. Christopher Oakley
     U.S. DEPARTMENT OF JUSTICE     U.S. ATTORNEY'S OFFICE
15   950 Pennsylvania Avenue, NW    500 State Avenue
     Washington, D.C. 20530         Suite 360
16                                  Kansas City, Kansas 66101

17   For the Defendant:

18   Mr. Michael F. Dearington
     Mr. Peter R. Zeidenberg
19   ARENT FOX, LLP
     1717 K Street NW
20   Washington, D.C. 20006

21

22

23

24   _____
           Proceedings recorded by machine shorthand,
25     transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2        (The following proceedings occurred outside the presence of
 3   the jury.)
 4             THE COURT:  I have a question from the jury, and I
 5   require they put these in writing so we can review them
 6   together.
 7             The question is:  May we have transcripts from
 8   Dr. Viviane Schwartz's testimony, signed by the presiding
 9   juror, Juror No. 0116.
10             So ordinarily we say no because there are no
11   transcripts.  Of course in this case there are transcripts.
12   Typically I say no if they just want a read-back of part.  It's
13   an all-or-nothing enterprise, but in this case they're asking
14   for the entire transcript that is available.  So let me get
15   your thoughts on that.
16             MR. ZEIDENBERG:  I think it should be provided.
17   They're asking for -- I endorse the Court's observation.  And
18   think it should be given to them.
19             THE COURT:  You've prepared dailies, so we do have it.
20             THE REPORTER:  Roughs.
21             THE COURT:  Oh, they're not certified.  So maybe we
22   have to do a read-back.
23             Mr. Oakley or Mr. Barry, your view?
24             MR. OAKLEY:  I guess I don't know enough to know the
25   difference between a rough draft and a certified.  I assume it
```

1    takes additional editing and that sort.

2              THE COURT:  Yeah.  Are dailies always rough?

3              THE REPORTER:  No.

4              THE COURT:  Okay.  So they ordered roughs.  So, yeah,

5    it does require an additional round of editing before the court

6    reporter will certify.

7              MR. ZEIDENBERG:  I mean, I can say -- and the Court

8    may know this.  I never ordered rough -- quote/unquote, rough

9    dailies before.  It may be a compliment to the court reporter,

10   but they don't look rough.  I mean, it wasn't what I expected.

11   I expected it to be -- I don't know.  It looks no different

12   facially in every way, and I didn't certainly -- we didn't

13   notice any errors or omissions or anything like that.  It looks

14   like a final transcript.  I don't know if it just has to get,

15   you know, stamped like that, but it looks official.

16             THE COURT:  Court reporters are pretty much

17   perfectionists, and I have realtime and it's really accurate.

18   The only ones I'm pretty sure she would disagree with me on are

19   some of the non-first language English speakers, probably there

20   might be some there, but I don't think that's the case with

21   Ms. Schwartz.

22             Are you all right with them getting the rough?

23             MR. OAKLEY:  Our only concern I guess would be if we

24   set a precedent and then next thing you know neither one --

25   they want everything.

1        THE COURT:  Yeah, I'm not going to let them do that.

2   The answer to that would be no.  I guess we could give them

3   this and see where it goes.  You know, during *voir dire* I also

4   tell them transcripts won't be available, but they never

5   remember that.  I mean, a lot of times they ask for it.

6        And I could certainly indicate in the answer that, you

7   know, we're going to allow this, but that for a number of

8   witnesses, the transcripts are not in final form, something

9   like that, without saying who.  Would you like that kind of

10  answer or no?

11       MR. ZEIDENBERG:  That would be fine.  I mean, I think

12  the observation that the Court made which is that it's a

13  specific witness and for a specific, you know -- I don't

14  imagine they're going to ask for -- there's a lot of witnesses

15  in this case.  You know, they're not going to ask for all these

16  transcripts.

17       THE COURT:  Well, the style of bringing them into the

18  courtroom and doing the read-back usually dissuades them from

19  asking again, but I'm inclined to -- and I think once they see

20  the transcript, it may dissuade them from asking for many more

21  too because, I mean, she was on the stand for quite while.

22       I'm inclined to say yes, but -- yes, but be aware that

23  for a number of the witnesses, there are no final transcripts

24  available, something like that.  So hopefully head this off at

25  the pass.  Is that okay with you?

1            MR. BARRY:  I think that's okay with us.  I think it
2     might be worth noting just that they're rough so they should
3     not kind of ignore their recollection over the transcript.
4     Obviously the transcript, we agree, they've been incredibly
5     accurate, but they're not final.
6            I don't foresee that being an issue, but I don't want
7     it to be -- for them to assume that this is exactly what was
8     said even though it's probably close and frankly probably more
9     accurate than most of our memories.
10           MR. OAKLEY:  I would assume if we had a read-back,
11    they are read the, quote, rough transcript anyway.
12           THE COURT:  Probably.  Actually, no, she reads her
13    symbols, right?  How do you do a read-back?  Do you read the
14    rough?
15           THE REPORTER:  Yes.
16           THE COURT:  Back in the day before realtime, you just
17    read the symbols, which I thought might be more accurate than
18    the rough, but if it's one in the same, we might as well let
19    them have it.  And if it's one in the same, we never give that
20    sort of caveat when we do a read-back that this isn't final and
21    certified either.
22           MR. BARRY:  Okay.  If it's the same as a read-back, I
23    think --
24           THE COURT:  I do want to put some cautionary language
25    in there.  So let me write it, I'll read you my response, and

1    make sure it's okay.

2            Should I tell them we'll provide it as soon as it's

3    printed out because it's not printed out, right?

4            THE REPORTER:  Right.

5            THE COURT:  Okay.  Yes, we will provide you with this

6    transcript.  Please be advised, however, that there is no final

7    transcript available for a number of the witnesses.  We will

8    send the transcript to you as soon as it is printed.

9            Is that all right?

10           MR. ZEIDENBERG:  That's fine.

11           THE COURT:  Is that all right with you?

12           MR. OAKLEY:  Yes, Your Honor.

13           THE COURT:  Okay.  All right.  I'll send this back in.

14   And my guess is if they're going to read a transcript, we're

15   probably not going to get a verdict today, but stick around

16   anyway, you never know.  We'll be in recess, subject to call.

17       (Recess.)

18       (The following proceedings occurred outside the presence of

19   the jury.)

20           THE COURT:  The jury is about to come in.  They said

21   they wanted to go home at 4:45 and my practice is to give the

22   overnight admonition especially when they're deliberating to

23   not be exposed to press coverage, et cetera.  They're on their

24   way in and we'll send them home, and we'll find out from them

25   if they're going to follow the same schedule tomorrow.

 1              MR. ZEIDENBERG:  I take it they've been provided the

 2     transcript?

 3              THE COURT:  Have they?

 4              THE REPORTER:  Yes.

 5              (The jury entered the courtroom, after which the

 6     following proceedings were had.)

 7              THE COURT:  All right.  You can be seated.  I

 8     understand you're ready to go home for the day.  You had a long

 9     day.  What time do you think you're going to reconvene

10     tomorrow?

11              JUROR NO. 0116:  9:00 a.m.

12              THE COURT:  Okay.  Follow the same schedule you did

13     today.  Okay.

14              You're in the middle of deliberations.  Very important

15     to not discuss anything, communicate at all, and take in any

16     extraneous information from any of the sources we've talked

17     about before and to not expose yourself to any media coverage

18     should you come across anything.

19              So safe travels, have a pleasant evening, and we'll

20     see you sometime tomorrow.

21        (The following proceedings occurred outside the presence of

22     the jury.)

23              THE COURT:  All right.  So same schedule tomorrow.

24              And, Bonnie, did you talk to them about lunch

25     tomorrow?

1          COURTROOM DEPUTY:  I did not.  I was just going to

2    kind of get a feel.  They're going to take the same schedule.

3          THE COURT:  If you can catch them now before they

4    leave because sometimes that helps.  So we do have funding to

5    provide lunch while deliberations are going on, so we're going

6    to make that offer to them, if their so inclined.

7          MR. DEARINGTON:  Is that for counsel as well, Your

8    Honor?

9          THE COURT:  Unfortunately not for the judge either.

10   But anyway, all right.  Well, have a good evening.  We'll see

11   you back sometime tomorrow.

12     (Evening recess.)

13

14               C E R T I F I C A T E

15     I, Danielle R. Murray, a Certified Court Reporter and the

16   regularly appointed, qualified, and acting official reporter of

17   the United States District Court for the District of Kansas, do

18   hereby certify that the foregoing is a true and correct

19   transcript from the stenographically reported proceedings in

20   the above-entitled matter.

21     SIGNED 18th of November, 2022

22

23                     /s/Danielle R. Murray
                       DANIELLE R. MURRAY, RMR, CRR
24                     United States Court Reporter

25